# Exhibit "C"

SAMUEL P. BLACK, III;                 : IN THE COURT OF COMMON PLEAS
SAMUEL P. BLACK & ASSOCIATES, INC,   :
   d/b/a BLACK INSURANCE GROUP;   : OF ERIE COUNTY, PENNSYLVANIA
ERIE MANAGEMENT GROUP, LLC;     :
BLACK INTERESTS LIMITED        :
   PARTNERSHIP;                   :
HERO BX MANAGEMENT&  CONSULTING :        No.  2023-11750
   LLC;                         :
SB3, LLC;                         :
SB ERIE PROPERTIES, LLC;        :
S.P. BLACK FAMILY HOLDINGS, LP    :
LAKE ERIE BIOFUELS, LLC d/b/a HERO BX :

            **Plaintiffs**      :
      **v.**                     :
                              :
SOOMI JAMES a/k/a SUMI JAMES- BLACK :
   a/k/a SOOMI JAMES BLACK a/k/a SOOMI :
   H. JAMES a/k/a SOOMI HAM a/k/a SOOMI :
   NHEI a/k/a SUMI JAMES a/k/a SOOMI MI :
NICOLE BUZZARD; *and*          :
THE SUMI JAMES-BLACK 2022      :
   IRREVOCABLE TRUST;  *and*     :
THE JAMES-BLACK 2020 IRREVOCABLE :
   TRUST; *and*             :
THE SILVERTHORN 2021 IRREVOCABLE :
   TRUST; *and*             :
THE SJB 2020 INHERITANCE TRUST; *and* :
THE SPB III (HDAI) 2020 IRREVOCABLE :
   TRUST *and*              :
LOT 289 LLC; *and*          :
LOT 298, LLC; *and*         :
TOP ROAD, LLC; *and*        :
PRISM GLASS RECYCLING, LLC; *and*  :
SJB INVESTMENT ENTERPRISES, LLC; *and* :
REABAH, INC. *and*           :
NETWORKING TECHNOLOGIES, LLC; and :
KNOX MCLAUGHLIN GORNALL &    :
     SENNETT, PC.           :
           **Defendants**     :

COMMON PLEAS COURT
ERIE, PA
2024 APR 12  PM 2:36
CLERK OF RECORDS
PROTHONOTARY

To:   **Soomi James**                              **Nicole Buzzard**
      289 Niagara Pointe                           6400 Lake Shore Drive
      Erie, PA 16507                               Erie, PA 16505

      **The Sumi-James Irrevocable Trust 2020**   **The James-Black 2020 Irrevocable Trust**
      1540 East Lake Road, Suite 300,              120 West 10th Street
      Erie, PA 16511                               Erie, PA  16501
      **The Silverthorn 2021 Irrevocable Trust**   **The SJB 2020 Inheritance Trust**
      1540 East Lake Road, Suite 300,              1540 East Lake Road, Suite 300,
      Erie, PA 16511                               Erie, PA 16511

      **The SPB III (HDAI) 2020 Irrevocable**     **Lot 289 LLC**
      **Trust**                                    c/o James-Black 2020 Irrevocable Trust
      289 Niagara Pointe                           120 West 10th Street
      Erie, PA 16507                               Erie, PA 16501

      **Lot 298, LLC.**                            **Top Road, LLC.**
      c/o James-Black 2020 Irrevocable Trust       c/o James-Black 2020 Irrevocable Trust
      120 West 10th Street                         120 West 10th Street
      Erie, PA 16501 Erie, PA 16501                Erie, PA 16501 Erie, PA 16501

      **Prism Glass Recycling, LLC.**             **SJB Investment Enterprises, LLC.**
      1540 East Lake Road, Suite 300,              1540 East Lake Road, Suite 300,
      Erie, PA 16511                               Erie, PA 16511

      **Reabah, Inc.**                             **Networking Technologies, LLC.**
      4666 Glen Crest Dr.                          3910 Caughey Road, Suite 120
      Erie, PA 16509                               Erie, PA 16506

      **Knox McLaughlin Gornall & Sennett, P.C.**
      120 West 10th Street
      Erie, PA 16501

## NOTICE TO DEFEND

YOU HAVE BEEN SUED IN COURT.  IF YOU WISH TO DEFEND AGAINST THE CLAIMS SET FORTH IN THE FOLLOWING PAGES, YOU MUST TAKE ACTION WITHIN TWENTY (20) DAYS AFTER THIS COMPLAINT AND NOTICE ARE SERVED, BY ENTERING A WRITTEN APPEARANCE PERSONALLY OR BY ATTORNEY AND FILING IN WRITING WITH THE COURT YOUR DEFENSES OR OBJECTIONS TO THE CLAIMS SET FORTH AGAINST YOU.  YOU ARE WARNED THAT IF YOU FAIL TO DO SO THE CASE MAY PROCEED WITHOUT YOU AND A JUDGMENT MAY BE ENTERED AGAINST YOU BY THE COURT WITHOUT FURTHER NOTICE FOR ANY MONEY CLAIMED IN THE COMPLAINT OR FOR ANY OTHER CLAIM OR RELIEF REQUESTED BY THE PLAINTIFFS.  YOU MAY LOSE MONEY OR PROPERTY OR OTHER RIGHTS IMPORTANT TO YOU.


YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

LAWYERS REFERRAL SERVICE
429 West 6th Street
Erie, PA 16507
(814) 459-4411
8:30 a.m. – 3:00 p.m.

NIETUPSKI ANGELONE, LLC
3204 State Street
Erie, PA 16508
Attorney for Plaintiffs

# <u>TABLE OF CONTENTS FOR COMPLAINT</u>

THE PARTIES

| | | |
|---|---|---|
| A. | Plaintiffs | 5 |
| B. | Defendants | 8 |

JURISDICTION AND VENUE ............ 12

BACKGROUND FACTS ............ 12

**CHAPTER 1 - <u>2021 NETWORKING TECHNOLOGIES, LLC TRANSACTION</u>** ... 24
*Mr. Black, EMG and BILP v. Sumi, Buzzard, Knox and SJB Investment*

COUNT I:     BREACH OF FIDUCIARY DUTY ............ 35
*EMG and Mr. Black v. Sumi, Buzzard and Knox*

COUNT II:     FRAUD (CONSTRUCTIVE FRAUD) ............ 39
*EMG and Mr. Black v. Sumi, Buzzard and Knox*

COUNT III:     FRAUD (INTENTIONAL MISREPRESENTATION) ............ 41
*EMG and Mr. Black v. Sumi, Buzzard and Knox*

COUNT IV:     CONVERSION ............ 44
*Mr. Black and EMG v. Sumi, Buzzard and SJB Investments*

COUNT V:     AIDING AND ABETTING BREACH OF FIDUCIARY DUTY ... 46
*EMG and Mr. Black v. Sumi, Buzzard, Knox and SJB Investment, LLC*

COUNT VI:     AIDING AND ABETTING FRAUD ............ 47
*EMG and Mr. Black v. Knox*

COUNT VII:     CIVIL CONSPIRACY ............ 50
*EMG and Mr. Black v. Sumi, Buzzard and Knox*

COUNT VIII.     UNJUST ENRICHMENT ............ 52
*EMG and Mr. Black v. Sumi and SJB Investment*

**CHAPTER 2 – LOT 298, LLC** ............ 54
*Mr. Black and BILP v. Sumi, Buzzard, Lot 298 LLC, JB 2020 Trust and Knox*

COUNT I:     BREACH OF FIDUCIARY DUTY ............ 64
*Mr. Black and BILP v. Sumi, Buzzard and Knox*

i

COUNT II:      FRAUD (CONSTRUCTIVE FRAUD)                        69
               *Mr. Black and BILP v. Sumi, Buzzard and Knox*

COUNT III:     FRAUD (INTENTIONAL MISREPRESENTATION)             70
               *Mr. Black and BILP v. Sumi, Buzzard and Knox*

COUNT IV:      CONVERSION                                        73
               *Mr. Black and BILP v. Sumi, Lot 298, LLC and JB 2020 Trust*

COUNT V:       AIDING AND ABETTING BREACH OF FIDUCIARY DUTY      74
               *Mr. Black and BILP v. Sumi, Buzzard and Knox*

COUNT VI:      AIDING AND ABETTING FRAUD                         75
               *Mr. Black and BILP v Knox*

COUNT VII:     CIVIL CONSPIRACY                                  78
               *Mr. Black and BILP v. Sumi, Buzzard and Knox*

COUNT VIII.    UNJUST ENRICHMENT                                 79
               *Mr. Black and BILP v. Sumi, Lot 298, LLC and JB 2020 Trust*

COUNT IX       PRELIMINARY INJUCTION/TEMPORARY RESTRAINING       80
               ORDER
               *Mr. Black and BILP v. Sumi and Lot 298, LLC*

**CHAPTER 3 – TOP ROAD, LLC**                                   83
               *Mr. Black and BILP v. Sumi, Buzzard, Top Road, LLC, Knox and
               JB 2020 Trust*

COUNT I:       BREACH OF FIDUCIARY DUTY                          93
               *Mr. Black and BILP v. Sumi, Buzzard and Knox*

COUNT II:      FRAUD (CONSTRUCTIVE FRAUD)                        97
               *Mr. Black and BILP v. Sumi, Buzzard and Knox*

COUNT III:     FRAUD (INTENTIONAL MISREPRESENTATION)             98
               *Mr. Black and BILP v. Sumi, Buzzard and Knox*

COUNT IV:      CONVERSION                                        101
               *Mr. Black and BILP v. Sumi, Buzzard, Knox and JB 2020 Trust*

COUNT V:       AIDING AND ABETTING BREACH OF FIDUCIARY DUTY      102
               *Mr. Black and BILP v. Sumi, Buzzard and Knox*

COUNT VI:   AIDING AND ABETTING FRAUD                                    103
*Mr. Black and BILP v. Knox*

COUNT VII:   CIVIL CONSPIRACY                                            106
*Mr. Black and BILP v. Sumi, Buzzard and Knox*

COUNT VIII.   UNJUST ENRICHMENT                                          107
*Mr. Black and BILP v. Sumi, Top Road, LLC and JB 2020 Trust*

COUNT IX   PRELIMINARY INJUNCTION/TEMPORARY                             108
RESTRAINING ORDER
*Mr. Black and BILP v. Sumi, Top Road, LLC and JB 2020 Trust*

**CHAPTER 4 – 270 NIAGARA POINTE**                                       111
*Mr. Black, EMG and BILP v. Sumi and Buzzard*

COUNT I:   BREACH OF FIDUCIARY DUTY                                      115
*Mr. Black, BILP and EMG v. Sumi and Buzzard*

COUNT II:   FRAUD (CONSTRUCTIVE FRAUD)                                   117
*EMG, Mr. Black and BILP v. Sumi and Buzzard*

COUNT III:   FRAUD (INTENTIONAL MISREPRESENTATION)                       118
*EMG, Mr. Black and BILP v. Sumi and Buzzard*

COUNT IV:   CONVERSION                                                   120
*Mr. Black and BILP v. Sumi*

COUNT V:   AIDING AND ABETTING BREACH OF FIDUCIARY DUTY                 122
*EMG, Mr. Black and BILP v. Sumi and Buzzard*

COUNT VI:   CIVIL CONSPIRACY                                             123
*EMG, Mr. Black and BILP v. Sumi and Buzzard*

COUNT VII:   UNJUST ENRICHMENT                                           124
*EMG, Mr. Black and BILP v. Sumi*

**CHAPTER 5 – LOT 289, LLC**                                             126
*Mr. Black, EMG, SB3 and BILP v. Sumi, Buzzard, Lot 289, LLC,
and JB 2020 Irrevocable Trust*

COUNT I:   BREACH OF FIDUCIARY DUTY                                      135
*Mr. Black, EMG, SB3 and BILP v. Sumi and Buzzard*

iii

COUNT II:    FRAUD (CONSTRUCTIVE FRAUD)                          138
             *Mr. Black, SB3, EMG and BILP v. Sumi and Buzzard*

COUNT III:   FRAUD (INTENTIONAL MISREPRESENTATION)              139
             *Mr. Black, SB3, EMG and BILP v. Sumi and Buzzard*

COUNT IV:    CONVERSION                                          142
             *Mr. Black, SB3, EMG, BILP and Black Insurance v. Sumi
             and Buzzard*

COUNT V:     AIDING AND ABETTING BREACH OF FIDUCIARY DUTY        143
             *Mr. Black, SB3, EMG, BILP and Black Insurance v. Sumi
             and Buzzard*

COUNT VI:    CIVIL CONSPIRACY                                    144
             *Mr. Black, SB3, EMG, BILP and Black Insurance v. Sumi
             and Buzzard*

COUNT VII:   UNJUST ENRICHMENT                                   146
             *Mr. Black, SB3, EMG, BILP and Black Insurance v. Sumi,
             Lot 289, LLC and JB 2020 Trust*

COUNT VIII.  PRELIMINARY INJUNCTION/TEMPORARY                    147
             RESTRAINING ORDER
             *Mr. Black, SB3, EMG, BILP and Black Insurance v. Sumi,
             Lot 289, LLC and JB 2020 Trust*

**CHAPTER 6 – FRAUDULENT PROCUREMENT OF HERO OPTION**            150
             *Mr. Black, S.P. Black Family Holdings, L.P., Hero BX Management
             and Consulting, Lake Erie Biofuels, LLC d/b/a HERO BX and BILP
             v. Sumi, SJB 2020 Trust and Knox*

COUNT I:     BREACH OF FIDUCIARY DUTY                            158
             *Mr. Black and S.P. Black Family Holdings v. Sumi and Knox*

COUNT II:    FRAUD (CONSTRUCTIVE FRAUD)                          160
             *Mr. Black and S.P. Black Family Holdings v. Knox*

COUNT III:   FRAUD (INTENTIONAL MISREPRESENTATION)              161
             *Mr. Black and S.P. Black Family Holdings v. Sumi and Knox*

COUNT IV:    CONVERSION                                          164
             *Mr. Black and S.P. Black Family Holdings v. Sumi and
             SJB 2020 Trust*

COUNT V:      AIDING AND ABETTING BREACH OF FIDUCIARY DUTY      165
              *Mr. Black, S.P. Black Family Holdings and BILP v. Sumi and*
              *Knox*

COUNT VI:     AIDING AND ABETTING FRAUD                         166
              *Mr. Black, S.P. Black Family Holdings and BILP v. Knox*

COUNT VII:    CIVIL CONSPIRACY                                  168
              *Mr. Black and S.P. Black Family Holdings v. Sumi, Knox and*
              *SJB 2020 Trust*

COUNT VIII:   UNJUST ENRICHMENT                                 169
              *Mr. Black, S.P. Black Family Holdings and BILP v. Sumi,*
              *individually and as Trustee of the SJB 2020 Trust*

**CHAPTER 7 – SIENA/HERO**                                     171
              *Mr. Black, EMG, SB3 and BILP v. Sumi, Buzzard, Lot 289, LLC,*
              *and JB 2022 Irrevocable Trust*

COUNT I:      BREACH OF FIDUCIARY DUTY                          178
              *Mr. Black and HERO v. Sumi, Buzzard and Knox*

COUNT II:     FRAUD (CONSTRUCTIVE FRAUD)                        181
              *Mr. Black and HERO v. Sumi, Buzzard and Knox*

COUNT III:    FRAUD (INTENTIONAL MISREPRESENTATION)            182
              *Mr. Black and HERO v. Sumi, Buzzard and Knox*

COUNT IV:     CONVERSION                                        185
              *Mr. Black, Sumi individually and as Trustee of the SJB 2022*
              *Trust*

COUNT V:      AIDING AND ABETTING BREACH OF FIDUCIARY DUTY      187
              *Mr. Black and HERO v. Sumi, Buzzard and Knox*

COUNT VI:     AIDING AND ABETTING FRAUD                         188
              *Mr. Black and HERO*

COUNT VII:    CIVIL CONSPIRACY                                  189
              *Mr. Black v. Sumi, Buzzard and Knox*

COUNT VIII:   UNJUST ENRICHMENT                                 190
              *Mr. Black v. Sumi, individually and as Trustee of the SJB 2022*
              *Trust*

COUNT IX:   PRELIMINARY INJUNCTION/TEMPORARY                191
RESTRAINING ORDER
*Mr. Black and HERO v. Sumi, individually and as Trustee of*
*The SJB 2022 Trust*

**CHAPTER 8 – BLACK INSURANCE**                              194
*Mr. Black, EMG and Black Insurance v. Sumi and Buzzard*

COUNT I:     BREACH OF FIDUCIARY DUTY                        199
*Mr. Black and Black Insurance v. Sumi and Buzzard*

COUNT II:    FRAUD (CONSTRUCTIVE FRAUD)                      201
*Mr. Black, SB3, EMG and BILP v. Sumi and Buzzard*

COUNT III:   FRAUD (INTENTIONAL MISREPRESENTATION)          202
*Mr. Black  v. Sumi and Buzzard*

COUNT IV:    CONVERSION                                      204
*Mr. Black and Black Insurance v. Sumi and Buzzard*

COUNT V:     AIDING AND ABETTING BREACH OF FIDUCIARY DUTY   206
*EMG, Mr. Black and Black Insurance v. Sumi and Buzzard*

COUNT VI:    CIVIL CONSPIRACY                                207
*Mr. Black, EMG, and Black Insurance v. Sumi and Buzzard*

COUNT VII:   UNJUST ENRICHMENT                               209
*Mr. Black and Black Insurance v. Sumi and Buzzard*

**CHAPTER 9 – PRISM GLASS**                                 210
*Mr. Black, Erie Management and BILP v. Sumi, individually and as*
*Trustee of the SJB 2020 Inheritance Trust and Knox*

COUNT I:     BREACH OF FIDUCIARY DUTY                        219
*Mr. Black, EMG, and BILP v. Sumi, Buzzard and Knox*

COUNT II:    FRAUD (CONSTRUCTIVE FRAUD)                      222
*Mr. Black, EMG and BILP v. Sumi, Buzzard and Knox*

COUNT III:   FRAUD (INTENTIONAL MISREPRESENTATION)          223
*Mr. Black, EMG and BILP v. Sumi, Buzzard and Knox*

COUNT IV:    CONVERSION                                      226
*Mr. Black, EMG and BILP v. Sumi, Buzzard and Knox*

COUNT V:   AIDING AND ABETTING BREACH OF FIDUCIARY DUTY      227
*Mr. Black, EMG and BILP v. Sumi, Buzzard and Knox*

COUNT VI:   AIDING AND ABETTING FRAUD                                      228
*Mr. Black, EMG and BILP v. Knox*

COUNT VII:  CIVIL CONSPIRACY                                                 229
*Mr. Black, EMG and BILP*

COUNT VIII: UNJUST ENRICHMENT                                              230
*Mr. Black, EMG and BILP v. Sumi and the SJB 2020 Trust*

**CHAPTER 10 – FRAUDULENT USE OF ERIE MANAGEMENT ASSETS**      232
*Mr. Black and EMG v. Sumi and Buzzard*

COUNT I:    BREACH OF FIDUCIARY DUTY                                       235
*Mr. Black and EMG v. Sumi and Buzzard*

COUNT II:   FRAUD (CONSTRUCTIVE FRAUD)                                     237
*Mr. Black and EMG v. Sumi and Buzzard*

COUNT III:  FRAUD (INTENTIONAL MISREPRESENTATION)                         238
*Mr. Black v. Sumi, Buzzard and Knox*

COUNT IV:   CONVERSION                                                       240
*Mr. Black and EMG v. Sumi and Buzzard*

COUNT V:    AIDING AND ABETTING BREACH OF FIDUCIARY DUTY      241
*Mr. Black and EMG v. Sumi and Buzzard*

COUNT VI:   CIVIL CONSPIRACY                                                 242
*Mr. Black and EMG v. Sumi and Buzzard*

COUNT VII:  UNJUST ENRICHMENT                                              243
*Mr. Black and Sumi*

**CHAPTER 11 – BREACH OF DUTY OF CONFIDENTIALITY; INVASION OF**      245
**PRIVACY – INTRUSION INTO PRIVATE AFFAIRS**
*Mr. Black v. Sumi, Buzzard, yet to be named Defendant RR ("RR") and
Yet to be named Defendant DP ("DP")*

COUNT I:    BREACH OF FIDUCIARY DUTIES OF CONFIDENTIALITY             246
AND LOYALTY
*Mr. Black v. Sumi and Buzzard*

COUNT II:     AIDING AND ABETTING BREACH OF FIDUCIARY DUTIES  248
              OF CONFIENTIALITY AND LOYALTY
              *Mr. Black, SB3, EMG and BILP v. Sumi and Buzzard*

COUNT III:    INVASION OF PRIVACY – INTRUSION INTO PRIVATE       249
              AFFAIRS
              *Mr. Black v. Sumi, Buzzard, RR and DP*

COUNT IV:     PRELIMINARY INJUNCTION/TEMPORARY RESTRAINING  251
              ORDER
              *Mr. Black v. Sumi, Buzzard, RR and DP*

COUNT V:      BREACH OF PROFESSIONAL OBLIGATIONS TO THIRD       252
              PARTY
              *Mr. Black v. RR and DP*

**CHAPTER 12 – FEDERAL RICO 18 U.S.C. §1964(c) VIOLATIONS**        254
              *Mr. Black, EMG, BILP, SB3 and Black Insurance v. Sumi, Buzzard and
              Knox*

COUNT I:      VIOLATION OF 18 U.S.C. §1962(c) - RACKETEERING      255
              ACTIVITY
              *Mr. Black, EMG, BILP, SB3 and Black Insurance v. Sumi,
              Buzzard and Knox*

              A.  The Networking Technologies, LLC Fraud Scheme (Chapter 1)     262

              B.  The Lot 298, LLC Fraud Scheme (Chapter 2)     271

              C.  The Top Road, LLC Fraud Scheme (Chapter 3)     281

              D.  The Lot 289, LLC Fraud Scheme (Chapter 5)     288

              E.  The Siena/HERO Fraud Scheme (Chapter 7)     303

COUNT II:     VIOLATION OF 18 U.S.C. §1962(b) – ACQUISITION OF    322
              INTEREST IN AN ENTERPRISE
              *EMG v. Sumi, Buzzard and Knox*

COUNT III:    VIOLATION OF 18 U.S.C. §1962(d) – RICO CONSPIRACY   324
              *Mr. Black, EMG, BILP, SB3 and Black Insurance v. Sumi,
              Buzzard and Knox*

SAMUEL P. BLACK, III;                          : IN THE COURT OF COMMON PLEAS
SAMUEL P. BLACK & ASSOCIATES, INC,             :
  d/b/a BLACK INSURANCE GROUP;         : OF ERIE COUNTY, PENNSYLVANIA
ERIE MANAGEMENT GROUP, LLC;                    :
BLACK INTERESTS LIMITED                        :
  PARTNERSHIP;                         :
HERO BX MANAGEMENT&  CONSULTING                :          No.  2023-11750
  LLC;                                 :
SB3, LLC;                                      :
SB ERIE PROPERTIES, LLC;                       :
S.P. BLACK FAMILY HOLDINGS, LP                 :
LAKE ERIE BIOFUELS, LLC d/b/a HERO BX          :
                                               :
      **Plaintiffs** :
                                               :
    **v.**                   :
                                               :
SOOMI JAMES a/k/a SUMI JAMES- BLACK            :
  a/k/a SOOMI JAMES BLACK a/k/a SOOMI   :
  H. JAMES a/k/a SOOMI HAM a/k/a SOOMI  :
  NHEI a/k/a SUMI JAMES a/k/a SOOMI MI  :
NICOLE BUZZARD; *and*                          :
THE SUMI JAMES-BLACK 2022                      :
  IRREVOCABLE TRUST;  *and*            :
THE JAMES-BLACK 2020 IRREVOCABLE               :
  TRUST; *and*                         :
THE SILVERTHORN 2021 IRREVOCABLE               :
  TRUST; *and*                         :
THE SJB 2020 INHERITANCE TRUST; *and*          :
THE SPB III (HDAI) 2020 IRREVOCABLE            :
  TRUST *and*                          :
LOT 289 LLC; *and*                             :
LOT 298, LLC; *and*                            :
TOP ROAD, LLC; *and*                           :
PRISM GLASS RECYCLING, LLC; *and*              :
SJB INVESTMENT ENTERPRISES, LLC; *and*         :
REABAH, INC. *and*                             :
NETWORKING TECHNOLOGIES, LLC; and              :
KNOX MCLAUGHLIN GORNALL &                       :
    SENNETT, PC.            :
      **Defendants** :

COMMON PLEAS COURT
ERIE, PA
2024 APR 12  PM 2: 36
CLERK OF RECORDS
PROTHONOTARY

## CIVIL COMPLAINT

    The above-named Plaintiffs, by and through their attorneys, NIETUPSKI ANGELONE,

LLC., file this Complaint seeking damages which arise as the result of a pattern of fraud, breach

of fiduciary duties, embezzlement, misappropriation and/or wrongful conversion of funds and assets and other civil wrongs perpetrated by the Defendants individually and by an enterprise that included the named Defendants.  The Defendants, as detailed herein, manipulated positions of trust and defrauded Plaintiffs in such a manner as to cause the Plaintiffs extreme financial losses and conversely, unjust financial benefits for themselves. The financial harm caused to the Plaintiffs runs in the multi-millions of dollars.

## THE PARTIES

A.    **Plaintiffs**

1.      Plaintiff **SAMUEL P. BLACK. III** ("**Mr. Black**") is an adult individual residing in Erie County, Pennsylvania.

2.      Plaintiff **BLACK INTERESTS LIMITED PARTNERSHIP** ("**BILP**") is a foreign limited partnership which was formed in Texas and has a registered office address of 1540 East Lake Road, Suite 300, Erie, Pennsylvania, 16511. BILP is an investment/holding company and is the parent entity which provides the funding for Mr. Black's other companies and investments.  Mr. Black currently has an approximate 94.5% partnership interest in BILP. Due to the significant size of Mr. Black's partnership interest, any loss by BILP has a direct impact on Mr. Black.

3.      Plaintiff **ERIE MANAGEMENT GROUP, LLC.** ("**Erie Management**" or "**EMG**") is a Pennsylvania limited liability company with a registered address of 1540 East Lake Road, Erie, Pennsylvania, 16511. Mr. Black created Erie Management in 2004 to foster his vision of creating, investing, growing, and managing manufacturing companies and employment opportunities in the Lake Erie region and beyond.  Erie Management provides all levels of management and accounting services to all of Mr. Black's companies. At all times material hereto,

2

Mr. Black has been the CEO (Chief Executive Officer) of Erie Management. Erie Management is 100% owned by Plaintiff BLACK INTERESTS LIMITED PARTNERSHIP (see ¶2).

4.      Plaintiff **SAMUEL P. BLACK & ASSOCIATES, INC. d/b/a BLACK INSURANCE GROUP** ("**Black Insurance**" or "**BIG**") has been a Pennsylvania corporation since 1964 and has a registered business address of 121 E 2nd Street, Erie, Pennsylvania, 16507. Black Insurance has operated an independent insurance agency business in Erie for over six decades. Mr. Black has been with Black Insurance since 1973 and has been its long-time President/Chairman. At all times relevant, Black Insurance was 100% owned by Plaintiff BLACK INTERESTS LIMITED PARTNERSHIP (see ¶2).

5.      Plaintiff **HERO BX MANAGEMENT & CONSULTING, LLC** ("**Hero Consulting**") is a Pennsylvania limited liability company with a registered office address of 1540 East Lake Road, Suite 300, Erie, Pennsylvania, 16511.  At all times material to this action, Hero Consulting owned and operated five (5) different biodiesel production and distribution companies in five different states, one of which is the largest producer and marketer of biodiesel fuels in the northern United States. At all times material to this action Hero Consulting was 100% owned by Plaintiff S.P. Black Family Holdings, L.P. (see ¶8), which in turn was 99% owned by BILP (see ¶2).  Mr. Black has been the President of Hero Consulting.

6.      Plaintiff **SB3, LLC**. (""**SB3**") is a foreign limited liability company which was formed in Delaware and has a registered office address of 1540 East Lake Road, Suite 300, Erie, Pennsylvania, 16511.  SB3 is a property management company which owns and operates the SB3 Office Complex and Industrial Park in Erie, Pennsylvania, which contains over 35,000 square feet of marketable commercial office and industrial space and more than 150 acres of developable

3

industrial land.  SB3 is 100% owned by Plaintiff S.P. Black Family Holdings (see ¶8), which in turn is 99% owned by BILP (See ¶2).  Mr. Black is the President of SB3.

7.    Plaintiff **SB ERIE PROPERTIES, LLC**. ("**SB Erie Properties**") is a Pennsylvania limited liability company with a registered address of 1540 East Lake Road, Suite 300, Erie, Pennsylvania, 16511.  SB Erie Properties is 100% owned and operated by Plaintiff S.P. Black Family Holdings, LP (see ¶8), which in turn is 99% owned by BILP (See ¶2).  SB Erie Properties is the property owner of the Lake Erie Biofuels facility (See ¶ 9) and surrounding land up to the CSX rail line at East 12th Street.

8.    Plaintiff **S.P. BLACK FAMILY HOLDINGS, LP** (“**Black Family Holdings**”) is a Pennsylvania limited liability partnership with a registered address of 1540 East Lake Road, Suite 300, Erie, Pennsylvania, 16511. Black Family Holdings operates as a holding and investment company.  At all times material to this action, Mr. Black has been the President and CEO of Black Family Holdings.  Black Family Holdings is 99% owned by Plaintiff BILP.

9.    Plaintiff **LAKE ERIE BIOFUELS, LLC d/b/a HERO BX (“HERO”)** is a foreign limited liability company which was formed in Delaware and has a registered office address of 1540 East Lake Road, Erie, Pennsylvania, 16511. HERO is a biofuels facility operator/producer and is currently the largest producer and marketer of biodiesel fuels in the northern United States. HERO is 100% owned by Plaintiff Hero Consulting (see ¶5), which in turn is 100% owned by Plaintiff Black Family Holdings (See ¶8), which in turn is 99% owned by BILP (See ¶2).  Mr. Black is the President of HERO.

10.    See organizational chart attached hereto as **Exhibit 1** for a summary of Plaintiffs’ above referenced ownership structure.

**B.** **Defendants**

11.     Defendant **SOOMI JAMES** a/k/a SUMI JAMES BLACK a/k/a SOOMI JAMES BLACK a/k/a SOOMI H. JAMES a/k/a SOOMI HAM a/k/a SOOMI NHEI a/k/a SUMI JAMES a/k/a SOOMI MI ("**Sumi**") is an adult individual currently believed to be residing in Erie County, Pennsylvania. It is believed and therefore averred that Defendant Sumi has resided in at least twenty (20) different addresses since 1995, fifteen (15) before moving to Erie, Pennsylvania in 2016.

12.     Defendant **NICOLE BUZZARD** ("**Buzzard**") is an adult individual residing in Erie County, Pennsylvania.

13.     Defendant **KNOX MCLAUGHLIN GORNALL & SENNETT, PC** ("**Knox**") is a Pennsylvania corporation with a registered address of 120 West 10th Street, Erie, Pennsylvania, 16501. It operates a law firm, and was hired by Mr. Black on August 22, 2017, *to represent Mr. Black and the legal entities owned or controlled by Mr. Black,* as well as representing Mr. Black in many of his private affairs, including estate planning, through all times material to the claims set forth in this Complaint. There were at least five (5) Knox attorneys that worked on Mr. Black's matters, referring to themselves as "the Knox team".

14.     Defendant **THE SUMI JAMES-BLACK 2022 IRREVOCABLE TRUST** ("**SJB 2022 Trust**") is a Pennsylvania irrevocable trust with an address of 1540 East Lake Road, Suite 300, Erie, PA 16511 and which was created by Defendant Sumi on May 26, 2022, via a Trust Agreement drafted by Defendant Knox, Mr. Black's attorneys. At all times material to this action Defendant Sumi has been the Trustee of SJB 2022 Trust. The ultimate beneficiary of SJB 2022 Trust is Defendant Sumi.

5

15.     Defendant **THE JAMES-BLACK 2020 IRREVOCABLE TRUST ("JB 2020 Trust")** is a Pennsylvania irrevocable trust which was created by Defendant Sumi on May 8, 2020, via a Trust Agreement drafted by Defendant Knox, Mr. Black's attorneys, for the primary purpose of acquiring, maintaining, and improving real property for use of, benefit of and distribution to Defendant Sumi's descendants.  At all times material to this action the Trustee of defendant JB 2020 Trust has been Attorney Neil R. Devlin, a shareholder of defendant Knox law firm, and the address of JB 2020 Trust has been 120 West 10th Street, Erie, Pennsylvania, which is the address of Defendant Knox.  Currently, Defendant JB 2020 Trust has complete ownership of Defendant Lot 289, LLC (see ¶19), Defendant Lot 298, LLC (see ¶20) and Defendant Top Road, LLC (see ¶21).

16.     Defendant **THE SILVERTHORN 2021 IRREVOCABLE TRUST ("Silverthorn Trust")** is a Pennsylvania irrevocable trust which was created by Defendant Sumi on March 12, 2021, via a Trust Agreement drafted by Defendant Knox, Mr. Black's attorneys, and through which Mr. Black's personal residence on Silverthorn Road, McKean, PA was transferred to said Trust. The Trustee was expressly granted independent and unbridled and binding trust administration, investment and property acquisition authority, no matter how risky or speculative, and unencumbered by court supervision or requirements of consent from any beneficiaries, and without regard to any principles of law limiting delegation of trustee investment responsibilities. Defendant Sumi was designated as both the Trustee and the Trustee Appointer of the Silverthorn Trust. Defendant Sumi is the ultimate beneficiary of the Silverthorn Trust.

17.     Defendant the **SJB 2020 INHERITANCE TRUST ("SJB 2020 Trust")** is a Pennsylvania irrevocable trust with an address of 1540 East Lake Road, Suite 300, Erie, Pennsylvania, 16511, and which was created by Defendant Sumi on September 25, 2020, via a

6

Trust Agreement drafted by Defendant Knox, Mr. Black's attorneys, and which owned all right title and interest in Prism Glass Recycling. The SJB 2020 Trust also currently owns approximately 5.5% of BILP. The SJB 2020 Trust was made the sole beneficiary of Mr. Black's residuary estate upon Mr. Black's death.  Defendant Sumi was designated as both the Trustee and the Trustee Appointer of the SJB 2020 Trust.  Defendant Sumi is the ultimate beneficiary of the SJB 2020 Trust.

18.     Defendant **THE SPB III (HDAI) 2020 IRREVOCABLE TRUST ("HDAI 2020 Trust")** is a Pennsylvania irrevocable trust with an address of 1540 East Lake Road, Suite 300, Erie, Pennsylvania, 16511. It was created by Defendant Sumi on September 25, 2020, via a Trust Agreement drafted by Defendant Knox, Mr. Black's attorneys. **Hero Diversified Associates, Inc.** ("**HDAI**") is a state-licensed grower and processor of medical marijuana in Erie, Pennsylvania. There were initially a total of one thousand (1,000) shares, Defendant Sumi and Mr. Black each owning four hundred ninety (490) shares of non-voting stock and ten (10) shares of voting stock. Upon the signing of the HDAI Trust, Mr. Black transferred all four hundred ninety (490) shares of his non-voting stock to the HDAI 2020 Trust and now owns only ten (10) shares of voting stock (only 1% of the total shares) of HDAI. Defendant Sumi was designated as both the Trustee and the Trustee Appointer of the HDAI 2020 Trust. Defendant Sumi is the ultimate beneficiary of the HDAI 2020 Trust.

19.     Defendant **LOT 289, LLC ("Lot 289")** is a Pennsylvania limited liability company which was created by Defendant Sumi on May 8, 2020, drafted by Defendant Knox, Mr. Black's attorneys, and has a registered office address of 1540 East Lake Road, Suite 300, Erie, Pennsylvania, 16511. Lot 289, LLC is 100% owned by the JB 2020 Trust (see ¶15), and it owns the residential property at 289 Niagara Point Drive, Erie, Pennsylvania, 16507.

20.     Defendant **LOT 298 LLC** ("**Lot 298**") is a Pennsylvania limited liability company which was created by Defendant Sumi on January 14, 2021 drafted by Defendant Knox, Mr. Black's attorneys, with a registered address listed as Knox's address, 120 West 10th Street, Erie, PA. Lot 298 is 100% owned by the JB 2020 Trust (see ¶15), and it owns the residential property at 298 Niagara Point Drive, Erie, Pennsylvania, 16507.

21.     Defendant **TOP ROAD, LLC** ("**Top Road**") is a Pennsylvania limited liability company which was created by Defendant Sumi on March 24, 2021, drafted by Defendant Knox, Mr. Black's attorneys, and has a registered office address of 1540 East Lake Road, Suite 300, Erie, Pennsylvania, 16511. Top Road is 100% owned by the JB 2020 Trust (see ¶15), and it owns the residential properties located at 301and 305 Top Road, Erie, Pennsylvania, 16507.

22.     Defendant **PRISM GLASS RECYCLING, LLC** ("**Prism Glass**") is a Pennsylvania limited liability company which was created by Defendant Sumi on November 10, 2020, and has a registered office address of 1540 East Lake Road, Suite 300, Erie, Pennsylvania, 16511. As its name suggests, Prism Glass operated a glass recycling business.  It is 100% owned by Defendant SJB 2020 Trust, and Defendant Sumi is its President. The business was sold and ceased doing business on 11/11/2022.

23.     Defendant **SJB INVESTMENT ENTERPRISES, LLC** ("**SJB Investment**") is a Pennsylvania limited liability company which was created by Defendant Sumi on August 4, 2020, drafted by Defendant Knox, Mr. Black's attorneys, and has a registered office address of 1540 East Lake Road, Suite 300, Erie, Pennsylvania, 16511. Defendant Sumi is 100% owner and the sole member of SJB Investment.

24.     Defendant **REABAH, INC**. ("**Reabah**") is a Pennsylvania corporation with a registered address of 4666 Glen Crest Drive, Erie, PA 16509. It was created in 1999, with Mr.

James J. Baum as its President and sole shareholder. It is currently the majority owner of defendant Networking Technologies, LLC.

25.     Defendant **NETWORKING TECHNOLOGIES, LLC**. ("NetTech" or **"NT"**) was created and established as a Pennsylvania limited liability company on July 15, 2021, by defendant Reabah, which was then the sole Member of NT.  It has a registered office address of 3910 Caughey Road, Suite 120, Erie, Pennsylvania 16506. NT is currently 51% owned by Defendant Reabah and 49% owned by Defendant SJB Investment.  It operates a data communication, network infrastructure, and IT (information technology) consulting company.

## JURISDICTION AND VENUE

26.     Jurisdiction and venue are proper in the Court of Common Pleas of Erie County, Commonwealth of Pennsylvania in that defendants, individual and corporate, reside in and/or are registered in and/or have their principal place of business in, and/or conduct business and have sufficient contacts in and may be found and served in Erie County, and a substantial part of the occurrences or omissions giving rise to the claims stated in this Complaint occurred in Erie County, Commonwealth of Pennsylvania.  Further, this Court has jurisdiction over the Federal RICO claims raised in this matter by virtue of *Tafflin v. Levitt*, 493 U.S. 445 (1990), which held that State Courts have concurrent jurisdiction over RICO claims.

## BACKGROUND FACTS

27.     Over the past half century, Mr. Black has been one of the most wealthy, influential, and philanthropic people in the Erie, Pennsylvania area.

28.     Since the 1990's, Mr. Black has been focused on creating and investing in companies primarily in the Erie, Pennsylvania area whose innovative products can and have provided economic and growth opportunities in the Erie region.

29.     In the same time period, Mr. Black has been instrumental in furthering the community-minded philanthropy of the Black Family Holding, a non-profit organization that has infused tens of millions of dollars into the greater Erie Community with a focus on initiatives that drive educational excellence, address health care disparity, workforce development and the arts. Notable examples of this philanthropic work include *The Sam and Irene Black School of Business at Penn State Erie – The Behrend College*, started through a $20 million endowment that continues to fund countless scholarships for students, and *The Elizabeth Lee Black School* at the Barber National Institute, which offers structured educational programs addressing academic, behavioral and therapeutic needs designed to allow children with significant disabilities to develop to their fullest.

30.     In the early 2000's Mr. and then Mrs. Black met Defendant **Sumi** and her husband, Matthew James, during business trips to Hawaii, where the James' lived. Matthew and Soomi James were the President and Vice-President, respectively, of Empowerment, Inc., a company offering self-motivation and improvement courses, seminars, and training. Defendant Sumi was advertised as a Certified Master Practitioner of both NLP (Neuro Linguistic Programming)[1] and hypnosis.

31.     From 2006 through 2015, Mr. and Mrs. Black had a friendly relationship with Sumi and Matthew James, then living in California.

---

[1] **Neuro-linguistic programming (NLP)** is a pseudoscientific approach to communication, personal development and psychotherapy limited to anecdotes and personal testimony, that it is not informed by scientific understanding of neuroscience and linguistics. In fact, in education, NLP has been used as a key example of pseudoscience. (See *Neuro-linguistic programming (NLP)* Wikipedia, n.d.)

32.     From 2006-2008, Mr. Black loaned more than $28,000,000 to Matthew James and several of his business ventures. Most of this loaned money remains unpaid.

33.     In 2015, Defendant Sumi, then estranged from Matthew James, traveled from California to see Mrs. Black at a home owned by Mr. and Mrs. Black in Colorado asking for help. As a result, Mrs. Black asked Mr. Black to assist Defendant Sumi.

34.     In 2015, Mr. Black, in his capacity as CEO for Plaintiff Erie Management, hired Defendant Sumi as the Vice President of Operations for Erie Management, of which she was subsequently made COO (Chief Operating Officer).

35.     Defendant Sumi moved to Erie, Pennsylvania in connection with her employment by Erie Management where she interacted with Mr. Black on a frequent basis. Defendant Sumi left her home and her then husband and daughter in Hawaii and moved alone to Erie, Pennsylvania. Prior to this, Defendant Sumi had always lived in Hawaii and had absolutely no contact whatsoever with Pennsylvania. Defendant Sumi moved to Erie having no assets or resources.

36.     From 2015 through 2018, Defendant Sumi gradually gained Mr. Black's trust.

37.     In 2016, Mrs. Black was living in the Black's home in Colorado. From 2016 through 2017, the relationship between Mrs. Black and Defendant Sumi deteriorated as Mrs. Black became increasingly suspicious of Sumi's motivations in moving to Erie and regarding Mr. Black's various business holdings.

38.     In 2018, Defendant Sumi convinced Mr. Black to divorce his wife, by among other things, giving Mr. Black an ultimatum that she would not return to work at Erie Management unless he divorced his wife.

39.     Mr. Black thereafter divorced his wife.

11

40.     On August 22, 2017, and with the assistance of then corporate counsel, Mr. Black hired defendant Knox to specifically represent only "*Samuel P. Black, III and the legal entities owned or controlled by Mr. Black...*". (See client representation letter dated August 22, 2017, attached hereto as **Exhibit 2**).

41.     From August of 2017 through August of 2022, Knox represented Mr. Black with business matters, commercial matters, and his private estate matters.

42.     During the period of Defendant Knox's representation of Mr. Black, the August 22, 2017, fee agreement (**Exhibit 2**) was never amended.

43.     From the time Knox was retained in 2017 through August of 2022, Knox provided various services to Mr. Black and his business-related entities.  Over that same time period, Knox also began representing Defendant Sumi on her personal matters, which representation grew more significant each year.  Knox was paid in excess of $4,800,000.00 for various services they provided to Mr. Black and his business-related entities and in its representation of Defendant Sumi. To entice the Knox firm's assistance, Defendant Sumi rewarded Knox attorneys with dinners, wine parties and trips to New York City, even going so far as to provide the spouse of one senior Knox attorney with $170,000.00 donation to his wife's non-profit organization.  All this was done using Mr. Black's money.

44.     In 2018 and 2019, Defendant Sumi, taking advantage of the fact that Mr. Black has no family in Erie, secured Mr. Black's trust and began having a significant influence on his business and personal life. During this same period, Defendant Sumi began controlling more of Mr. Black's business operations.

45.     During a trip in Europe in 2019, Mr. Black sustained a serious leg injury. He returned to Erie and was home bound for several months. With no wife or other family members

12

in Erie, Defendant Sumi assisted him and stayed with him every day.  She also controlled decisions regarding Mr. Black's home health care providers. Defendant Sumi convinced Mr. Black to make her "interim CEO" of Erie Management during his recovery, a position he held since the inception of Erie Management in 2006.

46.     During this time of Mr. Black's convalescence, Defendant Sumi, then forty-four (44) years of age, also "suggested" to Mr. Black, then seventy-seven (77) years of age, that he adopt Defendant Sumi as his daughter.

47.     In 2019, therefore, and at the urgings of Defendant Sumi, Mr. Black adopted Defendant Sumi as his daughter, and her name then **became Soomi James-Black**, or **Sumi James-Black**.

48.     Defendant Knox prepared the documents for and represented both of the parties at the adoption.

49.     After the 2019 adoption, Defendant Sumi also became heavily involved in Mr. Black's personal estate planning.  At the same time, and with the assistance of Defendant Knox, she established several of her own entities and trusts, all of which were designed to take possession of the majority of Mr. Black's estate. (See **Exhibit 3**). While she didn't personally sit through most of Mr. Black's meetings with Knox on his estate matters, Defendant Sumi insisted on and instructed the VP of Erie Management Human Resources to do so, then report back to Defendant Sumi.

50.     From 2016 through 2018, Erie Management ran through three (3) different in-house counsel and four (4) different Chief Financial Officers ("CFOs"), all of whom were highly qualified, and some recruited from different parts of the country.  When each became intimately familiar with the financial practices at Erie Management, Defendant Sumi terminated each.

51.     Defendant Sumi then chose to operate Erie Management without in-house counsel and without a CFO. Instead, she hired a law school graduate preparing to take the bar exam and in February 2018 promoted Defendant Nicole Buzzard, a CPA and long-time Erie Management employee, to the position of Erie Management's Vice President of Finance & Accounting,

52.     Defendant Buzzard's promotion came with significant annual pay increases for her.

53.     To reward and entice Defendant Buzzard to assist her in various transactions contained in this Complaint, Defendant Sumi gave Buzzard significant annual pay raises of more than two hundred ten percent (210%), from 2018 ($87,000.00) to 2020 ($183,000.00).

54.     Thereafter, Defendant Buzzard assisted Defendant Sumi in making unauthorized transfers of Mr. Black's money and diversion of Mr. Black's funds and assets, all to Defendant Sumi's benefit.

55.     By May of 2022, Defendants Sumi and Buzzard had become officers of every one of Mr. Black's significant business entities and a member or shareholder of others.

56.     At about the same time, Defendant Sumi's communications with Mr. Black regarding personal and business matters decreased significantly.

57.     At about the same time, Defendants Sumi and Buzzard also began planning a takeover of Plaintiff BILP, the entity which funds all of Mr. Black's business holdings and investments.

58.     In May of 2022, Defendants Knox, Sumi, Buzzard and others held a surprise meeting with Mr. Black for the specific purpose of taking control of the BILP books and instructing Mr. Black to cease contacting his executive assistant for any assistance regarding BILP. (See **Exhibit 4).** With help from Knox --- Mr. Black's attorney --- Sumi and Buzzard convinced Mr.

Black to place Buzzard in control of all his accounts, including BILP. (See **Exhibit 5**, item 2, page 2). Until then Mr. Black and his executive assistant controlled the BILP account and bank records.

59.     From July of 2015 to August 2022, Defendant Sumi was paid $2,305,021.00 in base pay and an additional $1,800,000.00 in bonuses due to a bonus plan she had implemented in 2017. (See **Exhibit 6**).

60.     In addition, during this period Defendant Sumi maintained and enjoyed a lavish lifestyle.  Using Mr. Black's money and her corporate credit card, she purchased a number of expensive homes, paid for extravagant upgrades and lavish renovations to these homes, bought premium designer clothes and accessories, purchased luxury jewelry, and regularly paid for exorbitant dinners and entertainment including flying on a private jet.  As an example, Defendant Sumi charged more than $600,000.00 on Erie Management's corporate credit card for her own personal benefit and authorized her personal cleaning staff to use her corporate card for purchases of personal items. (See **Exhibit 7**).

61.     By 2022, Mr. Black's companies had all sustained significant financial damage.

62.     In early 2022, Defendant Buzzard, at Defendant Sumi's directive, informed Mr. Black that his salary needed to be phased out completely due to his companies' financial difficulties and that his salary would be drastically cut. She asked Knox to "advise him" and "make his living style to 150K per yr."  Until this time, Mr. Black had earned an annual salary in excess of $700,000.00.

63.     Defendants Sumi and Buzzard implemented significantly smaller pay cuts to other Erie Management executives including Defendant Sumi. Those cuts, however, were only 20% as compared to the 80% reduction in Mr. Black's salary.

64.     It was during this same period that Defendant Sumi stated her intentions to cut Mr. Black out of all company matters, essentially forcing him out of his office and into retirement.

65.     It was during this same period that Defendant Sumi, with the assistance of Buzzard and Knox, intended to take over Mr. Black's main business entity, BILP.

66.     At the same time, Defendant Sumi's salary continued at over $300,000.00 per year.

67.     The aforementioned activities of 2022 made Mr. Black and his long-time executive assistant suspicious of Defendants Sumi, Buzzard and Knox.

68.     Unbeknown to Mr. Black, in February 2022, Defendant Sumi retained the services of a Philadelphia law firm for her estate and personal matters. With the help of Defendant Buzzard, in March of 2022, they provided Philadelphia counsel with hundreds of documents (one drop box alone with 127 documents) related to Mr. Black, all without Mr. Black's consent or knowledge. These documents included all of Mr. Black's business and financial information, a compilation of all assets owned by Mr. Black; Organizational documents, corporate books, and minutes for all of Mr. Black's entities; Mr. Black's 2020 prenuptial agreement; Mr. Black's medical records; and all of Mr. Black's estate plan documents. Again, this was all done without Mr. Black's knowledge or consent.

69.     On May 4, 2022, Mr. Black, through his executive assistant, asked Knox for information about the future monies he should expect to receive from his various business entities and loans to Defendant Sumi. (See **Exhibit 8**).

70.     While Defendant Sumi was in Europe for a seven (7) week vacation (June 10, 2022 – August 3, 2022), Mr. Black, with the assistance of his executive assistant, discovered numerous unusual and unauthorized transactions, as well as long, legalese documents prepared by Defendant

Knox which were, when understood, antithetical to Mr. Black's interest, but which had been unwittingly signed by Mr. Black.

71.     Plaintiffs have discovered that said numerous documents had been prepared by Defendant Knox at Defendant Sumi's direction, and then signed by Mr. Black, who did so because of his faithful reliance upon Knox --- the law firm he had hired to represent **his** best interests.

72.     Despite Knox's contractual and ethical obligation to represent "Samuel P. Black, III and the legal entities owned or controlled by Mr. Black…," Plaintiffs have discovered hundreds of emails between Defendants Sumi, Buzzard and Knox discussing Mr. Black's affairs ***without copying Mr. Black*** or his executive assistant on the emails. These communications directed the agenda for the documents which were then provided to Mr. Black for his signature. One such email was actually addressed to Mr. Black ("Mr. Black and Sumi") but was never sent to Mr. Black. (See **Exhibit 9**.). Another, dated May 26, 2022, instructed Knox to stop copying Mr. Black's executive assistant on any documents which needed Mr. Black's signature. (See **Exhibit 10**).

73.     The ultimate and current impact of these numerous transactions has put Mr. Black in the position where he is essentially out of liquid assets and forcing him to attempt to sell what few assets remain to continue to meet his financial obligations.

74.     On August 11, 2022, Mr. Black emailed "his attorney" at Defendant Knox requesting a breakdown of all "executive salary records prior to the cut in compensation and after the cut in compensation" mentioned in ¶¶ 62 and 63, above. (See **Exhibit 11**). Knox did not reply to Mr. Black, but instead forwarded this request to Buzzard, who then discussed it with Defendant Sumi.

75.     From April through August 2022, Mr. Black was being asked to sign multiple documents, at times only provided with the signature page. It was during this time that Mr. Black

17

and his executive assistant discovered the extent of his financial position and the extent to which Defendant Sumi had assumed ownership of his assets. On August 17, 2022, Mr. Black retained the law firm of Nietupski Angelone, LLC, and immediately terminated his relationship with Defendant Knox.

76.     On or about August 26, 2022, Defendant Sumi's employment with Erie Management was terminated and she was escorted out of the Erie Management premises by security personnel. (See the 8/29/22 letter to Defendant Sumi from the Erie Management Human Resources Director, attached hereto as **Exhibit 12.)**

77.     In 2021, again with Mr. Black's funds, Defendant Sumi purchased a home in Portugal for over $1,900,000.00. While Mr. Black is a 50% owner of said property, despite repeated requests, Defendant Sumi has refused to either pay Mr. Black back his money or sell the property to allow him to recoup his money. To date, and despite his request, Mr. Black has never been provided a key or access to the Portugal property.

78.     The Defendant Sumi has since opened bank accounts in Portugal and has stated that she has no intension of depositing any more funds in the United States.

79.     As a result of the concerted and coordinated fraudulent conduct of the Defendants and as more fully described in detail in this Complaint, the net value of Mr. Black and his entities has substantially decreased.

80.     As a result of the concerted and coordinated fraudulent conduct of the Defendants and as more fully described in detail in this Complaint, Mr. Black's annual income has substantially decreased.  From 2019 through September 2022, Buzzard has been enriched by the substantial and unwarranted increase in her salary provided by Defendant Sumi. (See ¶53.)

81.     From 2017 through August of 2022, Defendant Knox has been enriched by the substantial attorney fees paid by Mr. Black and his business entities for services they were hired to perform but also for services provided for the benefit of Defendant Sumi in the concerted and coordinated fraudulent conduct as more fully described in detail in this Complaint. (See also ¶43.)[2]

82.     Plaintiffs continue to uncover additional facts in their investigation and review of the many thousands of pages of transactions and emails. Since coming to Erie in 2015, Defendant Sumi has engaged in a carefully orchestrated pattern of fraudulent conduct designed to financially harm Plaintiff Mr. Black and his business owned entities in the following manner generally and as more specifically set forth in this Complaint:

      a.     Telling individuals and entities in the Erie community with whom Mr. Black had business and/or philanthropic ties to cease communications with him directly and to go only through her due to Mr. Black's alleged limited mental capacity and onset of "dementia", then using his name and money to further her status in the community.

      b.     Recruiting numerous family members, friends, and acquaintances (including her current husband) from Hawaii, California, and Florida to Erie (none of whom had any prior ties to Pennsylvania) to assist her in her efforts to defraud Mr. Black of millions of dollars, all to her benefit.

      c.     Coercing an acquaintance/friend she hired as vice president of human resources for Erie Management to develop a romantic relationship with Mr. Black shortly after the divorce from his wife in 2017.

      d.     Luring the above-mentioned individuals with large salaries, expensive gifts and promises of long-term success.

---

[2] Due to the complexity and scope of the fraud and breach of fiduciary duties at issue, Plaintiffs have taken the liberty of dividing the Complaint into "Chapters", each of which focuses on a particular aspect of the overall scheme, and each of which include several individual counts. It is hoped that this arrangement will serve to convey the allegations being asserted most clearly.

e.     Orchestrating and manipulating the above-mentioned individuals' terminations from employment if and when their usefulness to her scheme was finished.

# THE CHAPTERS

## CHAPTER 1

## 2021 NETWORKING TECHNOLOGIES, LLC TRANSACTION

*Mr. Black, Erie Management and BILP*
*v.*
*Sumi, Buzzard, Knox and SJB Investment*

83.     The foregoing averments of this Complaint are hereby incorporated by reference thereto and made a part hereof as though fully set forth herein.

84.     In January 2021, Plaintiff Erie Management began discussions with James Bahm and Defendant Reabah about creating a joint venture partnership between Erie Management and Reabah.

85.     As of that date, Reabah and Baum had been operating as a data communication, network infrastructure, IT (information technology) provider and consulting company, which did business under a fictitious name, "Networking Technologies."

86.     The joint venture partnership being discussed between Erie Management and Reabah involved Reabah forming a new subsidiary company to operate its data communications, network infrastructure and IT company, and having Erie Management purchase a 49% interest in this new subsidiary company.

87.     As noted in ¶ 3 of this Complaint, Mr. Black had been the CEO of Erie Management since its creation, and at all times relevant to the Erie Management-Reabah joint venture negotiations, Mr. Black remained the CEO of Erie Management.

88.     At all times relevant, Mr. Black was also the President and Chairman of Erie Management.

89.     As noted in ¶¶ 2 and 3 of this Complaint, at all times relevant to the Erie Management–Reabah joint venture negotiations, Mr. Black was at least 94.5% owner of BILP, which was the sole owner of Erie Management.

90.     At all times during the Erie Management-Reabah joint venture negotiations, Defendant Sumi was an employee and officer of Erie Management.  Specifically, she was the COO and Secretary of Erie Management, and, in 2019 was named the Interim CEO of Erie Management, the latter designation due to a leg injury to Mr. Black that had kept him out of the office for several months in 2019. Mr. Black, however, continued as Chairman and President of Erie Management and is currently CEO of Erie Management.

91.     At all times during the Erie Management-Reabah joint venture negotiations, Defendant Buzzard was an employee and officer of Erie Management. Specifically, she was the Vice President of Finance & Accounting and treasurer.

92.     On February 3, 2021, a Letter of Intent ("LOI") Objectives Sheet was created regarding the previously mentioned joint venture. Among other things, this document listed the immediate intended ownership split for the new subsidiary company as 51% Reabah / 49% Erie Management, with Erie Management to acquire 100% ownership within ten (10) years. (A copy of this LOI/Objectives Sheet is attached hereto as **Exhibit 13).**

93.     Negotiations between Erie Management and Bahm/Reabah continued, and a Term Sheet was created on March 18, 2021. Under the Term Sheet, Reabah would create a new subsidiary named NewCo, LLC, contribute all Reabah's business assets, employees, and contracts to NewCo, LLC, and transition its fictitious name (Networking Technologies) to NewCo, LLC. Erie Management would purchase an immediate 49% ownership interest in NewCo, LLC, with

Reabah retaining a 51% interest. Again, Erie Management would acquire 100% ownership within 10 years (A copy of said Term Sheet is attached hereto as **Exhibit 14**).

94.     Continuing negotiations resulted in an updated Term Sheet dated April 20, 2021, which confirmed the intended purchase by Erie Management of a 49% membership interest in NewCo, LLC for the price of $2.94 million dollars. The total value assigned to Networking Technologies was significantly *over-inflated at $6,000,000.00 as calculated by Defendant Buzzard*. Contributions from both Erie Management and Reabah were outlined, and Erie Management's intent to acquire 100% ownership within ten (10) years was again confirmed. (A copy of this Term Sheet is attached hereto as **Exhibit 15**).

95.     Discussions continued and a new Term Sheet was produced on May 1, 2021which again called for Erie Management to pay Reabah $2.94 million dollars cash at closing for a 49% ownership interest in the new subsidiary company (the "**Net Tech Transaction**"). Per this May 1, 2021, Term Sheet, the name of the new subsidiary company would be "Networking Technologies, LLC" (not NewCo, LLC as originally planned).  In addition, Erie Management would be required to acquire additional interests of Networking Technologies, LLC from Reabah in subsequent years so that Erie Management's ownership in Networking Technologies, LLC would increase as follows:

    a.     66% by December 31, 2025; and

    b.     83% by December 31, 2027; and

    c.     100% by December 31, 2029.

(A copy of the May 1, 2021, Term Sheet is attached hereto as **Exhibit 16**).

96.     Defendant Knox served as legal counsel for both Erie Management and for James Bahm and Reabah throughout these discussions and negotiations, Knox having obtained a signed

waiver of any conflicts of interest from these parties. Specifically, Attorney Jerome Wegley, who was one of the attorneys from Knox who had served as Mr. Black's personal and business attorney since Mr. Black hired Knox in 2017, was directly involved in all of the above matters.

97.    On the same day the May 1, 2021 Term Sheet was produced, Erie Management issued a press release announcing the joint venture partnership of Erie Management and Networking Technologies, LLC. (A copy of said press release is attached hereto as **Exhibit 17**.)

98.    Also, on the morning of May 1, 2021, emails regarding the transaction were exchanged between Defendant Sumi, Attorney Wegley and Attorney Neal Devlin ("Devlin"; Mr. Black's attorneys from the Knox firm), and Defendant Buzzard. All these emails continued to hold Erie Management out as the purchaser of the immediate 49% interest in the new subsidiary and the eventual 100% ownership as set forth in the above-referred Term Sheets.  (A copy of said emails are attached hereto as **Exhibit 18**).

99.    At 12:43 p.m. May 1, 2021, Defendant Sumi sent an email to Wegley, Devlin and Buzzard announcing that "this transaction is between SJB and JB. Not sure if we are using EMG's name in the contract? We decided to creative (sic) and keep this completely separated from BILP/EMG". "SJB" as used in this email is the Defendant SJB INVESTMENT ENTERPRISES, LLC ("**SJB Investment**"); "JB" as used in this email is James Bahm. (A copy of said email is attached hereto as part of **Exhibit 19**).

100.    Defendant Sumi was, and remains, the 100% owner and the sole member of SJB Investment. (See ¶ 23 of this Complaint.)

101.    Mr. Black was not copied on this May 1, 2021, 12:43 p.m. email.

102.    Prior to Defendant Sumi's May 1, 2021, 12:43 p.m. email, nobody had ever mentioned or discussed replacing Erie Management with SJB Investment as the purchaser of Networking Technologies, LLC and/or the joint venture partner with Bahm/Reabah.

103.    Throughout this period, neither Defendant Sumi nor anybody had ever informed Mr. Black that Defendant Sumi's SJB Investment would be replacing Erie Management as the purchaser of Networking Technologies, LLC and/or the joint venture partner with Bahm/Reabah.

104.    Neither Attorneys Wegley nor Devlin, nor any other attorney at Knox --- Mr. Black's attorneys --- ever notified or discussed with Mr. Black this sudden unannounced replacement of Erie Management with Defendant Sumi's SJB Investment as the purchaser of Networking Technologies, LLC and/or the joint venture/partnership with Bahm/Reabah, even after their receipt of the May 1, 2021 12:43 p.m. email from Defendant Sumi.

105.    On May 5, 2021, Defendant Buzzard, at the direction of Defendant Sumi, sent an email to Mr. Black's attorneys --- Wegley and Devlin --- stating that Defendant Sumi's SJB Investment, not Erie Management, would be the purchaser in the agreement involving Networking Technologies, LLC.

> "To circle back on this, I've updated what you put together with a couple of changes, mainly to the names of the parties entering into the agreement. When we, as a group, had talked last regarding what company/trust/person would be the best recommended owner it was decided that we would utilize a Sumi 100% owned LLC, outside of any trust.  In speaking with Sumi, we are going to go with SJB Investment Enterprises, LLC (already has an EIN and is a PA entity) that is 100% owned by Sumi…".

(A copy of said email is attached hereto as **Exhibit 20**).

106.    Mr. Black was not copied on this May 5, 2021, email, and nobody had ever discussed its contents with him.

107.    On May 5, 2021, Defendants Knox and/or Buzzard amended the May 1, 2021, Term Sheet by substituting SJB Investment for Erie Management, specifically stating that SJB Investment ("SJBIE" in the document) would pay to Reabah $2.94M cash at closing for 49% of Networking Technologies, LLC, and that SJB Investment would pay the additional, stepped payments for 100% ownership by December 31, 2029.  The only mention of Erie Management in this new Term Sheet was a requirement that Erie Management contract with Networking Technologies, LLC for IT/Network services, and that Networking Technologies, LLC contract with Erie Management for "back-office" services. (A copy of the May 5, 2021, Term Sheet is attached hereto as **Exhibit 21)**.

108.    Mr. Black was never provided with or notified of the May 5, 2021, Term Sheet.

109.    On May 11, 2021, Defendant Sumi, and Attorney Wegley --- Mr. Black's attorney --- exchanged emails in which Defendant Sumi declared that the initial $2.94M purchase price was going to be funded with a "loan directly from Mr. Black". (A copy of the May 11, 2021, emails are attached hereto as **Exhibit 22**).

110.    Mr. Black was not copied on the May 11, 2021, emails.

111.    Mr. Black was not copied or notified on any emails between May 11, 2021, and June 8, 2021, regarding this transaction.

112.    Neither Defendant Sumi, Attorney Wegley, Attorney Devlin, Defendant Knox, Defendant Buzzard nor anyone else had ever asked, discussed or otherwise mentioned to Mr. Black that he would be personally providing $2.94M to Defendant Sumi and/or Defendant SJB Investment --- either as a loan or in any other fashion --- to enable Defendant Sumi and SJB Investment --- not Erie Management --- to buy 49% of Networking Technologies, LLC.

113.    Between May 11, 2021, and June 8, 2021, there were numerous meetings and emails between Defendants Sumi, Buzzard, attorneys from Knox and others discussing this transaction involving Networking Technologies, LLC. All of this occurred without copying or notice to Mr. Black.

114.    On June 10, 2021, a final, revised Term Sheet, believed to be prepared by Defendant Knox ---Mr. Black's attorney--- was signed by James J. Bahm, "President of Reabah" and Defendant Sumi, "President of SJB Investment". Identical to the May 5, 2021 Term Sheet, (a) SJB Investment ("SJBIE" in the document) was to pay Reabah $2.94M cash at closing for 49% of Networking Technologies, and SJB Investment would thereafter pay the additional payments for 100% ownership by December 31, 2029; and (b) the only mention of Erie Management was a requirement that Erie Management contract with Networking Technologies for IT/Network services, and Networking Technologies contract with Erie Management for "back-office" services. (A copy of the June 10, 2021, Term Sheet is attached hereto as **Exhibit 23)**.

115.    Mr. Black had again been kept in the dark and was unaware of the June 10, 2021, signed Term Sheet.

116.    Between June 10, 2021, and October 1, 2021, there were numerous meetings and communications between Defendant Sumi, Buzzard, attorneys from Knox, Baum and others discussing this joint venture/partnership. Again, this occurred without copying or noticing to Mr. Black.

117.    On July 15, 2021, Reabah established the entity **Networking Technologies, LLC ("NetTech" or "NT")**, through the filing of a Certificate of Organization filed by Attorney Mark Denlinger, an attorney in Defendant Knox's law firm --- Mr. Black's attorneys---.

118.    It is believed and therefore averred that on or about August 27, 2021, Defendant SJB Investment, through Defendant Sumi, and Defendant Reabah, through Mr. Baum, entered into an Agreement to form the joint venture described in the June 10, 2021, signed Term Sheet.

119.    Mr. Black was not copied on this August 27 Agreement, and neither Defendant Sumi, Attorney Wegley, Defendant Knox, Defendant Buzzard, Defendant Reabah, Mr. Baum nor anyone else ever made Mr. Black aware of said Agreement.

120.    On September 1, 2021, Mr. Bahm signed the Operating Agreement of NetTech in his capacities as President of Reabah and President/Chairman of NetTech.  Per said Operating Agreement, Reabah was identified as the sole initial Member of NetTech, and Reabah, as the Member, would have total authority and power to manage defendant NetTech and to conduct the business and affairs of NT.  The officers of NetTech were identified as follows:

-- Chairman:                 James Baum
-- CEO and President:        James Baum
-- Treasurer and Secretary:  James Baum
-- Asst. Secretary:          Wendy Baum (wife of James Baum).

121.    On September 3, 2021, Defendant SJB Investment, through Defendant Sumi, and Defendant Reabah through Mr. Baum, entered into an Amendment of the August 27, 2021, Agreement to Joint Venture, which now included the following terms:

a.    The Purchase Price of $2,940,000.00 would be paid by SJB Investment to Reabah at the Closing of this transaction.

b.    The Purchase Price would be paid by the delivery and execution of an unsecured demand promissory note in the principal amount ($2,940,000.00) and payable, at no interest in two installments:

1)    Note payment 1 – October 1, 2021    - $1,470,000.00
2)    Note payment 2 – December 1, 2021 - $1,470,000.00

c.    Closing would occur at offices of Knox on September 27, 2021.

122.    Mr. Black was kept in the dark about and was unaware of all the matters identified in the above ¶.

123.    The aforesaid Closing occurred at Defendant Knox's law office as scheduled on September 27, 2021, and on the same date, two (2) Erie Management employees and officers, Defendants Sumi and Buzzard, were made officers of Defendant NT.  Specifically, the following officers were appointed:

| | |
|---|---|
| -- Chair: | James Baum |
| **-- Vice Chair:** | **Sumi James-Black** |
| -- CEO and President: | James Baum |
| **-- Sr. Vice President:** | **Sumi James-Black** |
| **-- CFO and Treasurer:** | **Nicole Buzzard** |
| -- Secretary: | Wendy Baum |
| -- Vice President: | Wendy Baum |

124.    Mr. Black was kept in the dark about and was unaware of all the matters identified in the above paragraph.

125.    On October 1, 2021, SJB Investment made the first payment of $1,470,000.00 to Reabah, representing the first of the two (2) installments towards the purchase of the 49% interest in NT.

126.    The $1,470,000.00 paid to Reabah by SJB Investment for this initial payment came entirely from the sale of Mr. Black's personal funds, specifically from his Bitcoin investments, the proceeds of which Defendant Buzzard wire transferred directly to the SJB Investment bank account.

127.    Mr. Black believed that the $1,470,000.00 of his personal funds obtained from the sale of his Bitcoin investments would be transferred to Erie Management for Erie Management's purchase of a 49% interest in NT. Mr. Black still had no knowledge that SJB Investment, not Erie Management, was going to be the purchaser.

128.    Additionally, all Erie Management employees were also led to believe that Erie Management was the purchaser of the 49% interest in NT, as an October 1, 2021, email sent to All Erie Management Staff and All Calypso[3] Management, with the Subject Line, "**Congratulations! Networking Technologies & EMG Announce Strategic Joint Venture**," stated, in part:

> It is with great excitement that we *finally* get to share the news with all of you *that Networking Technologies & Erie Management Group (EMG) have formally partnered!* *** Combining the Networking Technologies leading expertise in IT infrastructure, secure managed services, professional IT services and Cloud & software solutions with the proven high-performance work teams of EMG is a recipe for continued and additional successes.

(bold type emphasis added) (A copy of said October 1, 2021, email is attached hereto as **Exhibit 24**).

129.    This October 1, 2021, email announcement, in addition to Jim Bahm, was signed by "Sumi James-Black, Interim President & CEO, COO, Erie Management Group". The body of the email and Defendant Sumi's signature never mentioned the words "SJB Investment," and never disclosed that it was Defendant Sumi and SJB Investment --- not Erie Management --- who were the parties that had actually purchased a "formal" partnership with NT.

130.    Additionally, at about the same time, Bahm and Defendant Sumi issued a press release announcing that Erie Management was "investing in a joint venture" partnership with NT. This press release resulted in an article published in the <u>Erie Times News</u> Sunday, October 3, 2021, print newspaper and its <u>GoErie.com</u> on-line, electronic publication.  Neither this press release nor the print or on-line news publications mentioned SJB Investment or its role as the actual, purchasing, joint venture partner with NT. (Copies of said press release and the <u>Erie Times</u> news publication are attached hereto as **Exhibit 25**).

---

[3] Calypso is a subsidiary of HDAI, an entity owned by Mr. Black and Defendant, James-Black.

131.   On or about December 20, 2021, SJB Investment made the second purchase price installment payment of $1,470,000.00 to Reabah.

132.   The $1,470,000.00 SJB Investment used to make this second payment also came from Mr. Black's personal funds and assets, specifically the aforesaid sale of his Bitcoin investments plus $1,000,000.00 from a refinancing/line of credit note Mr. Black took against Calypso/HDAI property.   These combined sums were first deposited into the Erie Management bank account, but then at Buzzard's suggestion and with Defendant Sumi's approval, were **wired** to SJB Investment's bank account, which then **wired** the same sum to Reabah for SJB Investment's purchase. The deposit of Mr. Black's personal funds directly into the Erie Management bank account was done intentionally and only to create a false appearance that Erie Management was the party that was making the 49% purchase of NT.

133.   Mr. Black still had no notice or knowledge that SJB Investment, not Erie Management, was the actual purchaser of the 49% interest in NT.

134.   Throughout this period, Defendants Sumi, Buzzard and Knox were the only persons associated/employed by Erie Management and/or Mr. Black who knew that Erie Management and/or Mr. Black had no ownership interest in NT despite the fact the Erie Management and/or Mr. Black had provided all the funds used to purchase the 49% share of NT.

135.   Defendants Sumi and Knox never produced or provided a promissory note or written loan document from Defendant Sumi and/or SJB Investment to Mr. Black and/or Erie Management regarding the $2.94M of Mr. Black's funds Defendant Sumi obtained, purportedly as a "loan" (see ¶ 109 of this Complaint) and used to buy her 49% interest in NT.  (See ¶ 99 of this Complaint.)

136.    Defendant Sumi currently remains the 100% owner of the 49% ownership interest in NT, which was paid for, unwittingly and entirely, by Mr. Black.

137.    On September 12, 2022, approximately two (2) weeks after Erie Management terminated Defendant Sumi's employment there (see ¶ 76 of this Complaint), Defendant Sumi was hired by Mr. Baum and/or Defendant Reabah and/or Defendant NT to work for NT at an annual salary of approximately $140,000.00.

138.    Defendants Sumi and Buzzard continue to serve as officers of Defendant NT.

139.    As a result of the conduct of Defendants Sumi, Buzzard, and Knox as more fully described herein all of which was willful, wanton, malicious and oppressive, Mr. Black has sustained financial loss of $2.94 million as well as lost interest and investment opportunities.

## COUNT I
## BREACH OF FIDUCIARY DUTY

### *Erie Management and Mr. Black*
### *v.*
### *Sumi, Buzzard, and Knox*

140.    Plaintiffs incorporate the allegations of ¶s 1-139 above in this Count I of Chapter 1 as if fully stated herein.

141.    When a principal-agent relationship is present, a fiduciary relationship arises as a matter of law.

142.    A claim for breach of fiduciary duty must allege two elements: (1) a fiduciary relationship, and (2) a breach of the duties imposed as a matter of law as a result of that relationship.

143.    The agencies of Defendants' Sumi and Buzzard arose by virtue of their positions respectively as COO and VP of Finance for Erie Management.

144. The agency of Defendants' Sumi and Buzzard arose by virtue of their positions respectively as Secretary and Treasurer of Erie Management Group.

145. The agency of Knox arose by virtue of its contractual and ethical position as **personal attorney** for Mr. Black, Erie Management and BILP.

146. At all times relevant, Defendant Buzzard served as VP of Finance for Erie Management and, as such, had a legal and fiduciary duty to maintain the accounts of Erie Management.

147. At all times relevant, Defendant Sumi served as an Officer of Erie Management and also maintained a close, personal, and confidential relationship with Mr. Black and as such had a legal and fiduciary duty to Erie Management and Mr. Black.

148. Defendant Knox served as personal attorney for Mr. Black and his entities, including Erie Management, from August 2017 through August 2022.

149. Both Defendants Sumi and Buzzard owed fiduciary duties to Erie Management as officers and employees thereof including a duty of loyalty and a duty to exercise reasonable care in the performance of their responsibilities.

150. Defendant Knox owed fiduciary duties to Mr. Black, Erie Management and BILP as attorney thereof including duties of care, loyalty, good faith, confidentiality, prudence, and disclosure.

151. Despite their fiduciary duties to and confidential relationship with Erie Management, Defendants Sumi and Buzzard engaged in a pattern of self-dealing conduct intended to enrich themselves both individually and through their status as officers/employees of Erie Management including the following:

    a.    Manipulating, influencing, and otherwise directing the change of the purchasing entity in such a manner as to cause financial loss to Erie

33

Management and cause financial benefits to Defendants Sumi individually, Buzzard and Defendant Sumi as sole member of SJB Investment.

b.   Using the cash of Plaintiffs, Mr. Black, and Erie Management to purchase a 49% ownership interest in NetTech for a Defendant Sumi owned entity, SJB Investment.

c.   Manipulating the accounting system of Erie Management so that Erie Management funds were used to purchase a 49% interest in NetTech for a Defendant Sumi owned entity, SJB Investment.

d.   Diverting funds from Plaintiffs, Mr. Black, *and* Erie Management to purchase a forty-nine percent (49%) ownership to benefit Defendants Sumi, Buzzard, and Defendant Sumi as sole member of SJB Investment.

e.   Intentionally, recklessly and/or negligently failing to disclose to Mr. Black and Erie Management that Mr. Black's personal funds and Erie Management funds were being used for SJB Investment's purchase of a 49% ownership in NetTech.

f.   Intentionally, recklessly and/or negligently failing to disclose to Mr. Black and Erie Management the change of a material term of the NetTech transaction, namely substituting the purchasing entity as SJB Investment for Erie Management.

g.   Intentionally misrepresenting to Mr. Black and Erie Management that their funds were being used for Erie Management's purchase of a 49% ownership interest in NetTech.

152.   Despite its fiduciary duties to its client, Mr. Black and Erie Management, Defendant Knox breached those duties as follows:

a.   By intentionally, recklessly and/or negligently failing to protect the financial interests of its clients, Mr. Black and Erie Management, allowing the diversion of Mr. Black and Erie Management funds which were intended to purchase a 49% interest in NetTech for Erie Management.

b.   By intentionally, recklessly and/or negligently failing to disclose to and advise its clients, Mr. Black and Erie Management of the diversion of their funds which were intended to purchase a 49% interest in NetTech for Erie Management.

34

c. By intentionally misrepresenting to Mr. Black and Erie Management that Plaintiffs' funds were being used for Erie Management's purchase of a 49% ownership interest in NetTech.

d. By causing and/or allowing the diversion of Mr. Black and Erie Management funds intended to purchase a 49% interest in NetTech for Erie Management to a Sumi-owned LLC to allow it to purchase the NetTech interest.

e. By representing Defendant Sumi and SJB Investment in a transaction having an obvious conflict of interest with those of its clients, Mr. Black and Erie Management.

f. By preparing the documents for Defendants Sumi and SJB Investment that were necessary to carry out the NetTech transactions previously described.

g. By drafting legal documents for the formation of a new entity owned solely by Defendant Sumi, SJB Investment.

h. By drafting changes to legal documents at Defendants Sumi and Buzzard's request to reflect SJB Investment as the purchaser of the 49% ownership interest in NetTech, not Erie Management.

i. By providing Defendants Sumi and Buzzard legal advice.

j. By representing Defendant Sumi and her LLC, SJB Investment at the closing of the purchase of NetTech.

k. By failing to draft any note or other legal documents to reflect a repayment obligation from SJB Investment to Mr. Black and Erie Management for use of Plaintiffs funds in the purchase of 49% interest in NetTech.

l. By failing to draft any Resolution reflecting Erie Management's approval of the material change in the transaction.

m. By failing to inform its clients Mr. Black and Erie Management of the material change in the NetTech transaction.

153. As a direct and proximate cause of the breach of fiduciary duties detailed above,

Mr. Black and Erie Management suffered damages in the amount of $2,940,000.00.

WHEREFORE, Plaintiffs Mr. Black and Erie Management demand judgment in their favor and against the Defendants Sumi, Buzzard, and Knox in the amount of $2,940,000 plus interest, costs, and other relief the Court deems appropriate.

**COUNT II**
**FRAUD (CONSTRUCTIVE FRAUD)**

***Erie Management and Mr. Black***
***v.***
***Sumi, Buzzard and Knox***

154.    Plaintiffs incorporate the allegations of ¶s 1- 153 above in this Count II of Chapter 1 as if more fully set forth herein.

155.    Where there is a breach of a legal or equitable duty arising out of a fiduciary relationship, a presumption of constructive fraud arises.

156.    Under Pennsylvania Law, transactions between persons occupying a confidential relation are *prima facie* voidable, and the party seeking to benefit from such a transaction has the burden of proving that the transfer was indeed fair, conscientious and beyond the reach of suspicion.

157.    Under Pennsylvania Law, constructive fraud often exists where two (2) parties have a special, confidential, or fiduciary relation which affords the power and means to one party to take advantage of or exercise undue influence over the other. Whenever from such relation considerable authority or influence necessarily exists on one side, and a corresponding reliance and confidence is placed on the other, a party will not be suffered to abuse this authority or influence by extracting any advantage to himself. A transaction between persons so situated is

36

watched with extreme jealousy and solicitude, and if there be found the slightest trace of undue influence or unfair advantage, redress will be given to the injured party.

158.    Under Pennsylvania Law, in cases where a relationship of trust and confidence exists between two (2) persons, the party in whom the trust and confidence are reposed must act with scrupulous fairness and good faith in his dealings with the other and refrain from using his position to the other's detriment and his own advantage. This well settled doctrine, founded on strong considerations of public policy, renders inapplicable the general rule requiring an affirmative showing of fraud; therefore, once a fiduciary or confidential relationship is shown to exist, the burden is shifted to the person who is in such relationship to prove absence of fraud and that the transaction was fair and equitable.

159.    As more fully detailed above and at all times relevant, Defendants Sumi, Buzzard and Knox had a fiduciary duty to Plaintiffs Erie Management, Mr. Black and/or BILP.

160.    As more fully detailed above in Count I of Chapter 1, the Defendants Sumi, Buzzard, and Knox breached their respective fiduciary duties owed to Mr. Black and Erie Management.

161.    Plaintiffs justifiably relied upon the Defendants Sumi, Buzzard and Knox in this transaction to their determent.

162.    As a result of Defendants Sumi, Buzzard and Knox's breaches of their respective fiduciary duties, Plaintiffs Mr. Black and Erie Management have suffered damages in the amount of $2,940,000.00.

WHEREFORE, Plaintiffs Mr. Black and Erie Management demand judgment in their favor and against the Defendants Sumi, Buzzard, and Knox in the amount of $2,940,000.00 plus interest, costs, and other relief the Court deems appropriate.

## COUNT III
## FRAUD (INTENTIONAL MISREPRESENTATION)

### *Erie Management and Mr. Black*
### *v.*
### *Sumi, Buzzard and Knox*

163.    Plaintiffs incorporate the allegations of ¶¶ 1- 162 above in this Count III of Chapter 1 as if more fully set forth herein.

164.    As more fully detailed above and at all times relevant, Defendants Sumi, Buzzard, and Knox each had fiduciary duties to Plaintiffs Erie Management and/or Mr. Black.

165.    As more fully detailed above and at all times relevant, Defendants Sumi, Buzzard and Knox had a fiduciary duty to Plaintiffs Erie Management and/or Mr. Black.

166.    Defendants Sumi, Buzzard and/or Knox intentionally misrepresented to Plaintiffs Erie Management and/or Mr. Black that their funds were being used for Erie Management's purchase of a 49% interest in NetTech.

167.    Defendants' misrepresentations were made to induce Erie Management and/or Mr. Black to provide funding for the Erie Management purchase of 49% of NetTech's ownership interest.

168.    As more fully detailed above, Defendants Sumi, Buzzard, and Knox, with actual or constructive knowledge and acquiescence of each other, misled Erie Management and/or Mr. Black into believing that Erie Management would own a 49% share of NetTech as part of the NetTech Transaction.

169.    As more fully detailed above, Defendants Sumi, Buzzard, and Knox, with actual or constructive knowledge and acquiescence of each other, misled Erie Management and/or Mr.

Black into believing that his personal funds were being loaned to Erie Management so that Erie Management would purchase 49% share of NetTech as part of NetTech Transaction.

170.    As more fully detailed above, Defendants Sumi, Buzzard and Knox, with actual or constructive knowledge and acquiescence of each other, diverted money from Erie Management which was intended for the purchase of 49% share of NetTech to the account of an unrelated entity owned entirely by Defendant Sumi, SJB Investment, which then used those funds to purchase a 49% interest in NetTech entirely for the benefit of Defendant Sumi and SJB Investment.

171.    As more fully detailed above, Defendants Sumi, Buzzard, and Knox, with actual or constructive knowledge and acquiescence of each other, and without the authority of Mr. Black, diverted the Erie Management monies referenced above by two (2) **wire transfers**; a **wire transfer** from the Erie Management bank account to the account of SJB Investment followed by a **wire transfer** from the SJB Investment bank account to the Reabah bank account.

172.    As more fully detailed above, Defendants Sumi, Buzzard, and Knox, with actual or constructive knowledge and acquiescence of each other, directed and/or prepared the change of the initial agreement removing Erie Management as the purchaser and replacing Erie Management with SJB Investment as the purchaser.

173.    As more fully detailed above, Defendants Sumi, Buzzard and Knox intentionally kept information regarding the changes in the NetTech transaction from Mr. Black with actual or constructive knowledge and acquiescence of each other.

174.    As more fully detailed above, Defendants Sumi, Buzzard, and Knox, failed to protect the interests of Erie Management and Mr. Black by diverting Mr. Black's and Erie Management's funds through a series of **wire transfers** to an unrelated entity owned entirely by the Defendant Sumi.

39

175.    Defendants Sumi, Buzzard, and Knox's' failure to disclose the diversion of funds was material because Plaintiff Mr. Black and Erie Management relied upon the honest services of Sumi, and Buzzard as Erie Management officers and Knox as the retained personal attorney for Mr. Black and Erie Management.

176.    Plaintiffs justifiably relied upon the misrepresentations and concealments made by Defendants Sumi, Buzzard and Knox in that Plaintiffs Mr. Black and Erie Management continued to use the services of Erie Management's officers (Defendants Sumi and Buzzard) and Mr. Black's and Erie Management's personal attorney (Defendant Knox) with the justifiable belief that they were receiving honest services while protecting Mr. Black's and Erie Management's best interests.

177.    Defendants Sumi, Buzzard, and Knox's conduct, as more fully described above, was willful, wanton, malicious and oppressive.

178.    Defendants' misrepresentations were made to induce Erie Management and Mr. Black to provide funding for the Erie Management purchase of 49% ownership interest in NetTech.

179.    Defendant Sumi, Buzzard and Knox's unlawful conduct has directly, legally, and proximately caused and continues to cause injuries to Plaintiffs Mr. Black and Erie Management.

180.    As a result of the intentional misrepresentations of the Defendants Sumi, Buzzard and/or Knox, Plaintiffs Erie Management and Mr. Black have suffered damages in an amount in excess of $2,940,000.00.

181.    Defendants Sumi, Buzzard and Knox engaged in conduct to benefit themselves at the expense of Erie Management during a time when they owed fiduciary duties to and stood in a confidential relationship to Erie Management and Mr. Black.

182.    These transactions were fraudulent and neither fair nor equitable; therefore, these transactions constitute constructive and actual fraud committed on Erie Management and Mr. Black.

183.    Defendants Sumi, Buzzard and Knox intentionally misrepresented to Plaintiffs Erie Management and Mr. Black that their funds were being used for Erie Management's purchase of a 49% interest in NetTech.

184.    Defendants Sumi, Buzzard and Knox's misrepresentations were material to the NetTech purchase.

WHEREFORE, Plaintiffs Erie Management and Mr. Black demand judgment in their favor and against the Defendants Sumi, Buzzard, and Knox in the amount of $2,940,000.00 plus punitive damages, interest, costs, and other relief the Court deems appropriate.

## COUNT IV
## CONVERSION

### Mr. Black and Erie Management
### v.
### Sumi, Buzzard and SJB Investments

185.    Plaintiffs incorporate the allegations of ¶¶ 1 – 184 above in this Count IV of Chapter 1 as if fully stated herein.

186.    Under Pennsylvania Law, a cause of action for conversion is recognized where a defendant deprives another of their right of property or other interference therewith without the owner's consent and without legal justification.

187.    Defendants Sumi, Buzzard, SJB Investment and Knox have engaged in purposeful conduct intended to deplete, deprive, and convert the assets of Mr. Black and Erie Management in the manners previously set forth in this Chapter 1.

188.    As part of this purposeful course of action intended to deplete, deprive, and convert the private assets of Mr. Black and Erie Management, Defendants Sumi, Buzzard and SJB Investment and Knox have:

      a.    Deprived Erie Management of its right to the 49% ownership of NetTech that Defendants Sumi and SJB Investment are not entitled to retain since the assets of Mr. Black and Erie Management were used as consideration for the purchase of the 49% interest.

      b.    Deprived Mr. Black, BILP and Erie Management of its right to the $2,940,000.00 used to pay for a 49% ownership interest in NetTech which Defendants are not entitled to retain because Mr. Black and Erie Management were never provided ownership of the 49% interest.

189.    Defendant Sumi has interfered with Mr. Black's and Erie Management's use and possession of a 49% interest in NetTech by refusing to return ownership thereto to Erie Management and making her own use of it through her entity, SJB Investment.

190.    Erie Management has not consented to Defendants' retention of the 49% interest in NetTech or the $2,940,000.00 paid for it.

191.    Defendants have no legal justification for retaining the 49% interest in NetTech and the $2,940,000.00 paid for it.

192.    Defendants have converted the 49% interest in NetTech and the $2,940,000.00 paid for it.

193.    As a result of the conduct of Defendants Sumi, Buzzard and SJB Investment as described above, the Defendants Sumi, Buzzard and SJB Investment have depleted, deprived, and converted the assets of Mr. Black and Erie Management which was intended for Erie Management's benefits.

WHEREFORE, Plaintiffs Erie Management and Mr. Black demand judgment in their favor and against the Defendants Sumi, Buzzard, and Knox in an amount in excess of $2,940,000.00 plus punitive damages, interest, costs, and other relief the Court deems appropriate.

## COUNT V
## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

*Erie Management and Mr. Black*
*v.*
*Sumi, Buzzard, Knox and SJB Investment, LLC*

194.    Plaintiffs incorporate the allegations of ¶¶ 1- 193 above in this Count V of Chapter 1 as if more fully set forth herein.

195.    Under Pennsylvania Law, aiding and abetting a breach of fiduciary duty occurs when the aiding and abetting party has both knowledge of the breach of fiduciary duty and provides substantial assistance or encouragement to the breaching party. A person who knowingly assists a fiduciary in committing a breach of trust is himself guilty of tortious conduct and is subject to liability for the harm thereby caused.

196.    As described in the foregoing averments of this Complaint, Defendants Sumi, Buzzard, and Knox breached fiduciary duties owed by them to Erie Management and Mr. Black.

197.    As described above and upon information and belief, Defendants Sumi, Buzzard, and Knox had knowledge of each other's breach of their respective fiduciary duties to Erie Management and Mr. Black.

198.    At all times relevant, Defendant SJB Investment by and through its 100% owner and sole member, Defendant Sumi, had full knowledge of the breaches of fiduciary duties owed by Defendants Sumi, Buzzard and Knox to Erie Management and Mr. Black.

43

199.     As part of Defendant Sumi's scheme to acquire the 49% interest in NetTech through her LLC, she held herself out to have the full authority to act on behalf of Erie Management and Mr. Black.

200.     As a result of the Defendants Sumi, Buzzard, and Knox's breach of their respective fiduciary duties, as more fully set forth in Count I herein, plaintiffs Erie Management and Mr. Black have suffered damages including loss of cash, lost income, lost interest and investment opportunities, diminished value of Erie Management as well as substantial accounting and legal expenses.

201.     As a result of the active assistance of each of the named Defendants in the breaches of the others' respective fiduciary duties, Erie Management and Mr. Black have suffered damages in the amount of $2,940,000.00.

WHEREFORE, Plaintiffs Erie Management and Mr. Black demand judgment in their favor and against the Defendants Sumi, Buzzard and SJB Investment in the amount of $2,940,000.00 plus punitive damages, interest, costs, and other relief the Court deems appropriate.

## COUNT VI
## AIDING AND ABETTING FRAUD

### *Erie Management and Mr. Black*
### *v.*
### *Knox*

202.     Plaintiffs incorporate the allegations of ¶¶ 1 – 201 above in this Count VI of Chapter 1 as if more fully set forth herein.

203.     Under Pennsylvania law, aiding and abetting fraud occurs when the aiding and abetting party has knowledge that another's conduct constitutes a breach of duty and gives substantial assistance or encouragement to another to commit the fraud. Here, knowledge of the

44

fraud can be proven by *circumstantial evidence including evidence of willful blindness and intentional ignorance*. Aiding and abetting fraud expands the potential liability of secondary actors who provide substantial assistance or encouragement to fraudulent activities such as bankers, *attorneys,* and accountants.

204. As described in the foregoing averments of this Complaint, Defendants Sumi, Buzzard, SJB Investment and Knox individually and/or collectively committed acts of fraud upon Erie Management and Mr. Black.

205. As described above and upon information and belief, Defendant Knox had knowledge of each Defendants' individual and/or collective commission of fraud upon Erie Management and Mr. Black.

206. Defendant Knox actively and/or blindly assisted in the commission of the fraud perpetrated by Defendants Sumi, Buzzard, and SJB Investment in the following respects:

a. By failing to protect the financial interests of its clients Mr. Black and Erie Management, by allowing the diversion of Mr. Black and Erie Management funds which were intended to purchase a 49% interest in NetTech for Erie Management.

b. By failing to disclose to and advise its clients, Mr. Black and Erie Management, of the diversion of their funds which were intended to purchase a 49% interest in NetTech for Erie Management.

c. By misrepresenting Mr. Black and Erie Management that Plaintiffs' funds were being used for Erie Management's purchase of a 49% ownership interest in NetTech.

d. By allowing the diversion of Mr. Black and Erie Management funds intended to purchase a 49% interest in NetTech for Erie Management to a Defendant Sumi owned LLC to allow it to purchase the NetTech interest.

e. By representing Defendant Sumi and SJB Investment in a transaction having an obvious conflict of interest with those of its clients, Mr. Black and Erie Management.

f.     By preparing the documents for Defendants Sumi and SJB Investment that were necessary to carry out the NetTech transactions previously described.

g.     By drafting legal documents for the formation of a new entity owned solely by Defendant Sumi, SJB Investment.

h.     By drafting changes to legal documents at Defendant Sumi and Buzzard's request to reflect SJB Investment as the purchaser of the 49% ownership interest in NetTech.

i.     By providing Defendants Sumi and Buzzard with legal advice that was contrary to the best interests of its clients, Mr. Black, and Erie Management.

j.     By representing Defendant Sumi and her LLC, SBJ Investment at the closing on the purchase of NetTech

k.     By failing to draft any note or other legal documents to reflect a repayment obligation from SJB Investment to Erie Management and Mr. Black for use of Plaintiffs funds in the purchase of 49% interest in NetTech

l.     By failing to draft any Resolution reflecting Erie Management's approval of the material change in the transaction

m.     By failing to inform its clients Mr. Black and Erie Management of the material change in the NetTech transaction.

207.    As a result of Defendant Knox's active and/or blind assistance in the commission of the fraud perpetrated by Defendants Sumi, Buzzard and SJB Investment, Plaintiffs Mr. Black and Erie Management have suffered damages in the amount of $2,940,000.00.

WHEREFORE, Plaintiffs Mr. Black and Erie Management demand judgment in their favor and against the Defendants Sumi, Buzzard, SJB Investment and Knox in the amount of $2,940,000.00 plus punitive damages, interest, costs, and other relief the Court deems appropriate.

## COUNT VII
## CIVIL CONSPIRACY

### *Erie Management and Mr. Black*
### *v.*
### *Sumi, Buzzard and Knox*

208.    Plaintiffs incorporate the allegations of ¶¶ 1- 207 above in this Count VII of Chapter

1 as if more fully set forth herein.

209.    As more fully detailed previously, Defendants Sumi, Buzzard and Knox agreed to

perform some or all of the following illegal acts or legal acts by illegal means:

a.    Manipulating, influencing, and otherwise directing the change of the purchasing entity in such a manner as to cause financial loss to Erie Management and cause financial benefits to Defendants Sumi, Buzzard and SJB Investment.

b.    Using the cash of Plaintiffs, Black and Erie Management to purchase a 49% ownership interest in NetTech for a Defendant Sumi owned entity, SJB Investment.

c.    Manipulating the accounting system of Erie Management so that Erie Management funds were used to purchase a 49% interest in NetTech for a Defendant Sumi owned entity, SJB Investment.

d.    Diverting funds from Plaintiffs, Mr. Black and Erie Management to purchase a 49% ownership to benefit Defendants Sumi, Buzzard and SJB Investment.

e.    Failing to tell Mr. Black and Erie Management that Mr. Black's personal funds and Erie Management funds were being used for SJB Investment's purchase of a 49% ownership in NetTech.

f.    Failing to disclose to Mr. Black and Erie Management the change of the material term of the NetTech transaction, namely substituting SJB Investment for Erie Management.

g.    Misrepresenting to Mr. Black and Erie Management that their funds were being used for Erie Management's purchase of a 49% ownership interest in NetTech.

47

h.  Allowing Knox to represent Defendant Sumi and SJB Investment in a transaction having an obvious conflict of interest with those of its clients, Mr. Black, and Erie Management.

i.  Allowing Knox to prepare the documents for Defendants Sumi and SJB Investment that were necessary to carry out the NetTech transactions previously described.

j.  Allowing Knox to draft legal documents for the formation of a new entity owned solely by Defendant Sumi, SJB Investment.

k.  Allowing Knox to draft changes to legal documents at Defendants Sumi and Buzzard's request to reflect SJB Enterprises as the purchaser of the 49% ownership interest in NetTech.

l.  Allowing Knox to provide Defendants Sumi and Buzzard with legal advice that was contrary to the best interests of its clients, Mr. Black, and Erie Management.

m.  Allowing Knox to represent Defendant Sumi and her LLC, SBJ Investment at the closing of the purchase of NetTech.

n.  Failing to draft any Note or other legal documents to reflect a repayment obligation from SJB Investment to Mr. Black and Erie Management for use of Plaintiffs' funds in the purchase of 49% interest in NetTech.

o.  Failing to draft any Resolution reflecting Erie Management's approval of the material change in the transaction.

p.  Failing to inform its clients Mr. Black and Erie Management, of the material change in the NetTech transaction.

210.  Defendants Sumi, Buzzard and Knox have performed multiple overt acts in furtherance of this conspiracy including acts previously enumerated herein.

211.  As a result of the conspiracy between Defendants Sumi, Buzzard and Knox, Plaintiffs Mr. Black and Erie Management have suffered damages including lost interest and investment opportunities, diminished value of Erie Management as well as substantial accounting and legal expenses.

212.  Defendants Sumi, Buzzard, and Knox have acted in concert in pursuing a common purpose to perform the aforementioned unlawful acts and/or lawful acts by unlawful means for an

unlawful purpose making the Defendants liable and responsible for their own wrongful acts against Plaintiffs as well as for the wrongful conduct of any others acting in concert and conspiracy with them.

213.     Defendants Sumi, Buzzard, Knox and SJB Investment have acted with malice or intent to injure Plaintiffs and such actions were without legal cause or justification.

WHEREFORE, Plaintiffs Mr. Black and Erie Management demand judgment in their favor and against the Defendants Sumi, Buzzard, Knox and SJB Investment in the amount of $2,940,000.00 plus punitive damages, interest, costs of suit and such further relief as this Court deems just and proper.

## COUNT VIII
## UNJUST ENRICHMENT

### Erie Management and Mr. Black
### v.
### Sumi and SJB Investment

214.     Plaintiffs incorporate the allegations of ¶¶ 1- 213 above in this Count VII of Chapter 1 as if more fully set forth herein.

215.     Under Pennsylvania Law, Unjust Enrichment is recognized where (1) benefits are conferred on a defendant by plaintiff, (2) with an appreciation of such benefits by defendant, and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for the defendant to retain the benefit without payments of value. (See *Wiernik v. PHH U.S. Mortgage Corp.,* 736 A.2d 616 (Pa. Super. Ct. 1999)).

216.     Mr. Black and Erie Management have conferred a benefit on Defendant Sumi and SJB Investment by the payment of $2,940,000.00 for the purchase of a 49% interest in NetTech

which Defendants have converted for their own use, but which was intended to be for Erie Management's purchase of a 49% interest in NetTech.

217.    Defendants Sumi and SJB Investment have appreciated the benefits of the $2,940,000.00 they stole and the 49% ownership in NetTech which it was used to purchase.

218.    It would be inequitable for Defendant Sumi and SJB Investment to retain the 49% interest in NetTech without compensating Erie Management for the $2,940,000.00 they stole from Erie Management for the purchase of that 49% interest.

WHEREFORE, Plaintiffs Mr. Black and Erie Management demand judgment in their favor and against the Defendants Sumi, Buzzard, Knox and SJB Investment in the amount of $2,940,000.00 plus interest, costs of suit and such further relief as this Court deems just and proper.

## CHAPTER 2

## LOT 298, LLC

### *Mr. Black and BILP*

*v.*

### *Sumi, Buzzard, Lot 298 LLC, JB 2020 Trust and Knox*

219.    The foregoing averments of this Complaint are hereby incorporated by reference thereto and made a part hereof as though fully set forth herein.

220.    During 2016, Mr. Black invested $850,000.00 in an Erie, Pennsylvania business wholly owned by Thomas M. Kennedy and known as Select Real Estate Opportunities ("SREO"). This was done as follows:

|     |         |                                                  |
|-----|---------|--------------------------------------------------|
| a.  | 4/07/16 | $150,000.00 paid directly from BILP              |
| b.  | 6/03/16 | $500,000.00 paid directly from BILP              |
| c.  | 12/6/16 | $200,000.00 paid personally by Mr. Black, on behalf of BILP. |

221.    As consideration for this investment, SREO provided ownership shares in SREO to BILP.

222.    As a reminder, BILP (Black Interests Limited Partnership) is the parent entity that provides the funding for Mr. Black and for Mr. Black's other companies and investments. At all times material hereto, Mr. Black held an approximate 94.5% partnership interest in BILP and was also BILP's Managing Partner.

223.    In the latter part of 2020, Mr. Kennedy desired to buy back BILP's ownership interest in SREO.

224.    As consideration for buying back said ownership interest in SREO, Mr. Kennedy offered a transfer to Mr. Black/BILP of his (Mr. Kennedy's) ownership in three (3) real estate parcels located in Erie, Pennsylvania, specifically 298 Niagara Pointe Dr. and two (2) Top Road

properties, 301 and 305 Top Road. Each of these three (3) properties were at that time owned by Professional Development Associates, Inc. ("PDA"), a Pennsylvania corporation wholly owned by Mr. Kennedy.

225.    Mr. Black accepted this offer, and accordingly, on November 24, 2020, BILP, PDA, Mr. Kennedy (and his wife) and SREO entered into an **AGREEMENT TO TRANSFER**, which directed that complete ownership in the real estate located at 298 Niagara Pointe would be transferred to BILP in exchange for the transfer to Kennedy of BILP's ownership of twenty-three (23) partnership units in SREO. A copy of this Transfer Agreement is attached hereto as **Exhibit 26**.

226.    The value assigned to 298 Niagara Point for this transaction was $475,000.00.

227.    This Agreement to Transfer document was *prepared by Knox*, in its capacity as Mr. Black's and BILP's attorney.

228.    Subsequently, and as was customarily done with real estate owned by BILP, Mr. Black directed that the ownership of the real estate be transferred to a newly created BILP-owned limited liability company rather than directly to BILP. It was done in this transfer as well even though the sole reason for the transfer of the properties was for Mr. Kennedy to buy out *Mr. Black's/BILP's* ownership interest in SREO.

229.    Accordingly, on January 12, 2021, Knox --- Mr. Black's and BILP's attorney --- created **Lot 298, LLC**, ostensibly so that BILP-owned Lot 298, LLC could obtain ownership of the property at 298 Niagara Pointe, which Mr. Kennedy, PDA and SREO had agreed to transfer to BILP. Kenzie P. Ryback, an attorney employed by Knox, was listed as the Organizer of Lot 298, LLC, and its address was listed as Knox's address, 120 West 10th Street, Erie, PA. A copy of the 1/12/21 Filed Certificate of Organization for Lot 298, LLC is attached hereto as **Exhibit 27**.

230.    On January 12, 2021, BILP, LOT 298, LLC, PDA, SREO, Mr. Kennedy and his wife, Kimberly Kennedy, entered into a **NOVATION AGREEMENT**, a copy of which is attached hereto as **Exhibit 28** and sometimes hereafter referred to as the "Original Lot 298 Novation Agreement".

231.    Knox, Mr. Black's and BILP's attorney, prepared this Original Lot 298 Novation Agreement.

232.    Among other items, the Original Lot 298 Novation Agreement document shows:

    a.    That the day portion of the date --- "12th" --- was handwritten on the Agreement.

    b.    That there were **six (6)** "WHEREAS" ¶¶ in the Agreement.

    c.    That BILP, PDA, Kennedy and SREO entered into the Agreement to Transfer, under which 298 Niagara Pointe Dr., Erie, Pennsylvania ("the Property") would be transferred to BILP on 11/24/20.

    d.    That "***BILP has recently formed the Company, Lot 298, LLC, as a single-member, single purpose entity,*** to take title to the Property" (see the third "WHEREAS" paragraph of the Original Lot 298 Novation Agreement, **Exhibit 28**, emphasis added).

    e.    That BILP now desired to withdraw from the Agreement to Transfer and substitute Lot 298, LLC in its place to be the transferee of the Property.

    f.    That all the parties to the Original Lot 298 Novation Agreement agreed to the substitution of Lot 298, LLC in place of BILP as the transferee of the Property in the Agreement to Transfer.

    g.    That "*this Novation is for the sole and exclusive benefit of the parties hereto **and is not intended to, nor does it, confer any benefit upon any third party.***" (see ¶4 of the Original Lot 298 Novation Agreement, **Exhibit 28**, emphasis added).

233.    On January 12, 2021, Kimberly Kennedy, and Thomas Kennedy on behalf of PDA, SREO, and himself, both signed this Original Lot 298 Novation Agreement.

234.    On January 14, 2021, Attorney Ryback of Knox, prepared and signed a **LOT 298, LLC RESOLUTIONS ADOPTED BY THE ORGANIZER** (hereafter, "1/14/21 Lot 298 Resolutions"), which resolved that the 1/12/2021 Certificate of Organization was approved, resolved that Nicole Buzzard was "elected as the Manager of the Company (Lot 298, LLC) and:

> "RESOLVED that the ***JAMES-BLACK 2020 IRREVOCABLE TRUST*** *has contributed property to the Company and **is the initial and sole Member** of the* Company" (emphasis added).

235.    Buzzard also signed the 1/14/21 Lot 298 Resolutions document on the same date, indicating that the document had been filed with her, as Manager of Lot 298, LLC.  A copy of this "Resolutions" document is attached hereto as **Exhibit 29.**

236.    As previously pled herein, Buzzard was at all times material hereto an employee and officer of most of Mr. Black's companies, including BILP, when she was "elected" to serve as the operating Manager of Lot 298, LLC.

237.    As previously pled herein, the **James-Black 2020 Irrevocable Trust ("JB 2020 Trust")** was created on May 8, 2020, by Defendant Sumi for the primary purpose of acquiring, maintaining, and improving real property *for use of, benefit of and distribution to Sumi and her descendants*. (See **Exhibit 30.**)

238.    The Trust Agreement which created the JB 2020 Trust was drafted by Defendant Knox --- Mr. Black's and BILP's attorney --- and Attorney Neil R. Devlin, a shareholder of Defendant Knox, was appointed as Trustee for said Trust.

239.    All communications between Defendants Sumi and Knox regarding the creation of JB 2020 Trust were done without notice to, knowledge of or participation by Mr. Black.

54

240.    The JB 2020 Trust was not a party to the Transfer Agreement or the Novation Agreement and was never mentioned in either of those agreements since the Transfer Agreement and the Novation Agreement was *"not intended to, nor does it, confer any benefit upon* (the JB 2020 Trust) *any third party"*.

241.    The aforesaid 1/14/21 Lot 298 Resolution that "the JAMES-BLACK 2020 IRREVOCABLE TRUST *has contributed property to the Company and is the initial and sole Member*" of the Company was and remains false.  In truth, the JB 2020 Trust had contributed nothing to Lot 298 LLC.

242.    Defendant Knox knew this Resolution was false at the time it prepared and signed it.

243.    Defendant Buzzard knew this Resolution was false at the time she signed it.

244.    In truth, the sole contributor of property to Lot 298 LLC had been BILP, a fact known by both Knox and Buzzard.

245.    In truth, the **intended** "initial and sole Member" of Lot 298, LLC was BILP, which was expressly recognized and agreed to in the January 12, 2021, Novation Agreement (see the third "WHEREAS" paragraph of the Novation Agreement, **Exhibit 28**.)

246.    In truth, the 1/14/21 Resolution assertion that the JB 2020 Trust --- which had contributed nothing to Lot 298 LLC, and which was not a party to either the 11/24/20 Transfer Agreement or the 1/12/21 Novation Agreement --- was the sole Member of Lot 298, LLC was in direct violation of the Novation Agreement, which had been prepared by Knox and which stated:

> 4.    *This Novation is for the sole and exclusive benefit of the parties hereto and is not intended to, nor does it confer any benefit upon any third party.* (See **Exhibit 28**).

247.    Both Defendants Knox and Buzzard knew that the aforesaid Resolution declaring JB 2020 Trust as the sole Member of Lot 298, LLC was in direct violation of the Novation Agreement.

248.    Nobody informed Mr. Black and/or BILP of the knowingly false 1/14/21 Lot 298 Resolution which declared that the JB 2020 Trust was the sole Member of Lot 298, LLC.

249.    On January 14, 2021, Defendant Knox created and signed the OPERATING AGREEMENT OF LOT 298, LLC, ¶ 1.2 of which identified the JB 2020 Trust as the sole Member of Lot 298, LLC, thus further perpetrating the known falsehood described in ¶¶ 240-246, above.

250.    At all times material hereto, the Trustee of the JB 2020 Trust was Attorney Neal R. Devlin[4], the Knox attorney who drafted both the JB 2020 Trust Agreement and the Lot 298, LLC Operating Agreement all the while he and Knox were continuing to represent Mr. Black and BILP.

251.    Nobody informed Mr. Black of this Lot 298, LLC Operating Agreement and its declaration that the JB 2020 Trust was the sole Member of Lot 298, LLC.

252.    On January 15, 2021, in consideration for the Novation Agreement's substitution of Lot 298, LLC in place of BILP in the Agreement to Transfer, Lot 298, LLC signed an **INSTALLMENT JUDGEMENT NOTE ("Original 298 Note"),** prepared by Knox, under which it, as the Borrower, bound itself to pay BILP $475,000.00, as follows: **annual payments of principal and interest of $19,373.24 due each January 15th from 2022 through 2030, with a final balloon payment of $352,034.96 due on January 15, 2031.**  This Installment Judgment Note contained a Confession of Judgment clause, and was signed by Buzzard, as Manager of Lot 298, LLC, Attorney Jerome Wegley of the Knox firm, and by Mr. Black, as a Witness.  A copy of this NOTE is attached hereto as **Exhibit 31**.

---

[4] Despite the services of Knox (and Devlin) being terminated by Mr. Black on August 18, 2022, Devlin continues to serve as Trustee of the Sumi-owned JB 2020 Trust.

253.    This Installment Judgment Note never mentions the JB 2020 Trust, and still, nobody ever informed Mr. Black that the JB 2020 Trust had anything whatsoever to do with the newly created Lot 298 LLC.

254.    At all times material hereto, Mr. Black believed that BILP owned Lot 298, LLC.

255.    On the same date the Installment Judgment Note was signed, -- January 15, 2021 --- Mr. Black signed the Original Lot 298 Novation Agreement on behalf of BILP. This Novation Agreement **was identical** in all respects to the 1/12/21 Novation Agreement signed by Mr. Kennedy (see **Exhibit 28**) except the handwritten day in the date section was the "15th". (A copy of this 1/15/21 Original Lot 298 Novation Agreement is attached hereto as **Exhibit 32**).

256.    On the same date, one of Mr. Black's employees, Laura Guncheon, emailed the fully executed Original Lot 298 Novation Agreement to Janice Thompson, a real estate paralegal employed by Knox.

257.    On the same date, January 15, 2021, Lot 298, LLC, and PDA executed the Settlement Statement concluding the sale of 298 Niagara Pointe to Lot 298, LLC, for the contract sales price of $475,000.00.

258.    Additionally, Lot 298, LLC. was required to pay $13,478.02, representing closing costs. That money was provided through a wired money transfer made at Knox's direction from BILP to Knox on January 13, 2021. Mr. Black and BILP did so, based upon their duped belief that BILP was the owner of 298, LLC.

259.    On January 30, 2021, Knox, through its real estate paralegal Janice Thompson, emailed Laura Guncheon of Erie Management five (5) documents concerning the Lot 298, LLC purchase of 298 Niagara Pointe, including the "Novation Agreement (Original Lot 298 Novation Agreement) executed by all the parties". That Novation Agreement was identical to those copied

in **Exhibits 28 and 32**.  Ms. Thompson's email also states, "the originals of the above documents have been retained in our files".  A copy of the 1/30/2021 email and attached Novation Agreement are attached hereto as **Exhibit 33**.

260.    Ms. Thompson's email did not mention, and the documents she attached to her email did not include or make any mention of the Knox firm's designation (see the aforesaid false Resolution and Operating Agreement) of the JB 2020 Trust as the sole Member/owner of Lot 298, LLC.

261.    Mr. Black continued to believe that he and/or BILP was the sole owner of Lot 298, LLC, and therefore BILP continued to pay monthly expenses of Lot 298, LLC through 2022 in the amount of $53,895.04 (**See Exhibit 34**); this, even though the JB 2020 Trust Agreement mandated that the JB 2020 Trust is to pay all expenses related to property owned by said Trust.  (See Article II, A., 1 and Article IV, A of the Trust Agreement: "The Trustee *shall* use income and principal of the trust to acquire, maintain, and improve real property" – emphasis added.)

262.    On or about August 25, 2021, and more than seven (7) months after the execution of the Original Lot 298 Novation Agreement, attorneys at Knox --- who at the time were still attorneys for Mr. Black and BILP --- knowingly committed a forgery of the January 12/15, 2021, Original Lot 298 Novation Agreement.  Specifically, with the knowledge that they were facilitating a fraud or injury upon Mr. Black and/or BILP, and without notice to or obtaining authority from any of the original signatories, Mr. Kennedy, Mr. Black and/or BILP, the Knox attorneys knowingly altered the first page of the January 12/15, 2021 Original Lot 298 Novation Agreement document by replacing that page with one which deleted the references to BILP having created the new Lot 298, LLC entity and being the sole Member of Lot 298, LLC.  Knox thereby made, completed, executed, issued and/or distributed a new, fraudulent Novation Agreement

58

("**FORGED NOVATION**") which Knox purported to be the one signed by Mr. Black and Mr. Kennedy in January 2021.   A copy of August 25, 2021, email exchanges amongst Knox attorneys, in which they admit this was done is attached hereto as **Exhibit 35**.

263.   A copy of the Forged Novation referenced in the preceding paragraph is attached hereto as **Exhibit 36.**  The Forged Novation demonstrates that:

    a.    The day portion of the date section of the forged document is no longer handwritten, but appears typed, as the 12th.

    b.    There are only five (5) --- not six (6) --- "WHEREAS" paragraphs in the Forged Novation, due to the third one in the original, unaltered Novation Agreement having been removed by the Knox attorneys. The paragraph in the Novation Agreement stating "WHEREAS BILP has recently formed the Company, Lot 298, LLC, as a single-member, single purpose entity, to take title to the Property" had been deleted.

    c.    <u>All remaining pages **including the executed signature pages of the Original Lot 298, LLC Novation Agreement** remained the same.</u>

264.   Based upon the above conduct, it is believed and therefore averred that Defendant Knox knowingly committed a forgery of the January 12/15, 2021, Original Lot 298 Novation Agreement.

265.   It was not until November of 2023 that Plaintiffs and Plaintiffs' current counsel discovered the forgery**.**

266.   Lot 298, LLC (Defendant Sumi) then does not make the scheduled $19,373.24 payment per the Original 298 Note. Instead, in January 2022, Defendant Sumi told Knox that they need to change the Original Note because Lot 298, LLC (and Defendant Sumi) could not afford to make this payment.

267.     After the passage of three (3) months, on April 4, 2022, Defendant Sumi emailed Knox attorneys Devlin and Wegley indicating that if a change to the Original 298 Note was not made, she will "go to plan B"[5]. See **Exhibit 37**.

268.     On August 1, 2022, pursuant to its communications with Defendant Sumi, Knox drafted the "First Amendment to Installment Judgment Note", which changed the terms of the Original 298 Note to provide **payments of interest only of $6,517.58 until June 30, 2027. Further, instead of a balloon payment** as dictated by the Original 298 Note, the balance was directed to be paid in installments over a period of fifteen (15) additional years. See **Exhibit 38**.

269.     The First Amendment to Installment Judgement Note was made effective on January 1, 2022, and mandated the first payment to be made by June 30, 2022.

270.     Lot 298, LLC, however, did not make this initial payment until December of 2022. Thus, Lot 298, LLC was in default of the First Amendment to Installment Judgment Note and still owed for the interest due from June 30, 2022, to December 2022.

271.     After retaining new counsel on August 19, 2022 and after new counsel had the opportunity to review thousands of pages of documents covering multiple entities and transactions, Mr. Black learned that (1) neither he nor any of his entities owned Lot 298, LLC; (2) he had been making payments and financial contributions to property he did not own; and (3) the Original 298 Note was amended so that he is not likely to receive any substantial return on the obligation during his lifetime.

272.     As a direct result of the negligent, reckless and/or intentional actions of the Defendants Sumi, Buzzard and Knox, Plaintiffs Mr. Black and BILP have sustained financial

---

[5] As will be demonstrated later in this complaint, Defendant Sumi had by now retained other counsel.

losses of $53,898.34 representing their funds used towards maintenance and upkeep of 298 Niagara Pointe.

273.    As a result of the conduct of Defendants Sumi, Buzzard, and Knox as more fully described herein all of which was willful, wanton, malicious and oppressive, Mr. Black and BILP have sustained the loss of $640,611.00 representing the current assessed value of 298 Niagara Pointe.

274.    As a result of the conduct of Defendants Sumi, Buzzard, and Knox as more fully described herein all of which was willful, wanton, malicious and oppressive, Mr. Black and BILP have sustained the loss of annual income due to the amendment to the Original Lot 298, LLC Note.

## COUNT I
## BREACH OF FIDUCIARY DUTY

### *Mr. Black and BILP*
### *v.*
### *Sumi, Buzzard and Knox*

275.    Plaintiffs incorporate the allegations of ¶¶ 1-274 above in this Count I of Chapter 2 as if fully stated herein.

276.    Under Pennsylvania Law, *breach of fiduciary duty* is recognized as a cause of action. See ¶¶ 141, 142.

277.    The agencies of Defendants' Sumi and Buzzard arose by virtue of their positions respectively as COO and VP of Finance for Erie Management. Again, Erie Management provided administrative and accounting services to BILP.

278.    The agency of Defendants' Sumi and Buzzard arose by virtue of their positions respectively as Secretary and Treasurer of Erie Management. Again, Erie Management provided administrative and accounting services to Mr. Black and/or BILP.

279.   The agency of Knox arose by virtue of its contractual and ethical position as **personal attorney** for Mr. Black and BILP.

280.   Defendant Buzzard served as VP of Finance for Erie Management at all times relevant and as such, had a legal and fiduciary duty to maintain the accounts of Erie Management and its Black owned entities including BILP.

281.   At all times relevant, Defendant Sumi served as an Officer of Erie Management and also maintained a close, personal, and confidential relationship with Mr. Black and as such had a legal and fiduciary duty to Mr. Black, Erie Management and its Mr. Black owned entities including BILP.

282.   Defendant Buzzard served as treasurer of BILP and as such had a fiduciary duty to BILP and its general partner, Mr. Black.

283.   Defendant Sumi served as secretary of BILP and as such had a fiduciary duty to BILP and its general partner, Mr. Black.

284.   Defendant Knox served as personal attorney for Mr. Black and his entities including BILP from August 2017 through August 19, 2022.

285.   Both Defendants Sumi and Buzzard owed fiduciary duties to Erie Management and BILP as officers and employees thereof including a duty of loyalty and a duty to exercise reasonable care in the performance of their responsibilities including the oversight of BILP and other Mr. Black-owned entities.

286.   Defendant Knox owed fiduciary duties to Mr. Black, Erie Management and BILP as attorney thereof including duties of care, loyalty, good faith, confidentiality, prudence, and disclosure.

287.   Despite their fiduciary duties to and confidential relationship with Mr. Black and BILP, Defendants Sumi and Buzzard engaged in a pattern of self-dealing conduct intended to enrich themselves including:

    a.    Manipulating, influencing, and otherwise directing the change of the Lot 298, LLC sole member from BILP to JB 2020 Trust in such a manner as to cause financial loss to Mr. Black and BILP and cause financial benefits to Defendants Sumi, Buzzard and JB 2020 Trust.

    b.    Using the assets of Plaintiffs, Mr. Black and BILP as consideration for sole membership of Lot 298, LLC.

    c.    Manipulating, influencing, and otherwise directing the forgery of the original Lot 298 Novation Agreement.

    d.    Failing to disclose to Mr. Black and BILP that BILP assets were being used for JB 2020 Trust's ownership of Lot 298, LLC and thus 298 Niagara Pointe.

    e.    Intentionally, recklessly and/or negligently failing to disclose to Mr. Black and BILP the change of a material term of the Novation Agreement namely eliminating reference to BILP's ownership of Lot 298, LLC.

    f.    Intentionally misrepresenting to Mr. Black and BILP that 298 Niagara Pointe was being transferred to BILP in exchange for BILP's ownership shares in SREO.

    g.    Permitting Plaintiffs Mr. Black and/or BILP to pay the legal fees for the services relative to the above transaction including but not limited to the creation of Lot 298, LLC, the JB 2020 Trust, and the closing for the transfer herein.

    h.    Simultaneously acting as an officer of two (2) entities (Lot 298, LLC and BILP) in direct conflict with the interests of each other.

288.   Despite its fiduciary duties to its client, Mr. Black and BILP, Defendant Knox breached their duties as follows:

    a.    By intentionally, recklessly and/or negligently failing to protect the financial interests of its clients, Mr. Black and/or BILP in allowing the diversion of BILP's intended ownership interest in Lot 298, LLC.

b.  By intentionally, recklessly and/or negligently failing to disclose to and advise its clients, Mr. Black and BILP of the diversion of BILP's intended ownership interest in Lot 298, LLC.

c.  By causing and/or allowing Defendant Sumi and the JB 2020 Trust to take over ownership of Lot 298, LLC and 298 Niagara Pointe without any consideration and without its client's knowledge.

d.  By representing Defendant Sumi, JB 2020 Trust and Lot 298, LLC in a transaction having obvious conflicts of interest with those of its clients, Mr. Black and BILP.

e.  By intentionally, recklessly and/or negligently misleading Mr. Black to believe BILP was going to own Lot 298, LLC by stating as much in the original Lot 298 Novation Agreement signed by all parties then replacing that portion of the original Lot 298 Novation Agreement.

f.  By preparing the documents for Defendants Sumi, Lot 298, LLC and JB 2020 Trust that were necessary to carry out the takeover of ownership of Lot 298, LLC and 298 Niagara Pointe.

g.  By drafting legal documents for the formation of a new entity knowing that BILP was not the owner but that it was owned by JB 2020 Trust.

h.  By changing the first page of a fully signed/executed document months after its execution, eliminating critical language that led Mr. Black to believe BILP was going to own the new entity known as Lot 298, LLC.

i.  By providing Defendants Sumi and Buzzard with legal advice that was contrary to the best interests of its clients, Mr. Black and BILP.

j.  By representing Defendant Sumi, Lot 298 LLC, and the JB 2020 Trust at the closing of the purchase of 298 Niagara Pointe knowing full well that Mr. Black and BILP were not going to be the owners.

k.  By failing to inform its clients Mr. Black and BILP of the material change in the ultimate ownership of Lot 298, LLC.

l.  By acting as Trustee (Devlin) of the JB 2020 Trust, a direct conflict of the interests of its clients, Mr. Black and BILP.

m.  By intentionally failing to inform its clients, Mr. Black and/or BILP of the diversion of ownership of Lot 298, LLC and/or 298 Niagara Pointe while acting as Trustee (Devlin) of the JB 2020 Trust.

64

n.   By failing to inform its clients, Mr. Black and/or BILP, to cease making unnecessary payments for the maintenance and upkeep of 298 Niagara Pointe while acting as Trustee (Devlin) of the JB 2020 Trust.

o.   Intentionally and with actual or constructive knowledge and acquiescence of Defendants Sumi and Buzzard, and without the authority of Mr. Black or any other signatory, changing the first page of a fully executed Novation Agreement (original Lot 298 Novation Agreement) to take out the reference that BILP owned Lot 298, LLC.

p.   Billing for and accepting payment from Mr. Black and/or BILP for the legal fees for the services related to the creation of Lot 298, LLC, the JB 2020 Trust and the closing for the transfer therein, all at the detriment of its clients Mr. Black and/or BILP.

q.   Violating its ethical obligation to Plaintiffs Mr. Black and BILP as stated in section 1.7 of the Pennsylvania Rules of Professional Conduct.

r.   Violating its ethical obligation under section 1.2 of the Pennsylvania Rules of Professional Conduct by counseling Defendant Sumi, a "client" to engage, or assist her in conduct it knew or should have known was fraudulent, criminal and/or adverse to the interests of its client, Mr. Black, and BILP.

289.   As a direct and proximate cause of the breach of fiduciary duties detailed above, Mr. Black and BILP suffered damages in an amount in excess of $694,509.04.

WHEREFORE, Plaintiffs Mr. Black and BILP demand judgment in their favor and against the Defendants Sumi, Buzzard, and Knox in an amount in excess of $694,509.04 plus punitive damages, interest, costs and other relief the Court deems appropriate.

## COUNT II
## FRAUD (CONSTRUCTIVE FRAUD)

### *Mr. Black and BILP*
### *v.*
### *Sumi, Buzzard, and Knox*

290.    Plaintiffs incorporate the allegations of ¶¶ 1- 289 above in this Count II of Chapter 2 as if more fully set forth herein.

291.    Under Pennsylvania Law, *constructive fraud* is a recognized cause of action. See ¶¶ 155-158.

292.    As more fully detailed above and at all times relevant, Defendants Sumi, Buzzard and Knox had fiduciary duties to Plaintiffs Mr. Black and/or BILP.

293.    As more fully detailed above in Count I of Chapter 2, the Defendants Sumi, Buzzard and Knox breached their respective fiduciary duties owned to Mr. Black and BILP.

294.    Plaintiffs justifiably relied upon Defendants Sumi, Buzzard, and Knox in this transaction to their determent.

295.    As a result of the Defendants Sumi, Buzzard and Knox's breaches of their respective fiduciary duties, Plaintiffs Mr. Black and BILP have suffered damages in an amount in excess of $694,509.04.

WHEREFORE, Plaintiffs Mr. Black and BILP demand judgment in their favor and against the Defendants Sumi, Buzzard, and Knox in an amount in excess of $694,509.04 plus interest, costs, and other relief the Court deems appropriate.

## COUNT III
## FRAUD (INTENTIONAL MISREPRESENTATION)

### *Mr. Black and BILP*
### *v.*
### *Sumi, Buzzard and Knox*

296.     Plaintiffs incorporate the allegations of ¶¶ 1- 295 above in this Count III of Chapter 2 as if more fully set forth herein.

297.     As more fully detailed above and at all times relevant, Defendants Sumi, Buzzard and Knox had fiduciary duties to Plaintiffs Mr. Black and BILP.

298.     Defendants Sumi, Buzzard and/or Knox intentionally misrepresented to Plaintiffs Mr. Black and BILP that BILP was receiving 298 Niagara Pointe under Lot 298, LLC in exchange for its conveyance of twenty-three (23) partnership units in SREO.

299.     As more fully detailed above, Defendants Sumi, Buzzard, and Knox, with actual or constructive knowledge and acquiescence of each other, misled Mr. Black and BILP into believing that Lot 298, LLC was owned by BILP and that the conveyance of 298 Niagara Pointe to Lot 298, LLC would make BILP the owner of 298 Niagara Pointe.

300.     Defendants' misrepresentations were made to divert ownership of Lot 298, LLC to Sumi personally through and as beneficiary of the JB 2020 Trust.

301.     As more fully detailed above, Defendants Sumi, Buzzard, and Knox, with actual or constructive knowledge and acquiescence of each other, misled Mr. Black and BILP into believing that BILP was receiving 298 Niagara Pointe in exchange for its conveyance of 23 partnership units in SREO.

302.     As more fully detailed above, Defendants Sumi, Buzzard, and Knox, with actual or constructive knowledge and acquiescence of each other, and without the authority of Mr. Black or

any other signatory changed the first page of a fully executed Novation Agreement (original Lot 298 Novation Agreement) to take out the reference that BILP owned Lot 298, LLC.

303.     As more fully detailed above, Defendants Sumi, Buzzard, and Knox, with actual or constructive knowledge and acquiescence of each other, and without the authority of Mr. Black or BILP, diverted the real estate known as 298 Niagara Pointe from a BILP owned LLC to one owned by the JB 2020 Trust, for which Defendant Sumi is beneficiary.

304.     As more fully detailed above, Defendants Sumi, Buzzard, and Knox, with actual or constructive knowledge and acquiescence of each other, and without the authority of Mr. Black or BILP created Lot 298, LLC of which sole member is the JB 2020 Trust.

305.     As more fully detailed above, Defendants Sumi, Buzzard, and Knox intentionally kept information regarding the changes in the Lot 298 LLC transaction from Mr. Black and BILP.

306.     As more fully detailed above, Defendants Sumi, Buzzard, and Knox failed to protect the interests of Mr. Black and BILP by allowing ownership of Lot 298, LLC and 298 Niagara Pointe to go to a third party, the JB 2020 Trust.

307.     Defendants Sumi, Buzzard, and Knox's' failure to disclose the diversion of the 298 Niagara property was material because Plaintiff Mr. Black individually and as managing partner of BILP relied upon the honest services of Defendants Sumi, and Buzzard as officers and Knox as the retained personal attorney for Mr. Black and BILP.

308.     Plaintiffs justifiably relied upon the misrepresentations and concealments made by Defendants Sumi, Buzzard, and Knox in that Plaintiffs Mr. Black and BILP paid more than $53,898.34 for all expenses related to the repairs, maintenance, taxes and insurance for 298 Niagara Pointe through November of 2022 when it was discovered that BILP did not own Lot 298 LLC.

309.   Defendant Sumi, Buzzard, and Knox's conduct, as more fully described above, was willful, wanton, malicious and oppressive.

310.   Defendants Sumi, Buzzard, and Knox's' conduct has directly, legally, and proximately caused and continues to cause injuries to Plaintiffs Mr. Black and BILP.

311.   As a result of the conduct of the Defendants Sumi, Buzzard and/or Knox as more fully described above, Plaintiffs Mr. Black and BILP have suffered damages in the amount of $694,509.04.

312.   Defendants Sumi and Buzzard engaged in conduct to benefit themselves at the expense of Mr. Black and BILP at a time when they owed fiduciary duties to and stood in a confidential relationship with Mr. Black and BILP.

313.   These transactions were fraudulent and neither fair nor equitable; therefore, these transactions constitute constructive and actual fraud upon Mr. Black and BILP.

314.   Defendants Sumi, Buzzard and Knox's misrepresentations were material to the transfer of twenty-three (23) points of SREO to Mr. Kennedy and SREO.

315.   Defendants' misrepresentations were made to induce Mr. Black and BILP to transfer twenty-three (23) units of SREO to Mr. Kennedy and SREO.

316.   Plaintiffs Mr. Black and BILP justifiably relied upon the misrepresentations made by Defendants Sumi, Buzzard, and Knox in this transaction to their determent.

317.   As a result of the intentional misrepresentation of the Defendants Sumi, Buzzard and/or Knox, Plaintiffs Mr. Black and BILP have suffered damages in the amount of $694,509.04

WHEREFORE, Plaintiffs Mr. Black and BILP demand judgment in their favor and against the Defendants Sumi, Buzzard, and Knox in the amount of $694,509.04 plus punitive damages, interest, costs, and other relief the Court deems appropriate.

## COUNT IV
## CONVERSION

### *Mr. Black and BILP*
### *v.*
### *Sumi, Buzzard, Knox, Lot 298, LLC and the JB 2020 Trust*

318.    Plaintiffs incorporate the allegations of ¶¶ 1 – 317 above in this Count IV of Chapter 2 as if fully stated herein.

319.    Under Pennsylvania Law, a cause of action for conversion is recognized where a defendant deprives another of their right of property or other interference therewith without the owner's consent and without legal justification.

320.    Defendants Sumi and JB 2020 Trust, through Buzzard and Knox, have engaged in purposeful conduct intended to deplete, deprive, and convert the assets of BILP and Mr. Black in the manner as previously set forth in this Chapter 2.

321.    As part of this purposeful course of action intended to deplete, deprive, and convert the private assets of BILP and Mr. Black, Defendants Sumi and JB 2020 Trust, by and through Defendants Buzzard and Knox have:

    a.    Deprived BILP of its right to 298 Niagara Pointe that Defendants are not entitled to retain since Mr. Black/BILP assets (twenty-three (23) partnership units in SREO) were used as consideration for sole membership of Lot 298, LLC.

    b.    Deprived BILP of its right to the $53,898.34 used to pay for improvements and monthly maintenance expenses for 298 Niagara Pointe which Defendants are not entitled to retain because BILP had no ownership interest in the Lot 298, LLC property at the time payments were made.

322.    Defendants Sumi, Buzzard, Knox, Lot 298, LLC, and JB 2020 Trust have interfered with BILP's use and possession of 298 Niagara Pointe by refusing to return ownership thereto to BILP and making their own use of it.

323.    Mr. Black and/or BILP has not consented to Defendants' retention of 298 Niagara Pointe.

324.    Defendants have no legal justification for retaining the membership interest in 298 Niagara Pointe.

325.    Defendants have converted BILP's twenty-three (23) Partnership units in SREO and/or 298 Niagara Pointe.

WHEREFORE, Plaintiffs Mr. Black and BILP demand judgment in their favor and against the Defendants Sumi, Buzzard, Knox, Lot 298, LLC and JB 2020 Trust in the amount of $694,509.04 plus interest, costs, and other relief the Court deems appropriate.

## COUNT V
## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

### *Mr. Black and BILP*
### *v.*
### *Sumi, Buzzard and Knox*

326.    Plaintiffs incorporate the allegations of ¶¶ 1- 325 above in this Count V of Chapter 2 as if more fully set forth herein.

327.    Under Pennsylvania Law, *aiding and abetting breach of fiduciary duty* is a recognized cause of action.  See ¶195.

328.    As part of Defendant Sumi's scheme to acquire ownership of 298 Niagara Pointe for the benefit of the JB 2020 Trust, she held herself out to have the full authority to act on behalf of Mr. Black and BILP.

329.    As described in the foregoing averments of this Complaint, Defendants Sumi, Buzzard, and Knox breached fiduciary duties owed by them to Mr. Black and BILP.

330.    As described above and upon information and belief, Defendants Sumi, Buzzard, and Knox had knowledge of each other's breach of their respective fiduciary duties to Mr. Black and BILP.

331.    As a result of the Defendants Sumi, Buzzard and Knox's breach of their respective fiduciary duties, Plaintiffs Mr. Black and BILP have suffered damages including loss of property, lost income, lost interest and investment opportunities, diminished value of BILP as well as substantial accounting and legal expenses.

WHEREFORE, Plaintiffs Mr. Black and BILP demand judgment in their favor and against the Defendants Sumi, Buzzard, and Knox in the amount of $694,509.04 plus interest, costs, and other relief the Court deems appropriate.

## COUNT VI
## AIDING AND ABETTING FRAUD

### Mr. Black and BILP
### v.
### Knox

332.    Plaintiffs incorporate the allegations of ¶¶ 1 – 331 above in this Count VI of Chapter 2 as if more fully set forth herein.

333.    Under Pennsylvania Law, aiding and abetting fraud is a recognized cause of action. See ¶203.

334.    As described in the foregoing averments of this Complaint, and specifically Count III of this Chapter 2, Defendants Sumi, Buzzard and Knox fraudulently and intentionally made misrepresentations to Mr. Black and BILP.

335.    As described above and upon information and belief, Defendant Knox had knowledge of the fraud perpetrated by Defendants Sumi and Buzzard.

336.    Defendant Knox actively and/or blindly assisted in the commission of the fraud perpetrated by Defendants Sumi, Buzzard, and SJB Investments in the following respects:

a.      By intentionally, recklessly and/or negligently failing to protect the financial interests of its clients, Mr. Black and/or BILP in allowing the diversion of BILP's intended ownership interest in Lot 298, LLC and/or 298 Niagara Pointe.

b.      By intentionally, recklessly and/or negligently failing to disclose to and advise its clients, Mr. Black and BILP of the diversion of BILP's intended ownership interest in Lot 298, LLC and/or 298 Niagara Pointe.

c.      By causing and/or allowing Sumi and the JB 2020 Trust to take over ownership of Lot 298, LLC and/or 298 Niagara Pointe without any consideration and without its client's knowledge.

d.      By representing Defendant Sumi, JB 2020 Trust and Lot 298, LLC in a transaction having obvious conflicts of interest with those of its clients, Mr. Black and BILP.

e.      By intentionally, recklessly and/or negligently misleading Mr. Black to believe BILP was going to own Lot 298, LLC and/or 298 Niagara Pointe by stating as much in the original Lot 298 Novation Agreement signed by all parties then replacing that portion of the original Lot 298 Novation Agreement.

f.      By preparing the documents for Defendants Sumi, Lot 298, LLC and JB 2020 Trust that were necessary to carry out the takeover of ownership of Lot 298, LLC and/or 298 Niagara Pointe.

g.      By drafting legal documents for the formation of a new entity knowing that BILP was not the owner but that it was owned by JB 2020 Trust.

h.      By changing the first page of a fully signed/executed document months after its execution, eliminating critical language that led Mr. Black to believe BILP was going to own the new entity known as Lot 298, LLC.

i.      By providing Defendants Sumi and Buzzard with legal advice that was contrary to the best interests of its clients, Mr. Black and BILP.

j.      By representing Defendant Sumi, Lot 298 LLC, and the JB 2020 Trust at the closing of the purchase of 298 Niagara Pointe knowing full well that Mr. Black and BILP were not going to be the owners.

k.       By failing to inform its clients Mr. Black and BILP of the material change in the ultimate ownership of Lot 298, LLC and/or 298 Niagara Pointe.

l.       By acting as Trustee (Devlin) of the JB 2020 Trust, a direct conflict of the interests of its clients, Mr. Black and BILP.

m.       As Trustee (Devlin) of the JB 2020 Trust, intentionally failing to inform its clients, Mr. Black and/or BILP of the diversion of ownership of Lot 298, LLC and/or 298 Niagara Pointe.

n.       As Trustee (Devlin) of the JB 2020 Trust, intentionally failing to inform its clients, Mr. Black and/or BILP, to cease making unnecessary payments for the maintenance and upkeep of 298 Niagara Pointe, which payments were the responsibility of Lot 298, LLC.

o.       Intentionally and with actual or constructive knowledge and acquiescence of Defendants Sumi and Buzzard, and without the authority of Mr. Black or any other signatory, changing the first page of a fully executed Novation Agreement (original Lot 298 Novation Agreement) to take out the reference that BILP owned Lot 298, LLC.

p.       Billing for and accepting payment from Plaintiffs Mr. Black and/or BILP for the legal fees for services relative to the above transaction which caused them significant damage.

q.       Drafting/preparing an amended promissory note changing Lot 298, LLC's repayment terms thereby reducing Mr. Black and BILP's interest income payments in the short term and during Mr. Black's lifetime and to the benefit of Defendant Sumi, Lot 298, LLC and the JB 2020 Trust.

337.    As a result of Defendant Knox's active assistance in the commission of the fraud and active assistance in the commission of the fraud perpetrated by Defendant Knox, Mr. Black and BILP have suffered damages in the amount of $694,509.04.

WHEREFORE, Plaintiffs Mr. Black and BILP demand judgment in their favor and against Defendant Knox in the amount of $694,509.04 plus punitive damages, interest, costs and other relief the Court deems appropriate.

## COUNT VII
## CIVIL CONSPIRACY

### *Mr. Black and BILP*
### *v.*
### *Sumi, Buzzard and Knox*

338.     Plaintiffs incorporate the allegations of ¶¶ 1- 337 above in this Count VII of Chapter 2 as if more fully set forth herein.

339.     As more fully detailed above, Defendants Sumi, Buzzard and Knox agreed to perform some or all of the illegal acts or legal acts by illegal means.

340.     Defendants Sumi, Buzzard and Knox have performed multiple overt acts in furtherance of this conspiracy as previously enumerated herein.

341.     As a result of the conspiracy between Defendants Sumi, Buzzard and Knox, Plaintiffs Mr. Black and BILP have suffered damages including loss of property, lost interest and investment opportunities, diminished value of BILP as well as substantial accounting and legal expenses.

342.     Defendants Sumi, Buzzard and Knox have acted in concert in pursuing a common purpose to perform the aforementioned unlawful acts and/or lawful acts by unlawful means for an unlawful purpose making the Defendants liable and responsible for their own wrongful acts against Plaintiffs as well as for the wrongful conduct of any others acting in concert and conspiracy with them.

343.     Defendants Sumi, Buzzard and Knox have acted with malice or intent to injure Plaintiffs and such actions were without legal cause or justification.

WHEREFORE, Plaintiffs Mr. Black and BILP demand judgment in their favor and against Defendants Sumi, Buzzard, and Knox in the amount of $694,509.04 plus punitive damages, interest, costs of suit and such further relief as this Court deems just and proper.

**COUNT VIII**
**UNJUST ENRICHMENT**

*Mr. Black and BILP*
*v.*
*Sumi, Lot 298, LLC and JB 2020 Trust*

344.    Plaintiffs incorporate the allegations of ¶¶ 1-343 above in this Count VIII of Chapter 2 as if more fully set forth herein.

345.    Under Pennsylvania Law, Unjust Enrichment is recognized where (1) benefits are conferred on a defendant by plaintiff, (2) with an appreciation of such benefits by defendant, and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for the defendant to retain the benefit without payments of value. (See *Wiernik v. PHH U.S. Mortgage Corp.,* 736 A.2d 616 (Pa. Super. Ct. 1999)).

346.    Mr. Black and BILP have conferred a benefit on Defendant Sumi, Lot 298, LLC and JB 2020 Trust by way of member ownership of Lot 298, LLC and the payment of $53,898.34 toward monthly maintenance expenses for Lot 298, LLC owned property, 298 Niagara Pointe.

347.    Defendant Sumi, Lot 298, LLC, and JB 2020 Trust have appreciated the benefits of the member ownership of Lot 298, LLC and the $53,898.34 payments toward monthly maintenance expenses for Lot 298, LLC owned property, 298 Niagara Pointe.

348.    It would be inequitable for Defendant Sumi, Lot 298, LLC, and JB 2020 Trust to retain member ownership of Lot 298, LLC and the $53,898.34 payments toward monthly maintenance expenses for Lot 298, LLC owned property, 298 Niagara Pointe.

349.    Plaintiffs Mr. Black and BILP are further entitled to a constructive trust being entered against Defendant Sumi over the member ownership of Lot 298, LLC, or value thereof, and $53,898.34 payments toward monthly maintenance expenses for Lot 298, LLC owned property, 298 Niagara Pointe.

76

350.    Plaintiffs Mr. Black and BILP are further entitled to a constructive trust being entered against JB 2020 Trust over the member ownership of Lot 298, LLC, or value thereof, and $53,898.34 payments toward monthly maintenance expenses for Lot 298, LLC owned property, 298 Niagara Pointe.

WHEREFORE, Plaintiffs Mr. Black and BILP demand judgment in their favor and against Defendants Sumi, Lot 298, LLC and JB 2020 Trust in the amount of $694,509.04 ($640,611.00 current assessed value of 298 Niagara Pointe and $53,898.34 payments toward monthly maintenance expenses for 298 Niagara Pointe) as well as a constructive trust in the amount of $694,509.04 plus cost of suit and such other relief that this court deems just and proper.

## COUNT IX
## PRELIMINARY INJUNCTION/TEMPORARY RESTRAINING ORDER

### *Mr. Black and BILP*
### *v.*
### *Sumi and Lot 298, LLC*

351.    Plaintiffs incorporates the allegations of ¶¶ 1-350 above in this Count IX of Chapter 2 as if more fully set forth herein.

352.    Plaintiffs Mr. Black and BILP have provided Defendants Sumi and Lot 298, LLC with a total of $694,509.04 representing value of the consideration for the twenty-three (23) member shares of SREO ($475,000.00), increased value of 298 Niagara Pointe ($165,611.00), and payments toward monthly maintenance expenses for Lot 298, LLC owned property, 298 Niagara Pointe ($53,898.34).

353.    Defendants Sumi and Lot 298, LLC are in possession of the $694,509.04 in the form of the property exchanged for the membership interest in Lot 298, LLC and improvements made to Lot 298, LLC owned property, 298 Niagara Pointe.

77

354.    Until the underlying merits of this lawsuit can be fully adjudicated, Defendants Sumi and Lot 298, LLC should not be permitted to benefit from the transfer, sale, dissipation, or depletion of the membership interest in Lot 298, LLC and the cost of the improvements made to 298 Niagara Pointe.

355.    Due to the conduct of Defendants Sumi and Lot 298, LLC as more specifically set forth herein, Mr. Black and BILP believe and aver that Defendants Sumi and Lot 298, LLC will act to transfer, sell, dissipate or otherwise deplete the membership interest in Lot 298, LLC and/or the property that benefited from the expenditure of BILP funds for improvements and maintenance of the Lot 298, LLC owned property, 298 Niagara Pointe.

356.    A temporary restraining order prohibiting Defendants Sumi and Lot 298, LLC from transferring, selling, dissipating, or otherwise depleting the membership interest of Lot 298, LLC and/or the property that benefited from the expenditure of BILP funds for improvements and maintenance of the Lot 298, LLC owned property, 298 Niagara Pointe, is appropriate at this time.

358.    Immediate and irreparable injury will result if a restraining order is not entered in that the Defendants Sumi and Lot 298, LLC  are likely to transfer, sell, dissipate, or otherwise deplete the membership interest in Lot 298, LLC and/or the property that benefited from the expenditure of BILP funds for improvements and maintenance of the Lot 298, LLC owned property, 298 Niagara Pointe.

359.    A preliminary injunction prohibiting Defendants Sumi and Lot 298, LLC from transferring, selling, dissipating, or otherwise depleting the membership interest of Lot 298, LLC and/or the property that benefited from the expenditure of BILP funds for improvements and maintenance of the Lot 298, LLC owned property, 298 Niagara Pointe, is appropriate at this time.

360.    Plaintiffs Mr. Black and BILP are likely to succeed on the merits as more fully set forth in this Complaint.

361.    Defendants Sumi and Lot 298, LLC will not suffer unnecessary harm as the request is simply asking for maintaining the status quo of the ownership of the membership interest in Lot 298, LLC and the property that benefited from the expenditure of BILP funds for improvements and maintenance of the Lot 298, LLC owned property, 298 Niagara Pointe.

362.    Public interest favors granting an injunction because a person should not be entitled to unearned funds during the pendency of a lawsuit.

WHEREFORE, Plaintiffs Mr. Black and BILP respectfully request that this Court enter a temporary restraining order prohibiting Defendants Sumi and Lot 298, LLC from transferring, selling, dissipating, or otherwise depleting the membership interest of Lot 298, LLC and/or the property that benefited from the expenditure of BILP funds for improvements and maintenance of the Lot 298, LLC owned property, 298 Niagara Pointe.

## CHAPTER 3

## TOP ROAD, LLC

*Mr. Black and BILP*

*v.*

*Sumi, Buzzard, Top Road LLC, Knox and JB 2020 Trust*

363.   The foregoing averments of this Complaint are hereby incorporated by reference thereto and made a part hereof as though fully set forth herein.

364.   Plaintiff reiterates the matters pled in Chapter 2, ¶¶ 220 through 224, namely that in 2016 Mr. Black and BILP paid $850,000.00 to Thomas Kennedy for ownership units/interests in Mr. Kennedy's real estate business, SREO; and that in 2020, desiring to buy these ownership units back from Mr. Black/ BILP, Kennedy offered to transfer ownership in three (3) Erie, Pennsylvania real estate parcels owned by his company, Professional Development Associates, Inc. (PDA), to Mr. Black/BILP.  The three (3) properties were 298 Niagara Pointe, 301 Top Road, and 305 Top Road.  (Indeed, the fact averments in this Chapter 3 closely mirror those pled in Chapter 2, concerning Lot 298, LLC.)

365.   Mr. Black accepted this offer, and accordingly, on November 24, 2020, BILP, PDA, Mr. Kennedy (and his wife) and SREO entered into an **AGREEMENT TO TRANSFER**, which directed that complete ownership in the real estate located at Unit 301 and Unit 305 of the Niagara Condominium, commonly known as 301 and 305 Top Road, Erie, PA, would be transferred to BILP in exchange for the transfer to Kennedy of Mr. Black's/ BILP's ownership of 11 partnership units in SREO.  A copy of this Transfer Agreement is attached hereto as **Exhibit 39**.

366.   The value assigned to Top Road for this transaction was $225,000.00.

367.   This Agreement to Transfer document was *prepared by Knox*, in its capacity as Mr. Black's and BILP's attorney.

368.    Subsequently, and as was customarily done with real estate owned by BILP, Mr. Black directed that the ownership of the real estate be transferred to a newly created BILP-owned limited liability company rather than directly to BILP. It was done in this transfer as well even though the sole reason for the transfer of the properties was for Mr. Kennedy to buy out Mr. Black's/BILP's ownership interest in SREO.

369.    Accordingly, on March 24, 2021, Knox --- Mr. Black's attorney --- created **TOP ROAD, LLC,** ostensibly so that a BILP-owned Top Road, LLC, could obtain ownership of the properties at 301 and 305 Top Road, which Mr. Kennedy, PDA and SREO had agreed to transfer to BILP.  Kenzie P. Ryback, an attorney employed by Knox, was listed as the Organizer of Top Road, LLC, and its address was listed as Knox's address, 120 West 10th Street, Erie, PA.  A copy of the March 24, 2021, filed Certificate of Organization for Top Road, LLC is attached hereto as **Exhibit 40**.

370.    On March 31, 2021, pursuant to the November 24, 2020 Agreement to Transfer, **(Exhibit 41)**.  This document provided that in consideration of the transfer to Black of 301 and 305 Top Road properties, Mr. Black was transferring back for the Kennedys his eleven (11) Limited Partnerships Units in SREO, free and clear of any and all liens and encumbrances.

371.    On March 31, 2021, BILP, Top Road, LLC, SREO, Mr. Kennedy and his wife, Kimberly Kennedy, entered into a Novation Agreement, with BILP.

372.    The Top Road Novation Agreement was prepared by Knox --- Mr. Black's and BILP's attorney.

373.    On March 31, 2021, Mr. Black, as Managing Partner of BILP, and Buzzard, as Manager of Top Road, LLC, signed the **TOP ROAD NOVATION AGREEMENT**, a copy of

which is attached hereto as **Exhibit 42** and sometimes hereafter referred to as the "Original Top

Road Novation Agreement".

374.    On March 30-31, 2021, Kimberly Kennedy and Thomas Kennedy on behalf of

PDA, SREO, and himself, both signed this Original Top Road Novation Agreement.

375.    Among other items, the Original Top Road Novation Agreement document

provides:

a.    That the day portion of the date --- "31st" --- was *handwritten* on the
Agreement.

b.    That there were **six (6)** "WHEREAS" ¶¶ in the Agreement.

c.    That the properties at 301 and 305 Top Toad, Erie, PA ("the
Property") would be *transferred to BILP*.

d.    That "***BILP has recently formed the Company, Top Road, LLC, as
a single-member, single purpose entity,*** to take title to the Property"
(see the third "WHEREAS" paragraph of the Original Top Road
Novation Agreement (**Exhibit 42**), emphasis added).

e.    That BILP desired to withdraw from the Agreement to Transfer and
substitute Top Road LLC in its place to be the transferee of the
Property.

f.    That all the parties to the Original Top Road Novation Agreement
agreed to the substitution of Top Road, LLC in place of BILP as the
transferee of the Top Road Property in the Agreement to Transfer:
and

g.    That "*this Novation is for the sole and exclusive benefit of the parties
hereto **and is not intended to, nor does it, confer any benefit upon
any third party.**"* (see ¶4 of the Original Top Road Novation
Agreement, emphasis added).

375.    On March 31, 2021, Mr. Black, as Managing Partner of BILP, and Buzzard, as Manager of Top Road, LLC, signed this Original Top Road Novation Agreement. This Novation Agreement **was identical** in all respects to the 3/31/21 Novation Agreement signed by Mr. Kennedy the prior day except the handwritten day in the date section was the "31st".

376.    On March 30, 2021, in consideration for the Novation Agreement's substitution of Top Road, LLC in place of BILP in the Agreement to Transfer, Top Road, LLC signed an INSTALLMENT JUDGEMENT NOTE ("Original Top Road Note"), prepared by Knox, under which it, as the Borrower, bound itself to pay BILP $225,000.00, as follows: annual payments of principal and interest of $17,012.28 due each March 30th from 2022 through 2036 when the Original Top Road Note is paid in full. This Installment Judgment Note contained a Confession of Judgment clause, and was signed by Buzzard, as Manager of Top Road, LLC, Attorney Jerome Wegley of the Knox firm, and by Mr. Black, as a Witness.  A copy of this NOTE is attached hereto as **Exhibit 43**.

377.    With all of this, at all times material hereto, Mr. Black believed that BILP owned Top Road, LLC.

378.    On March 24, 2021, Attorney Ryback of Knox, prepared and signed a ***TOP ROAD, LLC RESOLUTIONS ADOPTED BY THE ORGANIZER*** (hereafter, "3/24/21 Top Road Resolutions"), which resolved that the 3/22/2021 Certificate of Organization was approved, resolved that Nicole Buzzard was "elected as the Manager of the Company (Top Road, LLC) and:

> "RESOLVED that the ***JAMES-BLACK 2020 IRREVOCABLE TRUST*** *has contributed property to the Company and **is the initial and sole Member** of the Company*" (emphasis added).

379.     Buzzard also signed the 3/24/21 Top Road Resolutions document on the same date, indicating that the document had been filed with her, as Manager of Top Road, LLC.  A copy of this RESOLUTIONS document is attached hereto as **Exhibit 44.**

380.     As previously pled herein, Buzzard was at all times material hereto an employee and/or officer of most of Mr. Black's companies, when she was "elected" to serve as the Operating Manager of Top Road, LLC.  She was also the Vice President of Finance for Erie Management, and as such was ultimately responsible for the accounting and finances for BILP.

381.     As previously pled herein, the **James-Black 2020 Irrevocable Trust ("JB 2020 Trust")** was created on May 8, 2020 by Defendant Sumi for the primary purpose of acquiring, maintaining and improving real property *for use of, benefit of and distribution to Defendant Sumi's descendants*. (See **Exhibit 30.**)

382.     The Trust Agreement which created the JB 2020 Trust was drafted by Defendant Knox --- Mr. Black's attorney --- and Attorney Neil R. Devlin, a shareholder of Defendant Knox, assumed the position as Trustee for said Trust.

383.     All communications between Defendants Sumi and Knox regarding the creation of JB 2020 Trust were done without notice to, knowledge of or participation by Mr. Black and BILP.

384.     The JB 2020 Trust was not a party to the Transfer Agreement or the Novation Agreement and was never mentioned in either of those agreements since the Transfer Agreement and the Novation Agreement was *"not intended to, nor does it, confer any benefit upon"* the JB 2020 Trust.

385.     The aforesaid 3/24/21 Top Road Resolution that "the JAMES-BLACK 2020 IRREVOCABLE TRUST *"has contributed property to the Company"* and is the initial and sole

Member of the Company was and remains false. In truth, the JB 2020 Trust had contributed nothing to Top Road, LLC.

386. Defendant Knox knew this Resolution was false at the time it prepared and signed it.

387. Defendant Buzzard knew this Resolution was false at the time she signed it.

388. In truth, the sole contributor of property to Top Road, LLC had been BILP, a fact known by both Knox and Buzzard.

389. In truth, the **intended** "initial and sole Member" of Top Road, LLC was BILP, which was expressly recognized and agreed to in the March 31, 2021, Novation Agreement (see the third "WHEREAS" paragraph of the Novation Agreement, **Exhibit 42**.)

390. In truth, the 3/24/21 Resolution assertion that the JB 2020 Trust --- which had contributed nothing to Top Road, LLC, and which was not a party to either the 11/24/20 Transfer Agreement or the 3/31/21 Novation Agreement --- was the sole Member of Top Road, LLC was in direct violation of the Novation Agreement, which had been prepared by Knox and which stated:

> 4. *This Novation is for the sole and exclusive benefit of the parties hereto and is not intended to, nor does it confer any benefit upon any third party.* (See **Exhibit 42**).

391. Both Defendants Knox and Buzzard knew that the aforesaid Resolution declaring JB 2020 Trust as the sole Member of Top Road, LLC was in direct violation of the Novation Agreement.

392. Nobody informed Mr. Black and/or BILP of the knowingly false 3/24/21 Top Road Resolution which declared that the JB 2020 Trust was the sole Member of Top Road, LLC.

393.    On March 24, 2021, Defendant Knox created and signed the Operating Agreement of Top Road, LLC, ¶ 1.2 of which identified the JB 2020 Trust as the sole Member of Top Road, LLC, thus further perpetrating the known falsehood described in ¶¶383-386, above.

394.    At all times material hereto, the Trustee of the JB 2020 Trust was Attorney Neal R. Devlin, the Knox attorney who drafted both the JB 2020 Trust Agreement and the Top Road, LLC Operating Agreement all the while he and Knox were continuing to represent Mr. Black and BILP.

395.    Nobody informed Mr. Black of this Top Road, LLC Operating Agreement and its declaration that the JB 2020 Trust was the sole Member of Top Road, LLC.

396.    Additionally, the aforementioned Installment Judgment Note never mentioned the JB 2020 Trust, and still, nobody had ever informed Mr. Black that the JB 2020 Trust had anything whatsoever to do with the newly created Top Road, LLC.

397.    Also on March 31, 2021, Laura Guncheon, emailed the fully executed Original Top Road Novation Agreement signed by Mr. Black and BILP to Attorney Timothy Zieziula of Knox.

398.    On April 1, 2021, Top Road, LLC and PDA executed the Settlement Statement (See **Exhibit 45**) concluding the sale of the Top Road properties, 301 and 305 Top Road, to Top Road, LLC, for the contract sales price of $225,000.00.

399.    Additionally, Top Road, LLC was required to pay $8,023.78 representing closing costs.  That money was provided through a **wired** money transfer made at Knox's direction from BILP to Knox on April 1, 2021.  Mr. Black and BILP did so, based upon their duped belief that BILP was the owner of Top Road, LLC.

400.    Mr. Black continued to believe that he and/or BILP was the sole owner of Top Road, LLC, and therefore BILP continued to pay monthly expenses of Top Road, LLC; this, even though the JB 2020 Trust Agreement mandated that the JB 2020 Trust is to pay all expenses related

to property owned by said Trust. (See Article II, A., 1 and Article IV, A of the Trust Agreement: "The Trustee *shall* use income and principal of the trust to acquire, maintain, and improve real property" – emphasis added.)   From April 2021 through July 2022 Mr. Black and BILP paid $25,568.54.

401.   On or about August 25, 2021, and nearly five (5) months after the execution of the Original Top Road Novation Agreement, attorneys at Knox --- who at the time were still attorneys for Mr. Black and BILP --- knowingly committed a forgery of the March 31, 2021, Original Top Road Novation Agreement.  Specifically, with the knowledge that they were facilitating a fraud or injury upon Mr. Black and/or BILP, and without notice to or obtaining authority from any of the original signatories, Mr. and Mrs. Kennedy, Mr. Black and/or BILP, the Knox attorneys knowingly altered the first page of the March 31, 2021 Original Top Road Novation Agreement document by replacing that page with one which **deleted** the references to BILP having created the new Top Road, LLC entity and being the sole Member of Top Road, LLC.  Knox thereby made, completed, executed, issued and/or distributed a new, fraudulent Novation Agreement ("**FORGED NOVATION**") which Knox purported to be the one signed by Mr. Black and Mr. and Mrs. Kennedy in March 2021.  A copy of August 25, 2021, email exchanges amongst Knox attorneys, in which they admit this was done is attached hereto as **Exhibit 35**.

402.   A copy of the Forged Novation referenced in the preceding paragraph is attached hereto as **Exhibit 46.**  The Forged Novation demonstrates that:

a.   The day portion of the date section of the forged document is no longer handwritten, but is typed, as the 31st.

b.   There are only five (5) --- not six (6) --- "WHEREAS" paragraphs in the Forged Novation, due to the third one in the original, unaltered Novation Agreement having been removed by the Knox attorneys. The paragraph in the Novation Agreement stating "WHEREAS

BILP has recently formed the Company, Top Road, LLC, as a single-member, single purpose entity, to take title to the Property" had been deleted.

c.      All remaining pages **including the executed signature pages of the Original Top Road, LLC Novation Agreement** remained the same.

403.    Based upon the above conduct, it is believed and therefore averred that Defendant Knox knowingly committed a forgery of the March 31, 2021, Original Top Road Novation Agreement.  See **Exhibit 47**.

404.    Top Road, LLC (Defendant Sumi) never made the first scheduled payment of $17,012.28 on March 30, 2022, per the Original Top Road Note. Instead, Defendant Sumi told Knox that the just signed Original Note needed to be changed because Top Road, LLC (and Defendant Sumi) could not afford to make this payment.

405.    After the passage of only four (4) days, on April 4, 2022, Defendant Sumi emailed Knox attorneys Devlin and Wegley indicating that if a change to the Top Road Note, as well as other notes she had with Plaintiffs, was not made, she will "go to plan B".  See **Exhibit 37**.

406.    On August 1, 2022, pursuant to its communications with Defendant Sumi, Knox drafted the "First Amendment to Installment Judgment Note" ("Amended Top Road Note"), which changed the terms of the Original Top Road Note to provide **payments of interest only of $3,681.40 until June 30, 2027.  Further, instead of a balloon payment** as dictated by the Original Top Road Note, the balance was directed to be paid in installments over a period of fifteen (15) additional years. See **Exhibit 48**.

407.    The Amended Top Road Note was executed on August 1, 2022, was made effective as of January 1, 2022, and mandated the first payment to me made on June 30, 2022.

408.    Top Road, LLC, however, did not make this initial payment until December of 2022.

409.    After retaining new counsel on August 19, 2022 and after new counsel had the opportunity to review thousands of pages of documents covering multiple entities and transactions, Mr. Black learned that (1) neither he nor any of his entities owned Top Road, LLC and/or 301-305 Top Road; (2) he had been making payments and financial contributions to property he does not own; and (3) the Original Top Road Note was amended so that he is not likely to receive any substantial return on the obligation during his lifetime.

410.    It was not until after Plaintiffs' current counsel was retained in August of 2022 and had the opportunity to review the massive documents and transactions that the forged Novation Agreement was also discovered.

411.    As a direct result of the negligent, reckless and/or intentional actions of the Defendants Sumi, Buzzard and Knox, Plaintiffs Mr. Black/ BILP have sustained financial losses in the amount of $25,568.54 representing BILP funds used towards maintenance and upkeep of 301 and 305 Top Road.

412.    As a result of the conduct of Defendants Sumi, Buzzard, and Knox as more fully described herein all of which was willful, wanton, malicious and oppressive, Mr. Black and BILP have sustained a loss in an amount equivalent to the current fair market value of 301 and 305 Top Road which is yet to be determined but believed to be in excess of $225,000.00.

413.    As a result of the conduct of Defendants Sumi, Buzzard, and Knox as more fully described herein all of which was willful, wanton, malicious and oppressive, Mr. Black and BILP have sustained the loss of annual income and lost investment opportunity due to the amendment to the Original Top Road Note.

## COUNT I
## BREACH OF FIDUCIARY DUTY

### *Mr. Black and BILP*
### *v.*
### *Sumi, Buzzard and Knox*

414.     Plaintiffs incorporate the allegations of ¶¶ 1-413 above in this Count I of Chapter 3 as if fully stated herein.

415.     Under Pennsylvania Law, *breach of fiduciary duty* is recognized as a cause of action. See ¶¶ 141, 142.

416.     The agencies of Defendants' Sumi and Buzzard arose by virtue of their positions respectively as COO and VP of Finance for Erie Management. Again, Erie Management provided management and administrative services to all Mr. Black owned entities including BILP.

417.     The agency of Defendants' Sumi and Buzzard also arose by virtue of their positions respectively as Secretary and Treasurer of Erie Management.

418.     The agency of Knox arose by virtue of its contractual and ethical position as **personal attorney** for Mr. Black and BILP.

419.     At all times relevant, Defendant Buzzard served as VP of Finance for Erie Management and, as such, had a legal and fiduciary duty to maintain the accounts of Erie Management and its Mr. Black owned entities including BILP.

420.     At all times relevant, Defendant Sumi served as an Officer of Erie Management and also maintained a close, personal, and confidential relationship with Mr. Black and as such had a legal and fiduciary duty to Mr. Black, Erie Management and its Mr. Black owned entities including BILP.

421.    Defendant Buzzard served as treasurer of BILP and as such had a fiduciary duty to BILP and BILP's general partner, Mr. Black.

422.    Defendant Sumi served as secretary of BILP and as such had a fiduciary duty to BILP and BILP's general partner, Mr. Black.

423.    Defendant Knox served as personal attorney for Mr. Black and his entities including BILP from August 2017 through August 19, 2022.

424.    Both Sumi and Buzzard owed fiduciary duties to all Mr. Black owned entities including BILP as officers and/or employees thereof including a duty of loyalty and a duty to exercise reasonable care in the performance of their responsibilities including the oversight of BILP and other Mr. Black-owned entities.

425.    Defendant Knox owed fiduciary duties to Mr. Black and BILP as attorney thereof including duties of care, loyalty, good faith, confidentiality, prudence, and disclosure.

426.    Despite their fiduciary duties to and confidential relationship with Mr. Black and BILP, Defendants Sumi and Buzzard engaged in a pattern of self-dealing conduct in the following manner:

   a.    Manipulating, influencing and otherwise directing the change of the Top Road, LLC sole member from BILP to JB 2020 Trust in such a manner as to cause financial loss to Mr. Black and BILP and cause financial benefits to Defendants Sumi and JB 2020 Trust.

   b.    Using the assets of Plaintiffs, Mr. Black and BILP, as consideration for sole membership of Top Road, LLC.

   c.    Manipulating, influencing, and otherwise directing the forgery of the original Top Road Novation Agreement.

   d.    Failing to disclose to Mr. Black and BILP that BILP assets were being used for JB 2020 Trust's ownership of Top Road, LLC and thus 301-305 Top Road.

e.     Intentionally, recklessly and/or negligently failing to disclose to Mr. Black and BILP the change of the material terms of the Novation Agreement namely eliminating reference to BILP's ownership of Top Road, LLC.

f.     Intentionally misrepresenting to Mr. Black and BILP that 301-305 Top Road was being transferred to BILP in exchange for BILP's ownership shares in SREO.

g.     Allowing Plaintiffs Mr. Black and/or BILP to pay the legal fees for the services related to the above transaction which was detrimental to its client including but not limited to the creation of Top Road, LLC, the JB 2020 Trust, and the closing of the transfer herein.

h.     Simultaneously acting as an officer of two (2) entities (Top Road, LLC and BILP) in direct conflict with the interests of each other.

427.     Despite its fiduciary duties to its client, Mr. Black and BILP, Defendant Knox breached their duties by intentionally, recklessly and/or negligently:

a.     Failing to protect the financial interests of its clients, Mr. Black and/or BILP in allowing the diversion of BILP's intended ownership interest in Top Road, LLC.

b.     Failing to disclose to and advise its clients, Mr. Black and BILP of the diversion of BILP's intended ownership interest in Top Road, LLC.

c.     Causing and/or allowing Defendant Sumi and the JB 2020 Trust to take over ownership of Top Road, LLC and the Top Road property without any consideration and without its client's knowledge.

d.     Representing Defendant Sumi, JB 2020 Trust and Top Road, LLC in a transaction having obvious conflicts of interest with those of its clients, Mr. Black and BILP.

e.     Misleading Mr. Black to believe BILP was going to own Top Road LLC by stating as much in the original Top Road Novation Agreement signed by all parties then replacing the first page of the original Top Road Novation Agreement.

f.     Preparing the documents for Defendants Sumi, Top Road, LLC and JB 2020 Trust that were necessary to carry out the takeover of ownership of Top Road, LLC and the Top Road property.

g.  Drafting legal documents for the formation of a new entity (Top Road, LLC) knowing that BILP was not the owner but that it was owned by JB 2020 Trust.

h.  Changing the first page of a fully signed/executed document months after its execution, eliminating critical language that led Mr. Black to believe BILP was going to own the new entity known as Top Road, LLC.

i.  Providing Defendants Sumi and Buzzard with legal advice that was contrary to the best interests of its clients, Mr. Black and BILP.

j.  Representing Defendants Sumi, Top Road LLC, and the JB 2020 Trust at the closing of the purchase of the Top Road property knowing full well that Mr. Black and BILP were not going to be the owners.

k.  Failing to inform its clients Mr. Black and BILP of the material change in the ultimate ownership of Top Road, LLC.

l.  Acting as Trustee (Devlin) of the JB 2020 Trust, a direct conflict of the interests of its clients, Mr. Black and BILP.

m.  Failing to inform its clients, Mr. Black and/or BILP of the diversion of ownership of Top Road, LLC and/or the Top Road property while acting as Trustee (Devlin) of the JB 2020 Trust.

n.  Failing, as Trustee of the JB 2020 Trust, to inform its clients, Mr. Black and/or BILP, to cease making unnecessary payments for the maintenance and upkeep of the Top Road property, which payments were the responsibility of Top Road, LLC and/or the JB 2020 Trust.

o.  Changing the first page of a fully executed Novation Agreement (original Top Road Novation Agreement) to take out the reference that BILP owned Top Road, LLC with the actual or constructive knowledge and acquiescence of Defendants Sumi and Buzzard and without the authority of Mr. Black, BILP or any other signatory of the original Top Road Novation Agreement.

p.  Billing for and accepting payment from Mr. Black and/or BILP for the legal fees for the services related to the creation of Top Road, LLC, the JB 2020 Trust and the closing for the transfer therein, all at the detriment of its clients Mr. Black and/or BILP.

q.  Violating its ethical obligation to Plaintiffs Mr. Black and BILP as stated in section 1.7 of the Pennsylvania Rules of Professional Conduct.

r.  Violating its ethical obligation under section 1.2 of the Pennsylvania Rules of Professional Conduct by counseling Defendant Sumi, a

"client" to engage, or assist her in conduct it knew or should have
known was fraudulent, criminal and/or adverse to the interests of its
client, Mr. Black, and BILP.

428.    As a direct and proximate cause of the breach of fiduciary duties detailed above,

Mr. Black and BILP suffered damages in an amount in excess of $250,568.54.

WHEREFORE, Plaintiffs Mr. Black and BILP demand judgment in their favor and against

the Defendants Sumi, Buzzard, and Knox in an amount in excess of $250,568.54 plus interest,

costs and other relief the Court deems appropriate.

## COUNT II
## FRAUD (CONSTRUCTIVE FRAUD)

*Mr. Black and BILP*
*v.*
*Sumi, Buzzard and Knox*

429.    Plaintiff incorporates the allegations of ¶¶ 1- 428 above in this Count II of Chapter

3 as if more fully set forth herein.

430.    Under Pennsylvania Law, *constructive fraud* is a recognized cause of action. See

¶¶ 155-158.

431.    As more fully detailed above and at all times relevant, Defendants Sumi, Buzzard

and Knox had fiduciary duties to Plaintiffs Mr. Black and/or BILP.

432.    As more fully detailed above in Count I of Chapter 3, the Defendants Sumi,

Buzzard, and Knox breached their respective fiduciary duties owned to Mr. Black and BILP.

433.    Plaintiffs Mr. Black and BILP justifiably relied upon Defendants Sumi, Buzzard,

and Knox in this transaction to their determent.

434.    As a result of the Defendants Sumi, Buzzard and Knox's breaches of their respective fiduciary duties, Plaintiffs Mr. Black and BILP have suffered damages in an amount in excess of $250.568.54.

WHEREFORE, Plaintiffs Mr. Black and BILP demand judgment in their favor and against the Defendants Sumi, Buzzard, and Knox in an amount in excess of $250,568.54 plus interest, costs, and other relief the Court deems appropriate.

## COUNT III
## FRAUD (INTENTIONAL MISREPRESENTATION)

### *Mr. Black and BILP*
### *v.*
### *Sumi, Buzzard and Knox*

435.    Plaintiffs incorporate the allegations of ¶¶ 1- 434 above in this Count III of Chapter 3 as if more fully set forth herein.

436.    As more fully detailed above and at all times relevant, Defendants Sumi, Buzzard and Knox had fiduciary duties to Plaintiffs Mr. Black and BILP.

437.    Defendants Sumi, Buzzard and/or Knox intentionally misrepresented to Plaintiffs Mr. Black and BILP that BILP was receiving 301-305 Top Road under Top Road, LLC in exchange for its conveyance of eleven (11) partnership units in SREO.

438.    As more fully detailed above, Defendants Sumi, Buzzard, and Knox, with actual or constructive knowledge and acquiescence of each other, misled Mr. Black and BILP into believing that Top Road, LLC was owned by BILP and that the conveyance of 301-305 Top Road, LLC would make BILP the owner of 301-305 Top Road.

439.    Defendants' misrepresentations were made to divert ownership of Top Road, LLC to Defendant Sumi personally and as beneficiary of the JB 2020 Trust.

440.    As more fully detailed above, Defendants Sumi, Buzzard, and Knox, with actual or constructive knowledge and acquiescence of each other, misled Mr. Black and BILP into believing that BILP was receiving 301-305 Top Road in exchange for its conveyance of eleven (11) partnership units in SREO.

441.    As more fully detailed above, Defendants Sumi, Buzzard, and Knox, with actual or constructive knowledge and acquiescence of each other, and without the authority of Mr. Black or any other signatory changed the first page of a fully executed Novation Agreement (Original Top Road Novation Agreement) to take out the reference that BILP owned Top Road, LLC.

442.    As more fully detailed above, Defendants Sumi, Buzzard, and Knox, with actual or constructive knowledge and acquiescence of each other, and without the authority of Mr. Black or BILP, diverted the real estate known as 301-305 Top Road from a BILP owned LLC to one owned by the JB 2020 Trust, for which Defendant Sumi is beneficiary.

443.    As more fully detailed above, Defendants Sumi, Buzzard, and Knox, with actual or constructive knowledge and acquiescence of each other, and without the authority of Mr. Black or BILP created Top Road, LLC of which sole member is the JB 2020 Trust.

444.    As is more fully detailed above, Defendants Sumi, Buzzard, and Knox intentionally kept information regarding the changes in the Top Road, LLC transaction from Mr. Black and BILP.

445.    As more fully detailed above, Defendants Sumi, Buzzard, and Knox failed to protect the interests of Mr. Black and BILP by allowing ownership of Top Road, LLC and 301-305 Top Road to go to a third party, the JB 2020 Trust.

446.    Defendants Sumi, Buzzard, and Knox's' failure to disclose the diversion of the 301-305 Top Road property was material because Plaintiff Mr. Black individually and as general

partner of BILP relied upon the honest services of Defendants Sumi, and Buzzard as officers and Defendant Knox as the retained personal attorney for Mr. Black and BILP.

447.    Plaintiffs justifiably relied upon the misrepresentations and concealments made by Defendants Sumi, Buzzard, and Knox in that Plaintiffs Mr. Black and BILP paid $25,568.54 for expenses related to the repairs, maintenance, taxes and insurance for 301-305 Top Road through November of 2022 when it was discovered that BILP did not own Top Road LLC.

448.    Defendants Sumi, Buzzard, and Knox's conduct, as more fully described above, was willful, wanton, malicious and oppressive.

449.    Defendant Sumi, Buzzard, and Knox's' conduct has directly, legally, and proximately caused and continues to cause injuries to Plaintiffs Mr. Black and BILP.

450.    As a result of the conduct of the Defendants Sumi, Buzzard and/or Knox as more fully described above, Plaintiffs Mr. Black and BILP have suffered damages in an amount in excess of $250,568.54.

451.    Defendants Sumi and Buzzard engaged in conduct to benefit themselves at the expense of Mr. Black and BILP at a time when they owed fiduciary duties to and stood in a confidential relationship with Mr. Black and BILP.

452.    These transactions were fraudulent and neither fair nor equitable thus constituting constructive and actual fraud upon Mr. Black and BILP.

453.    Defendants Sumi, Buzzard and Knox's misrepresentations were material to the transfer of eleven (11) points of SREO to Mr. Kennedy and SREO.

454.    Defendants' misrepresentations were made to induce Mr. Black and BILP to transfer eleven (11) units of SREO to Mr. Kennedy and SREO.

455. Plaintiffs Mr. Black and BILP justifiably relied upon the misrepresentations made by Defendants Sumi, Buzzard, and Knox in this transaction to their determent.

456. As a result of the intentional misrepresentation of the Defendants Sumi, Buzzard and/or Knox, Plaintiffs Mr. Black and BILP have suffered damages in an amount in excess of $250,568.54.

WHEREFORE, Plaintiffs Mr. Black and BILP demand judgment in their favor and against the Defendants Sumi, Buzzard, and Knox in an amount in excess of $250,568.54 plus punitive damages, interest, costs, and other relief the Court deems appropriate.

## COUNT IV
## CONVERSION

### *Mr. Black and BILP*
### *v.*
### *Sumi, Buzzard, Knox and the JB 2020 Trust*

457. Plaintiffs incorporate the allegations of ¶¶ 1 – 456 above in this Count IV of Chapter 3 as if fully stated herein.

458. Under Pennsylvania Law, a cause of action for conversion is recognized where a defendant deprives another of their right of property or other interference therewith without the owner's consent and without legal justification.

459. Defendants Sumi and JB 2020 Trust, through Buzzard and Knox, have engaged in purposeful conduct intended to deplete, deprive and convert the assets of BILP and Mr. Black in the manner more specifically set forth in this Chapter 3, all of which is incorporated herein.

460. As part of this purposeful course of action intended to deplete, deprive, and convert the private assets of BILP and Mr. Black, Defendants Sumi and JB 2020 Trust, by and through Defendants Buzzard and Knox have:

a.  Deprived BILP of its right to the Top Road Property that Defendants are not entitled to retain since BILP assets (eleven (11) partnership units in SREO) were used as consideration for sole membership of Top Road, LLC.

b.  Deprived BILP of its right to the $25,568.54 used to pay for monthly maintenance expenses for Top Road, LLC property which Defendants are not entitled to retain because BILP had no ownership interest in the Top Road LLC property at the time payments were made.

461.   Defendant Sumi has interfered with BILP's use and possession of Top Road, LLC by refusing to return ownership thereto to BILP and making her own use of it.

462.   BILP has not consented to Defendants' retention of Top Road, LLC.

463.   Defendants have no legal justification for retaining the membership interest in Top Road, LLC.

464.   Defendant has converted BILP's eleven (11) partnership units in SREO.

WHEREFORE, Plaintiffs Mr. Black and BILP demand judgment in their favor and against the Defendants Sumi, Buzzard and Lot Top Road, LLC in an amount in excess of $250,568.54 plus interest, costs, and other relief the Court deems appropriate.

## COUNT V
## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

### *Mr. Black and BILP*
### *v.*
### *Sumi, Buzzard and Knox*

465.   Plaintiffs incorporate the allegations of ¶¶ 1- 464 above in this Count V of Chapter 3 as if more fully set forth herein.

466.   Under Pennsylvania Law, *aiding and abetting breach of fiduciary duty* is a recognized cause of action.  See ¶195.

467.     As described in the foregoing averments of this Complaint, Defendants Sumi, Buzzard, and Knox breached fiduciary duties owed by them to Mr. Black and BILP.

468.     As described above and upon information and belief, Defendants Sumi, Buzzard, and Knox had knowledge of each other's breach of their respective fiduciary duties to Mr. Black and BILP.

469.     As a result of the Defendants Sumi, Buzzard and Knox's breach of their respective fiduciary duties and active assistance in each other's commission of the breaches of fiduciary duties, Plaintiffs Mr. Black and BILP have suffered damages including loss of property, lost income, lost interest and investment opportunities, diminished value of BILP as well as substantial accounting and legal expenses.

WHEREFORE, Plaintiffs Mr. Black and BILP demand judgment in their favor and against the Defendants Sumi, Buzzard, and Knox in an amount in excess of $250,568.54 plus interest, costs, and other relief the Court deems appropriate.

## COUNT VI
## AIDING AND ABETTING FRAUD

### *Mr. Black and BILP*
### *v.*
### *Knox*

470.     Plaintiffs incorporate the allegations of ¶¶ 1 – 469 above in this Count VI of Chapter 3 as if more fully set forth herein.

471.     Under Pennsylvania Law, aiding and abetting fraud is a recognized cause of action. See ¶203.

100

472.     As described in the foregoing averments of this Complaint, and specifically Count III of this Chapter 3, Defendants Sumi, Buzzard and Knox fraudulently and intentionally made misrepresentations to Mr. Black and BILP.

473.     As described above and upon information and belief, Defendant Knox had knowledge of the fraud perpetrated by Defendants Sumi and Buzzard.

474.     Defendant Knox actively and/or blindly assisted in the commission of the fraud perpetrated by Defendants Sumi and Buzzard in the following respects:

a.      By intentionally, recklessly and/or negligently failing to protect the financial interests of its clients, Mr. Black and/or BILP in allowing the diversion of BILP's intended ownership interest in Top Road, LLC.

b.      By intentionally, recklessly and/or negligently failing to disclose to and advise its clients, Mr. Black and BILP of the diversion of BILP's intended ownership interest in Top Road, LLC.

c.      By causing and/or allowing Sumi and the JB 2020 Trust to take over ownership of Top Road, LLC and 301-305 Top Road without any consideration and without its clients' knowledge.

d.      By representing Defendant Sumi, JB 2020 Trust and Top Road, LLC in a transaction having obvious conflicts of interest with those of its clients, Mr. Black and BILP.

e.      By intentionally, recklessly and/or negligently misleading Mr. Black to believe BILP was going to own Top Road, LLC by stating as much in the original Top Road Novation Agreement signed by all parties then replacing that portion of the original Top Road Novation Agreement.

f.      By preparing the documents for Defendants Sumi, Top Road, LLC and JB 2020 Trust that were necessary to carry out the takeover of ownership of Top Road, LLC, and 301-305 Top Road.

g.      By drafting legal documents for the formation of a new entity knowing that BILP was not the owner but that it was owned by JB 2020 Trust.

101

h.      By changing the first page of a fully signed/executed document months after its execution, eliminating critical language that led Mr. Black to believe BILP was going to own the new entity known as Top Road, LLC.

i.      By providing Defendants Sumi and Buzzard with legal advice that was contrary to the best interests of its clients, Mr. Black and BILP.

j.      By representing Defendant Sumi, Top Road, LLC, and the JB 2020 Trust at the closing of the purchase of 301-305 Top Road knowing full well that Mr. Black and BILP were not going to be the owners.

k.      By failing to inform its clients Mr. Black and BILP of the material change in the ultimate ownership of Top Road, LLC.

l.      By acting as Trustee (Devlin) of the JB 2020 Trust, a direct conflict of the interests of its clients, Mr. Black and BILP.

m.      By intentionally failing to inform its clients, Mr. Black and/or BILP of the diversion of ownership of Top Road, LLC and/or 301-305 Top Road while possessing knowledge of the same in its capacity as Trustee (Devlin) of the JB 2020 Trust.

n.      By intentionally failing to inform its clients, Mr. Black and/or BILP, to cease making unnecessary payments for the maintenance and upkeep of 301-305 Top Road, which payments were the responsibility of Top Road, LLC while possessing knowledge of the same in its capacity as Trustee (Devlin) of the JB 2020 Trust.

o.      Intentionally and with actual or constructive knowledge and acquiescence of Defendants Sumi and Buzzard, and without the authority of Mr. Black or any other signatory, changing the first page of a fully executed Novation Agreement (original Top Road Novation Agreement) to take out the reference that BILP Top Road, LLC.

p.      Billing for and accepting payment from Plaintiffs Mr. Black and/or BILP for the legal fees for the services related to the above transaction which caused them significant damage.

q.      Drafting/preparing an amended promissory note changing Top Road, LLC's repayment terms thereby reducing Mr. Black and BILP's interest income payments in the short term and during Mr. Black's lifetime, and to the benefit of Defendants Sumi, Top Road, LLC and JB 2020 Trust.

475.     As a result of Defendant Knox's commission of fraud and active assistance in the commission of the fraud perpetrated by Defendants Sumi and Buzzard as further described herein, Mr. Black and BILP have suffered damages in an amount in excess of $250,568.54.

WHEREFORE, Plaintiffs Mr. Black and BILP demand judgment in their favor and against Defendant Knox in an amount in excess of $250,568.54 plus punitive damages, interest, costs and other relief the Court deems appropriate.

**COUNT VII**
**CIVIL CONSPIRACY**

*Mr. Black and BILP*
*v.*
*Sumi, Buzzard and Knox*

476.     Plaintiffs incorporate the allegations of ¶¶ 1- 475 above in this Count VII of Chapter 3 as if more fully set forth herein.

477.     As more fully detailed above, Defendants Sumi, Buzzard and Knox agreed to perform some or all of the illegal acts or legal acts by illegal means.

478.     Defendants Sumi, Buzzard and Knox have performed multiple overt acts in furtherance of this conspiracy as previously enumerated herein.

479.     As a result of the conspiracy between Defendants Sumi, Buzzard and Knox, Plaintiffs Mr. Black and BILP have suffered damages including loss of property, lost interest and investment opportunities, diminished value of BILP as well as substantial accounting and legal expenses.

480.     Defendants Sumi, Buzzard and Knox have acted in concert in pursuing a common purpose to perform the aforementioned unlawful acts and/or lawful acts by unlawful means for an unlawful purpose making the Defendants liable and responsible for their own wrongful acts against

Plaintiffs as well as for the wrongful conduct of any others acting in concert and conspiracy with them.

481.    Defendants Sumi, Buzzard and Knox have acted with malice or intent to injure Plaintiffs and such actions were without legal cause or justification.

WHEREFORE, Plaintiffs Mr. Black and BILP demand judgment in their favor and against Defendants Sumi, Buzzard, and Knox in an amount in excess of $250,568.54 plus punitive damages, interest, costs of suit and such further relief as this Court deems just and proper.

## COUNT VIII
## UNJUST ENRICHMENT

### *Mr. Black and BILP*
### *v.*
### *Sumi, Top Road, LLC and JB 2020 Trust*

482.    Plaintiffs incorporate the allegations of ¶¶ 1-481 above in this Count VIII of Chapter 3 as if more fully set forth herein.

483.    Under Pennsylvania Law, Unjust Enrichment is recognized where (1) benefits are conferred on a defendant by plaintiff, (2) with an appreciation of such benefits by defendant, and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for the defendant to retain the benefit without payments of value. (See *Wiernik v. PHH U.S. Mortgage Corp.,* 736 A.2d 616 (Pa. Super. Ct. 1999)).

484.    Mr. Black and BILP have conferred a benefit on Defendant Sumi Top Road, LLC, and JB 2020 Trust by way of ownership of  301-305 Top Road, and the payment of $25,568.54 toward  maintenance expenses for 301-305 Top Road.

485.    Defendant Sumi, Top Road, LLC, and JB 2020 Trust have appreciated the ownership of the Top Road property and the $25,568.54 payments toward maintenance expenses for 301-305 Top Road.

486.     It would be inequitable for Defendant Sumi, Top Road, LLC, and JB 2020 Trust to retain ownership of 301-305 Top Road and the $25,568.54 payments toward maintenance expenses for 301-305 Top Road.

487.     Plaintiffs Mr. Black and BILP are further entitled to a constructive trust being entered against Defendant Sumi over the ownership of 301-305 Top Road and the $25,568.54 in payments toward maintenance expenses for 301-305 Top Road.

488.     Plaintiffs Mr. Black and BILP are further entitled to a constructive trust being entered against Top Road, LLC and JB 2020 Trust over the ownership of 301-305 Top Road.

WHEREFORE, Plaintiffs Mr. Black and BILP demand judgment in their favor and against Defendants Sumi, Top Road, LLC and JB 2020 Trust in an amount in excess of $250,568.54 ($225,000.00 purchase price of 301-305 Top Road and $25,568.54  payments toward monthly maintenance expenses for 301-305 Top Road)  as well as a constructive trust in the amount of $250,568.54 plus interest, cost of suit and such other relief that this court deems just and proper.

## COUNT IX
## PRELIMINARY INJUNCTION/TEMPORARY RESTRAINING ORDER

### *Mr. Black and BILP*
### *v.*
### *Sumi, Top Road, LLC and JB 2020 Trust*

489.     Plaintiffs incorporate the allegations of ¶¶ 1-488 above in this Count IX of Chapter 3 as if more fully set forth herein.

490.     Plaintiffs Mr. Black and BILP have provided Defendants Sumi, Top Road, LLC and JB 2020 Trust with an amount in excess of $250.568.54 representing the purchase price of 301-305 Top Road ($225,000.00), and payments toward monthly maintenance expenses for 301-305 Top Road ($25,568.54).

105

491.    Defendants Sumi, Top Road, LLC and JB 2020 Trust are in possession of the $250,568.54 in the form of ownership of 301-305 Top Road and improvements made to Top Road, LLC owned property, 301-305 Top Road.

492.    Until the underlying merits of this lawsuit can be fully adjudicated, Defendants Sumi, Top Road, LLC and JB 2020 Trust should not be permitted to benefit from the transfer, sale, dissipation, or depletion of 301-305 Top Road and the cost of the improvements made to 301-305 Top Road.

493.    Due to the conduct of Defendants Sumi, Top Road, LLC and JB 2020 Trust as more specifically set forth herein, Mr. Black and BILP believe and aver that Defendants Sumi, Top Road, LLC and JB 2020 Trust will act to transfer, sell, dissipate or otherwise deplete the membership interest in Top Road, LLC and/or the property that benefited from the expenditure of BILP funds for improvements and maintenance of the Top Road, LLC owned property, 301-305 Top Road.

494.    A temporary restraining order prohibiting Defendants Sumi, Top Road, LLC and JB 2020 Trust from transferring, selling, dissipating or otherwise depleting the membership interest of Top Road, LLC and/or the property that benefited from the expenditure of BILP funds for improvements and maintenance of the Top Road, LLC owned property, 301-305 Top Road, is appropriate at this time.

495.    Immediate and irreparable injury will result if a restraining order is not entered in that the Defendants Sumi, Top Road, LLC and JB 2020 Trust are likely to transfer, sell, dissipate, or otherwise deplete the membership interest in Top Road, LLC and/or the property that benefited from the expenditure of BILP funds for improvements and maintenance of the Top Road, LLC owned property, 301-305 Top Road.

496.    A preliminary injunction prohibiting Defendants Sumi, Top Road, LLC and JB 2020 Trust from transferring, selling, dissipating, or otherwise depleting the membership interest of Top Road, LLC and/or the property that benefited from the expenditure of BILP funds for improvements and maintenance of the Top Road, LLC owned property, 301-305 Top Road, is appropriate at this time.

497.    Plaintiffs Mr. Black and BILP are likely to succeed on the merits as more fully set forth in this Complaint.

498.    Defendants Sumi, Top Road, LLC and JB 2020 Trust will not suffer unnecessary harm as the request is simply asking for maintaining the status quo of the ownership of the membership interest in Top Road, LLC and the property that benefited from the expenditure of BILP funds for improvements and maintenance of the Top Road, LLC owned property, 301-305 Top Road.

499.    Public interest favors granting an injunction because a person should not be entitled to unearned funds during the pendency of a lawsuit.

WHEREFORE, Plaintiffs Mr. Black and BILP respectfully request that this Court enter a temporary restraining order prohibiting Defendant Sumi, Top Road, LLC and JB 2020 Trust from transferring, selling, dissipating, or otherwise depleting the membership interest of Top Road, LLC and/or the property that benefited from the expenditure of BILP funds for improvements and maintenance of the Top Road, LLC owned property, 301-305 Top Road.

## CHAPTER 4
## 270 NIAGARA POINTE
### *Mr. Black, Erie Management and BILP*
### *v.*
### *Sumi and Buzzard*

500.　The Plaintiffs incorporate the allegations of ¶¶ 1 – 499 above as if fully stated herein.

501.　In the spring of 2017, Defendant Sumi ("Sumi") and her husband, Jason Diebold ("Diebold") desired to purchase the property at 270 Niagara Pointe, Erie, PA. ("270 Niagara"), to use as their personal residence.

502.　As elaborated below, Defendant Sumi and Diebold were able to do this through financing from Mr. Black, using JB, LLC as a pass-through for the provision of Mr. Black's money to Defendant Sumi and Diebold.

503.　On July 13, 2016, Defendant Sumi and Mr. Black created **JB, LLC**, a Pennsylvania limited liability company, for the purpose of purchasing investment real estate to benefit both of them.

504.　At all times material hereto, JB, LLC had two (2), 50% owners/members: 1) BILP (see ¶2); and 2) **SEJ Investment Enterprises, LLC ("SEJ Enterprises")**.

505.　In turn, SEJ Enterprises also had two (2) 50% owners: BILP with a 50% ownership interest and Defendant Sumi with the other 50% ownership interest.

506.　On April 17, 2017, Sumi and Diebold purchased 270 Niagara for the price of $620,000.00, with the financing for same arranged as follows:

    a.　On April 13, 2017, Mr. Black loaned JB, LLC $620,000.00 in exchange for a Promissory Note obligating JB, LLC to repay said sum to Mr. Black.

b.      On the same date, JB, LLC loaned the same sum, $620,000.00 to Defendant Sumi and Diebold, in exchange for a Promissory Note obligating Defendant Sumi and Diebold to repay the $620,000.00 principal plus 4% interest via nine (9) annual installment payment of $76,440.39 beginning on April 13, 2018, and one final payment of $76,440.32 to be paid on April 13, 2027.

c.      On the same date, a Purchase Money Mortgage ("Mortgage") was executed by Defendant Sumi and Diebold, under which the Promissory Note to JB, LLC was secured by a security interest in 270 Niagara. The Mortgage contained the same payment terms as said Promissory Note.

507.    Shortly after closing on 270 Niagara, Defendant Sumi and her husband began spending vast sums of money for renovating, redecorating and embellishment of their new home.

508.    Most of the money used by Defendant Sumi and Diebold for changes made and furnishings for their home came from loans provided by Mr. Black through BILP. More specifically, from June 21, 2018 through January 30, 2020 and in addition to the initial loan for the purchase of 270 Niagara, Mr. Black and BILP loaned Defendant Sumi and Diebold **$1,443,343.90** which the latter used to pay the expenses for their makeover of 270 Niagara as well as other personal expenses. A summarized breakdown of this money is as follows:

a.      Five (5) payments from BILP to Luciano Construction      $ 471,000.00

b.      Five (5) payments from BILP to Steinberg Persia Design      $ 374,475.90

c.      Ten (10) payments from Mr. Black, personally, for Sumi's credit cards and PNC Bank accounts, to Luculano Construction part of which was also used as payment to the U.S. Treasury for Defendant Sumi's and Diebold's personal tax obligations.      $ 597,868.00

509. Both Defendants Sumi and Buzzard acknowledged that these monies were loans from BILP and Mr. Black to Defendant Sumi and her husband Jason, though no Notes were even executed.

510. In or about mid-2022, Defendant Sumi and Diebold decided to refinance their Mortgage for 270 Niagara, as the first step in getting Mr. Black's initial $620,000.00 paid off and then immediately selling the property in order to keep for themselves the hoped-to-be large re-sale profit.

511. Sometime in August 2022 Defendant Sumi and Diebold applied to ERIEBANK for this refinancing.

512. As of August 2022, Defendant Sumi and Diebold had made only two (2) of the annually required payments under the terms of the Mortgage and Promissory Note: $76,440.39 on 3/14/2108 and $76,440.39 on 5/04/2020.  The required 2019, 2021 and 2022 payments had never been paid, and the payoff balance was $561,415.26.

513. On September 2, 2022, Nicole Buzzard, the treasurer of Erie Management and as pled herein, a co-conspirator with Defendant Sumi, presented to Mr. Black a MEMO with a letter to be signed by him informing him of the intent of Defendant Sumi and Diebold to pay off the 270 Niagara Mortgage to JB, LLC and then have JB, LLC pay off the $620,000.00 loan from Mr. Black.

514. In this 9/02/2022 MEMO, Buzzard alleged that the total payoff amount was not $561,415.26, but only $354,892.95. In addition, Buzzard provided a spreadsheet supporting her claim that the balance was only $354,892.95, and asked Mr. Black to sign a letter Buzzard had prepared agreeing to this erroneous figure. (A copy of said MEMO, letter and spreadsheet is collectively attached as it was present to Mr. Black as **Exhibit 49.**)

110

515.     At the time Buzzard presented this Memo, letter and spreadsheet to Mr. Black, she knew that it was falsely understated, as she based her $354,892.95 payoff amount upon the false claim that Defendant Sumi and Diebold had paid their required 2019, 2021 and 2022 annual payments, even though Buzzard knew, and all genuine records and documents demonstrated that they had paid none of those installments.  Additionally, and in furtherance of this deliberate ruse, Buzzard personally instructed other employees in the accounting department to indicate "in the books" that every installment payment due from Defendant Sumi and Diebold since 2018 had been made, even though that was not true.

516.     By this time Mr. Black had retained new counsel.  Mr. Black therefore refused to sign the letter provided by Buzzard and, through new counsel, disputed that the total Mortgage payoff was only $354,892.95, contending instead that the true total payoff amount was $561,415.26.

517.     On September 12, 2022, Defendant Sumi and Mr. Black signed a UNANIMOUS CONSENT IN LIEU OF MEETING OF MEMBERS OF JB, LLC, which resolved that Defendant Sumi and Diebold, as part of a refinance with ERIEBANK, would fully satisfy the payoff amount on the Mortgage and Promissory Note owed ultimately to Mr. Black, at a future-determined final amount verified by an audit.  (A copy of said Unanimous Consent document is attached hereto as **Exhibit 50**.)

518.     Defendant Sumi and Diebold eventually acknowledged having made only two (2) payments and owing $561,415.56 plus interest.

519.     On or about January 24, 2023, Defendant Sumi and Diebold sold 270 Niagara for $1,225,000.00.

520.    From the $1,225.000.00 sale price, $561,415.26 was paid to JB, LLC and then to Mr. Black as full satisfaction of the Mortgage and Promissory Note.

521.    The remaining balance of the net proceeds of this sale were kept by Defendant Sumi and/or Diebold, neither of whom provided any re-payment to Mr. Black of any portion of the $1,443,343.90 which he had loaned them for their extravagant renovations at and improvement of 270 Niagara.

522.    As a result of the conduct of Defendants Sumi and Buzzard, as more fully described herein, all of which was willful, wanton, malicious and oppressive, Mr. Black, Erie Management and BILP have sustained damages as set forth herein.

**COUNT I**
**BREACH OF FIDUCIARY DUTY**

***Mr. Black, BILP and Erie Management***
***v.***
***Sumi and Buzzard***

523.    Plaintiffs incorporate the allegations of ¶¶ 1-522 above in this Count I of Chapter 4 as if fully stated herein.

524.    Under Pennsylvania Law, *breach of fiduciary duty* is recognized as a cause of action. See ¶¶ 141 and 142.

525.    The agencies of Defendants' Sumi and Buzzard arose by virtue of their positions respectively as COO and VP of Finance of Erie Management.

526.    The agencies of Defendants' Sumi and Buzzard arose by virtue of their positions respectively as Secretary and Treasurer of both BILP and Erie Management.

527.     Defendant Buzzard served as VP of Finance for Erie Management from February 14, 2018, to September 2, 2022, and as such, had a legal and fiduciary duty to maintain the accounts of Erie Management as well as the amounts of Erie Management clients including BILP.

528.     At all times relevant, Defendant Sumi served as an Officer of Erie Management and also maintained a close, personal, and confidential relationship with Mr. Black and as such had a legal and fiduciary duty to Erie Management, Mr. Black, and all Mr. Black related entities.

529.     Both Sumi and Buzzard owed fiduciary duties to Erie Management as officers and employees thereof including a duty of loyalty and a duty to exercise reasonable care in the performance of their responsibilities including proper management and accurate accounting of all Erie Management clients, Mr. Black's entities including BILP, and Mr. Black as General Partner of BILP.

530.     Despite their fiduciary duties to and confidential relationship with Erie Management, BILP and Mr. Black, Defendants Sumi and Buzzard engaged in a pattern of self-dealing conduct intended to enrich themselves individually by:

    a.     Manipulating, influencing, and otherwise directing changes in the accounting records in such a manner as to show loan/mortgage payments having been made to BILP and Mr. Black when in fact they were not, all to the benefit of Defendant Sumi.

    b.     Intentionally, recklessly and/or negligently failing to disclose to Mr. Black, BILP and Erie Management the extent to which Mr. Black and BILP funds were being used for extravagant improvements to property owned by Defendant Sumi.

    c.     Intentionally, recklessly and/or negligently failing to properly document as loans and/or mortgages the vast monies expended by Mr. Black and BILP for the extravagant improvements to property owned by Defendant Sumi.

    d.     Intentionally, recklessly and/or negligently failing to acknowledge the loans made by Mr. Black and BILP for the personal benefit of Defendant Sumi.

531.    As a direct and proximate cause of the breach of fiduciary duties detailed above, Black, Erie Management and BILP suffered damages in the amount of **$1,443,343.90**

WHEREFORE, Plaintiffs Erie Management Group, BILP and Mr. Black demand judgment in their favor and against the Defendants Sumi and Buzzard in an amount in excess of **$1,443,343.90** plus punitive damages, interest, costs, and other relief the Court deems appropriate.

**COUNT II**
**FRAUD (CONSTRUCTIVE FRAUD)**

***Erie Management, Mr. Black and BILP***
***v.***
***Sumi and Buzzard***

532.    Plaintiffs incorporate the allegations of ¶¶ 1- 531 above in this Count II of Chapter 4 as if more fully set forth herein.

533.    Under Pennsylvania Law, *constructive fraud* is recognized as a cause of action. See ¶¶ 155-158.

534.    As more fully detailed above and at all times relevant, Defendants Sumi and Buzzard had a fiduciary duty to Plaintiffs Erie Management, Black and/or BILP.

535.    As more fully detailed above in Count I of this Chapter 4, the Defendants Sumi and Buzzard breached their respective fiduciary duties owned to Plaintiffs Mr. Black, Erie Management and BILP.

536.    Plaintiffs justifiably relied upon the Defendants Sumi and Buzzard to exercise reasonable care, loyalty, and good faith in their conduct as employees and officers, all to the detriment of the Plaintiffs.

537.     As a result of Defendants Sumi and Buzzard's breaches of their respective fiduciary duties, Plaintiffs Mr. Black, Erie Management and BILP have suffered damages in an amount in excess of $1,443,343.90.

WHEREFORE, Plaintiffs Mr. Black, Erie Management and BILP demand judgment in their favor and against the Defendants Sumi and Buzzard in the amount of $1,443,343.90 plus punitive damages, interest, costs and other relief the Court deems appropriate.

## COUNT III
## FRAUD (INTENTIONAL MISREPRESENTATION)

### *Erie Management, Mr. Black, and BILP*
### *v.*
### *Sumi and Buzzard*

538.     Plaintiffs incorporate the allegations of ¶¶ 1- 537 above in this Count III of this Chapter 4 as if more fully set forth herein.

539.     As more fully detailed above and at all times relevant, Defendants Sumi and Buzzard had a fiduciary duty to Plaintiffs Erie Management, Mr. Black and BILP.

540.     As more fully detailed above, Defendants Sumi and Buzzard, with actual or constructive knowledge and acquiescence of each other, misled Plaintiffs Erie Management, Mr. Black and BILP into believing that BILP would be receiving repayment of all monies provided to Defendant Sumi in the extensive renovations to her property and for her personal use.

541.     Defendants' misrepresentations were made to induce Plaintiffs Erie Management, Black and BILP to continue providing excessive funding for renovations to property owned by Defendant Sumi and for her personal use.

542.     As more fully detailed above, Defendants Sumi and Buzzard, with actual or constructive knowledge and acquiescence of each other, misled Plaintiffs Erie Management, Mr.

Black and BILP into believing that Defendant Sumi had been making timely payments on the loan obligation for the purchase of the 270 Niagara property.

543.   As more fully detailed above, Defendants Sumi and Buzzard with actual or constructive knowledge and acquiescence of each other, directed and/or manipulated the accounting records of Erie Management as accountants for Mr. Black and BILP to reflect that Defendant Sumi had been making timely payments to BILP and Mr. Black of the loan obligation for the purchase of the 270 Niagara property.

544.   As more fully detailed above, Defendants Sumi and Buzzard intentionally kept from Mr. Black and BILP information regarding Defendant Sumi's failure to make timely payments to BILP and Mr. Black for the loan obligation for the purchase of the 270 Niagara property.

545.   As more fully detailed above, Defendants Sumi and Buzzard failed to protect the interests of Erie Management in its capacity as administrative service providers for Mr. Black and BILP.

546.   Plaintiffs justifiably relied upon the misrepresentations and concealments made by Defendants Sumi and Buzzard to their detriment in that Plaintiffs continued providing excessive funding for renovations to property owned by Defendant Sumi in that Plaintiffs Erie Management, Mr. Black and BILP continued to use the services of Erie Management and BILP's officers with the justifiable belief that they were receiving honest services while protecting the interests of Erie Management, Mr. Black and BILP.

547.   Defendants Sumi and Buzzard's conduct, as more fully described above, was willful, wanton, malicious and oppressive.

548.    Defendants Sumi and Buzzard's unlawful conduct has directly, legally, and proximately caused and continues to cause injuries to Plaintiffs Erie Management, Mr. Black and BILP.

549.    Defendant Sumi, with the assistance of Buzzard engaged in conduct to benefit herself at the expense of Erie Management, Mr. Black and BILP during a time when she owed fiduciary duties to and stood in a confidential relationship to Erie Management, Mr. Black and BILP.

550.    These transactions were fraudulent and neither fair nor equitable; therefore, these transactions constitute constructive fraud on Plaintiffs Erie Management, Mr. Black and BILP.

551.    As a result of the intentional misrepresentations of the Defendants Sumi and Buzzard Plaintiffs Erie Management, Mr. Black and BILP have suffered damages in an amount in excess of $1,443,343.90.

WHEREFORE, Plaintiffs Erie Management, Mr. Black and BILP demand judgment in their favor and against the Defendants Sumi and Buzzard in the amount of $1,443,343.90 plus punitive damages, interest, costs and other relief the Court deems appropriate.

## COUNT IV
## CONVERSION

### *Mr. Black and BILP*
*v.*
### *Sumi*

552.    Plaintiffs incorporate the allegations of ¶¶ 1 – 551 above in this Count IV of Chapter 4 as if fully stated herein.

553.    Under Pennsylvania Law, a cause of action for conversion is recognized where a defendant deprives another of their right of property or other interference therewith without the owner's consent and without legal justification.

554.    Defendant Sumi, by and through Buzzard, has engaged in purposeful conduct intended to deplete, deprive and convert the assets of BILP and Mr. Black in the manner more fully set forth in this Chapter 4, all of which are incorporated herein.

555.    As part of this purposeful course of action intended to deplete, deprive, and convert the private assets of Plaintiffs BILP and Mr. Black, Defendant Sumi, by and through Defendant Buzzard, has deprived Plaintiff BILP of its right to the $1,443,343.90 used to pay for renovations to 270 Niagara without BILP's consent and without legal justification and for which Defendant is not entitled to retain.

556.    Defendant Sumi has interfered with Plaintiff BILP's use and possession of $1,443,343.90 by refusing to return any portion thereof to Plaintiff BILP and making those funds for her own use of it.

557.    Plaintiff BILP has not consented to Defendants' retention of $1,443,343.90.

558.    Defendants have no legal justification for retaining the $1,443,343.90.

559.    Defendant has converted Plaintiff BILP's assets in the amount of $1,443,343.90.

WHEREFORE, Plaintiffs Mr. Black and BILP demand judgment in their favor and against Defendant Sumi in the amount of $1,443,343.90 plus punitive damages, interest, costs, and other relief the Court deems appropriate.

## COUNT V
## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

### *Erie Management, Mr. Black and BILP*
*v.*
### *Sumi and Buzzard*

560.    Plaintiffs incorporate the allegations of ¶¶ 1- 559 above in this Count V of Chapter 4 as if more fully set forth herein.

561.    Under Pennsylvania Law, *aiding and abetting breach of fiduciary duty* is recognized as a cause of action.  See ¶195.

562.    As described in the foregoing averments of this Complaint, Defendants Sumi and Buzzard breached fiduciary duties owed by them to Plaintiffs Erie Management, Mr. Black and BILP.

563.    As described above and upon information and belief, Defendants Sumi and Buzzard had knowledge of each other's fiduciary duties and breach thereof to Plaintiffs Erie Management, Mr. Black and BILP.

564.    As a result of the Defendants Sumi and Buzzard's breach of their respective fiduciary duties, Plaintiffs Erie Management, Mr. Black and BILP have suffered damages including loss of cash, lost interest, and investment opportunities as well as substantial accounting and legal expenses, all in excess of $1,443,343.90.

565.    As a result of Defendants Sumi and Buzzard's breaches, Plaintiffs Erie Management, Black and BILP have suffered damages in excess of $1,443,343.90.

WHEREFORE, Plaintiffs Erie Management, Mr. Black and BILP demand judgment in their favor and against the Defendants Sumi and Buzzard in the amount of $1,443,343.90 plus punitive damages, interest, costs, and other relief the Court deems appropriate.

## COUNT VI
## CIVIL CONSPIRACY

### *Erie Management, Mr. Black and BILP*
### *v.*
### *Sumi and Buzzard*

566.    Plaintiffs incorporate the allegations of ¶¶ 1- 565 above in this Count VI of this

Chapter 4 as if more fully set forth herein.

567.    As more fully detailed above, Defendants Sumi and Buzzard agreed to perform

some or all of the following illegal acts or legal acts by illegal means:

   a.    Manipulating, influencing, and otherwise directing changes in the
         accounting records in such a manner as to show loan/mortgage
         payments having been made to BILP and Mr. Black when in fact
         they were not, all to the benefit of Defendant Sumi.

   b.    Intentionally, recklessly and/or negligently failing to disclose to Mr.
         Black, BILP and Erie Management the extent to which Mr. Black
         and BILP funds were being used for extravagant improvements to
         property owned by Defendant Sumi.

   c.    Intentionally, recklessly and/or negligently failing to properly
         document as loans and/or mortgages the vast monies expended by
         Mr. Black and BILP for the extravagant improvements to property
         owned by Defendant Sumi.

568.    Defendants Sumi and Buzzard have performed multiple overt acts in furtherance of

this conspiracy including acts previously enumerated herein.

569.    As a result of the conspiracy between Defendants Sumi and Buzzard, Plaintiffs Erie

Management, Mr. Black and BILP have suffered damages including lost interest and investment

opportunities, diminished value as well as substantial accounting and legal expenses.

570.    Defendants Sumi and Buzzard have acted in concert in pursuing a common purpose

to perform the aforementioned unlawful acts and/or lawful acts by unlawful means for an unlawful

purpose making the Defendants liable and responsible for their own wrongful acts against

120

Plaintiffs as well as for the wrongful conduct of any others acting in concert and conspiracy with them.

571.    Defendants Sumi and Buzzard have acted with malice or intent to injure Plaintiffs and such actions were without legal cause or justification.

WHEREFORE, Plaintiffs Erie Management, Mr. Black and BILP demand judgment in their favor and against Defendants Sumi and Buzzard in the amount of $1,443,343.90 plus punitive damages, interest, costs of suit and such further relief as this Court deems just and proper.

## COUNT VII
## UNJUST ENRICHMENT

### *Erie Management, Mr. Black and BILP*
### *v.*
### *Sumi*

572.    Plaintiffs incorporate the allegations of ¶¶ 1- 571 above in this Count VII of Chapter 4 as if more fully set forth herein.

573.    Under Pennsylvania Law, Unjust Enrichment is recognized where (1) benefits are conferred on a defendant by plaintiff, (2) with an appreciation of such benefits by defendant, and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for the defendant to retain the benefit without payments of value. (See *Wiernik v. PHH U.S. Mortgage Corp.,* 736 A.2d 616 (Pa. Super. Ct. 1999)).

574.    Mr. Black and BILP have conferred a benefit on Defendant Sumi by way of payment of $1,443,343.90 toward extravagant remodeling of the 270 Niagara real estate by Defendants Sumi and her husband.

575.    Defendant Sumi has appreciated the benefits of the member ownership of the Plaintiffs' expenditure of $1,443,343.90 toward extravagant remodeling of the 270 Niagara real estate and other personal expenditures by Defendant Sumi and her husband.

576.    It would be inequitable for Defendant Sumi to, at a minimum, retain the profit she made from the sale of 270 Niagara, or in the alternative, the full amount expended by the Plaintiffs of $1,443,343.90.

WHEREFORE, Plaintiffs Mr. Black and BILP demand judgment in their favor and against Defendant Sumi in the amount of $1,443,343.90 plus punitive damages, interest, cost of suit and such other relief that this court deems just and proper.

## CHAPTER 5
## LOT 289, LLC

*Mr. Black, Erie Management, SB3 and BILP*

*vs.*

*Sumi, Buzzard, Lot 289, LLC and James Black 2020 Irrevocable Trust*

577.     The Plaintiffs incorporate the allegations of ¶¶ 1 – 576 by reference thereto and made a part hereof as though fully set forth herein.

578.     As previously pled in this Complaint, on July 13, 2016, Sumi and Mr. Black created **JB, LLC**, a Pennsylvania limited liability company, for the purpose of purchasing investment real estate to benefit both of them. (See ¶ 507.)

579.     At all times material hereto, JB, LLC had two (2), fifty (50%) percent owners/members: 1) BILP, which was ninety-five (95%) percent owned by Mr. Black (see ¶ 2) and 2) SEJ Investment Enterprises, LLC ("SEJ Investment"), which was owned solely by Defendant Sumi until 2018, when BILP became a fifty (50%) percent owner. (See ¶¶ 2 and 5.)

580.     In turn, SEJ Enterprises also had two (2) 50% owners: BILP with a 50% ownership interest and Defendant Sumi with the other 50% ownership interest.

581.     On May 8, 2020, Defendant Sumi created the **James-Black 2020 Irrevocable Trust ("JB 2020 Trust")** for the primary purpose of acquiring, maintaining, and improving real property for use of, benefit of and ultimate distribution to Defendant Sumi and her descendants. (A copy of said Trust Agreement is attached hereto as **Exhibit 51.**)

582.     The JB 2020 Trust Agreement which created the JB 2020 Trust was drafted by Defendant Knox --- Mr. Black's attorney --- and Attorney Neil R. Devlin, a shareholder of Defendant Knox, was appointed as Trustee for said Trust.

583.     As of the current date, Devlin remains as Trustee of the JB 2020 Trust.

584.     All communications between Defendants Sumi and Knox regarding the creation of JB 2020 Trust were done without notice to, knowledge of or participation by Mr. Black.

585.     On the same date that Defendant Sumi created the JB 2020 Trust --- May 8, 2020 --- she also created **Lot 289, LLC, the sole owner and member of the JB 2020 Trust**. (See Lot 289, LLC Certificate of Organization, **Exhibit 52**.)

586.     The Organizer who filed the Certificate of Organization for the creation of Lot 289 LLC was Attorney Jerome C. Wegley, a shareholder of defendant Knox --- Mr. Black's attorney.

587.     Defendant Buzzard, who as previously noted herein was at all times material hereto an employee and officer of most of Mr. Black's companies, was appointed as the Operating Manager of Lot 289, LLC.

588.     All communications between Defendants Sumi, Buzzard, and Knox regarding the creation of Lot 289, LLC were done without notice to, knowledge of or participation by Mr. Black.

589.     No one informed Mr. Black that the JB 2020 Trust was the sole member of Lot 289, LLC.

590.     Seven (7) days after its creation --- on May 15, 2020 --- Lot 289, LLC purchased the real estate property known as **289 Niagara Pointe, Erie, Pennsylvania ("289 Niagara")** for a purchase price of $865,000.00. With added closing costs, the total purchase cost was $905,881.57.

591.     All of the money used for Lot 289, LLC's purchase of 289 Niagara came from Mr. Black, specifically through BILP, in exchange for a promissory note from Lot 289, LLC for the sum of $905,881.57. The terms of the note were extremely favorable for Lot 289, LLC, setting interest at only 1.15% and annual principal and interest payments from Lot 289, LLC to BILP of $35,892.56 for twenty-nine (29) years, the last payment coming due on May 15, 2050. The

Promissory Note was dated and signed on May 15, 2020, by Defendant Buzzard, as Manager of Lot 289, LLC. (A copy of this Promissory Note is attached hereto as **Exhibit 53**). The Promissory Note was secured by a Mortgage between Lot 289, LLC (mortgager) and BILP (mortgagee).

592.   Very shortly after its purchase, Sumi made lavish renovations to 289 Niagara, for which she characterized as a "Coco Chanel themed personal palace" (See **Exhibit 54**) the costs for which would eventually exceed $1,000,000.00. Some of these renovations include:

      a.      Saltwater swimming pool;

      b.      "Highest end design finish";

      c.      Wine room;

      d.      Theatre room; and

      e.      Exercise room.

593.   When the renovations at 289 Niagara were completed, Sumi moved from 270 Niagara into and made 289 Niagara her personal residence.

594.   Again, the sole owner of Lot 289, LLC is JB 2020 Trust.

595.   As the sole owner of Lot 289, LLC, the JB 2020 Trust, per its aforesaid Trust Agreement, was to pay for all expenses arising from Lot 289, LLC's acquisition, maintenance, improvements, and renovations of real property.

596.   The JB 2020 Trust Agreement provided that the JB 2020 Trust is to pay all expenses related to property owned by said Trust.  (See Article II, A., 1 and Article IV, A of the Trust Agreement: "The Trustee *shall* use income and principal of the trust to acquire, maintain, and improve real property" – emphasis added.)

597.   As described further below, to avoid using her own money and/or money from the JB 2020 Trust to pay for these renovations, Defendant Sumi surreptitiously directed the diversion

of funds from Mr. Black and some of his business entities to pay for the 289 Niagara renovations costs. This was done in a manner which hid both the true source and the true amount of the funds being spent on the property. More specifically and as explained in more detail below, monies were transferred from Mr. Black and/or his entities to the JB checking account, then simultaneously to Defendant Sumi or to contractors.

598.   On November 30, 2020, Mr. Black, through his business entity BILP, provided a line of credit note ("LOC") to Defendant Sumi, personally, up to the amount of $350,000.00. This was accomplished through the following two steps taken the same day:

a.   Providing a LOC to JB, LLC as obligor and BILP the obligee --- signed by Mr. Black as President of JB, LLC and by Mr. Black as Managing Partner of BILP --- providing up to $350,000.00 to JB, LLC, with repayment terms and interest at Applicable Federal rates over thirty (30) years*; and simultaneously*,

b.   Providing a LOC, to Sumi, personally as obligor, and JB, LLC the obligee --- signed by Sumi-James Black, Personally, and by Mr. Black as President of JB, LLC --- providing up to $350,000 to Sumi, personally, with repayment terms and interest at Applicable Federal rates over 30 years.  (Copies of both LOC's are attached hereto as **Exhibit 55**.)

599.   From December 8, 2020, through June 1, 2021, Defendants Sumi and Buzzard orchestrated deposits totaling $322,166.00 into the bank account of JB, LLC via *six (6) money wire transfers.*  Each of these separate money wire transfers was then used to pay contractors involved in the renovations at Lot 289, LLC's property, 289 Niagara.  But, the source of this $322,166.00 was 1) not BILP, pursuant to the LOC's noted in ¶ 602, and 2) not the JB 2020 Trust, per that Trust's Trust Agreement.  Instead --- unbeknownst to Mr. Black and at the direction and instruction of Defendant Sumi and Buzzard --- the source of these *six (6) wire transfers* was a different business entity owned by Mr. Black, namely, **SB3, LLC.**  (SB3, LLC is the property management company which owns the office complex and industrial park at 1540 East Lake Road,

and which is owned by S.P. Black Family Holdings; see ¶ 6 of the "Parties" section of this Complaint).  (See wire transfers, **Exhibit 56**.)

600.    Defendants Sumi and Buzzard orchestrated the above pass-through payments from SB3, LLC to the JB, LLC bank account directly to contractors in order to hide from Mr. Black the true source and amounts of the 289 Niagara renovation payments as Mr. Black would believe that this money would be coming from BILP per the aforementioned original $350,000.00 LOC, see ¶ 602. Buzzard recorded the previously mentioned $322,166.00 transfers as part of the original $350,000.00 LOC.

601.    Despite the injection of the above SB3, LLC money, Defendant Sumi still lacked sufficient funds to pay for the 289 Niagara renovation costs.  A July 7, 2021, Memo from Buzzard to Mr. Black and Defendant Sumi (and copied to Attorney Neal Devlin of Knox Law) stated that there were "immediate cash needs for Lot 289, LLC renovations estimated at $350,000", and that $350,000.00 from Mr. Black's personal Kraken account --- after sales from Mr. Black's Bitcoin holdings --- would be deposited to Sumi's personal ErieBank account directly.  (A copy of this July 7, 2021, Memo is attached hereto as **Exhibit 57**.)

602.    In response, on August 1, 2021, Sumi executed an Installment Judgment Note in favor of Mr. Black in which Sumi, personally, bound herself to repay Mr. Black, the principal sum of $350,000 which had been lent her (see paragraph above), plus interest. (A copy of said Installment Judgment Note is attached as **Exhibit 58**.)  This money was used to pay for contractor services at 289 Niagara.

603.    Still more money was needed by Defendant Sumi to pay for the on-going renovations.  As a result, on October 14-15, 2021, Buzzard, at Defendant Sumi's direction, deposited (in two (2) transactions) $82,576.00 into the JB, LLC bank account from a bank account

of **SJB Investment Enterprises, LLC ("SJB Investment")**, a company 100% owned by Defendant Sumi. However, the actual source of this $82,576.00 was a large deposit of money derived from the sale of <u>Mr. Black's personal Bitcoin holdings</u> and then *wired* into Defendant Sumi's SJB Investment account. (See wire transfer, **Exhibit 59**.) Mr. Black had authorized this deposit, but under false pretenses of Defendants Sumi and Buzzard that his money was being used for Mr. Black/Erie Management to purchase another company, Networking Technologies, Inc. (a purchase which Defendant Sumi, with Buzzard's assistance, subsequently and surreptitiously prevented), not to pay for renovations costs at 289 Niagara.  (See Chapter 1 of this Complaint.) Again, Buzzard recorded this as an additional draw from the original $350,000.00 LOC with full knowledge that this would overdraw the LOC by $54,742.00 ($322,166.00 + $82,576.00 = $404,742.00).  This was done without the knowledge or consent of Mr. Black.

604.    Still more money was needed by Defendant Sumi to pay for the on-going renovations, so Sumi instructed Buzzard to divert funds from another of Mr. Black's business entities --- **Erie Management** (see ¶3 of the PARTIES section of this Complaint) beginning in November 2021.  Buzzard, without notice to or knowledge of Mr. Black, deposited a total of $103,973.00 from Erie Management into JB, LLC's bank account, which monies were used by Defendant Sumi to pay for her renovations to 289 Niagara. (See $103,973.00 deposits, **Exhibit 60**.)

605.    Still more money was needed by Defendant Sumi to pay for the on-going renovations, so on March 18, 2022, Defendants Sumi and Buzzard used another *wire transfer* to divert an additional $136,991.00 from SB3, LLC --- without notice or knowledge to or authorization from Mr. Black --- to Erie Management's account then to JB, LLC's bank account,

and that money was then used to pay for more of the renovation costs. (See wire transfer, **Exhibit 61**.)

606.    One week later, Defendants Sumi and Buzzard exchanged emails regarding questions from Mr. Black and his executive assistant about how his funds were being used. Buzzard prepared an email in response to Mr. Black's inquiry which she sent to Defendant Sumi first for her approval. Buzzard's initial draft showed $89,000.00 of Mr. Black's own funds going toward 289 Niagara renovations. In response, Defendant Sumi told Defendant Buzzard in an email, "Hide 289", to which Buzzard responds, "I'll rename and then circulate it out later today".  (A copy of the 3/25/22 emails are attached hereto as **Exhibit 62**.) The $89,000.00 and reference to 289 Niagara were eliminated.

607.    Except for the loans mentioned in ¶¶ 602 and 606 above, Mr. Black was never made aware that any of the aforesaid funds from SB3, LLC, from Erie Management, or from his Bitcoin sales proceeds deposited to the SBJ Investment account were being used to pay for Lot 289, LLC's renovations at 289 Niagara.

608.    In late 2021, due in large part to the $103,973.00 of Erie Management funds secretly transferred by Buzzard to JB, LLC's bank account to pay for Defendant Sumi's renovations to 289 Niagara, Erie Management was struggling to meet its monthly payments and payroll obligations. (See, e.g. 12/01/2021 email attached hereto as **Exhibit 63**, from Buzzard, responding to Defendant Sumi's email seeking funds to pay for countertops at 289 Niagara, in which Buzzard states, "I'm going to be hard pressed to make all appropriate payments/payroll etc. this month", and goes on to suggest options involving selling off more of Mr. Black's personal assets.)

609.    As a result, Defendant Buzzard, at the direction or acquiescence of Defendant Sumi, took money from another one of Mr. Black's businesses --- Black Insurance Group ("Black

Insurance", see ¶4 of the "Parties" section of this Complaint) --- and deposited the Black Insurance money into Erie Management's bank account so that Erie Management could meet its payroll obligations.   This was accomplished by Buzzard since Erie Management provided accounting services for Black Insurance at that time, and Buzzard, as the Vice President of Finance and Accounting for Erie Management, was in charge of those accounting services. This, in turn, caused Black Insurance's Erie Bank Account to have insufficient funds to cover the payroll checks Black Insurance issued to its own employees in January 2022. (See June 7, 2023, Affidavit of Kevin Hughes, President of Black Insurance, attached hereto as **Exhibit 64**.)  This was done without Mr. Blacks knowledge or consent. It was also done without the knowledge or consent of Black Insurance President, Kevin Hughes.

610.    Buzzard subsequently lied to Kevin Hughes when he confronted her about her unauthorized, secret transfer of $105,100.00 out of the Black Insurance bank account. From Kevin Hughes' Affidavit (**Exhibit 64**):

> "*9.     That on or about February 18, 2022, I confronted Nicole Buzzard about the withdrawals from the Agency account. She initially termed the withdrawals as a "loan" to Erie Management for its financial support. She then also stated that the withdrawn money would be invested in a money market account to maximize its investment potential with a possible distribution in June of 2022.*
>
> *10.     That on June 9, 2022, I again approached Nicole Buzzard and inquired as to the status of the $105,000 withdrawn from the Agency account. Nicole Buzzard's response was that the funds were no longer available, and the Payable note would remain with EMG until things changed.*
>
> *11.     That Nicole Buzzard resigned her position at EMG in August of 2022 and to this date, the Agency has not received any of the withdrawn money.*"

611.    Mr. Black was eventually forced to pay from his personal funds the $105,100.00 unlawfully taken from Black Insurance by Buzzard.

612.    Regarding the initial May 15, 2020, Promissory Note of $905,881.57 for the purchase of 289 Niagara, at Defendant Sumi's insistence and direction, the Knox firm, Mr. Blacks attorney, drafted a First Amendment to the $905,881.57 Promissory Note in order to reduce Defendant Sumi's annual payment obligation.  Defendant Sumi's payment obligations went from $35,892.56 annually to $10,227.64 per annum (*interest only*) for the first five (5) years, with installments of interest and principal then payable over the next twenty-five (25) years.  (Said Amendment is attached hereto as **Exhibit 65**.)

613.    The total owed by Lot 289 LLC to BILP per the original line of credit is $350,000.00 (this does not include the overdrawn amount of $54,742.00).

614.    The total owed by Defendant Sumi to Mr. Black personally is $350,000.00 per August 1, 2021 Installment Judgment Note.

615.    The total owed by Defendant Sumi to Mr. Black for the unauthorized diversion of funds previously described (See ¶¶ 604, 605 and 610) along with the unauthorized overdraw of $54,742.00 from the LOC (See ¶ 603) is $400,806.00.

616.    To date, no money towards the principal sums of the above-described funds taken by Defendant Sumi and Buzzard and Lot 289, LLC from Mr. Black, BILP, SB3 LLC, Erie Management, or Black Insurance for the purchase of and/or renovations to 289 Niagara have ever been repaid by Defendants Sumi, Buzzard, Lot 289 or the JB 2020 Trust, despite demand for said payments having been made.

617.    To date, Defendant Sumi denies owing any of the funds borrowed from the line of credit, note and unauthorized diversion of funds totaling $1,100,806.00 (See ¶¶ 613, 614 and 615) plus interest.

618.    When the renovations at 289 Niagara were completed, Sumi moved into and made 289 Niagara her personal residence.

619.    In the summer of 2023, Sumi listed 289 Niagara for sale for the price of $2,325,000. The property currently remains listed for sale.

620.    As a result of the conduct of Defendants Sumi and Buzzard, Plaintiffs Mr. Black, Erie Management, SB3 and BILP have sustained damages in the amount of $1,100,806.00 plus interest.

## COUNT I
## BREACH OF FIDUCIARY DUTY

### *Mr. Black, Erie Management, SB3 and BILP*
### *v.*
### *Sumi and Buzzard*

621.    Plaintiffs incorporate the allegations of ¶¶ 1-620 above in this Count I of Chapter 5 as if fully stated herein.

622.    Under Pennsylvania Law, *breach of fiduciary duty* is recognized as a cause of action. See ¶¶ 141 and 142.

623.    The agency of Defendants Sumi and Buzzard arose by virtue of their positions as employees respectively as COO and VP of Finance of Erie Management.

624.    The agency of Defendants Sumi and Buzzard also arose by virtue of their positions respectively as Secretary and Treasurer of Erie Management.

625.    The agency of Defendants Sumi and Buzzard also arose by virtue of their positions respectively as Secretary and Treasurer of SB3.

132

626.     The agency of Defendants Sumi and Buzzard also arose by virtue of their positions respectively as Secretary and Treasurer of Black Insurance.

627.     The agency of Defendants Sumi and Buzzard also arose by virtue of their positions respectively as Secretary and Treasurer of BILP.

628.     Defendant Buzzard served as VP of Finance for Erie Management from February 14, 2018, through September 2, 2022, and as such, had a legal and fiduciary duty to maintain the accounts of Erie Management as well as those of Erie Management clients such as BILP, SB3 and Black Insurance.

629.     At all times relevant, Defendant Sumi served as an Officer of Erie Management and also maintained a close, personal, and confidential relationship with Mr. Black and as such had a legal and fiduciary duty to Erie Management, Mr. Black, and Mr. Black related entities.

630.     At all times relevant, Defendant Sumi maintained a close, personal, and confidential relationship with Mr. Black and as such had a legal and fiduciary duty to him.

631.     Defendant Buzzard served as treasurer of Erie Management, SB3, BILP and Black Insurance and as such had a legal and fiduciary duty as officer of each.

632.     Defendant Sumi served as secretary of Erie Management, SB3, BILP and Black Insurance and as such had a legal and fiduciary duty as officer of each.

633.     Both Sumi and Buzzard owed fiduciary duties to Erie Management, SB3, Black Insurance, BILP and Mr. Black as General Partner of BILP as officers and/or employees thereof including a duty of loyalty and a duty to exercise reasonable care in the performance of their responsibilities.

634.     Despite their fiduciary duties to and/or confidential relationships with Mr. Black, BILP, Erie Management, SB3 and Black Insurance, Defendants Sumi and Buzzard engaged in a

pattern of self-dealing conduct intended to enrich themselves both individually and through their status as officers/employees of Erie Management, SB3, BILP and Black Insurance including the following:

a.   Manipulating, influencing, and otherwise directing the diversion of funds of Mr. Black, SB3, Erie Management, BILP and Black Insurance through a series of transactions in such a manner as to cause financial loss to Mr. Black, Erie Management and SB3 and cause financial benefits to Defendants Sumi, Lot 289, LLC, Buzzard and SJB Investment.

b.   Manipulating the financial books and accounting system of Erie Management, SB3, BILP and Black Insurance so that Erie Management funds, BILP funds, SB3 funds and Black Insurance funds were used to pay for extensive and lavish renovations to the ultimate benefit of Defendants Sumi, Lot 289, LLC and the JB 2020 Trust.

c.   Diverting funds from Plaintiffs, Mr. Black, SB3, Erie Management, BILP and Black Insurance to pay for extensive and lavish renovations to the ultimate benefit of Defendants Sumi, Lot 289, LLC, and the JB 2020 Trust.

d.   Failing to disclose to Plaintiffs, Mr. Black, SB3, Erie Management, BILP and Black Insurance that their respective assets were being used for extensive and lavish renovations to the ultimate benefit of Defendants Sumi, Lot 289, LLC and the JB 2020 Trust.

e.   Failing to protect the interests of Mr. Black, SB3, Erie Management, BILP and Black Insurance by failing to make sure the assets borrowed by Defendants Sumi and Lot 289, LLC were supported with Notes of other proper documentation.

f.   Intentionally, recklessly and/or negligently failing to disclose to Mr. Black, SB3, Erie Management, BILP and Black Insurance that their respective assets were being used for extensive and lavish renovations to the ultimate benefit of Defendants Sumi, Lot 289, LLC and the JB 2020 Trust.

g.   Intentionally misrepresenting to Mr. Black, SB3, Erie Management, BILP and Black Insurance that they would protect the assets of Mr. Black, SB3, Erie Management, BILP and Black Insurance in the normal course of their duties as officers and employees.

134

635.     As a direct and proximate cause of the breach of fiduciary duties detailed above, Mr. Black, SB3, Erie Management and BILP suffered damages in an amount yet to be specifically ascertained but in excess of $1,100,806.00.

WHEREFORE, Plaintiffs Mr. Black, SB3, Erie Management and BILP demand judgment in their favor and against the Defendants Sumi and Buzzard in the amount of $1,100,806.00 plus punitive damages, interest, costs, and other relief the Court deems appropriate.

## COUNT II
## FRAUD (CONSTRUCTIVE FRAUD)

### *Mr. Black, SB3, Erie Management and BILP*
*v.*
### *Sumi and Buzzard*

635.     Plaintiffs incorporate the allegations of ¶¶ 1- 634 above in this Count II of Chapter 5 as if more fully set forth herein.

636.     Under Pennsylvania Law, *constructive fraud* is recognized as a cause of action. See ¶¶ 155-158.

637.     As more fully detailed above and at all times relevant, Defendants Sumi and Buzzard had fiduciary duties to Plaintiffs Erie Management, Mr. Black, BILP, SB3 and Black Insurance.

638.     As more fully detailed above in Count I of this Chapter 5, Defendants Sumi, Buzzard, and Knox breached their respective fiduciary duties owed to Mr. Black, Erie Management, BILP, SB3 and Black Insurance.

639.     Plaintiffs justifiably relied upon the Defendants Sumi and Buzzard in this transaction to their detriment.

640.    As a result of Defendants Sumi and Buzzard's breaches of their respective fiduciary duties, Plaintiffs Mr. Black, SB3, Erie Management and BILP have suffered damages in the amount of $1,187,386.26.

WHEREFORE, Plaintiffs Mr. Black, SB3, Erie Management and BILP demand judgment in their favor and against the Defendants Sumi, and Buzzard in an amount yet to be ascertained but in the amount of $1,100,806.00 plus punitive damages, interest, costs and other relief the Court deems appropriate.

**COUNT III**
**FRAUD (INTENTIONAL MISREPRESENTATION)**

***Mr. Black, SB3, Erie Management and BILP***
***v.***
***Sumi and Buzzard***

641.    Plaintiffs incorporate the allegations of ¶¶ 1- 640 above in this Count III of Chapter 5 as if more fully set forth herein.

642.    As is more fully detailed above and at all times relevant, Defendants Sumi and Buzzard had fiduciary duties to Plaintiffs Mr. Black, SB3, Erie Management and BILP.

643.    Defendants Sumi and Buzzard intentionally misrepresented to Plaintiffs Mr. Black, SB3, Erie Management and BILP that only legitimately loaned monies were being used for renovations to 289 Niagara Pointe.

644.    Defendants' misrepresentations were made to allow Defendants to divert funds from Mr. Black, BILP, SB3 and Black Insurance for renovations to 289 Niagara.

645.    As more fully detailed above, Defendants Sumi and Buzzard, with actual or constructive knowledge and acquiescence of each other, mislead Mr. Black, SB3, Erie

136

Management and BILP into believing that only legitimately loaned monies were being used for renovations to 289 Niagara.

646.    As more fully detailed above, Defendants Sumi and Buzzard, with actual or constructive knowledge and acquiescence of each other, diverted money from Mr. Black, SB3, Erie Management and BILP which was to the account of unrelated entities either directly or indirectly owned by Defendant Sumi, which then used those funds to perform lavish renovations to 289 Niagara.

647.    As more fully detailed above, Defendants Sumi and Buzzard, with actual or constructive knowledge and acquiescence of each other, and without the authority of Mr. Black, diverted monies from Mr. Black, SB3, Erie Management, BILP and Black Insurance as described above through a number of transactions including eight (8) **wire transfers** into the JB, LLC, Erie Management and SJB Investment bank accounts.

648.    As is more fully detailed above, Defendants Sumi and Buzzard intentionally kept information regarding the unauthorized diversion of funds of Mr. Black, BILP, SB3, Erie Management and Black Insurance hidden.

649.    As more fully detailed above, Defendants Sumi and Buzzard failed to protect the interests of Mr. Black, SB3, Erie Management, BILP and Black Insurance by directing and/or permitting the diversion of the funds to an unrelated entity owned entirely by the Defendant Sumi.

650.    Defendants Sumi and Buzzard's failure to disclose the diversion of funds was material because Plaintiffs Mr. Black, SB3, Erie Management, BILP and Black Insurance relied upon the honest services of Defendants Sumi and Buzzard as Erie Management employees and officers as well as officers of SB3, BILP and Black Insurance.

651.    Plaintiffs justifiably relied upon the misrepresentations and concealments made by Defendants Sumi and Buzzard in that Plaintiffs Mr. Black, Erie Management, SB3, BILP and Black Insurance continued to use the services of Erie Management's employees, officers and SB3, Black Insurance and BILP officers with the justifiable belief that they were receiving honest services while protecting Plaintiff's best interests.

652.    Defendants Sumi and Buzzard's conduct, as more fully described above, was willful, wanton, malicious and oppressive.

653.    Defendant Sumi and Buzzard's unlawful conduct has directly, legally, and proximately caused and continues to cause injuries to Plaintiffs Mr. Black, SB3, Erie Management, BILP and Black Insurance.

654.    As a result of the intentional misrepresentations of the Defendants Sumi and Buzzard, Plaintiffs have suffered damages in the amount of $1,100,806.00.

655.    Defendants Sumi and Buzzard engaged in conduct to benefit themselves at the expense of Plaintiffs during a time when they owed fiduciary duties to and stood in a confidential relationship to Mr. Black, SB3, Erie Management, BILP and Black Insurance.

656.    These transactions were fraudulent and neither fair nor equitable; therefore, these transactions constitute constructive fraud upon Mr. Black, SB3, Erie Management, BILP and Black Insurance.

WHEREFORE, Plaintiffs Mr. Black, SB3, Erie Management and BILP demand judgment in their favor and against the Defendants Sumi and Buzzard in the amount of $1,100,806.00 plus punitive damages, interest, costs, and other relief the Court deems appropriate.

## COUNT IV
## CONVERSION

### *Mr. Black, SB3, Erie Management, BILP and Black Insurance*
### *v.*
### *Sumi and Buzzard*

657.    Plaintiffs incorporate the allegations of ¶¶ 1 – 656 above in this Count IV of Chapter 5 as if fully stated herein.

658.    Under Pennsylvania Law, a cause of action for conversion is recognized where a defendant deprives another of their right of property or other interference therewith without the owner's consent and without legal justification.

659.    Defendants Sumi and Buzzard have engaged in purposeful conduct intended to deplete, deprive, and convert the assets of Mr. Black, SB3, Erie Management, BILP and Black Insurance in the manner as more fully set forth in this Chapter 5 all of which is incorporated herein.

660.    As part of this purposeful course of action intended to deplete, deprive, and convert the private assets of BILP and Mr. Black, Defendant Sumi, with the assistance of Defendant Buzzard, has deprived Mr. Black, SB3, Erie Management, BILP and Black Insurance of the right to repayment of the $1,100,806.00 used to pay for the extravagant renovations to 289 Niagara.

661.    Defendant Sumi, with the assistance of Defendant, Buzzard has interfered with Mr. Black, SB3, Erie Management, BILP and Black Insurance's use and possession of their respective portion of the $1,100,806.00 by refusing to return ownership thereto to these entities and instead making her own use of it.

662.    Mr. Black, SB3, Erie Management, BILP and Black Insurance have not consented to Defendants' retention of the $1,100,806.00.

663.    Defendants have no legal justification for retaining the $1,100,806.00.

664.     Defendant has converted Mr. Black, SB3, Erie Management, BILP and Black Insurance's respective shares of $1,100,806.00.

WHEREFORE, Plaintiffs Mr. Black, SB3, Erie Management and BILP demand judgment in their favor and against the Defendants Sumi and Buzzard in the amount of $1,100,806.00plus punitive damages, interest, costs, and other relief the Court deems appropriate.

<u>**COUNT V**</u>
<u>**AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**</u>

*Mr. Black, SB3, Erie Management, BILP and Black Insurance*
*v.*
*Sumi and Buzzard*

665.     Plaintiffs incorporate the allegations of ¶¶ 1- 664 above in this Count V of Chapter 5 as if more fully set forth herein.

666.     Under Pennsylvania Law, *aiding and abetting breach of fiduciary duty* is recognized as a cause of action.  See ¶195.

667.     As described in the foregoing averments of this Complaint, Defendants Sumi and Buzzard breached fiduciary duties owed by them to Mr. Black, Erie Management, SB3, Black Insurance and BILP.

668.     As described above and upon information and belief, Defendants Sumi and Buzzard had knowledge of each other's breach of their respective fiduciary duties to Mr. Black, SB3, Erie Management, BILP and Black Insurance.

669.     As a result of the Defendants Sumi and Buzzard's breach of their respective fiduciary duties, Plaintiffs Erie Management, Mr. Black, SB3, Erie Management, BILP and Black Insurance have suffered damages including loss of cash, lost income, lost interest and investment

opportunities, diminished value of Mr. Black, Erie Management, SB3, Black Insurance and BILP as well as substantial accounting and legal expenses.

WHEREFORE, Plaintiffs Mr. Black, SB3, Erie Management and BILP demand judgment in their favor and against the Defendants Sumi and Buzzard in the amount of $1,100,806.00 plus punitive damages, interest, costs and other relief the Court deems appropriate.

## COUNT VI
## CIVIL CONSPIRACY

### *Mr. Black, SB3, Erie Management, BILP and Black Insurance*
*v.*
### *Sumi and Buzzard*

670.   Plaintiffs incorporate the allegations of ¶¶ 1- 669 above in this Count VI of Chapter 5 as if more fully set forth herein.

671.   As more fully detailed above, Defendants Sumi and Buzzard agreed to perform some or all of the following illegal acts or legal acts by illegal means:

   a.   Manipulating, influencing, and/or otherwise directing the diversion of funds of Mr. Black, SB3, Erie Management, BILP and Black Insurance, without permission or authority, through a series of transactions in such a manner as to cause financial loss to Mr. Black, Erie Management, SB3, BILP and Black Insurance and cause financial benefits to Defendants Sumi, Lot 289, LLC,  and the JB 2020 Trust.

   b.   Manipulating the financial books and accounting system of Mr. Black, SB3, Erie Management, BILP and Black Insurance so that Mr. Black, SB3, Erie Management, BILP and Black Insurance funds were used to pay for extensive and lavish renovations to 289 Niagara Pointe to the ultimate benefit of Defendants, Sumi, Lot 89, LLC and the JB 2020 Trust.

   c.   Diverting funds from Plaintiffs, Mr. Black, SB3, Erie Management, BILP and Black Insurance to pay for extensive and lavish renovations to the ultimate benefit of Defendants Sumi, Lot 289, LLC, and JB 2020 Trust.

141

d.      Failing to disclose to Mr. Black, SB3, Erie Management, BILP and Black Insurance that their respective assets were being used for extensive and lavish renovations to the ultimate benefit of Defendants Sumi, Lot 289, LLC, and the JB 2020 Trust.

e.      Misrepresenting to Mr. Black, SB3, Erie Management, BILP and Black Insurance that they would protect the assets of Mr. Black, SB3, Erie Management, BILP and Black Insurance in the normal course of their duties as officers and employees.

672.    Defendants Sumi and Buzzard have performed multiple overt acts in furtherance of this conspiracy as previously enumerated herein.

673.    As a result of the conspiracy between Defendants Sumi and Buzzard, Plaintiffs Mr. Black, SB3, Erie Management, BILP and Black Insurance have suffered damages including lost interest and investment opportunities, diminished values of each, as well as substantial accounting and legal expenses.

674.    Defendants Sumi and Buzzard have acted in concert in pursuing a common purpose to perform the aforementioned unlawful acts and/or lawful acts by unlawful means for an unlawful purpose making the Defendants liable and responsible for their own wrongful acts against Plaintiffs as well as for the wrongful conduct of any others acting in concert and conspiracy with them.

675.    Defendants Sumi and Buzzard have acted with malice or intent or injure Plaintiffs and such actions were without legal cause or justification.

WHEREFORE, Plaintiffs Mr. Black, SB3, Erie Management, BILP and Black Insurance demand judgment in its favor and against Defendants Sumi and Buzzard in the amount of $1,100,806.00 plus punitive damages, interest, costs of suit and such further relief as this Court deems just and proper.

## COUNT VII
## UNJUST ENRICHMENT

### Mr. Black, SB3, Erie Management, BILP and Black Insurance
### v.
### Sumi, Lot 289, LLC and JB 2020 Trust

676.    Plaintiffs incorporate the allegations of ¶¶ 1 – 675 above in this Count IV of Chapter 5 as if more fully set forth herein.

677.    Under Pennsylvania Law, Unjust Enrichment is recognized where (1) benefits are conferred on a defendant by plaintiff, (2) with an appreciation of such benefits by defendant, and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for the defendant to retain the benefit without payments of value. (See *Wiernik v. PHH U.S. Mortgage Corp.,* 736 A.2d 616 (Pa. Super. Ct. 1999).

678.    Mr. Black, SB3, Erie Management, BILP and Black Insurance have conferred a benefit on Defendants Sumi, Lot 289, LLC and JB 2020 Trust by way of ownership of 289 Niagara and the payment of $1,100,806.00 toward renovations to 289 Niagara.

679.    Defendants Sumi, Lot 289, LLC, and the JB 2020 Trust have appreciated the benefits of the $1,100,806.00 payments toward renovations to 289 Niagara.

680.    It would be inequitable for Defendants Sumi, Lot 289, LLC, and the JB 2020 Trust to retain the $1,100,806.00 payments toward renovations to 289 Niagara.

681.    Plaintiffs Mr. Black, SB3, Erie Management, BILP and Black Insurance are further entitled to a constructive trust being entered against Defendants Sumi, Lot 289, LLC, and the JB 2020 Trust for the $1,100,806.00 payments toward renovations to 289 Niagara.

WHEREFORE, Plaintiffs Mr. Black, SB3, Erie Management, BILP and Black Insurance demand judgment in their favor in the amount of $1,100,806.00 as well as a constructive trust in

the amount of $1,100,806.00 and against Defendants Sumi, Lot 289, LLC, and the JB 2020 Trust plus punitive damages, interest, cost of suit and such other relief that this Court deems just and proper.

## COUNT VIII
## PRELIMINARY INJUNCTION/TEMPORARY RESTRAINING ORDER

*Mr. Black, SB3, Erie Management, BILP and Black Insurance*
*v.*
*Sumi, Lot 289, LLC and JB 2020 Trust*

682.    Plaintiffs incorporate the allegations of ¶¶ 1-681 above in this Count VII of Chapter 5 as if more fully set forth herein.

683.    Plaintiffs Mr. Black, SB3, Erie Management, BILP and Black Insurance have provided Defendants Sumi, Lot 289, LLC and the JB 2020 Trust with a total of $1,100,806.00 representing value of the renovations to 289 Niagara Pointe.

684.    Defendants Sumi, Lot 289, LLC and the JB 2020 Trust are in possession of the $751,006.00 in the form of improvements to the property, 289 Niagara.

685.    Until the underlying merits of this lawsuit can be fully adjudicated, Defendants Sumi, Lot 289, LLC and JB 2020 Trust should not be permitted to benefit from the transfer, sale, dissipation, or depletion of 289 Niagara.

686.    Due to the conduct of Defendant Sumi, Lot 289, LLC and JB 2020 Trust as more specifically set forth herein, Mr. Black, SB3, Erie Management, BILP and Black Insurance believe and aver that Defendants Sumi, Lot 289, LLC and JB 2020 Trust will act to transfer, sell, dissipate or otherwise deplete 289 Niagara that benefited from the expenditure of Plaintiffs' funds for the lavish improvements of the Lot 289, LLC owned property, 289 Niagara.

687. A temporary restraining order prohibiting Defendants Sumi, Lot 289, LLC and JB 2020 Trust from transferring, selling, dissipating or otherwise depleting Lot 289, LLC and/or the property that benefited from the expenditure of Plaintiffs' funds for the lavish improvements of the Lot 289, LLC owned property, 289 Niagara, is appropriate at this time.

688. Immediate and irreparable injury will result if a restraining order is not entered in that the Defendants Sumi, Lot 289, LLC and JB 2020 Trust are likely to transfer, sell, dissipate, or otherwise deplete the membership interest in Lot 289, LLC and/or the property that benefited from the expenditure of Plaintiffs' funds for lavish improvements of the Lot 289, LLC owned property, 289 Niagara.

689. A preliminary injunction prohibiting Defendants Sumi, Lot 289, LLC and JB 2020 Trust from transferring, selling, dissipating, or otherwise depleting the property that benefited from the expenditure of Plaintiffs' funds for the lavish improvements of the Lot 289, LLC owned property, 289 Niagara, is appropriate at this time.

690. Plaintiffs Mr. Black, SB3, Erie Management, BILP and Black Insurance are likely to succeed on the merits as more fully set forth in this Complaint.

691. Defendants Sumi, Lot 289, LLC and JB 2020 Trust will not suffer unnecessary harm as the request is simply asking for maintaining the status quo of the ownership of the property that benefited from the expenditure of Plaintiffs' funds for the lavish improvements the Lot 289, LLC owned property, 289 Niagara.

692. Public interest favors granting an injunction because a person should not be entitled to unearned funds during the pendency of a lawsuit.

WHEREFORE, Plaintiffs Mr. Black, SB3, Erie Management, BILP and Black Insurance respectfully request that this Court enter a temporary restraining order prohibiting Defendants

Sumi, Lot 289, LLC and JB 2020 Trust from transferring, selling, dissipating, or otherwise depleting the property that benefited from the expenditure of Plaintiffs' funds for improvements and maintenance of the Lot 289, LLC owned property, 289 Niagara Pointe.

## CHAPTER 6

## FRAUDULENT PROCUREMENT OF HERO OPTION

*Mr. Black, S.P. Black Family Holdings, L.P., Hero BX Management and Consulting,
Lake Erie Biofuels, LLC d/b/a Hero BX and BILP*
*v.*
*Sumi, SJB 2020 Trust, and Knox*

693.    The foregoing averments of this Complaint are hereby incorporated by reference thereto and made a part hereof as though fully set forth herein.

694.    As previously set forth in this Complaint, at all times material to this action, **Hero BX Management & Consulting, LLC ("Hero Consulting")** owned and operated five (5) different biodiesel production and distribution companies in five different states.

695.    As previously set forth in this Complaint, at all times material to this action **Hero Consulting** was solely and completely owned by Plaintiff **S.P. Black Family Holdings, L.P.** (**"Black Family Holdings"**), which in turn, was 99% owned by **BILP** (see ¶ 8).

696.    As previously set forth in this Complaint, **Samuel P. Black, III ("Mr. Black")** held an approximate 94.5% ownership interest in BILP.

697.    As previously set forth in this Complaint, at all times material to this action, **Mr. Black** has been the President and CEO of Black Family Holdings.

698.    Under Mr. Black's ownership and stewardship, five (5) biodiesel production and distribution operations owned and operated by Hero Consulting grew and became tremendously successful.  One of the five (5) locations, Lake Erie Biofuels, LLC d/b/a Hero BX ("HERO"), has become and remains the largest producer and marketer of biodiesel fuels in the northern United States.

699.    Hero Consulting became and remains --- by far --- Mr. Black's most valuable business asset with an estimated value as of the filing of this action at $70,000,000.00.

147

700.     As previously set forth in this Complaint, from August 22, 2017, through August 18, 2022, Knox was hired and paid by Mr. Black and his companies to represent Mr. Black and the legal entities owned or controlled by Mr. Black, as well to represent Mr. Black in many of his private affairs, including estate planning.

701.     At all times material hereto, Knox was well aware of the value and importance Hero Consulting held for its client, Mr. Black.

702.     At all times material hereto, Knox knew or should have known, that Mr. Black's future income and sustenance depended on Hero Consulting and HERO.

703.     At all times material hereto, up to August 26, 2022, Defendant Sumi was COO of Erie Management, and as such she also was well aware of the value and importance Hero Consulting and HERO held for Mr. Black.

704.     Sometime prior to September 25, 2020, Defendant Sumi asked Knox to create for her a trust designed, in part, for her to advantageously hold and retain property and assets *for her benefit*.

705.     Sometime prior to September 25, 2020, Defendant Sumi also asked Knox to prepare a document which would give her a first option to purchase, at minimal real cost, Hero Consulting and HERO in the event Mr. Black, BILP and Black Family Holdings ever decided to sell that asset during his lifetime.

706.     Sometime prior to September 25, 2020, Knox agreed to prepare both the requested trust and option to purchase documents for Defendant Sumi.

707.     Defendant Sumi never told Mr. Black about her solicitation of Knox to create the aforesaid option to purchase agreement.

148

708.    Defendant Sumi had no authority to direct that Knox --- Mr. Black's attorney --- create an option to purchase agreement regarding Hero Consulting and HERO, a Mr. Black (BILP) owned and controlled company.

709.    Mr. Black never asked or directed that Knox prepare any kind of option to purchase document regarding Hero Consulting and HERO.

710.    Knox never notified Mr. Black that it was preparing such an option to purchase agreement.

711.    On September 25, 2020, Knox created for Defendant Sumi, the **SJB INHERITANCE 2020 IRREVOCABLE TRUST ("SJB 2020 Trust"; See ¶ 7).**

712.    Pursuant to the SJB 2020 Trust document, Defendant Sumi was appointed the sole Trustee and Trustee Appointer for the Trust, and she was also the *ultimate beneficiary of the Trust*.

713.    By September 25, 2020, Knox had also created a document entitled **FIRST OPTION TO PURCHASE AGREEMENT ("Option Agreement")**, which as drafted was an agreement between Black Family Holdings and Defendant Sumi, as Trustee for the SJB 2020 Trust, which granted to the SJB 2020 Trust the first option to purchase Hero Consulting anytime BILP and Black Family Holdings (Mr. Black) desired to sell Hero Consulting. A copy of the Option Agreement is attached hereto as **Exhibit 66.**

714.    The payment terms established by this Option Agreement created by Knox were extremely favorable to Defendant Sumi and detrimental to Mr. Black and Black Family Holdings (Mr. Black) as it only required Defendant Sumi and the SJB 2020 Trust to bring a promissory note, no cash.  More specifically, per ARTICLE I, ¶ 2(d) of the Option Agreement:

> As payment in connection with such Option to Purchase, **the SJB 2020 Trust shall deliver on the day of the Closing to the Member a promissory** note in the amount of the Offered Price payable to the Member in monthly installments comprising *only of the interest* of the promissory

note for five (5) hears, then amortized over *twenty-seven (27)* years at an interest rate equal to the <u>applicable federal rate</u> as of the date of the closing … with a balloon payment due upon the expiration of the twentieth (20th) year.

715.    The Option Agreement, as prepared by Knox, fails to have any termination date thus running in perpetuity.

716.    The Option Agreement, as prepared by Knox, fails to take into consideration the possibility of an estrangement between Mr. Black and the Defendant Sumi.

717.    The Option Agreement, as prepared by Knox, essentially makes it impossible for Mr. Black and Black Family Holdings to entertain any offers to sell Hero Consulting as it would trigger Defendant Sumi's ability to exercise her option to buy Hero Consulting with a promissory note. At the same time, the Option Agreement gave Defendant Sumi, under the guise of the SJB 2020 Trust, the ability to assign the option rights to anyone else without Mr. Black's approval.

718.    The Option Agreement, as prepared by Knox, fails to consider that allowing Defendant Sumi to purchase Hero Consulting under its terms would nevertheless not change Mr. Black's and Black Family Holdings' responsibility for all Hero Consulting's outstanding debts and mortgages.

719.    As of September 25, 2020, Mr. Black had no idea this Option Agreement was being prepared or had been prepared.

720.    The fifth "WHEREAS" paragraph on page 1 of the Option Agreement states that the "Parties", defined as Black Family Holdings, Hero Consulting and SJB 2020 Trust:

1.    *The Parties have been advised by KNOX (**Mr. Black's attorneys**) that a conflict exists among the parties' individual interests; and*

2.    *The Parties have been advised by KNOX (**Mr. Black's attorneys**) to seek the advice of independent counsel; and*

3.      *The parties have had the opportunity to seek the advice of independent counsel, or each Party waives its right to an independent review of these documents.*

721.    Contrary to the above WHEREAS assertions, Mr. Black, Black Family Holdings and Hero Consulting had never been advised of the above-referred conflicts of interests, or of the suggestion to seek independent counsel, and without such notice/advice, never had opportunity to seek independent counsel advice and further, never knowingly waived their rights to an independent review of the Option Agreement. Mr. Black believed that he already had counsel. Knox recognized the potential implications of this conflict where Devlin tells Defendant Sumi in an email "I don't want someone 10 years from now trying to apply 20/20 hindsight in a way that makes it seem like anyone was trying to influence him."

722.    A meeting had been scheduled for September 25, 2020, for Mr. Black to review with Knox certain personal estate and insurance matters.

723.    This meeting was actually held on September 25, 2020, at Mr. Black's corporate offices at 1540 East Lake Road in Erie and was attended by Mr. Black and Attorneys Neil Devlin and Jerome Wegley of the Knox firm.

724.    Also attending this meeting *was Defendant Sumi*, even though there was no reason or right for her to be present to review any of Mr. Black's personal estate or insurance matters.

725.    At this meeting, Attorneys Wegley and Devlin presented a number of signature pages for Mr. Black to sign which were related to a number of documents concerning estate and business matters of Mr. Black. All of these documents, each consisting of numerous pages of legalese, were not read to Mr. Black, and he was not provided with copies in advance of the meeting so that he could read them before or at the meeting. Rather, he signed each of the signature

151

pages, as requested and shown by Attorneys Wegley and Devlin, *because he trusted that his attorneys were doing things for his best interests.*

726.    In the midst of these numerous, above-refereed documents, Attorneys Devlin and Wegley provided a signature page to the Option Agreement, with the advice that Mr. Black sign it on the signature line for the President and CEO of Black Family Holdings.

727.    As with the other documents he signed at that meeting, Mr. Black signed the signature page of the Option Agreement, as requested, without ever reading the document, or having the Knox attorneys read or discuss, or explain or even identify it for him.

728.    Unlike other signature pages of other documents Knox had Mr. Black sign, the signature page for the Option Agreement was not notarized.

729.    Oddly, the other documents signed by Mr. Black were signed by a notary, but no notary was present at the meeting.

730.    By any objective measure, the Option Agreement works to the great detriment of Mr. Black, because it prevents him (BILP)/Black Family Holdings from receiving bona fide compensation for selling his most valuable asset, Hero Consulting. Instead, Defendant Sumi, who is irreparably estranged from Mr. Black and currently an adverse party in this and other lawsuits involving Mr. Black, could defeat any proposed sale of Hero Consulting to a legitimate third party buyer, by exercising her option to purchase at the extremely affordable terms provided in the Option Agreement, and then retaining ownership until the time of Mr. Black's passing at which point she planned to inherit the Hero Consulting outright and owe nothing more, or until a time when she would retain all of the proceeds of a subsequent sale of Hero Consulting.

731.    On or about August 26, 2022, after Mr. Black discovered Defendant Sumi's many acts of stealing his assets, Defendant Sumi's employment with Erie Management was terminated and she was escorted out of the Erie Management premises by security personnel.

732.    As of the date of Defendant Sumi's termination, Mr. Black still had not been told of the Option Agreement.

733.    Mr. Black fired Knox as his attorney on or about August 18, 2022.

734.    Subsequently, newly hired counsel for Mr. Black (undersigned counsel) discovered the Option Agreement, and in an April 26, 2023, email to counsel for Defendant Sumi, Mr. Black, through his new counsel, provided written notification to Defendant Sumi of his termination/rescission/revocation of the Option Agreement, stating in part:

> "Please be advised that Black Family Holdings, L.P. ("BFH") by Mr. Samuel P. Black, III as President and CEO of Erie Management Groups, LLC, General Partner of BFH, herby rescinds and revokes the Option Agreement effective immediately".

A copy of said email is attached hereto and incorporated herein as **Exhibit 67.**

735.    The following day, counsel for Defendant Sumi sent a letter to undersigned counsel contesting Mr. Black's authority to rescind and revoke the Option Agreement and expressing the opinion that the Option Agreement remained in full force and effect.

736.    Mr. Black/Black Family Holdings believes and therefore avers that the value of one of Hero Consulting's assets, HERO, is $70,000,000.00 as of the filing of this action.

737.    On July 21, 2023, Black Family Holdings, through undersigned counsel, filed at docket no. 11585 of 2023 of this Court, a COMPLAINT FOR DECLARATORY JUDGMENT, which seeks an Order:

> A.    Declaring that the [Option] Agreement is a contract of indefinite duration, as it contains no express duration clause;

153

B.    Declaring that the Agreement is terminable at will by either party, and was thus terminated effective April 26, 2023, when Plaintiff's counsel emailed notice that Plaintiff was rescinding and revoking the Option Agreement "effective immediately; and

C.    Declaring that the Agreement was terminated on August 26, 2022, when Defendant Sumi was terminated from her employment with EMG, because any duration  beyond then cannot be considered "reasonable time" for continuation of the Agreement.

738.    This Declaratory Judgment action, which is being defended by Defendant Sumi, remains pending.

739.    No sale of Hero Consulting or any of its assets can be implemented until the declaratory judgment action is concluded, all to the great detriment of Mr. Black/Black Family Holdings.

740.    To further complicate matters, due to the conversion of Mr. Blacks other assets as set forth in this Complaint, Mr. Black has little liquid funds available and his inability to sell Hero Consulting is of significant detriment to him.

741.    The Option Agreement prepared by Knox --- Black's attorneys --- as a result of "secret" discussions between Knox and Defendant Sumi, and paid for by Mr. Black/Black Family Holdings, is preventing Mr. Black /Black Family Holdings from realizing the full proceeds of any potential sale of Hero Consulting, estimated at $70,000,000.00 as of the filing of this action, all for Defendant Sumi's benefit.

742.    It is believed and averred that the passage of time delaying the sale of Hero Consulting will result in a lower value thus diminishing the net proceeds from any bona fide sale.

743.    As a result of the conduct of Defendants Sumi, Buzzard, and Knox, as more fully described herein, all of which was willful, wanton, malicious and oppressive, Mr. Black has sustained damages in an amount yet to be determined.

154

<u>**COUNT I**</u>
<u>**BREACH OF FIDUCIARY DUTY**</u>

*Mr. Black and S.P. Black Family Holdings*
*v.*
*Sumi and Knox*

744.     Plaintiffs incorporate the allegations of ¶¶ 1-743 above in this Count I of Chapter 6 as if fully stated herein.

745.     Under Pennsylvania Law, *breach of fiduciary duty* is recognized as a cause of action. See ¶¶ 141 and 142.

746.     The agency of Defendant Sumi arose by virtue of her position as Chief Operating Officer of Erie Management and Secretary of BILP and Erie Management.

747.     At all times relevant, Defendant Sumi had a close, personal, and confidential relationship with Mr. Black and as such had a fiduciary duty to Mr. Black.

748.     At all times relevant, Defendant Sumi served as an Officer of Erie Management and as such had a legal and fiduciary duty to Erie Management, all Erie Management clients including Black Family Holdings, Mr. Black, and all Mr. Black related entities.

749.     Defendant Sumi owed fiduciary duties to Mr. Black, Black Family Holdings and BILP, which she breached as follows:

    a.     Manipulating influencing and otherwise directing Knox to prepare the Option Agreement for Mr. Black (BILP)/Black Family Holdings to execute.

    b.     Failing to disclose to Mr. Black (BILP)/Black Family Holdings of the existence and/or nature of the Option Agreement.

    c.     Failing to disclose to Mr. Black (BILP)/Black Family Holdings of the significance and financial ramifications of the Option Agreement.

d.      Intentionally misrepresenting to Mr. Black (BILP) and Black Family Holdings that signing the Option Agreement was in their best interest.

750.    Defendant Knox served as personal attorney for Mr. Black and his entities from August 2017 through August 18, 2022 and as such had a contractual and ethical position as for Mr. Black and Black Family Holdings.

751.    Defendant Knox owed fiduciary duties to Mr. Black and Black Family Holdings as attorney thereof including duties of care, loyalty, good faith, confidentiality, prudence, and disclosure. Knox breached its fiduciary duties to its clients Mr. Black and Black Family Holdings as follows:

a.      By intentionally, recklessly and/or negligently failing to protect the financial interest of its clients Mr. Black and Black Family Holdings by failing to consider the negative impact on Mr. Black and Black Family Holdings in the event Mr. Black and Defendant Sumi were to part ways.

b.      By intentionally, recklessly and/or negligently failing to disclose to and advise its clients, Mr. Black, and Black Family Holdings of the negative financial impact on them in the event Mr. Black and Defendant Sumi were to part ways.

c.      By intentionally, recklessly and/or negligently misrepresenting to Mr. Black and Black Family Holding that their best interests would be served by his execution of the Option Agreement.

d.      By representing Defendant Sumi and the SJB 2020 Trust in a transaction having an obvious conflict of interest with those of its clients, Mr. Black, and Black Family Holdings.

e.      By intentionally, recklessly and/or negligently violating its ethical obligation to Plaintiffs Mr. Black and Black Family Holdings as stated in section 1.7 of the Pennsylvania Rules of Professional Conduct.

f.      By intentionally, recklessly and/or negligently violating its ethical obligation under section 1.2 of the Pennsylvania Rules of Professional Conduct by counseling Defendant Sumi, a "client" to engage, or assist her in conduct it knew or should have known was

156

fraudulent, criminal and/or adverse to the interests of its client, Mr. Black, and Black Family Holdings.

g.    In allocating substantial sums of money to itself in the form of legal fees paid by Mr. Black and Black Family Holding while performing to the detriment of Mr. Black and Black Family Holding.

h.    Violating its ethical obligation to Plaintiffs as stated in section 1.7 of the Pennsylvania Rules of Professional Conduct.

i.    Violating its ethical obligation under section 1.2 of the Pennsylvania Rules of Professional Conduct by counseling Defendants to engage or assist in conduct it knew or should have known was fraudulent, criminal and/or adverse to the interests of its clients.

752.    As a direct and proximate cause of the breach of fiduciary duties detailed above, Mr. Back and Black Family Holdings suffered damages in an amount yet to be determined but believed to be in excess of $70,000,000.00.

WHEREFORE, Plaintiffs Mr. Black and Black Family Holding demand judgment in their favor and against Defendant Knox and Sumi in the amount yet to be determined plus punitive damages, interest, costs and other relief the Court deems appropriate.

## COUNT II
## FRAUD (CONSTRUCTIVE FRAUD)

### *Mr. Black and Black Family Holdings*
*v.*
### *Knox*

753.    Plaintiff incorporates the allegations of ¶¶ 1- 752 above in this Count II of Chapter 6 as if more fully set forth herein.

754.    Under Pennsylvania Law, *constructive fraud* is recognized as a cause of action. See ¶¶ 155-158.

755.    As more fully detailed above and at all times relevant, Defendant Knox had a fiduciary duty to Plaintiffs Mr. Black and Black Family Holdings.

756.    As more fully detailed above in Count I of Chapter 6, Defendant Knox breached their respective fiduciary duties owned to Mr. Black, and Black Family Holdings.

757.    Plaintiffs justifiably relied upon Defendants Knox in this transaction to their determent.

758.    As a result of Defendant Knox's breaches of its fiduciary duties, Plaintiffs, Mr. Black, and Black Family Holdings suffered damages in an amount yet to be determined.

WHEREFORE, Plaintiffs Mr. Black and Black Family Holdings demand judgment in their favor and against Defendant Knox in an amount yet to be determined plus punitive damages, interest, costs and other relief the Court deems appropriate.

**COUNT III**
**FRAUD (INTENTIONAL MISREPRESENTATION)**

***Mr. Black and Black Family Holdings***
*v.*
***Sumi and Knox***

759.    Plaintiff incorporates the allegations of ¶¶ 1- 758 above in this Count III of Chapter 6 as if more fully set forth herein.

760.    As more fully detailed above and at all times relevant, Defendants Sumi and Knox had a fiduciary duty to Plaintiffs Mr. Black and Black Family Holdings.

761.    Defendants Sumi and/or Knox intentionally misrepresented to Plaintiffs Mr. Black and Black Family Holdings that it was in their best interest to execute the Option Agreement.

762.    Defendants' misrepresentations were made to induce Mr. Black and Black Family Holdings to sign the Option Agreement.

763.    As more fully detailed above, Defendants Sumi and Knox, with actual or constructive knowledge and acquiescence of each other, misled Mr. Black and Black Family Holdings into believing that it was in their best interest to execute the Option Agreement.

764.    As more fully detailed above, Defendants Sumi and Knox intentionally kept information regarding the negative impact to Mr. Black and Black Family Holdings of their execution of the Option Agreement.

765.    As more fully detailed above, Defendants Sumi and Knox failed to protect the interests of Mr. Black and Black Family Holdings by allowing them to execute the Option Agreement.

766.    Defendants Sumi and Knox's' failure to disclose the negative consequences of executing the Option Agreement was material because Plaintiffs Mr. Black and Black Family Holdings relied upon the honest services of Defendant Sumi as officer of Black Family Holdings and Knox as the retained personal attorney for Mr. Black and Black Family Holdings.

767.    Plaintiffs justifiably relied upon the misrepresentations and concealments made by Defendants Sumi and Knox in that Plaintiffs Mr. Black and Black Family Holdings continued to use the services of Black Family Holdings' officers and Mr. Black's and Black Family Holdings' personal attorney with the justifiable belief that they were receiving honest services while protecting Mr. Black's and Black Family Holdings' best interests.

768.    Defendants Sumi and Knox's conduct, as more fully described above, was willful, wanton, malicious and oppressive.

769.    Defendants Sumi's and Knox's unlawful conduct has directly, legally, and proximately caused and continues to cause injuries to Plaintiffs Mr. Black and Black Family Holdings.

770.    As a result of the intentional misrepresentations of the Defendants Sumi and/or Knox, Plaintiffs Mr. Black and Black Family Holdings have suffered damages in an amount yet to be determined.

771.    Defendant Sumi engaged in conduct to benefit herself at the expense of Mr. Black and Black Family Holdings during a time when she owed fiduciary duties to and stood in a confidential relationship to Mr. Black and Black Family Holdings.

772.    These transactions were fraudulent and neither fair nor equitable; therefore, these transactions constitute constructive fraud on Mr. Black and Black Family Holdings.

773.    Defendants Sumi and Knox intentionally misrepresented to Plaintiffs Mr. Black and Black Family Holdings that it was in their best interest to execute the Option Agreement.

774.    Defendants Sumi and Knox's misrepresentations were material to Mr. Black's and Black Family Holdings' execution of the Option Agreement and were made to induce Mr. Black and Black Family Holdings to execute the Option Agreement.

775.    As a result of the intentional misrepresentation of the Defendants Sumi, Buzzard and/or Knox. Plaintiffs Mr. Black and Black Family Holdings have suffered damages in an amount yet to be determined.

WHEREFORE, Plaintiffs Mr. Black and Black Family Holdings demand judgment in their favor and against the Defendants Sumi and Knox in an amount yet to be determined plus punitive damages, interest, costs, and other relief the Court deems appropriate.

## COUNT IV
## CONVERSION

### *Mr. Black and Black Family Holdings*
### *v.*
### *Sumi and SJB 2020 Trust*

776.    Plaintiffs incorporate the allegations of ¶¶ 1 – 775 above in this Count IV of Chapter 6 as if fully stated herein.

777.    Under Pennsylvania Law, a cause of action for conversion is recognized where a defendant deprives another of their right of property or other interference therewith without the owner's consent and without legal justification.

778.    Defendants Sumi and SJB 2020 Trust, through Knox, have engaged in purposeful conduct intended to deplete, deprive, and convert the assets of Mr. Black and Black Family Holdings in the manner more fully set forth in this Chapter 6.

779.    As part of this purposeful course of action intended to deplete, deprive, and convert the private assets of Mr. Black and Black Family Holdings, Defendant Sumi and the SJB 2020 Trust, by and through Defendant Knox have deprived Mr. Black and Black Family Holdings the ability to sell HERO to a bona fide third-party purchaser for its full value with all net proceeds due at closing.

780.    Defendants Sumi and SJB 2020 Trust have interfered with Mr. Black's and Black Family Holdings' free use and possession of Hero Consulting and HERO by refusing to acknowledge the termination of the Option Agreement.

781.    BILP has not consented to Defendants' retention of the rights under the Option Agreement.

782.    Defendants have no legal justification for claiming and retaining the rights under the Option Agreement.

783. Defendant has converted Mr. Black's and Black Family Holdings' free ownership and ability to sell Hero Consulting and HERO.

WHEREFORE, Plaintiffs Mr. Black and Black Family Holdings demand judgment in their favor and against the Defendants Sumi and SJB 2020 Trust in an amount yet to be determined plus punitive damages, interest, costs, and other relief the Court deems appropriate.

## COUNT V
## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

### *Mr. Black, Black Family Holdings and BILP*
### *v.*
### *Sumi, and Knox*

784. Plaintiffs incorporate the allegations of ¶¶ 1- 783 above in this Count V of Chapter 6 as if more fully set forth herein.

785. Under Pennsylvania Law, *aiding and abetting breach of fiduciary duty* is recognized as a cause of action.

786. As described in the foregoing averments of this Complaint, Defendant Sumi and Knox breached fiduciary duties owed by them to Mr. Black and Black Family Holdings.

787. As described above and upon information and belief, Defendants Sumi and Knox had knowledge of each other's breach of their respective fiduciary duties to Mr. Black, Black Family Holdings and BILP.

788. As a result of the Defendants Sumi's and Knox's breach of their respective fiduciary duties, Plaintiffs Mr. Black, Black Family Holdings and BILP have suffered damages including loss of cash, lost income, lost interest and investment opportunities, diminished value of Hero Consulting and HERO as well as substantial accounting and legal expenses.

162

789.    As a result of Defendant Knox's active assistance in the commission of the fraud perpetrated by Defendant Sumi, Mr. Black, Black Family Holdings and BILP have suffered damages yet to be determined.

WHEREFORE, Plaintiffs Mr. Black, Black Family Holdings and BILP demand judgment in their favor and against the Defendants Sumi and Knox in an amount yet to be determined plus punitive damages, interest, costs and other relief the Court deems appropriate.

### COUNT VI
### AIDING AND ABETTING FRAUD

*Mr. Black, Black Family Holdings and BILP*
*v.*
*Knox*

790.    Plaintiff incorporates the allegations of ¶¶ 1 – 789 above in this Count VI of Chapter 6 as if more fully set forth herein.

791.    Under Pennsylvania Law, aiding and abetting fraud is recognized as a cause of action.

792.    As described in the foregoing averments of this Complaint, Defendants Sumi and Knox breached fiduciary duties owed by them to Mr. Black and Black Family Holdings.

793.    As described above and upon information and belief, Defendant Knox had knowledge of Defendant Sumi's breach of fiduciary duties owed to Mr. Black, Black Family Holdings and BILP.

794.    Defendant Knox actively and/or blindly assisted in the commission of the fraud perpetrated by Defendant Sumi and the SJB 2020 Trust in the following respects:

    a.    By intentionally, recklessly and/or negligently failing to protect the financial interest of its clients Mr. Black, Black Family Holdings and BILP by failing to consider the negative impact on Mr. Black,

163

Black Family Holdings and BILP in the event Mr. Black and Defendant Sumi were to part ways.

b.     By intentionally, recklessly and/or negligently failing to disclose to and advise its clients, Mr. Black, Black Family Holdings and BILP of the negative financial impact on them in the event Mr. Black and Defendant Sumi were to part ways.

c.     By intentionally, recklessly and/or negligently misrepresenting to Mr. Black, Black Family Holdings and BILP that their best interests would be served by his execution of the Option Agreement.

d.     By representing Defendant Sumi and the SJB 2020 Trust in a transaction having an obvious conflict of interest with those of its clients, Mr. Black, Black Family Holdings and BILP.

e.     By intentionally, recklessly and/or negligently violating its ethical obligation to Plaintiffs Mr. Black, Black Family Holdings and BILP as stated in section 1.7 of the Pennsylvania Rules of Professional Conduct.

f.     By intentionally, recklessly and/or negligently violating its ethical obligation under section 1.2 of the Pennsylvania Rules of Professional Conduct by counseling Defendant Sumi, a "client" to engage, or assist her in conduct it knew or should have known was fraudulent, criminal and/or adverse to the interests of its client, Mr. Black, Black Family Holdings and BILP.

g.     By otherwise aiding and abetting Defendant Sumi in breaching her fiduciary duties to Mr. Black, Black Family Holdings and BILP.

795.    As a result of Defendant Knox's active assistance in the commission of the fraud perpetrated by Defendants Sumi and the SJB 2020 Trust, Mr. Black, Black Family Holdings and BILP have suffered damages in an amount yet to be determined.

WHEREFORE, Plaintiffs Mr. Black, Black Family Holdings and BILP demand judgment in their favor and against the Defendants Sumi, SJB 2020 Trust and Knox in an amount yet to be determined plus punitive damages, interest, costs, and other relief the Court deems appropriate.

## COUNT VII
## CIVIL CONSPIRACY

### *Mr. Black and Black Family Holdings*
*v.*
### *Sumi, Knox and SJB 2020 Trust*

796.    Plaintiffs incorporate the allegations of ¶¶ 1- 795 above in this Count VII of Chapter 6 as if more fully set forth herein.

797.    As more fully detailed above, Defendants Sumi, Knox and SJB 2020 Trust agreed to perform some or all of the illegal acts or legal acts by illegal means as previously stated herein.

798.    Defendants Sumi, Knox and the SJB 2020 Trust have performed multiple overt acts in furtherance of this conspiracy including acts previously enumerated herein.

799.    As a result of the conspiracy between Defendants Sumi, Knox and the SJB 2020 Trust, Plaintiffs Mr. Black, Black Family Holdings and BILP have suffered damages including lost interest and investment opportunities, diminished value of Hero Consulting and HERO as well as substantial accounting and legal expenses.

800.    Defendants Sumi, Knox and the SJB 2020 Trust have acted in concert in pursuing a common purpose to perform the aforementioned unlawful acts and/or lawful acts by unlawful means for an unlawful purpose making the Defendants liable and responsible for their own wrongful acts against Plaintiffs as well as for the wrongful conduct of any others acting in concert and conspiracy with them.

801.    Defendants Sumi, Knox and the SJB 2020 Trust have acted with malice or intent to injure Plaintiffs and such actions were without legal cause or justification.

WHEREFORE, Plaintiffs Mr. Black, Black Family Holdings and BILP demand judgment in their favor and against the Defendants Sumi, Knox and SJB 2020 Trust in an amount yet to be determined plus punitive damages, interest, costs, and other relief the Court deems appropriate.

## COUNT VIII
## UNJUST ENRICHMENT

### Mr. Black, Black Family Holdings and BILP
### v.
### Sumi, individually and as Trustee of the SJB 2020 Trust

802.    Plaintiffs incorporate the allegations of ¶¶ 1 – 801 above in this Count VIII of Chapter 6 as if more fully set forth herein.

803.    Under Pennsylvania Law, Unjust Enrichment is recognized where (1) benefits are conferred on a defendant by plaintiff, (2) with an appreciation of such benefits by defendant, and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for the defendant to retain the benefit without payments of value. (See *Wiernik v. PHH U.S. Mortgage Corp.,* 736 A.2d 616 (Pa. Super. Ct. 1999)).

804.    Mr. Black, Black Family Holdings and BILP have conferred a benefit on Defendant Sumi and the SJB 2020 Trust by way of an option to purchase Hero Consulting and HERO for the cost of merely showing up at a closing and signing a promissory note to Black Family Holdings for future monetary payments.

805.    Defendants Sumi and the SJB 2020 Trust have appreciated the benefits of the Option Agreement.

806.    It would be inequitable for Defendants Sumi and the SJB 2020 Trust to retain the rights under the Option Agreement without providing Mr. Black, Black Family Holdings and/or BILP just compensation.

WHEREFORE, Plaintiffs Mr. Black, Black Family Holdings and BILP demand judgment in their favor and against the Defendant Sumi, individually and as Trustee of the SJB 2020 Trust

166

in an amount yet to be determined plus punitive damages, interest, cost of suit and such other relief

that this Court deems just and proper.

## CHAPTER 7

## SIENA/HERO

### Mr. Black and HERO
### v.
### Sumi individually and as Trustee of the Sumi James Black 2022 Irrevocable Trust, Buzzard and Knox

807.    The foregoing averments of this Complaint are hereby incorporated by reference thereto and made a part hereof as though fully set forth herein.

808.    As previously set forth, Mr. Black is the general partner, with a 95% partnership/owner interest, of BILP, the parent entity which provides the funding for several of Mr. Black's other companies and investments.

809.    Also as previously set forth, Erie Management Group, LLC ("Erie Management," or "Erie Management") was created by Mr. Black on July 6, 2002, to manage his various companies and investments by providing them all levels of management and accounting services.

810.    At all times relevant to this action, Erie Management's Accounting Department, under the direction of its Vice President of Finance and Accounting, handled payment of bills, deposits, and transfers of money for Mr. Black's business and investments under the Erie Management umbrella including BILP and Mr. Black. All references herein to Mr. Black include Mr. Black individually and as general partner of BILP.

811.    One of Mr. Black's other companies at this time was **Lake Erie Biofuels, LLC d/b/a/ HERO BX ("HERO")**. HERO is a biofuels facility operator and producer, which at all times relevant hereto was ultimately owned by the Black Family Holdings and BILP. (See ¶9 of the PARTIES section of this Complaint.)

812.    On or about November 1, 2021, HERO consummated a loan with Siena Lending Group ("Siena") in order to refinance HERO's then financial obligation to Key Bank. The Siena

loan was in the form of an equipment term loan in the amount of $4,300,000.00, a real estate term loan in the amount of $3,900,000.00 and revolving loans up to $50,000,000.00.

813.    As a condition of this refinancing loan, Siena required a $5,000,000.00 owner's equity infusion ("**Required Siena Fund**") into HERO's working capital from Mr. Black. The required payment into the Required Siena Fund was staggered in payments through September of 2022 with the initial infusion scheduled for June 1, 2022. In exchange, Siena permitted the infusion to be in the form of a loan secured by a note requiring monthly payments of interest only back to Mr. Black.

814.    To make the working capital infusion into the Required Siena Fund as required by Siena, Mr. Black authorized the use of his personal funds, including his E*TRADE investments and BILP funds.

815.    In March of 2022 and as part of an overall estate plan, Mr. Black directed Attorney Jerome Wegley at Knox to create a trust from which Mr. Black would receive a series of future annuity payments (the "**Annuity Trust**").

816.    On or about April 13, 2022, Attorney Wegley claims to begin the development of the Annuity Trust. "I'm starting to develop the estate plan analysis for the gift/sale of BILP from Mr. Black to a trust…Mr. Black contributes $6MM to BILP, then gifts and sells BILP interests to a trust in return for *lifetime annual annuity payments* of $6MM". (Email **Exhibit 68**)

817.    The concept was that Mr. Black's E*TRADE accounts would be liquidated and transferred to the Annuity Trust.  In turn, the Annuity Trust would loan $5 million to HERO as the required Siena Fund in exchange for a note and monthly interest only payments to the Annuity Trust for the benefit of Mr. Black.

169

818.    Under the agreement terms with Siena, any such structure would require Siena approval.

819.    Defendants Knox, Sumi, and Buzzard, represented to Mr. Black that the proceeds from the sale of Mr. Black's E*TRADE Investments would be deposited into the Annuity Trust, for Mr. Black's benefit, then transferred to HERO in exchange for a note from HERO to the Annuity Trust for re-payment of said funds.

820.    On May 5, 2022, Attorney Wegley sent an email to Mr. Black asking for an "update to the liquidation of the E*TRADE accounts". Wegley went on to state that "we are going to represent that you will contribute these funds to LEB (HERO)." (Email **Exhibit 69**)

821.    Buzzard, Wegley and Devlin were fully aware of this proposed annuity structure and the need for Siena approval as evidenced by numerous emails. In one such email, Buzzard emailed Wegley and Devlin on May 11, 2022, "Additionally on the Siena Side - $5m investment. If we are doing this as a loan, we need to have the loan documents including subordination agreement written and approved by Siena".

822.    Again, on May 16, 2022, Buzzard emailed Wegley and Devlin "I received the below items from Siena regarding a call between Knox and BlankRome ("Siena"). Based on Mr. Black's proposed structure – he is setting up a Trust. The trust will owe Mr. Black annuity payments." **(Exhibit 70)**

823.    Siena agreed to the proposed annuity trust structure. On May 16, 2022, Keith Holler of Siena confirmed conversations between Siena counsel and Knox that "Based on Mr. Black's proposed structure – he is setting up a Trust. The Trust will owe Mr. Black annuity payments."

824.    On or about May 26, 2022 --- **only three (3) business days before the June 1, 2022 due date for the first infusion of the Required Siena Funds into HERO** --- Defendant

Sumi, through Knox attorneys, created the SUMI JAMES-BLACK 2022 IRREVOCABLE TRUST ("**SJB 2022 Trust**").  At all times material to this action, Sumi was the Trustee and also the primary beneficiary of the SJB 2022 Trust.  (Relevant excerpts of the Trust Agreement are attached hereto as **Exhibit 71)**.

825.   It was in this time frame that Defendant Sumi also began instructing Erie Management employees to keep all important documents away from Mr. Black's longtime assistant. In a May 26, 2022 email, Matthew Wethli, a human resource employee of Erie Management who also reported directly to Defendant Sumi, sent an email to Attorneys Wegley and Devlin, which was copied to Defendant Sumi, instructing the Knox attorneys" to keep the subject matter of documents you are either requesting a meeting or signature from Mr. Black confidential and not inform his assistant ...".  (A copy of said 5/26/22 email is attached hereto as **Exhibit 10**).

826.   On or about May 27, 2022, at the direction of Defendant Sumi, Buzzard opened a bank account for the SJB 2022 Trust at Erie Bank.

827.   At all times material to this action, Defendant Sumi was the only person permitted to withdraw money from said SJB 2022 Trust bank account.

828.   The SJB 2022 Trust contained no provisions for Mr. Black and specifically no annuity provision for Mr. Black.

829.   From May 10, 2022, through May 31, 2022, Mr. Black authorized fifteen (15) **WIRE** transfers of $100,000.00 each from his personal E*TRADE account to his personal Erie Bank account (all references to Mr. Black's Erie Bank account are for his personal account ending in 6583).

830.     On June 1, 2022, Mr. Black executed a $5,000,000.00 Subordinated Line of Credit Demand Note (prepared by Knox), as president of and on behalf of HERO, because it was consistently represented to Mr. Black --- and in reliance upon those representations he believed --- that the Note obligated HERO to pay funds into a trust created to be his Annuity Trust, as consideration for the required Siena fund.  In reality, though, this was the SJB 2022 Trust, which unbeknownst to Mr. Black, Defendants Sumi and Knox had created not to serve as an annuity trust for Mr. Black, but for the sole benefit of Defendant Sumi.   The documents for Mr. Black's signature were emailed on May 31, 2022, from Defendant Knox (Attorney Helbling) to Defendant Buzzard and copied to Attorney Wegley.   See said email, attached hereto as **Exhibit 72**.

831.     On or about May 31, 2022, Mr. Black authorized the first payment of $1,500,000.00 from his Erie Bank personal account to the Erie Bank SJB 2022 Trust account (Erie Bank account ending in 2704; believing this was the Annuity Trust) for the Required Siena Fund. These funds were **WIRED** from Mr. Black's ErieBank account to the SJB 2022 Trust on May 31, 2022.

832.     From June 1, 2022, through June 21, 2022, Mr. Black authorized fourteen (14) additional **wire transfers** of $100,000.00 each from his personal E*TRADE account to his personal Erie Bank account.

833.     On June 6, 2022, Mr. Black authorized the **wire transfers** of $687,925.00 from his BILP account at Erie Bank to his personal Erie Bank account. On the same day, Mr. Black authorized the transfer of an additional $400,000.00 from his personal Erie Bank account, for a total of $1,087,925.00 from that account, by **WIRE,** into what he believed to be the oft-discussed Annuity Trust bank account, but which was in fact the SJB 2022 Trust account.

834.   On or about June 17, 2022, Mr. Black authorized the **wire transfer** of another $600,000.00 from his personal Erie Bank account into what he believed to be the Annuity Trust bank account but was in fact the SJB 2022 Trust account.

835.   On or about July 28, 2022, Mr. Black authorized the **wire transfer** of another $350,000.00 from his personal Erie Bank account into what he believed to be the Annuity Trust bank account but was in fact the SJB 2022 Trust account.

836.   On or about September 6, 2022, Mr. Black authorized the **wire transfer** of another $595,036.00 from his personal Erie Bank account to what he believed to be the Annuity Trust bank account but was in fact the SJB 2022 Trust account.

837.   All twenty-nine (29) transfers from E*TRADE to Mr. Black's bank account were done via twenty-nine (29) **wire transfers**.

838.   All five (5) transfers from Mr. Black's Erie Bank account to the SJB 2022 Trust were done via **wire transfer.**

839.   All **wire transfers** were performed by Buzzard and with Mr. Black's consent as Mr. Black believed the SJB 2022 Trust was the Annuity Trust he directed to be created.

840.   The Annuity Trust was never, in fact, created.

841.   Contrary to the representations made by Defendants Knox, Sumi, and Buzzard to Mr. Black (see ¶¶ 831-833), no note or document of any kind obligating HERO to repay Mr. Black for all this infusion of equity money was ever created.

842.   However, instead of an obligation from HERO to Mr. Black, Defendant Sumi and Defendant Knox created a note obligating HERO to repay Defendant Sumi's trust, the SJB 2022 Trust.

843.   Knox, Mr. Black's attorneys, never informed him of the true nature of the SJB 2022 Trust document it created.

844.   As previously pled, on or about August 26, 2022, Defendant Sumi's employment with Erie Management was terminated.

845.   Shortly after Defendant Sumi's termination, and with the assistance of newly hired counsel to replace Knox as Mr. Black's attorneys, Mr. Black discovered that his above stated personal funds had NOT been transferred into an Annuity Trust, but rather into Defendant Sumi's SJB 2022 Trust, which only benefitted Defendant Sumi.

846.   All the money that was deposited into the SJB 2022 Trust came from Mr. Black's personal funds.

847.   The total of all funds transferred from Mr. Black's personal Erie Bank account into Defendant Sumi's SJB 2022 Trust bank account was $4,432,986.01.

848.   There are no loan documents or gift letters for the transfer of the $4,432,986.01 from Mr. Black, personally, to Defendant Sumi's SJB 2022 Trust bank account.

849.   All the above-stated Mr. Black personal funds were unlawfully diverted to the SJB 2022 Trust for the sole benefit of Defendant Sumi.

850.   The misrepresentations by Defendants Sumi, Buzzard and Knox induced Mr. Black to sign a Subordinated Line of Credit Demand Note.

851.   The misrepresentations by Defendants Sumi, Buzzard and Knox induced Mr. Black to approve wire funds of his money to the SJB 2022 Trust.

852.   Defendant Sumi is currently making demand for payments under the Line of Credit despite the diversion of Mr. Black's money to the SJB 2022 Trust.

853. Defendants Sumi's, Buzzard's, and Knox's unlawful conduct has directly, legally and proximately caused and continues to cause injuries to Plaintiff, Mr. Black.

854. As a result of the negligent, reckless and/or intentional actions of Defendants Sumi, Buzzard and Knox, Mr. Black has suffered loss of earnings from the Annuity Trust.

855. As a result of the conduct of Defendants Sumi, Buzzard and Knox, as more fully described herein all of which was willful, wanton, malicious and oppressive, Mr. Black has suffered loss in the amount of $4,432,986.00.

## COUNT I
## BREACH OF FIDUCIARY DUTY

### Mr. Black and HERO
### v.
### Sumi, Buzzard and Knox

856. Plaintiffs incorporate the allegations of ¶¶ 1-855 above in this Count I of Chapter 7 as if fully stated herein.

857. Under Pennsylvania Law, *breach of fiduciary duty* is recognized as a cause of action. See ¶¶ 141,142.

858. The agency of Defendants' Sumi and Buzzard arose by virtue of their positions respectively as Secretary and Treasurer of Erie Management, BILP and Mr. Black individually and as General Partner of BILP.

859. The agency of Knox arose by virtue of its contractual and ethical position as **personal attorney** for Mr. Black.

860. At all times relevant, Defendant Buzzard served as Director of Finance for Erie Management.

861.    At all times relevant, Defendant Sumi served as an Officer of Erie Management and also maintained a close, personal, and confidential relationship with Mr. Black and as such had a legal and fiduciary duty to Erie Management and Mr. Black.

862.    Defendant Knox served as personal attorney for Mr. Black and his entities from August 2017 through August 2022.

863.    Both Defendants Sumi and Buzzard owed fiduciary duties to Erie Management as officers and employees thereof including a duty of loyalty and a duty to exercise reasonable care in the performance of their responsibilities which included the proper management of Erie Management and all Erie Management clients including BILP, Mr. Black's private funds and HERO.

864.    Both Defendants Sumi and Buzzard owed fiduciary duties to Mr. Black, Erie Management, BILP and HERO as officers thereof including a duty of loyalty and a duty to exercise reasonable care in the performance of the responsibilities as such.

865.    Defendant Knox owed fiduciary duties to Mr. Black, Erie Management, and HERO as attorney thereof including duties of care, loyalty, good faith, confidentiality, prudence, and disclosure.

866.    Despite their fiduciary duties to and confidential relationship with Mr. Black, Defendant Sumi abused her personal and confidential relationship with Mr. Black and Defendants Sumi and Buzzard abused their respective positions as officers and/or employees of Erie Management and HERO by engaging in the following pattern of conduct:

  a. Manipulating, influencing, and otherwise directing the diversion of Mr. Black's personal assets to a non-Mr. Black-related entity (SJB 2022 Trust) without his knowledge or authorization.

  b. Manipulate the transfer of Mr. Black's personal funds to the SJB 2022 Trust then simultaneously to HERO in exchange for a Line of

Credit, all for the sole benefit of the SJB 2022 Trust and the Trust's beneficiary, Defendant Sumi.

c.   Diverting funds from Mr. Black to benefit Defendant Sumi, individually and as Trustee of the SJB 2022 Trust.

d.   Failing to disclose to Mr. Black that Mr. Black's personal funds including HERO's assets, were being used for the benefit of Defendant Sumi individually and as Trustee of the SJB 2022 Trust.

e.   Failing to disclose to Mr. Black the change of a material aspect of Mr. Black's intended use of his personal funds to fund an annuity trust while providing a required payment to Siena.

f.   Misrepresenting to Mr. Black that his funds were being used to fund an annuity trust while providing the required payment to Siena.

g.   Causing HERO to be indebted to the SJB 2022 Trust without any consideration or authorization to do so.

867.   Despite its fiduciary duties to its client, Mr. Black, Defendant Knox engaged in a pattern of self-dealing to enrich itself as follows:

a.   By intentionally, recklessly and/or negligently failing to protect the financial interests of its clients Mr. Black in allowing the diversion of Mr. Black's personal money to fund non-Mr. Black-related entity (SJB 2022 Trust) without his knowledge or authorization.

b.   By intentionally, recklessly and/or negligently failing to protect the financial interest of its clients Mr. Black and BILP in allowing the manipulation of the transfer of funds to the SJB 2022 Trust then simultaneously to HERO in exchange for a Line of Credit, all for the sole benefit of the SJB 2022 Trust and the Trust's beneficiary, Defendant Sumi.

c.   By intentionally, recklessly and/or negligently failing to disclose to and advise its clients, Mr. Black, and BILP of the diversion of Mr. Black's personal money to a non-related entity (SJB 2022 Trust) without knowledge or authorization.

d.   By intentionally misrepresenting to Mr. Black and BILP that Mr. Black's personal money was being used to fund an annuity trust while providing a required payment to Siena.

177

e.  By intentionally, recklessly and/or negligently causing and/or allowing the diversion of Mr. Black's personal money which was intended to fund an annuity trust while providing a required payment to Siena.

f.  By representing Defendant Sumi and the SJB 2022 Trust in a transaction having an obvious conflict of interest with those of its clients, Mr. Black and BILP.

g.  By violating its ethical obligation to Plaintiffs as stated in section 1.7 of the Pennsylvania Rules of Professional Conduct.

h.  By violating its ethical obligation under section 1.2 of the Pennsylvania Rules of Professional Conduct by counseling Defendants to engage or assist in conduct it knew or should have known was fraudulent, criminal and/or adverse to the interests of its clients.

868.  As a direct and proximate cause of the breach of fiduciary duties detailed above, Mr. Black and HERO suffered damages in the amount of $4,432,987.01.

WHEREFORE, Plaintiffs Mr. Black, and HERO demand judgment in their favor and against the Defendants Sumi, Buzzard, and Knox in the amount of $4,432,987.01 plus punitive damages, interest, costs, and other relief the Court deems appropriate.

## COUNT II
## FRAUD (CONSTRUCTIVE FRAUD)

### *Mr. Black and HERO*
### *v.*
### *Sumi, Buzzard and Knox*

869.  Plaintiff incorporates the allegations of ¶¶ 1- 868 above in this Count II of Chapter 7 as if more fully set forth herein.

870.  Under Pennsylvania Law, *constructive fraud* is recognized as a cause of action. See ¶¶ 155-158.

871.  As more fully detailed above and at all times relevant, Defendants Sumi, Buzzard and Knox had a fiduciary duty to Plaintiffs Mr. Black, BILP, Erie Management and HERO.

178

872.     As more fully detailed above in Count I of Chapter 7, the Defendants Sumi, Buzzard, and Knox breached their respective fiduciary duties owed to Plaintiffs Mr. Black, BILP, Erie Management and HERO.

873.     Plaintiffs justifiably relied upon the Defendants Buzzard, Sumi, and Knox in this transaction to their determent.

874.     As a result of Defendants Sumi, Buzzard and Knox's breaches of their respective fiduciary duties, Plaintiffs, Mr. Black and HERO suffered damages in an amount in excess of $4,432,987.01.

WHEREFORE, Plaintiffs Mr. Black and HERO demand judgment in their favor and against the Defendants Sumi, Buzzard, and Knox in the amount of $4,432,987.01 plus punitive damages, interest, costs, and other relief the Court deems appropriate.

## COUNT III
## FRAUD (INTENTIONAL MISREPRESENTATION)

### Mr. Black and HERO
### v.
### Sumi, Buzzard and Knox

875.     Plaintiff incorporates the allegations of ¶¶ 1- 874 above in this Count III of Chapter 7 as if more fully set forth herein.

876.     As more fully detailed above and at all times relevant, Defendants Sumi, Buzzard and Knox had a fiduciary duty to Plaintiffs Mr. Black, Erie Management, BILP and HERO.

877.     As more fully detailed above and at all times relevant, Defendants Sumi, Buzzard and Knox had a fiduciary duty to Plaintiffs Mr. Black, Erie Management, BILP and HERO.

878.     Defendants Sumi, Buzzard and/or Knox intentionally misrepresented to Mr. Black that his personal assets were being used to fund an annuity trust for his benefit.

179

879.   Defendants' misrepresentations were made to induce Mr. Black to provide his personal assets for funding an annuity trust for his own benefit.

880.   As more fully detailed above, Defendants Sumi, Buzzard, and Knox, with actual or constructive knowledge and acquiescence of each other, misled Mr. Black into believing that his personal assets were being used to fund an annuity trust for his own benefit.

881.   As more fully detailed above, Defendants Sumi, Buzzard, and Knox, with actual or constructive knowledge and acquiescence of each other, mislead HERO into executing a promissory note in the amount of $5,000,000.00 without adequate consideration and under false pretense.

882.   As more fully detailed above, Defendants Sumi, Buzzard, and Knox, with actual or constructive knowledge and acquiescence of each other, diverted money from Mr. Black which was intended to fund an annuity trust for his own benefit.

883.   As more fully detailed above, Defendants Sumi, Buzzard, and Knox, with actual or constructive knowledge and acquiescence of each other, and without the authority of Mr. Black, diverted Mr. Black's personal money referenced above in thirty-four (34) **wire transfers**, twenty-nine (29) **wire transfers** from Mr. Black's E*TRADE account to his personal bank account followed by five (5) **wire transfers**; all from his personal bank account and into the SJB 2022 Trust bank account.

884.   As more fully detailed above, Defendants Sumi, Buzzard, and Knox, with actual or constructive knowledge and acquiescence of each other, directed and/or prepared the documents necessary for the diversion of Mr. Black's personal assets into a non-related entity (SJB 2022 Trust) without Mr. Black's knowledge or consent.

885.    As more fully detailed above, Defendants Sumi, Buzzard and Knox intentionally kept information regarding the diversion of Mr. Black's personal assets to a non-related entity (SJB 2022 Trust) without his knowledge or consent.

886.    As more fully detailed above, Defendants Sumi, Buzzard, and Knox, failed to protect the interests of Mr. Black by diverting Mr. Black's personal assets through a series of **wire transfers** to a non-related entity which benefits Defendant Sumi and the SJB 2022 Trust.

887.    Defendants Sumi, Buzzard, and Knox's' failure to disclose the diversion of funds was material because Plaintiffs Mr. Black and HERO relied upon the honest services of Defendants Sumi and Buzzard as Erie Management employees and officers and Knox as the retained personal attorney for Mr. Black.

888.    Plaintiffs justifiably relied upon the misrepresentations and concealments made by Defendants Sumi, Buzzard and Knox in that Plaintiff Mr. Black relied upon his personal relationship with Defendant Sumi and continued to use the services of Erie Management's officers and employees and Mr. Black's personal attorney with the justifiable belief that he was receiving honest services while protecting Mr. Black's and HERO's best interests.

889.    Defendants Sumi, Buzzard and Knox's conduct as more fully described above, was willful, wanton, malicious and oppressive.

890.    As a result of the intentional misrepresentations of the Defendants Sumi, Buzzard and/or Knox, Plaintiffs, Mr. Black and HERO have suffered damages in the amount of $4,432,987.01.

891.    Defendants Sumi and Buzzard engaged in conduct to benefit themselves at the expense of Mr. Black and HERO at a time when they owed fiduciary duties to and stood in a confidential relationship with Mr. Black and HERO.

892.    These transactions were fraudulent and neither fair nor equitable; therefore, these transactions constitute constructive fraud upon Mr. Black and HERO.

893.    Defendants Sumi, Buzzard and Knox intentionally misrepresented to Plaintiff Mr. Black that his personal money was being used to fund an annuity trust for his own benefit.

894.    Defendants Sumi, Buzzard and Knox's misrepresentations were material to the transfer of his personal assets to fund what he believed to be an annuity trust for his own benefit.

895.    Defendants' misrepresentations were made to induce Mr. Black to transfer his personal assets to fund what he believed to be an annuity trust for his own benefit.

896.    Plaintiff justifiably relied upon the misrepresentations made by Defendants Buzzard, Sumi, and Knox in this transaction to his detriment.

897.    As a result of the intentional misrepresentation of the Defendants Sumi, Buzzard and/or Knox. Plaintiff Mr. Black and HERO have suffered damages in the amount of $4,432,987.01.

WHEREFORE, Plaintiff, Mr. Black, demands judgment in his favor and against the Defendants Sumi, Buzzard, and Knox in the amount of $4,432,987.01 plus punitive damages, interest, costs, and other relief the Court deems appropriate.

## COUNT IV
## CONVERSION

### Mr. Black
### v.
### Sumi individually and as Trustee of the SJB 2022 Trust

898.    Plaintiffs incorporate the allegations of ¶¶ 1 – 897 above in this Count IV of Chapter 7 as if fully stated herein.

899.    Under Pennsylvania Law, a cause of action for conversion is recognized where a defendant deprives another of their right of property or other interference therewith without the owner's consent and without legal justification.

900.    Defendants Sumi and the SJB 2022 Trust, through Buzzard and Knox, have engaged in purposeful conduct intended to deplete, deprive, and convert the assets of Mr. Black in the manner set forth in this Chapter 7 all of which are incorporated herein by reference.

901.    As part of this purposeful course of action intended to deplete, deprive, and convert the private assets of Mr. Black, Defendant Sumi, individually and as Trustee of the SJB 2022 Trust, by and through Defendants Buzzard and Knox have deprived Mr. Black of his personal money by funding a non-related entity (SJB 2022 Trust) without his knowledge or consent.

902.    Defendants Sumi and the SJB 2022 Trust have interfered with Mr. Black's use and possession of his personal money by maintaining that the Note is valid to their own use.

903.    BILP has not consented to Defendants' claim that the obligation under the Note is valid.

904.    Defendants have no legal justification for claiming that the obligation under the Note is valid.

905.    Defendants Sumi and the SJB 2022 trust have converted Mr. Black's personal money to their own benefit.

WHEREFORE, Plaintiff, Mr. Black, demands judgment in his favor and against the Defendants Sumi and the SJB 2022 Trust in the amount of $4,432,987.01 plus punitive damages, interest, costs, and other relief the Court deems appropriate.

## COUNT V
## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

*Mr. Black and HERO*
*v.*
*Sumi, Buzzard and Knox*

906.    Plaintiff incorporates the allegations of ¶¶ 1- 905 above in this Count V of Chapter 7 as if more fully set forth herein.

907.    Under Pennsylvania Law, *aiding and abetting breach of fiduciary duty* is recognized as a cause of action.  See ¶195.

908.    As described in the foregoing averments of this Complaint, Defendants Sumi, Buzzard, and Knox breached fiduciary duties owed by them to Mr. Black and HERO.

909.    As described above and upon information and belief, Defendants Sumi, Buzzard and Knox had knowledge of each other's breach of their respective fiduciary duties to Mr. Black and HERO.

910.    As a result of the Defendants Sumi, Buzzard and Knox's breach of their respective fiduciary duties, Plaintiffs, Mr. Black and HERO, has suffered damages including loss of cash, lost income, lost interest and investment opportunities as well as substantial accounting and legal expenses.

911.    As a result of Defendant Knox's active assistance in the commission of the fraud perpetrated by Defendants Sumi, Buzzard and Knox, Mr. Black and HERO have suffered damages in the amount of $4,432,987.01.

WHEREFORE, Plaintiffs Mr. Black and HERO demand judgment in their favor and against the Defendants Sumi, Buzzard, and Knox in the amount of $4,432,987.01 plus punitive damages, interest, costs and other relief the Court deems appropriate.

184

## COUNT VI
## AIDING AND ABETTING FRAUD

### *Mr. Black and HERO*
### *v.*
### *Knox*

912.     Plaintiff incorporates the allegations of ¶¶ 1 – 911 above in this Count VI of Chapter 7 as if more fully set forth herein.

913.     Under Pennsylvania Law, aiding and abetting fraud is recognized as a cause of action.

914.     As described in the foregoing averments of this Complaint, Defendants Sumi, Buzzard, and Knox breached fiduciary duties owed by them to Mr. Black.

915.     As described above and upon information and belief, Defendant Knox had knowledge of each Defendant's breach of fiduciary duties owed to Mr. Black.

916.     Defendant Knox actively and/or blindly assisted in the commission of the fraud perpetrated by Defendants Sumi and Buzzard in the following respects:

a.     By failing to protect the financial interests of its client, Mr. Black, in allowing the diversion of Mr. Black's personal funds which were intended to fund an Annuity Trust for his benefit.

b.     By failing to disclose to and advise its client, Mr. Black, of the diversion of his funds which were intended to fund an Annuity Trust for his benefit.

c.     By misrepresenting to Mr. Black that his money was being used to fund an Annuity Trust for his benefit.

d.     By allowing the diversion of Mr. Black's money intended to fund an Annuity Trust for his benefit.

e.     By representing Defendant Sumi individually and as Trustee of the SJB 2022 Trust in a transaction having an obvious conflict of interest with those of Mr. Black.

185

f.    By preparing the documents for Defendants Sumi, individually and as Trustee of the SJB 2022 Trust, which were necessary to divert Mr. Blacks money to an unrelated and unintended entity (the SJB 2022 Trust).

g.    By drafting legal documents for the formation of a new entity owned for the benefit of Defendant Sumi.

h.    By providing Defendants Sumi and Buzzard with legal advice.

i.    By failing to draft any Note or other legal documents to reflect a repayment obligation from the SJB 2022 Trust to Mr. Black for use of Plaintiffs funds in its funding of the SJB 2022 Trust.

j.    By failing to inform its client Mr. Black of the material change in the use of his money to fund another entity (the SJB 2022 Trust).

k.    By drafting legal documents obligating HERO to pay the SJB 2022 Trust without adequate consideration and under false pretenses.

917.    As a result of Defendant Knox's active assistance in the commission of the fraud perpetrated by Defendants Sumi and Buzzard, Plaintiff Mr. Black and HERO have suffered damages in the amount of $4,432,987.01.

WHEREFORE, Plaintiffs Mr. Black and HERO demand judgment in their favor and against Defendant Knox in the amount of $4,432,987.01 plus punitive damages, interest, costs, and other relief the Court deems appropriate.

## COUNT VII
## CIVIL CONSPIRACY

### *Mr. Black*
### *v.*
### *Sumi, Buzzard and Knox*

918.    Plaintiff incorporates the allegations of ¶¶ 1- 917 above in this Count VII of Chapter 7 as if more fully set forth herein.

919.    As more fully detailed above, Defendants Sumi, Buzzard and Knox agreed to perform some or all of the following illegal acts or legal acts by illegal means:

920.    Defendants Sumi, Buzzard and Knox have performed multiple overt acts in furtherance of this conspiracy including acts previously enumerated herein.

921.    As a result of the conspiracy between Defendants Sumi, Buzzard and Knox, Plaintiff Mr. Black has suffered damages including lost interest and investment opportunities as well as substantial accounting and legal expenses.

922.    Defendants Sumi, Buzzard and Knox have acted in concert in pursuing a common purpose to perform the aforementioned unlawful acts and/or lawful acts by unlawful means for an unlawful purpose making the Defendants liable and responsible for their own wrongful acts against Plaintiff as well as for the wrongful conduct of any others acting in concert and conspiracy with them.

923.    Defendants Sumi, Buzzard and Knox have acted with malice or intent to injure Plaintiff and such actions were without legal cause or justification.

WHEREFORE, Plaintiff Mr. Black demands judgment in his favor and against Defendants Sumi, Buzzard and Knox in the amount of $4,432,987.01 plus punitive damages, interest, costs, and other relief the Court deems appropriate.

## COUNT VIII
## UNJUST ENRICHMENT

*Mr. Black*
*v.*
*Sumi, individually and as Trustee of the SJB 2022 Trust*

924.    Plaintiff incorporates the allegations of ¶¶ 1- 923 above in this Count VIII of Chapter 7 as if more fully set forth herein.

925.    Under Pennsylvania Law, Unjust Enrichment is recognized where (1) benefits are conferred on a defendant by plaintiff, (2) with an appreciation of such benefits by defendant, and

(3) acceptance and retention of such benefits under such circumstances that it would be inequitable for the defendant to retain the benefit without payments of value. (See *Wiernik v. PHH U.S. Mortgage Corp.,* 736 A.2d 616 (Pa. Super. Ct. 1999)).

926.    Mr. Black has conferred a benefit on Defendant Sumi, individually and as Trustee of the SJB 2022 Trust by using his personal money to fund a Trust that is entirely for her benefit, the SJB 2022 Trust, without Mr. Black's knowledge or consent.

927.    Defendant Sumi, individually and as Trustee of the SJB 2022 Trust has appreciated the benefits of the funding to a Trust that is entirely for her benefit, the SJB 2022 Trust.

928.    It would be inequitable for Defendant Sumi, individually and as Trustee of the SJB 2022 Trust, to retain Mr. Black's money and benefit of the financial obligations under the Note.

WHEREFORE, Plaintiff Mr. Black demands judgment in his favor and against Defendants Sumi, individually and as Trustee of the SJB 2022 Trust in the amount of $4,432,987.01 plus punitive damages, interest costs and such other relief that this court deems just and proper.

## COUNT IX
## PRELIMINARY INJUNCTION/TEMPORARY RESTRAINING ORDER

### *Mr. Black and HERO*
### *v.*
### *Sumi, Individually and as Trustee of the SJB 2022 Trust*

929.    Plaintiffs incorporate the allegations of ¶¶ 1-928 above in this Count IX of Chapter 7 as if more fully set forth herein.

930.    Plaintiffs Mr. Black and HERO have provided Defendant Sumi, individually and as Trustee of the SJB 2022 Trust, with a total of $4,432,987.01 of Plaintiffs' money intended for the funding of an Annuity Trust for Mr. Black's benefit but was diverted to the Defendant Sumi by way of the SJB 2022 Trust.

931.    Defendant Sumi, individually and as Trustee of the SJB 2022 Trust, are in possession of the $4,432,987.01 in the form of a Note obligating HERO to make monthly payments for Plaintiff's cash diverted to the Trust and loaned to HERO.

932.    Until the underlying merits of this lawsuit can be fully adjudicated, Defendant Sumi, individually and as Trustee for the SJB 2022 Trust should not be permitted to benefit from this unlawful transfer and from enforcing the Note from HERO to the SJB 2022 Trust.

933.    Due to the conduct of Defendant Sumi as more specifically set forth herein, Mr. Black and HERO believe and aver that Defendants Sumi and/or the SJB 2022 Trust will act to continue to try to enforce the Note which was obtained through fraudulent means.

934.    A temporary restraining order prohibiting Defendants Sumi and the SJB 2022 Trust from taking any action and/or trying to enforce the Note is appropriate at this time.

935.    Immediate and irreparable injury will result if a restraining order is not entered in that the Defendant Sumi and/or the SJB 2022 Trust is likely to pursue payment under the Note which was obtained through fraudulent means.

936.    A preliminary injunction prohibiting Defendant Sumi and/or SJB 2022 Trust from taking any action and/or trying to enforce the Note, is appropriate at this time.

937.    Plaintiffs Mr. Black and HERO are likely to succeed on the merits as more fully set forth in this Complaint.

938.    Defendants Sumi and/or SJB 2022 Trust will not suffer unnecessary harm as the request is simply asking for maintaining the status quo of the fraudulently obtained Note with money that was never hers in the first place.

939.    Public interest favors granting an injunction because a person should not be entitled to unearned funds during the pendency of a lawsuit.

189

WHEREFORE, Plaintiffs Mr. Black and HERO respectfully request that this Court enter a temporary restraining order prohibiting Defendant Sumi from taking any action and/or trying to enforce the Note.

## CHAPTER 8

## BLACK INSURANCE

### Mr. Black, Erie Management and Black Insurance
### v.
### Sumi and Buzzard

940.   The foregoing averments of this Complaint are hereby incorporated by reference thereto and made a part hereof as though fully set forth herein.

941.   As previously pled, on May 8, 2020, Defendant Sumi created the JB 2020 Trust – the primary purpose of which was to acquire, maintain and improve real property for the use of, benefit of and distribution to Defendant Sumi and her descendants.

942.   As previously pled, Defendant Sumi created Lot 289, LLC – the primary purpose of which was to acquire ownership of 289 Niagara Point, Erie, Pennsylvania.

943.   The JB 2020 Trust is the sole owner and member of Lot 289, LLC.

944.   The Knox Firm assisted in Defendant Sumi's creation of the JB 2020 Trust and Lot 289, LLC.

945.   Attorney Neil Devlin ("Devlin") of the Knox Firm, Mr. Black's personal attorney, was appointed Trustee of the JB 2020 Trust. It is believed and therefore averred that Devlin is still the Trustee.

946.   Defendant Buzzard, who as previously noted in this Complaint was at all times material hereto an employee and officer of many of Mr. Black's companies --- including Erie Management --- was appointed as the operating Manager of Lot 289, LLC by Defendant Sumi.

947.   All communications between Defendants Sumi, Buzzard, and Knox regarding the creation of Lot 289, LLC were done without notice to, knowledge of or participation by Mr. Black.

191

948.     Seven (7) days after its creation --- on May 15, 2020 --- Lot 289, LLC purchased the real estate property at **289 Niagara Pointe, Erie, Pennsylvania ("289 Niagara")** for a purchase price of $905,881.57, including closing costs.

949.     All of the money used for Lot 289, LLC's purchase of 289 Niagara came from Mr. Black, specifically through BILP, in exchange for a promissory note from Lot 289, LLC for the sum of $905,881.57.

950.     Very shortly after its purchase, Defendant Sumi started making lavish renovations to 289 Niagara, the costs for which would eventually exceed $1,000,000.00.

951.     As the sole owner of Lot 289, LLC, the JB 2020 Trust, per its Trust Agreement, was to pay for all expenses arising from Lot 289, LLC's acquisition, maintenance, and improvement of real property.

952.     Defendants Sumi and Buzzard were at all times relevant fully aware of the JB 2020 Trust's obligation to pay for all expenses arising from Lot 289, LLC's acquisition, maintenance and improvement of real property. (See ¶ **261**).

953.     Instead, and as described in Chapter 5 of this Complaint, to avoid using her own money and/or money from the JB 2020 Trust to pay for these renovations, Defendant Sumi, with Buzzard's assistance, surreptitiously directed the diversion of funds from Mr. Black and several of his business entities --- including Erie Management --- to pay for the majority of the 289 Niagara renovations costs.  This was done in a manner which hid both the true source and the true amount of the funds being spent on the property.

954.     Specifically, as to Erie Management, in the latter part of 2021and at Defendant Sumi's instructions and/or direction, Buzzard **diverted** a total of $239,950.00 from Erie

192

Management into the bank account Defendant Sumi was using to pay for her (JB 2020 Trust's/Lot 289, LLC's) renovations to 289 Niagara.

955.   Mr. Black was never made aware that these Erie Management funds were being used to pay for Lot 289, LLC's renovations at 289 Niagara.

956.   In late 2021, due in large part to the $239,950.00 of Erie Management funds secretly transferred by Buzzard to pay for Defendant Sumi's renovations to 289 Niagara, Erie Management was struggling to meet its monthly payments and payroll obligations.  (See, e.g. 12/01/2021 email attached as **Exhibit 63**, from Buzzard, responding to Defendant Sumi's email seeking funds to pay for countertops at 289 Niagara, in which Buzzard states, "I'm going to be hard pressed to make all appropriate payments/payroll etc. this month", and goes on to suggest options involving selling off more of Mr. Black's personal assets.)

957.   As a result, it is believed and therefore averred that Defendant Sumi instructed and/or authorized  Buzzard to take money from another one of Mr. Black's businesses --- Black Insurance Group ("Black Insurance", see ¶2 of the "Parties" section of this Complaint) --- and **deposit** the Black Insurance money into Erie Management's bank account so that Erie Management could meet its payroll obligations.

958.   At all times material hereto, Erie Management provided accounting services for Black Insurance, and Buzzard, as the Vice President of Finance and Accounting for Erie Management, was in charge of those accounting services.

959.   As a result, in December 2021, Defendant Buzzard --- without any authority from or notice to Black Insurance --- secretly "withdrew" $105,100.00 from Black Insurance's Erie Bank Account and **deposited** the withdrawn funds into the Erie Management bank account, as follows:

a.    On December 8, 2021, Buzzard signed a check for $17,500.00 from Black Insurance's operating account to Erie Management and **deposited** it into Erie Management's operating account;

b.    On December 22, 2021, Buzzard signed a check for $85,000.00 from Black Insurance's operating account to Erie Management and **deposited** it into Erie Management's operating account; and

c.    On December 29, 2021, Buzzard signed a check for $2,600.00 from Black Insurance's operating account to Erie Management and **deposited** it into Erie Management's operating account.

(Copies of the December 2021 Black Insurance Group's Erie Bank account statement and the aforesaid checks are attached hereto as **Exhibit 73**.)

960.    The previously mentioned December 2021 transactions out of Black Insurance's bank account into Erie Management's bank account were done without the knowledge or authorization of Black Insurance, specifically its President, Kevin Hughes, or its majority shareholder, Mr. Black.

961.    The result of these December 2021 unauthorized transactions out of Black Insurance's bank account left that account with a balance under $1,000.00 as of December 31, 2021, which caused Black Insurance to not have funds sufficient to meet its payroll and caused its payroll checks to bounce on January 6, 2022. (See June 7, 2023, Affidavit of Kevin Hughes, President of Black Insurance, previously attached hereto as **Exhibit 64**.)

962.    After learning of the bounced payroll checks and investigating the matter, Mr. Hughes confronted Defendant Buzzard about the unauthorized, secret transfer of $105,100 out of the Black Insurance bank account.

963.    Buzzard lied to Mr. Hughes when so confronted: from the previously mentioned Affidavit of Kevin Hughes (see **Exhibit 64**):

> 9.    *That on or about February 18, 2022, I confronted Nicole Buzzard about the withdrawals from the Agency account. She (Buzzard)*

194

*initially termed the withdrawals as a "loan" to EMG for its financial support. She then also stated that the withdrawn money would be invested in a money market account to maximize its investment potential with a possible distribution in June of 2022.*

10.     *That on June 9, 2022, I again approached Nicole Buzzard and inquired as to the status of the $105,000 withdrawn from the Agency account. Nicole Buzzard's response was that the funds were no longer available, and the Payable note would remain with EMG until things changed.*

964.    Mr. Black was forced to make up for this $105,100.00 deficiency from his personal assets.

965.    Defendant Buzzard resigned her position at Erie Management in August 2022 without ever reimbursing Black Insurance or Mr. Black for the $105,100 she wrongfully diverted from the latter's bank account.

966.    Neither Defendants Sumi nor the JB 2020 Trust nor Lot 298, LLC has ever repaid Mr. Black or Black Insurance for the $105,100 wrongfully diverted from the latter's bank account.

967.    The conduct of Defendants Sumi, Buzzard, and Knox as more fully described herein was willful, wanton, malicious and oppressive.

968.    As a result of the conduct of Defendants Sumi and Buzzard as more fully described herein, all of which was willful, wanton, malicious and oppressive, Mr. Black has sustained damages in the amount of $105,100.00.

## COUNT I
## BREACH OF FIDUCIARY DUTY

### *Mr. Black and Black Insurance*
### *v.*
### *Sumi and Buzzard*

969.     Plaintiffs incorporate the allegations of ¶¶ 1-968 above in this Count I of Chapter 8 as if fully stated herein.

970.     Under Pennsylvania Law, *breach of fiduciary duty* is recognized as a cause of action. See ¶¶ 141,142.

971.     The agencies of Defendants' Sumi and Buzzard arose by virtue of their positions respectively as COO and Director of Finance of Erie Management.

972.     The agency of Defendants' Sumi and Buzzard arose by virtue of their positions respectively as Secretary and Treasurer of Erie Management and Black Insurance.

973.     At all times relevant, Defendant Buzzard served as Director of Finance for Erie Management and as such, had a legal and fiduciary duty to maintain the accounts of Erie Management.

974.     At all times relevant, Defendant Sumi served as an Officer of Erie Management and also maintained a close, personal, and confidential relationship with Mr. Black and as such had a legal and fiduciary duty to Erie Management and Mr. Black.

975.     Both Defendants Sumi and Buzzard owed fiduciary duties to Erie Management as officers and employees thereof including a duty of loyalty and a duty to exercise reasonable care in the performance of their responsibilities.

976.     Both Defendants Sumi and Buzzard owed fiduciary duties to Mr. Black in his capacity as CEO of Erie Management and shareholder of Black Insurance.

997.    Both Defendants Sumi and Buzzard owed fiduciary duties to Black Insurance as officers thereof including a duty of loyalty and a duty to exercise reasonable care in the performance of their responsibilities.

998.    Despite their fiduciary duties to and confidential relationship with Mr. Black, Erie Management and Black Insurance, Defendants Sumi and Buzzard engaged in a pattern of self-dealing conduct intended to enrich themselves both individually and through their status as officers/employees of Erie Management and Black Insurance including the following:

a.      Manipulating, influencing, and otherwise directing the diversion of funds from Erie Management and Black insurance to pay for extravagant renovations to 289 Niagara, all to the benefit of Defendant Sumi and to the detriment of Plaintiffs Mr. Black, Erie Management and Black Insurance.

b.      Using the cash of Plaintiffs Mr. Black, Erie Management and Black Insurance to pay for extravagant renovations to 289 Niagara, all to the benefit of Defendant Sumi and to the detriment of Plaintiffs Mr. Black, Erie Management and Black Insurance.

c.      Manipulating the accounting system of Erie Management and Black Insurance to pay for extravagant renovations to 289 Niagara, all to the benefit of Defendant Sumi and to the detriment of Plaintiffs Mr. Black, Erie Management and Black Insurance.

d.      Diverting funds from Plaintiffs Mr. Black, Erie Management and Black Insurance to pay for extravagant renovations to 289 Niagara, all to the benefit of Defendant Sumi and to the detriment of Plaintiffs Mr. Black, Erie Management and Black Insurance.

e.      Failing to disclose to Plaintiffs Mr. Black, Erie Management and Black Insurance to pay for extravagant renovations to 289 Niagara, all to the benefit of Defendant Sumi and to the detriment of Plaintiffs Mr. Black, Erie Management and Black Insurance.

f.      Intentionally, recklessly and/or negligently failing to disclose to Plaintiffs Mr. Black, Erie Management and Black Insurance to pay for extravagant renovations to 289 Niagara, all to the benefit of Defendant Sumi and to the detriment of Plaintiffs Mr. Black, Erie Management and Black Insurance.

g.   Intentionally misrepresenting to Plaintiffs Mr. Black, Erie Management and Black Insurance to pay for extravagant renovations to 289 Niagara, all to the benefit of Defendant Sumi and to the detriment of Plaintiffs Mr. Black, Erie Management and Black Insurance.

999.   As a direct and proximate cause of the breach of fiduciary duties detailed above, Mr. Black was forced to pay Black Insurance the amount taken or $105,000.00.

WHEREFORE, Plaintiffs Mr. Black and Black Insurance demand judgment in their favor and against the Defendants Sumi and Buzzard in an amount of $105,000.00 plus punitive damages, interest, costs and other relief the Court deems appropriate.

## COUNT II
## FRAUD (CONSTRUCTIVE FRAUD)

### *Mr. Black, Erie Management and Black Insurance*
### *v.*
### *Sumi and Buzzard*

1000.   Plaintiff incorporates the allegations of ¶¶ 1- 993 above in this Count as if more fully set forth herein.

1001.   Under Pennsylvania Law, *constructive fraud* is recognized as a cause of action. See ¶¶ 155-158.

1002.   As more fully detailed above and at all times relevant, Defendants Sumi and Buzzard had a fiduciary duty to Plaintiffs Erie Management, Mr. Black and/or Black Insurance.

1003.   As more fully detailed above in Count I of Chapter 8, the Defendants Sumi and Buzzard breached their respective fiduciary duties owed to Plaintiffs Mr. Black, Erie Management and Black Insurance.

1004.   To their detriment, Plaintiffs Mr. Black, Erie Management and Black Insurance justifiably relied upon the Defendants Sumi and Buzzard in the performance of their duties as officers and/or employees.

1005.   As a direct and proximate cause of the breach of fiduciary duties detailed above, Mr. Black was forced to pay Black Insurance the amount taken or $105,000.00.

1006.   As a direct and proximate cause of the breach of fiduciary duties detailed above, Black Insurance was unable to make its payroll in December of 2021, wrote checks with insufficient funds which caused an overdraft of their bank account and unbeknownst to it, used funds stolen from Black Insurance to make its payroll.

WHEREFORE, Plaintiffs Mr. Black, Erie Management and Black Insurance demands judgment in their favor and against the Defendants Sumi and Buzzard in an amount of $105,100.00 plus interest, costs and other relief the Court deems appropriate.

### COUNT III
### FRAUD (INTENTIONAL MISREPRESENTATION)

*Mr. Black*
*v.*
*Sumi and Buzzard*

1007.   Plaintiff incorporates the allegations of ¶¶ 1- 1006 above in this Count II of Chapter 8 as if more fully set forth herein.

1008.   As more fully detailed above and at all times relevant, Defendants Sumi and Buzzard had fiduciary duties to Plaintiffs Mr. Black, Erie Management and Black Insurance.

1009.   As more fully detailed above, Defendants Sumi and Buzzard, with actual or constructive knowledge and acquiescence of each other, intentionally misled and failed to disclose

to Plaintiffs Mr. Black, Erie Management and Black Insurance to use their funds for extravagant renovations to 289 Niagara, all to the benefit of Defendant Sumi.

1010.   Defendants' misrepresentations and/or concealment were made to induce Plaintiffs Mr. Black and Black Insurance Group to utilize their funds for extravagant renovations to 289 Niagara, all to the benefit of Defendant Sumi.

1011.   As more fully detailed above, Defendants Sumi and Buzzard, with actual or constructive knowledge and acquiescence of each other, and without the authority of Plaintiffs Mr. Black and/or Black Insurance diverted the Black Insurance monies referenced above by three (3) **deposits** from the Black Insurance bank account to the Erie Management bank account.

1012.   As is more fully detailed above, Defendants Sumi and Buzzard intentionally kept information regarding the diversion of funds from Plaintiffs Mr. Black and Black Insurance.

1013.   As more fully detailed above, Defendants Sumi and Buzzard failed to protect the interests of Plaintiffs Mr. Black and Black Insurance by diverting Black Insurance's assets through a series of withdrawals and deposits to and for the benefit of Defendant Sumi.

1014.   Defendants Sumi and Buzzard's failure to disclose the diversion of funds was material because Plaintiffs Mr. Black, Erie Management and Black Insurance relied upon the honest services of Defendants Sumi and Buzzard as Erie Management officers and/or employees of Erie Management and/or Black Insurance.

1015.   Plaintiffs justifiably relied upon the misrepresentations and/or concealments made by Defendants Sumi and Buzzard in that Plaintiffs used their services as officers and/or employees of Erie Management and Black Insurance with the justifiable belief that they were receiving honest services while protecting the interests of Plaintiffs Mr. Black, Erie Management and Black Insurance.

200

1016.   Defendants Sumi and Buzzard's conduct, as more fully described above, was willful, wanton, malicious and oppressive.

1017.   Defendant Sumi and Buzzard's unlawful conduct has directly, legally, and proximately caused and continues to cause injuries to Plaintiffs.

1018.   Defendants Sumi and Buzzard engaged in conduct to benefit themselves at the expense of Plaintiffs Mr. Black, Erie Management and Black Insurance during a time when they owed fiduciary duties to and stood in a confidential relationship to Plaintiffs Mr. Black, Erie Management and Black Insurance.

1019.   These transactions were fraudulent and neither fair nor equitable; therefore, these transactions constitute constructive fraud on Plaintiffs.

1010.   As a result of the intentional misrepresentations and/or concealments as described above, Mr. Black was forced to pay Black Insurance the amount taken or $105,100.00.

WHEREFORE, Plaintiff Mr. Black demands judgment in his favor and against the Defendants Sumi and Buzzard in the amount of $105,100.00 plus interest, costs, and other relief the Court deems appropriate.

## COUNT IV
## CONVERSION

### Mr. Black and Black Insurance
### v.
### Sumi and Buzzard

1011.   Plaintiffs incorporate the allegations of ¶¶ 1 – 1010 above in this Count IV of Chapter 8 as if fully stated herein.

1012.   Under Pennsylvania Law, a cause of action for conversion is recognized where a defendant deprives another of their right of property or other interference therewith without the owner's consent and without legal justification.

201

1013.   Defendant Sumi through Defendant Buzzard and Defendant Lot 289, LLC, have engaged in purposeful conduct intended to deplete, deprive, and convert the assets of Plaintiffs Mr. Black and Black Insurance in the following manner:

    a.    Manipulating, influencing, and otherwise directing the diversion of Black Insurance assets to the Erie Management Bank account in such a manner as to cause financial loss to Mr. Black and BILP.

    b.    Failing to tell Mr. Black and Black Insurance that Black Insurance assets were being used to make up for a short fall in the Erie Management account caused by a diversion of Erie Management's funds for the benefit of Defendant Sumi.

1014.   As part of this purposeful course of action intended to deplete, deprive, and convert the private assets of Plaintiffs Mr. Black and Black Insurance, Defendants Sumi, by and through Defendant Buzzard has deprived Black Insurance and Mr. Black of its right to the $105,100.00.

1015.   Defendant Sumi, through Defendant Buzzard, interfered with Plaintiffs Mr. Black and Black Insurance's use and possession of $105,100.00 by refusing to return ownership thereto to Mr. Black and Black Insurance and making their own use of it.

1016.   Plaintiffs Mr. Black and Black Insurance have not consented to Defendants' retention of the $105,100.00.

1017.   Defendants Sumi and Lot 289, LLC have no legal justification for retaining the $105,100.00 stolen from Black Insurance.

1018.   Defendants Sumi and Lot 289 LLC, through Defendant Buzzard, has converted Black Insurance's assets for their own benefit.

WHEREFORE, Plaintiffs Mr. Black and Black Insurance demand judgment in their favor and against the Defendants Sumi and Buzzard in the amount of $105,100.00 plus interest, costs, and other relief the Court deems appropriate.

## COUNT V
## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

*Erie Management, Mr. Black and Black Insurance*
*v.*
*Sumi and Buzzard*

1019.   Plaintiff incorporates the allegations of ¶¶ 1- 1018 above in this Count V of Chapter 8 as if more fully set forth herein.

1020.   Under Pennsylvania Law, *aiding and abetting breach of fiduciary duty* is recognized as a cause of action.  See ¶ 195.  .

1021.   As described in the foregoing averments of this Complaint, Defendants Sumi and Buzzard breached fiduciary duties owed by them to Plaintiffs Mr. Black and Black Insurance.

1022.   As described above and upon information and belief, Defendants Sumi and Buzzard had knowledge of each other's breach of their respective fiduciary duties to Plaintiffs Mr. Black and Black Insurance.

1023.   As a result of the Defendants Sumi and Buzzard's breach of their respective fiduciary duties, Plaintiffs Mr. Black and Black Insurance have suffered damages including loss of cash, lost income, lost interest and investment opportunities, diminished value of Black Insurance as well as substantial accounting and legal expenses.

WHEREFORE, Plaintiffs Erie Management, Mr. Black and Black Insurance demand judgment in their favor and against the Defendants Sumi and Buzzard in the amount in excess of $105,100.00 plus punitive damages, interest, costs and other relief the Court deems appropriate.

## COUNT VI
## CIVIL CONSPIRACY

### *Mr. Black, Erie Management, and Black Insurance*
### *v.*
### *Sumi and Buzzard*

1024.   Plaintiff incorporates the allegations of ¶¶ 1- 1023 above in this Count VI of

Chapter 8 as if more fully set forth herein.

1025.   As more fully detailed above, Defendants Sumi and Buzzard agreed to perform

some or all of the following illegal acts or legal acts by illegal means:

    a.    Manipulating, influencing, and otherwise directing the diversion of funds from Erie Management and Black Insurance to pay for extravagant renovations to 289 Niagara, all to the benefit of Defendant Sumi and to the detriment of Plaintiffs Mr. Black, Erie Management and Black Insurance.

    b.    Using the cash of Plaintiffs Mr. Black, Erie Management and Black Insurance to pay for extravagant renovations to 289 Niagara, all to the benefit of Defendant Sumi and to the detriment of Plaintiffs Mr. Black, Erie Management and Black Insurance.

    c.    Manipulating the accounting system of Erie Management and Black Insurance to pay for extravagant renovations to 289 Niagara, all to the benefit of Defendant Sumi and to the detriment of Plaintiffs Mr. Black, Erie Management and Black Insurance.

    d.    Diverting funds from Plaintiffs Mr. Black, Erie Management and Black Insurance to pay for extravagant renovations to 289 Niagara, all to the benefit of Defendant Sumi and to the detriment of Plaintiffs Mr. Black, Erie Management and Black Insurance.

    e.    Failing to disclose to Plaintiffs Mr. Black, Erie Management and Black Insurance that Erie Management and Black Insurance funds were being used to pay for extravagant renovations to 289 Niagara, all to the benefit of Defendant Sumi and to the detriment of Plaintiffs Mr. Black, Erie Management and Black Insurance.

    f.    Failing to disclose to Plaintiffs Mr. Black, Erie Management and Black Insurance that Erie Management and Black Insurance funds were being used to pay for extravagant renovations to 289 Niagara,

all to the benefit of Defendant Sumi and to the detriment of Plaintiffs
Mr. Black, Erie Management and Black Insurance.

1026.   Defendants Sumi and Buzzard have performed multiple overt acts in furtherance of this conspiracy including acts previously enumerated herein.

1027.   As a result of the conspiracy between Defendants Sumi and Buzzard, Plaintiffs Mr. Black and Black Insurance have suffered damages including lost interest and investment opportunities, diminished value of Black Insurance as well as substantial accounting and legal expenses.

1028.   Defendants Sumi and Buzzard have acted in concert in pursuing a common purpose to perform the aforementioned unlawful acts and/or lawful acts by unlawful means for an unlawful purpose making the Defendants liable and responsible for their own wrongful acts against Plaintiffs as well as for the wrongful conduct of any others acting in concert and conspiracy with them.

1029.   Defendants Sumi and Buzzard have acted with malice or intent to injure Plaintiff and such actions were without legal cause or justification.

WHEREFORE, Plaintiffs Mr. Black, Erie Management and Black Insurance demand judgment in their favor and against the Defendants Sumi and Buzzard in an amount in excess of $105,100.00 plus punitive damages, interest, costs and other relief the Court deems appropriate.

## COUNT VII
## UNJUST ENRICHMENT

### Mr. Black and Black Insurance
### v.
### Sumi and Buzzard

1030.   Plaintiff incorporates the allegations of ¶¶ 1- 1029 above in this Count VII of Chapter 8 as if more fully set forth herein.

1031.   Under Pennsylvania Law, Unjust Enrichment is recognized where (1) benefits are conferred on a defendant by plaintiff, (2) with an appreciation of such benefits by defendant, and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for the defendant to retain the benefit without payments of value. (See *Wiernik v. PHH U.S. Mortgage Corp.,* 736 A.2d 616 (Pa. Super. Ct. 1999)).

1032.   Plaintiffs Mr. Black and Black Insurance have conferred a benefit on Defendant Sumi and Lot 289, LLC by way of the diversion of Black Insurance's assets to cover for the renovations to Lot 289, LLC owned property, 289 Niagara.

1033.   Defendants Sumi and Lot 289, LLC have appreciated the benefits of the assets of Plaintiffs Mr. Black and Black Insurance.

1034.   It would be inequitable for Defendant Sumi and Lot 289, LLC to retain the assets of Plaintiffs Mr. Black and Black Insurance that they unlawfully diverted to their benefit.

WHEREFORE, Plaintiffs Mr. Black and Black Insurance demand judgment in their favor and against Defendants Sumi and Buzzard in the amount of $105,100.00 plus interest, cost of suit and such other relief that this court deems just and proper.

## CHAPTER 9

## PRISM GLASS

### *Mr. Black, Erie Management and BILP*
### *v.*
### *Sumi, individually as Trustee of the SJB 2020 Inheritance Trust and Knox*

1035.   The foregoing averments of this Complaint are hereby incorporated by reference thereto and made a part hereof as though fully set forth herein.

1036.   In September 2019 Erie Management began internal discussions regarding purchasing an interest in a glass recycling business in Erie, Pennsylvania known as Bayfront Glass, LLC ("Bayfront Glass").

1037.   Emails exchanged on March 19, 2020, between Laura E. Guncheon, Vice President, Project Management Office of Erie Management and Nicholas Bruno, an owner, and Managing Director of Bayfront Glass, confirm a mutual agreement to engage in discussions for Erie Management to totally acquire Bayfront Glass.   (A copy of said emails is attached hereto as **Exhibit 74**)

1038.   A series of Letters of Intent (LOI) were exchanged between Erie Management and Bayfront Glass between April 17 and April 20, 2020, which presented counter-negotiations at varying terms for Erie Management to purchase a 95% interest in Bayfront Glass.  The LOI's from Erie Management were prepared with the assistance of Knox and were signed on behalf of Erie Management by "Samuel P. 'Pat' Black, III, Founder" and "Sumi James-Black, Interim CEO), President & COO".  (A copy of said LOI's are attached hereto as **Exhibit 75**.)

1039.   These negotiations proved unsuccessful, and Erie Management did not acquire any interest in Bayfront Glass.

1040.   As a result, Erie Management decided to pursue establishing its own start-up glass recycling business, and in fact hired Nicholas Bruno from Bayfront Glass to develop and manage this pursuit.

1041.   On September 22, 2020, Erie Management produced a **CONCEPT NOTE**, entitled **"Northwest PA Region Pilot Project Recyclable Glass Container Aggregation and Processing Public-Private Partnership"**. This document described in detail Erie Management's intent to "develop(ing) and establish(ing) recyclable glass container aggregation and processing system within a 3-year period to serve … the northwest PA regions."   Also, the last sentence of the Concept Note stated:

> **"Next Steps**
>
> To engage Erie Management in advancing this concept note onto a full pilot project, please contact Nicholas Bruno (Mr. Bruno's title and full contact information with Erie Management was then listed)".

(A copy of this Concept Note is attached hereto as **Exhibit 76**.)

1042.   Three (3) days later --- on September 25, 2020 --- Defendant Sumi created the **SJB 2020 Inheritance Trust ("SJB 2020 Trust")** via a Trust Agreement drafted by Knox. Defendant Sumi was designated as the Trustee Appointer, and she appointed herself to be the Trustee. Defendant Sumi was also the ultimate beneficiary of the SJB 2020 Trust.   (See ¶15 of the "PARTIES" section of this Complaint.)

1043.   On October 29, 2020, Erie Management, through Mr. Bruno and Ms. Guncheon, submitted a company-wide Announcement to the employees of Erie Management, which was specifically pre-approved by Defendant Sumi in her capacity as Interim CEO and COO of Erie Management.  The Announcement proclaimed Erie Management's new glass recycling company, Prism Glass Recycling, stating in part:

**Prism Glass Recycling**

A big thank you to everyone who has been doing their part to fill the glass recycling containers for the past year. As part being good stewards, we continually seek ways to address environmental issues and find reuse for materials across our companies. As such, we are pleased to announce a new EMG-affiliated glass recycling company *Prism Glass Recycling*.

Starting in November, *Prism* green recycling carts will be in the same locations as before, the east entry area of SB3 and the shipping/receiving area at Calypso.

\*\*\*\*\*                         \*\*\*\*\*                         \*\*\*\*\*

**What will we do with the glass?**

*Prism Glass Recycling* aims to establish a comprehensive recyclable glass collection system diverting recyclable glass from landfills and into the glass container manufacturing supply chain. *Prism* is soon to launch a pilot program with area municipalities to collect container glass from residents to ultimately return it to a useful life as a food/beverage container. Glass is infinitely recyclable!

\*\*\*\*\*                         \*\*\*\*\*                         \*\*\*\*\*

Thank you again for your participation in the glass recycling program and being a part of finding, creating and working toward improving our world.

Help spread the word to family, friends, neighbors, etc. that *Prism Glass Recycling* is coming to a community near you!

(A copy of the Announcement and the email from Defendant Sumi pre-approving it is attached hereto as **Exhibit 77**.)

1044.   Nearly two (2) weeks later, on November 10, 2020, a **Certificate of Organization** was filed with the Pennsylvania Department of State for the creation of **Prism Glass Recycling, LLC ("Prism Glass")**.  Prism Glass' registered office address was listed as 1540 East Lake Road, Suite 300, Erie, PA 16511, which is part of the SB Properties, LLC business complex owned by Mr. Black, specifically by S.P. Black Family Holdings, LP.  (A copy of said Certificate is attached hereto as **Exhibit 78**.)

209

1045.   The listed name of the Organizer who filed Prism Glass' Certificate of Organization was Kayla Allgeier, who was a paralegal employed by and for Erie Management at that time.

1046.   On the same date --- November 10, 2020 --- BILP, the investment/holding company and parent entity which provided funding for Mr. Black's other companies and investments, and which was 94.5% owned by Mr. Black (see ¶4 of the "PARTIES" section of this Complaint), provided a $350,000.00 line of credit ("LOC") to Prism Glass through a **Line of Credit Note**.  (A copy of this LOC Note is attached hereto as **Exhibit 79**.)

1047.   Per the terms of this LOC Note, the "Obligor" was designated as Prism Glass, and the "Obligee" was designated as BILP.  Further, per the page 3 NOTICES section of the LOC Note, all notices, requests, or communications for the LOC were *mandated* to be delivered to Samuel P. Black, III for the Obligor, and *to "Prism Glass Recycling, LLC, Attn: Samuel P Black, III"* for the Obligee.  The only way the latter designation would have had any meaning was if Samuel P. Black had the official authority as the owner/officer of Prism Glass to receive all such notices/communications.

1048.   The signatories for this LOC were:

| | | |
|---|---|---|
| *Sumi James-Black* | and | *Samuel P. Black, III* |
| *President* | | *Managing Partner* |
| *Prism Glass Recycling, LLC* | | *Black Interest Limited Partnership* |

1049.   However, on November 10, 2020, Defendant Sumi was *not* the President of Prism Glass.  Indeed, as of this date, there were no operating agreements, meetings, or appointments of any officers for Prism Glass.

1050.   On November 19, 2020, Defendant Sumi executed what purported to be the "OPERATING AGREEMENT OF PRISM GLASS RECYCLING, LLC" ("**The Operating Agreement**"), a copy of which is attached hereto as **Exhibit 80**.

1051.   Per the Operating Agreement, the SJB 2020 Inheritance Trust that Defendant Sumi created two (2) months earlier with the assistance of Mr. Black's attorneys at Knox and for her sole benefit (see ¶8, above) --- not Erie Management --- was designated as the sole owner and Member of Prism Glass. And the Operating Agreement was signed by Defendant Sumi, only, as a) the President of Prism Glass and b) the Trustee for the SJB 2020 Trust.

1052.   Additionally, on the same date --- November 19, 2020[6] --- Defendant Sumi signed a document entitled "CONSENT IN LIEU OF FIRST MEETING OF THE SOLE MEMBER OF PRISM GLASS RECYCLING, LLC" (the "Consent Document"), in which Defendant Sumi was designated as the President, Nicole Buzzard was designated as the Secretary/Treasurer, and neither Mr. Black nor anybody else was designated as an officer of Prism Glass. (A copy of this Consent Document is attached hereto as **Exhibit 81**.)

1053.   At all times material hereto, Defendant Sumi was an employee and officer of Erie Management.   Specifically, she was the COO of Erie Management, and also, in 2019 had been named the Interim CEO of Erie Management, the latter designation due to a leg injury to Mr. Black that had kept him out of the office for several months in 2019.

1054.   At all times material hereto, Buzzard was also an employee and officer of Erie Management.   Specifically, she was the Vice President of Finance & Accounting of Erie Management.

1055.   Mr. Black was not provided with copies of either the Operating Agreement or the Consent Document for Prism Glass, even though he and his company, Erie Management, had planned, developed, created, and provided the sole funding and physical location for the business.

---

[6] Actually, the Consent Document shows that Defendant Sumi handwrote the date as "10/19/20".  Given the date of the Operating Agreement and the entry in the Binder for Prism Glass, Plaintiffs believe this to be a typo, which should have read "11/19/20".

1056.   Prior to Defendant Sumi's creation of the November 19, 2020 Operating Agreement and Consent Document, nobody had ever mentioned or discussed with Mr. Black or any other employee of Erie Management involved in the planning and development of Prism Glass the idea of replacing Erie Management with the SJB 2020 Trust as the sole owner and/or member of Prism Glass.

1057.   Neither Defendants Sumi, Buzzard or anybody else had ever informed Mr. Black that Defendant Sumi's SJB 2020 Trust --- not Erie Management --- would be and/or was the owner/member of Prism Glass.

1058.   On February 18, 2021, a Go Erie news article[7] on Prism referenced its creation from Mr. Black's "incensed and inspired" reaction to the absence of glass recycling in the Erie, Pennsylvania region. The article concluded with a reference of Defendant Sumi as a "*co*-founder" of Prism Glass, implying Mr. Black as the other co-founder/owner. (A copy of said article is attached hereto as **Exhibit 82**.)

1059.   On June 8, 2021, Bayfront Glass, LLC again contacted Erie Management, expressing its interest in selling Bayfront to Erie Management. (Copies of emails between Bayfront and Laura Guncheon of Erie Management are attached hereto as **Exhibit 83.**)

1060.   That same day, a Non-Disclosure Agreement ("NDA") was drafted by Erie Management and sent to Bayfront Glass. The NDA was made between Erie Management and Bayfront Glass, only. No reference was made to Prism Glass, the SJB 2020 Trust or Defendant Sumi, and the NDA was signed for Erie Management by Ms. Guncheon, Vice President, Project Management Office of Erie Management. (A copy of the NDA is attached hereto as **Exhibit 84)**.

---

[7] Go Erie is the on-line news publication of the Erie Times News newspaper.

1061.   On June 15, 2021, Ms. Guncheon exchanged emails with Attorney William Helbing of Knox, in which Guncheon, in her capacity as Vice President, Project Management Office of Erie Management asked Helbling to draft an LOI from Erie Management to Bayfront Glass regarding Erie Management's prospective purchase of Bayfront Glass; and Attorney Helbling replied that he would "review and put together an LOI with such proposed terms".  (A copy of said emails are attached hereto as **Exhibit 85**.)

1062.   On June 18, 2021, Attorney Helbling emailed a draft of the requested LOI to Ms. Guncheon, with, however, changes from what he was directed to do by Guncheon. Features included:

a.      The draft noted "INSERT Erie Management LETTERHEAD" at the top of the first page;

b.      The LOI replaced Erie Management with Prism Glass as the proposed purchaser of Bayfront Glass; and

c.      Even though the Erie Management letterhead was to be used, the signature line for the LOI was:

"Very truly yours,
*PRISM GLASS RECYCLING, LLC*

By:_____
Name:    *Sumi James-Black*
Title:     *COO"*

(A copy of the LOI draft is attached hereto as **Exhibit 86**).

1063.   Defendant Sumi was not the COO of Prism Glass, but rather the COO of Erie Management.

1064.   Attorney Helbling's email contains no explanation why the LOI draft he prepared substituted Prism Glass for Erie Management, or why, in that event, the LOI was to be placed

under Erie Management letterhead and with a signature line which mixed up the titles Defendant Sumi held under Erie Management and Prism Glass.

1065.  Mr. Black was not aware that his counsel's office had drafted an LOI which replaced Erie Management with Prism Glass as the proposed purchaser of Bayfront Glass.

1066.  Negotiations for the abovementioned proposed purchase of Bayfront Glass fell through and no sale was consummated.

1067.  On August 5, 2021, the Erie Times published a feature article Prism Glass' successful efforts to recover and recycle 1.3 million glass bottles in New York State that otherwise would have been landfilled. Said article, which quoted Ms. Guncheon, as the vice president of project management for Erie Management, and Mr. Black, as the Erie Management founder and CEO, and did note that Sumi James-Black, was "at the helm of Prism Glass", left no doubt that Erie Management was the owner of Prism Glass, stating, for example:

> "There were taking up an incredible amount of warehouse space," said Laura Guncheon, vice president of project management for *Erie Management Group, which owns Prism Glass Recycling.* (emphasis added).

1068.  On the same date this article was published, Guncheon emailed a copy of it to Mr. Black, Defendant Sumi, and Buzzard, among others. Yet, even then and thereafter, neither Defendant Sumi nor Buzzard ever offered any reply that Defendant Sumi's SJB 2020 Trust --- not Erie Management --- owned Prism Glass.  (A copy of this email with the copied Erie Times article is attached hereto as **Exhibit 87**.)

1069.  In March of 2022, having not received any updates on the Prism Glass operations, Mr. Black requested a meeting in March of 2022.

1070.   As a result, a meeting took place with Mr. Black, Guncheon, Bruno, Defendant Sumi, Defendant Buzzard, and Matthew Wethli of Erie Management's HR Department. No mention of the true ownership of Prism was provided to Mr. Black at this meeting.

1071.   Prism Glass has sustained significant losses since it began its operations.

1072.   By October of 2022, Defendant Sumi decided to sell Prism Glass.

1073.   Erie Management had provided management services for Prism throughout the entire period Prism operated.

1074.   Mr. Black, believing all the while that he held an ownership interest in Prism Glass, continued to provide cash funding --- in addition to the $350,000.00 made available through the above-stated LOC --- from BILP to Prism Glass in order to sustain Prism Glass.

1075.   The total amount of Erie Management's management support and the added cash funding from BILP is $575,000.00.

1076.   Added to the $350,000.00 Prism obtained from BILP through the LOC, the total amount of funding provided by Mr. Black, and/or Erie Management and/or BILP totaled $925,000.00.

1077.   Defendant Sumi sold Prism Glass in late 2022 for $100,000.00.

1078.   Defendant Sumi received the entire sales proceeds and has kept it all to herself.

1079.   As of the date of this sale, neither Prism Glass nor the Defendants SJB 2020 Trust nor Sumi had repaid any of the $925,00.000 to Mr. Black, and/or Erie Management and/or BILP.

1080.   Defendant Sumi, upon request, has refused to repay any of the above-noted funding provided to Prism Glass and denies owing anything to Mr. Black and/or Erie Management and/or BILP for their funding of Prism Glass.

1081.   As a result of the negligent, reckless and/or intentional actions of the Defendants Sumi, Buzzard and Knox, Mr. Black has sustained damages in the amount of $925,000.00.

## COUNT I
## BREACH OF FIDUCIARY DUTY

### *Mr. Black, Erie Management and BILP*
### *v.*
### *Sumi, Buzzard, and Knox*

1082.   Plaintiffs incorporate the allegations of ¶¶ 1-1081 above in this Count I of Chapter 9 as if fully stated herein.

1083.   Under Pennsylvania Law, *breach of fiduciary duty* is recognized as a cause of action. See ¶¶ 141 and 142.

1084.   The agencies of Defendants' Sumi and Buzzard arose by virtue of their positions respectively as COO and Director of Finance of Erie Management.

1085.   The agency of Defendants' Sumi and Buzzard arose by virtue of their positions respectively as Secretary and Treasurer of Erie Management and BILP.

1086.   The agency of Knox arose by virtue of its contractual and ethical position as **personal attorney** for Mr. Black, Erie Management and BILP.

1087.   At all times relevant, Defendant Buzzard served as Director of Finance for Erie Management and as such, had a legal and fiduciary duty to maintain the accounts of Erie Management.

1088.   At all times relevant, Defendant Sumi served as an Officer of Erie Management and also maintained a close, personal, and confidential relationship with Mr. Black and as such had a legal and fiduciary duty to Erie Management and Mr. Black.

1089.   Defendant Knox served as personal attorney for Mr. Black and his entities from August 2017 through August 2022.

1090.   Both Defendants Sumi and Buzzard have fiduciary duties to Erie Management and BILP as officers and/or employees thereof including a duty of loyalty and a duty to exercise reasonable care in the performance of their responsibilities.

1091.   Defendant Knox owed fiduciary duties to Black, Erie Management and BILP as attorney thereof including duties of care, loyalty, good faith, confidentiality, prudence, and disclosure.

1092.   Despite their fiduciary duties to and confidential relationship with Mr. Black, Erie Management and BILP, Defendant Sumi through Defendant Buzzard engaged in a pattern of self-dealing conduct intended to enrich themselves both individually and through their status as officers/employees of Erie Management including the following:

   a.   Manipulating, influencing, and otherwise directing the change of the purchasing entity in such a manner as to cause financial loss to Mr. Black, BILP and Erie Management and causing financial benefits to Defendants Sumi, and the SJB 2020 Trust.

   b.   Using the cash of Plaintiffs, Mr. Black and BILP and the services of Erie Management to help fund a business entity believed to be owned by Erie Management but in fact owned by the SJB 2020 Trust.

   c.   Failing to disclose to Mr. Black and Erie Management that BILP funds and Erie Management services were being used to help fund a business entity believed to be owned by Erie Management but in fact owned by the SJB 2020 Trust.

   d.   Intentionally, recklessly and/or negligently failing to disclose to Mr. Black and Erie Management the change of material terms of the creation of Prism, namely substituting the founding entity of Prism from the SJB Trust for Erie Management.

   e.   Intentionally misrepresenting to Mr. Black and Erie Management that BILP funds and Erie Management services were being used to

217

help fund a business entity believed to be owned by Erie Management but in fact owned by the SJB 2020 Trust.

1093.   Despite its fiduciary duties to its clients, Mr. Black, Erie Management and BILP, Defendant Knox engaged in the following breaches of said duties as follows:

     a.     By failing to protect the financial interests of its clients, Mr. Black, Erie Management and/or BILP in allowing the Prism transaction to proceed with the SJB 2020 Trust being the owner.

     b.     By failing to disclose to and advise its clients, Mr. Black, Erie Management and/or BILP, that the money and services they were investing in was for an entity not owned by them.

     c.     By preparing documents for this transaction when it knew or should have known that their terms were not consistent with the desires of its clients Mr. Black, Erie Management, and BILP.

     d.     By representing and giving legal advice to Defendant Sumi and SJB 2020 Trust in transactions having an obvious conflict of interest with those of its clients, Mr. Black, Erie Management and BILP.

     e.     By violating its ethical obligation to Plaintiffs as stated in section 1.7 of the Pennsylvania Rules of Professional Conduct.

     f.     By violating its ethical obligation under section 1.2 of the Pennsylvania Rules of Professional Conduct by counseling Defendants to engage or assist in conduct it knew or should have known was fraudulent, criminal and/or adverse to the interests of its clients.

1094.   As a direct and proximate cause of the breach of fiduciary duties detailed above, Mr. Black, Erie Management and BILP suffered damages in an amount in excess of $925,000.00.

WHEREFORE, Plaintiffs Mr. Black, Erie Management and BILP demand judgment in their favor and against the Defendants Sumi, Buzzard, and Knox in an amount in excess of $925,000.00 plus interest, costs, and other relief the Court deems appropriate.

## COUNT II
## FRAUD (CONSTRUCTIVE FRAUD)

### *Mr. Black, Erie Management and BILP*
### *v.*
### *Sumi, Buzzard and Knox*

1095.   Plaintiff incorporates the allegations of ¶¶ 1- 1094 above in this Count II of Chapter 9 as if more fully set forth herein.

1096.   Under Pennsylvania Law, *constructive fraud* is recognized as a cause of action. See ¶¶ 155-158.

1097.   As more fully detailed above and at all times relevant, Defendants Sumi, Buzzard and Knox had a fiduciary duty to Plaintiffs Erie Management, Mr. Black and/or BILP.

1098.   As more fully detailed above in Count I of Chapter 9, the Defendants Sumi, Buzzard, and Knox breached their respective fiduciary duties owed to Mr. Black, Erie Management and BILP.

1099.   Plaintiffs justifiably relied upon the Defendants Buzzard, Sumi, and Knox in this transaction to their determent.

1100.   As a result of Defendants Sumi, Buzzard and Knox's breaches of their respective fiduciary duties, Plaintiffs Mr. Black, Erie Management and BILP have suffered damages in an amount in excess of $925,000.00.

WHEREFORE, Plaintiffs Mr. Black, Erie Management and BILP demand judgment in their favor and against the Defendants Sumi, Buzzard, and Knox in an amount in excess of $925,000.00 plus interest, costs, and other relief the Court deems appropriate.

## COUNT III
## FRAUD (INTENTIONAL MISREPRESENTATION)

### *Mr. Black, Erie Management and BILP*
### *v.*
### *Sumi, Buzzard and Knox*

1101.   Plaintiff incorporates the allegations of ¶¶ 1- 1100 above in this Count III of Chapter 9 as if more fully set forth herein.

1102.   As more fully detailed above and at all times relevant, Defendants Sumi, Buzzard and Knox had a fiduciary duty to Plaintiffs Mr. Black, Erie Management and BILP.

1103.   Defendants Sumi, Buzzard and/or Knox intentionally misrepresented to Plaintiffs Mr. Black, Erie Management and BILP that their funds and/or services were being used for an entity owned by Erie Management.

1104.   Defendants' misrepresentations were made to induce Mr. Black, Erie Management and BILP to provide funding and/or services to an entity they did not own.

1105.   As more fully detailed above, Defendants Sumi, Buzzard, and Knox, with actual or constructive knowledge and acquiescence of each other, mislead Mr. Black, Erie Management and BILP into believing that Erie Management would own the newly created entity, Prism.

1106.   As more fully detailed above, Defendants Sumi, Buzzard, and Knox, with actual or constructive knowledge and acquiescence of each other, mislead Mr. Black, Erie Management and BILP into believing that Erie Management services were being used for an entity owned by Erie Management.

1107.   As more fully detailed above, Defendants Sumi, Buzzard, and Knox, with actual or constructive knowledge and acquiescence of each other, directed and/or prepared documents

changing Mr. Black's intent that Erie Management own the Prism entity to the ownership of the SJB 2020 Trust.

1108.   As is more fully detailed above, Defendants Sumi, Buzzard and Knox intentionally kept information regarding the true ownership of the Prism entity from Mr. Black, Erie Management and BILP.

1109.   As is more fully detailed above, Defendants Sumi, Buzzard, and Knox failed to protect the interests of Mr. Black, Erie Management and BILP.

1110.   Defendants Sumi, Buzzard, and Knox's' failure to disclose the diversion of funds was material because Plaintiffs Mr. Black, Erie Management and BILP relied upon the honest services of Defendant Sumi and Buzzard as Erie Management and BILP officers and Knox as the retained personal attorney for Mr. Black, Erie Management and BILP.

1111.   Plaintiffs justifiably relied upon the misrepresentations and concealments made by Defendants Sumi, Buzzard and Knox in that Plaintiffs Mr. Black, Erie Management and BILP continued to use the services of Erie Management's officers and their personal attorney with the justifiable belief that they were receiving honest services while protecting Mr. Black, Erie Management and BILP's best interests.

1112.   Defendants Sumi, Buzzard, and Knox's conduct, as more fully described above, was willful, wanton, malicious and oppressive.

1113.   Defendant Sumi, Buzzard and Knox's unlawful conduct has directly, legally, and proximately caused and continues to cause injuries to Plaintiffs Mr. Black, Erie Management and BILP.

1114.   As a result of the intentional misrepresentations of the Defendants Sumi, Buzzard and/or Knox, Plaintiffs Mr. Black, Erie Management and BILP have suffered damages in an amount in excess of $925,000.00.

1115.   Defendants Sumi, Buzzard and/or Knox engaged in conduct to benefit themselves at the expense of Mr. Black, Erie Management and BILP during a time when they owed fiduciary duties to and stood in a confidential relationship to Mr. Black, Erie Management and BILP.

1116.   These transactions were fraudulent and neither fair nor equitable; therefore, these transactions constitute constructive fraud on Mr. Black, Erie Management and BILP.

1117.   Defendants Sumi, Buzzard and Knox intentionally misrepresented to Mr. Black, Erie Management and BILP that their funds and services were being used for an entity owned by Erie Management.

1118.   Defendants Sumi, Buzzard and Knox's misrepresentations were material to Mr. Black, Erie Management and BILP's providing of funds and services to Prism.

1119.   Defendants' misrepresentations were made to induce Plaintiffs Mr. Black, Erie Management and BILP to provide funding and services for an entity that was never owned by Erie Management.

1120.   Plaintiffs justifiably relied upon the misrepresentations made by Defendants Buzzard, Sumi, and Knox in this transaction to their determent.

1121.   As a result of the intentional misrepresentation of the Defendants Sumi, Buzzard and/or Knox, Plaintiffs Mr. Black, Erie Management and BILP have suffered damages in the amount in excess of $925,000.00.

WHEREFORE, Plaintiffs Mr. Black, Erie Management and BILP demand judgment in their favor and against the Defendants Sumi, Buzzard, and Knox in the amount of $925,000.00 plus interest, costs, and other relief the Court deems appropriate.

**COUNT IV**
**CONVERSION**

***Mr. Black, Erie Management and BILP***
***v.***
***Sumi, Buzzard, and Knox***

1122.   Plaintiffs incorporate the allegations of ¶¶ 1 – 1121 above in this Count IV of Chapter 9 as if fully stated herein.

1123.   Under Pennsylvania Law, a cause of action for conversion is recognized where a defendant deprives another of their right of property or other interference therewith without the owner's consent and without legal justification.

1124.   As previously set forth in this Chapter 9, Defendants Sumi, and JB 2020 Trust, through Buzzard and Knox, have engaged in purposeful conduct intended to deplete, deprive and convert the assets of Erie Management, BILP and Mr. Black.

1125.   As part of this purposeful course of action intended to deplete, deprive, and convert the private assets of Erie Management, BILP and Mr. Black, Defendants Sumi, and JB 2020 Trust, by and through Defendants Buzzard and Knox have:

    a.    Deprived Erie Management of its ownership rights to Prism Glass that Defendants are not entitled to retain since Erie Management was the intended owner.

    b.    Deprived Erie Management of its right to the $525,000.00 in services it provided to Prism Glass.

    c.    Deprived BILP of the funds invested in the creation of Prism.

1126.   Defendants Sumi and JB 2020 Trust have interfered with Erie Management's use and possession of Prism Glass by refusing to return ownership thereto to Erie Management, instead selling it and keeping the sale proceeds for its own use.

1127.   Erie Management and BILP have not consented to Defendants' retention of Prism Glass, or the funds invested in Prism Glass.

1128.   Defendants have no legal justification for retaining the Prism Glass sale proceeds.

1129.   Defendant has converted Prism Glass sale proceeds.

WHEREFORE, Plaintiffs Mr. Black, Erie Management and BILP demand judgment in their favor and against the Defendants Sumi and SJB 2020 Trust in the amount of $925,000.00 plus interest, costs, and other relief the Court deems appropriate.

## COUNT V
## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

*Mr. Black, Erie Management and BILP*
*v.*
*Sumi, Buzzard and Knox*

1130.   Plaintiff incorporates the allegations of ¶¶ 1- 1129 above in this Count V of Chapter 9 as if more fully set forth herein.

1131.   Under Pennsylvania Law, *aiding and abetting breach of fiduciary duty* is recognized as a cause of action.  See ¶ 195.

1132.   As described in the foregoing averments of this Complaint, Defendants Sumi, Buzzard, and Knox breached fiduciary duties owed by them to Plaintiffs Mr. Black, Erie Management and BILP.

1133.   As described above and upon information and belief, Defendants Sumi, Buzzard, and Knox had knowledge of each other's breach of their respective fiduciary duties to Plaintiffs Mr. Black, Erie Management and BILP.

1134.   As a result of the Defendants Sumi, Buzzard and Knox's breach of their respective fiduciary duties, Plaintiffs Mr. Black, Erie Management and BILP have suffered damages including loss of cash, lost income, lost interest and investment opportunities, diminished value of Erie Management and BILP as well as substantial accounting and legal expenses.

1135.   As a result of Defendant Knox's active assistance in the commission of the fraud perpetrated by Defendants Sumi, Buzzard and Knox, Plaintiffs Mr. Black, Erie Management and BILP have suffered damages in the amount of $925,000.00.

WHEREFORE, Plaintiffs Mr. Black, Erie Management and BILP demand judgment in their favor and against the Defendants Sumi, Buzzard, and Knox in the amount of $925,000.00 plus interest, costs, and other relief the Court deems appropriate.

## COUNT VI
## AIDING AND ABETTING FRAUD

### *Mr. Black, Erie Management and BLIP*
### *v.*
### *Knox*

1136.   Plaintiff incorporates the allegations of ¶¶ 1 – 1135 above in this Count VI of Chapter 9 as if more fully set forth herein.

1137.   Under Pennsylvania Law, aiding and abetting fraud is recognized as a cause of action. See ¶203.

1138.   As described in the foregoing averments of this Complaint, Defendants Sumi, Buzzard, and Knox breached fiduciary duties owed by them to Plaintiffs Mr. Black, Erie Management and BILP.

1139.  As described above and upon information and belief, Defendant Knox had knowledge of each Defendants' breach of fiduciary duties owed to Erie Management, Mr. Black and BILP.

1140.  As previously set forth in this Chapter 9, Defendant Knox actively and/or blindly assisted in the commission of the fraud perpetrated by Defendants Sumi and Buzzard.

1141.  As a result of Defendant Knox's active assistance in the commission of the fraud perpetrated by Defendants Sumi and Buzzard, Plaintiffs Mr. Black, Erie Management and BILP have suffered damages in an amount in excess of $925,000.00.

WHEREFORE, Plaintiffs Mr. Black, Erie Management and BILP demand judgment in their favor and against Defendant Knox in an amount in excess of $925,000.00 plus interest, costs, and other relief the Court deems appropriate.

## COUNT VII
## CIVIL CONSPIRACY

*Mr. Black, Erie Management and BILP*
*v.*
*Sumi, Buzzard, and Knox*

1142.  Plaintiff incorporates the allegations of ¶¶ 1- 1141 above in this Count VII of Chapter 9 as if more fully set forth herein.

1143.  As more fully detailed above, Defendants Sumi, Buzzard, and Knox agreed to perform some or all the illegal acts or legal acts by illegal means as set forth previously.

1144.  Defendants Sumi, Buzzard, and Knox have performed multiple overt acts in furtherance of this conspiracy including acts previously enumerated herein.

1145.  As a result of the conspiracy between Defendants Sumi, Buzzard, and Knox, Plaintiffs Mr. Black, Erie Management and BILP have suffered damages including lost interest

226

and investment opportunities, diminished value of Erie Management and BILP as well as substantial accounting and legal expenses.

1146.   Defendants Sumi, Buzzard, and Knox have acted in concert in pursuing a common purpose to perform the aforementioned unlawful acts and/or lawful acts by unlawful means for an unlawful purpose making the Defendants liable and responsible for their own wrongful acts against Plaintiffs as well as for the wrongful conduct of any others acting in concert and conspiracy with them.

1147.   Defendants Sumi, Buzzard, and Knox have acted with malice or intent to injure Plaintiffs and such actions were without legal cause or justification.

WHEREFORE, Plaintiffs Mr. Black, Erie Management and BILP demand judgment in its favor and against Defendants Sumi, Buzzard, and Knox in the amount of $925,000.00 plus costs of suit and such further relief as this Court deems just and proper.

## COUNT VIII
## UNJUST ENRICHMENT

### Mr. Black, Erie Management and BILP
### v.
### Sumi and the SJB 2020 Trust

1148.   Plaintiff incorporates the allegations of ¶¶ 1- 1147 above in this Count VIII of Chapter 9 as if more fully set forth herein.

1149.   Under Pennsylvania Law, Unjust Enrichment is recognized where (1) benefits are conferred on a defendant by plaintiff, (2) with an appreciation of such benefits by defendant, and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for the defendant to retain the benefit without payments of value. (See *Wiernik v. PHH U.S. Mortgage Corp.,* 736 A.2d 616 (Pa. Super. Ct. 1999)).

1150.  Mr. Black, Erie Management and BILP have conferred a benefit on Defendant Sumi and the JB 2020 Trust by way of monies loaned and services provided.

1151.  Defendants Sumi and the JB 2020 Trust have appreciated the benefits of the monies loaned and services provided.

1152.  It would be inequitable for Defendants Sumi and the JB 2020 Trust to retain the monies loaned and now services provided which are part of the sale proceeds from the sale of Prism Glass.

WHEREFORE, Plaintiffs Mr. Black, Erie Management and BILP demand judgment in their favor and against Defendant Sumi and JB 2020 Trust in the amount of $925,000.00 plus cost of suit and such other relief that this court deems just and proper.

## CHAPTER 10

## FRAUDULENT USE OF ERIE MANAGEMENT ASSETS

*Mr. Black and Erie Management*
*v.*
*Sumi and Buzzard*

1153.   The foregoing averments of this Complaint are hereby incorporated by reference thereto and made a part hereof as though fully set forth herein.

1154.   At all times relevant, Defendant Sumi was responsible for approving all Erie Management employee reimbursements, including hers, and Erie Management expenditures. Both Defendants Sumi and Buzzard were issued their own Erie Management company credit cards through Citizens Bank.

1155.   From 2017 through 2021, Erie Management honored employees under the BILP umbrella having ten (10) years of service with Rolex watches.  This tradition was done with Mr. Black's knowledge and consent.

1156.   Defendant Sumi assumed responsibility for purchasing the watches through a jeweler-acquaintance in California, Angeles Diamond International. Each time she used the Erie Management corporate credit card.  Each year from 2017 through 2021, these purchases were made with Mr. Black's knowledge and consent.

1157.   Following the departure of Defendants Sumi and Buzzard in August of 2022, Erie Management's accounting department discovered that Defendants Sumi and Buzzard both used their respective Erie Management corporate credit cards for purchases from Angeles Diamond International in California. Through an audit, they discovered there were no corresponding receipts for several transactions. The purchases total $53,684.00 and occurred as follows:

     a.    February 4, 2022, $18,648.00 on Defendant Buzzard's corporate card

  b. February 4, 2022, $20,000.00 on Defendant Sumi's corporate card; and

  c. February 18, 2022, $15,000.00 on Defendant Buzzard's corporate card.

1158. Erie Management's accountants also discovered that Defendant Buzzard made the following entries for each purchase: *"Angeles Diamond International \*\*\* Deposit for 2022 tenure Watches, Inv to come from Sumi later; Record Use Tax on Total Purchase when invoice received."*

1159. When questioned about the receipts, Defendant Buzzard responded that Defendant Sumi would provide receipts for these transactions.

1160. Defendant provided no receipts while at Erie Management. Despite a diligent search after the Defendants' departure, Plaintiffs did not find any receipts, watches, or other jewelry.

1161. A review of employee records revealed that there were no tenured employees under the BILP umbrella eligible for the watches in 2022.

1162. Following the departures of Defendants Sumi and Buzzard, Erie Management accounting made numerous attempts to retrieve receipts for the transaction with no responses from the jewelers.

1163. After repeated attempts to contact Angeles Diamond International, Erie Management Controller spoke to a representative on December 15, 2023, who confirmed that the insured package(s) were in fact shipped to Defendant Sumi.

1164. Based on the foregoing, it is believed and therefore averred that Defendant Sumi and/or Defendant Buzzard have possession of the watches.

1165.   Neither Defendant Sumi nor Defendant Buzzard ever reimbursed Erie Management or Mr. Black the $53,684.00 for the above-mentioned watches which were purchased without the authority or consent of Mr. Black.

1166.   In addition to the Angeles Diamond International expenditures, Erie Management's accounting department very recently discovered that in 2016, Defendant Sumi hired Vivian Cawagas on behalf of Erie Management as a "consultant". A May 1, 2016 Consulting Agreement ("Agreement") provided for "Hawaii based consulting services focusing on administrative assistance in the Hawaii area" (See **Exhibit 88**). The term of the Agreement was for a one (1) year period at $2,500.00 per month, said Agreement expiring at the end of the one (1) year term *unless extended by the parties in writing*. At Defendant Sumi's request, Mr. Black approved this initial Agreement as stated. The Agreement expired on April 30, 2017, with no extension thereafter. However, after the departures of Defendants Sumi and Buzzard, Erie Management's accounting department also discovered: (1) that Erie Management paid Consultant $18,982.77 in 2016 but then continued paying Consultant through January 2022 to the tune of $164,647.34; (2) that Erie Management had no agreement for Consultant's services past the expiration of the one year Agreement; (3) that Consultant provided no services whatsoever for Erie Management – not one report or document ever generated - but instead provided only personal services for Defendant Sumi including the purchase and shipment of personal products (dried mangos, chocolates, coffee) with no benefit to Erie Management; (4) that the Consultant also was an employee of Defendant Sumi's ex-husband – Matthew James – in his neurolinguistics business during the 2016 – 2022 period; and (5) that all payments were done with the authorization and approval of Defendant Sumi and with the assistance of Defendant Buzzard.

231

1167.   Also in addition to the aforementioned transactions and after the departures of Defendant's Sumi and Buzzard, Erie Management's accounting department discovered that Defendant Sumi used the corporate card for more than $100,000.00 for home renovations, meals, hotel rooms, flights, and other non-corporate related expenses.  (See partial account **Exhibit 89**.)

1168.   Erie Management's accounting department continue to investigate the activities of Defendants Sumi and Buzzard and anticipate that additional acts of fraud will be discovered throughout the period of this litigation and discovery thereof with additional monetary damages suffered by Plaintiffs.

1169.   As a result of the negligent, reckless and/or intentional actions of Defendants Sumi and Buzzard, Mr. Black and Erie Management have sustained damages in an amount in excess of $199,348.23.00.

## COUNT I
## BREACH OF FIDUCIARY DUTY

### *Mr. Black and Erie Management*
### *v.*
### *Sumi and Buzzard*

1170.   Plaintiffs incorporate the allegations of ¶¶ 1-1169 above in this Count I of Chapter 10 as if fully stated herein.

1171.   Under Pennsylvania Law, *breach of fiduciary duty* is recognized as a cause of action. See ¶¶ 141, 142.

1172.   The agencies of Defendants' Sumi and Buzzard arose by virtue of their positions respectively as COO and Director of Finance of Erie Management.

1173.   The agency of Defendants' Sumi and Buzzard arose by virtue of their positions respectively as Secretary and Treasurer of Erie Management.

1174. Both Defendants Sumi and Buzzard owed fiduciary duties to Erie Management as officers and employees thereof including a duty of loyalty and a duty to exercise reasonable care in the performance of their responsibilities.

1175. Both Defendants Sumi and Buzzard owed fiduciary duties to Erie Management as officers thereof including a duty of loyalty and a duty to exercise reasonable care in the performance of their responsibilities.

1176. Defendant Sumi served as an Officer of Erie Management and also maintained a close, personal, and confidential relationship with Mr. Black and as such had a legal and fiduciary duty to Erie Management and Mr. Black.

1177. Despite their fiduciary duties to and confidential relationship with Mr. Black and Erie Management, Defendants Sumi and Buzzard engaged in the following pattern of conduct intended to harm Plaintiffs through their status as officers/employees of Erie Management:

    a. Using Erie Management's assets, including the corporate card, for personal expenditures benefiting themselves.

    b. Using Erie Management's assets, including the corporate card, to their respective benefits without authorization.

    c. Using Erie Management's assets, including the corporate credit card, to pay for numerous personal items, all to the benefit of Defendants Sumi and/or Buzzard and to the detriment of Plaintiff Erie Management.

    d. Manipulating the accounting system of Erie Management in such a way as to hide the multiple personal transactions and charges.

    e. Failing to disclose to Plaintiffs Erie Management and/or Mr. Black, CEO of Erie Management, of the numerous personal transactions including credit card charges, all to the benefit of Defendants Sumi and Buzzard and to the detriment of Erie Management.

1178. As a direct and proximate cause of the breach of fiduciary duties detailed above, Mr. Black and Erie Management sustained damages in an amount in excess of $199,348.23.00.

WHEREFORE, Plaintiffs Mr. Black and Erie Management demand judgment in their favor and against the Defendants Sumi and Buzzard in an amount in excess of $199,348.23.00 plus interest, costs, and other relief the Court deems appropriate.

**COUNT II**
**FRAUD (CONSTRUCTIVE FRAUD)**

***Mr. Black and Erie Management***
***v.***
***Sumi and Buzzard***

1179.   Plaintiff incorporates the allegations of ¶¶ 1- 1178 above in this Count II of Chapter 10 as if more fully set forth herein.

1180.   Under Pennsylvania Law, *constructive fraud* is recognized as a cause of action. See ¶¶ 155-158.

1181.   As more fully detailed above and at all times relevant, Defendants Sumi and Buzzard had a fiduciary duty to Plaintiffs Mr. Black and Erie Management.

1182.   As more fully detailed above in Count II of Chapter 10, the Defendants Sumi and Buzzard breached their respective fiduciary duties owed to Mr. Black and Erie Management.

1183.   To their detriment, Plaintiffs Mr. Black and Erie Management justifiably relied upon the Defendants Sumi and Buzzard in the performance of their duties as officers and employees.

1184.   As a direct and proximate cause of the breach of fiduciary duties detailed above, Mr. Black and Erie Management sustained damages in an amount in excess of $199,348.23.00.

WHEREFORE, Plaintiffs Mr. Black and Erie Management demand judgment in their favor and against the Defendants Sumi and Buzzard in an amount in excess of $199,348.23.00 plus punitive damages, interest, costs and other relief the Court deems appropriate.

## COUNT III
## FRAUD (INTENTIONAL MISREPRESENTATION)

*Mr. Black*
*v.*
*Sumi, Buzzard and Knox*

1185.   Plaintiff incorporates the allegations of ¶¶ 1- 1184 above in this Count III of Chapter 10 as if more fully set forth herein.

1186.   As more fully detailed above and at all times relevant, Defendants Sumi and Buzzard had fiduciary duties to Plaintiffs Mr. Black and Erie Management.

1187.   Defendants Sumi and Buzzard intentionally misled and/or failed to disclose to Plaintiffs Mr. Black and Erie Management that they were using the Erie Management assets for unauthorized purchases for their own personal benefit.

1188.   Defendants' misrepresentations and/or concealment were made to induce Plaintiffs Mr. Black and Erie Management to allow them the ability to continue using the Erie Management assets all to the benefit of Defendants Sumi and Buzzard.

1189.   As more fully detailed above, Defendants Sumi and Buzzard, with actual or constructive knowledge and acquiescence of each other, intentionally misled and failed to disclose to Plaintiffs Mr. Black and Erie Management that they were using the Erie Management assets for unauthorized purchases for their own personal benefit.

1190.   As more fully detailed above, Defendants Sumi, Buzzard, and Knox, with actual or constructive knowledge and acquiescence of each other embezzled property of Mr. Black and Erie Management by using the Erie Management assets for unauthorized purchases for their own personal benefit.

1191. As more fully detailed above, Defendants Sumi and Buzzard intentionally kept information regarding their use of the Erie Management assets for unauthorized purchases for their own personal benefit.

1192. As more fully detailed above, Defendants Sumi and Buzzard failed to protect the interests of Mr. Black and Erie Management by using the Erie Management assets for unauthorized purchases for their own personal benefit.

1193. Defendants Sumi and Buzzards' failure to disclose the use of the Erie Management credit cards for unauthorized purchases for their own personal benefit was material because Plaintiffs Mr. Black and Erie Management relied upon the honest services of Defendants Sumi and Buzzard in the performance of their duties as Erie Management officers and/or employees.

1194. Plaintiffs justifiably relied upon the misrepresentations and/or concealments made by Defendants Sumi and Buzzard in that Plaintiffs used their services as officers and/or employees of Erie Management with the justifiable belief that Erie Management was receiving honest services while protecting the interests Erie Management.

1195. The conduct of Defendants Sumi and Buzzard, as more fully described above, was willful, wanton, malicious and oppressive.

1196. The conduct of Defendants Sumi and Buzzard, as more fully described above, has directly, legally, and proximately caused and continues to cause injuries to Plaintiffs Mr. Black and Erie Management.

1197. Defendants Sumi and Buzzard engaged in conduct to benefit themselves at the expense of Mr. Black and Erie Management during a time when they owed fiduciary duties to and stood in a confidential relationship to Mr. Black and Erie Management.

1198.   These transactions were fraudulent and neither fair nor equitable; therefore, these transactions constitute constructive fraud on Mr. Black and Erie Management.

1199.   As a direct and proximate cause of the breach of fiduciary duties detailed above, Mr. Black and Erie Management sustained damages in an amount in excess of $199,348.23.00.

WHEREFORE, Plaintiffs Mr. Black and Erie Management demand judgment in their favor and against the Defendants Sumi and Buzzard in an amount in excess of $199,348.23.00 plus punitive damages, interest, costs, and other relief the Court deems appropriate.

## COUNT IV
## CONVERSION

### Mr. Black and Erie Management
### v.
### Sumi and Buzzard

1200.   Plaintiffs incorporate the allegations of ¶¶ 1 – 1199 above in this Count IV of Chapter 10 as if fully stated herein.

1201.   Under Pennsylvania Law, a cause of action for conversion is recognized where a defendant deprives another of their right of property or other interference therewith without the owner's consent and without legal justification.

1202.   As previously discussed herein, the Defendants Sumi and Buzzard have engaged in purposeful conduct intended to deplete, deprive, and convert the assets of Mr. Black and Erie Management.

1203.   As part of this purposeful course of action intended to deplete, deprive, and convert the private assets of Mr. Black and Erie Management, Defendants Sumi and Buzzard have deprived Mr. Black and Erie Management of their right to funds that are rightfully theirs.

237

1204.   Defendants Sumi and Buzzard have interfered with Erie Management's use and possession of assets by refusing to reimburse Erie Management of assets they wrongfully embezzled.

1205.   Erie Management has not consented to Defendants' retention of the assets used for their personal use.

1206.   Defendants have no legal justification for failing to reimburse Plaintiffs for the assets they embezzled.

1207.   Defendants have converted Erie Management's assets for their own personal use.

WHEREFORE, Plaintiffs Mr. Black and Erie Management demand judgment in their favor and against the Defendants Sumi and Buzzard in an amount in excess of $199,348.23.00 plus punitive damages, interest, costs, and other relief the Court deems appropriate.

## COUNT V
## AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

### *Mr. Black and Erie Management*
### *v.*
### *Sumi and Buzzard*

1208.   Plaintiff incorporates the allegations of ¶¶ 1- 1207 above in this Count V of Chapter 10 as if more fully set forth herein.

1209.   Under Pennsylvania Law, *aiding and abetting breach of fiduciary duty* is recognized as a cause of action.  See ¶ 195.

1210.   As described in the foregoing averments of this Complaint, Defendants Sumi and Buzzard breached fiduciary duties owed by them to Mr. Black and Erie Management.

1211.   As described above and upon information and belief, Defendants Sumi and Buzzard had knowledge of each other's breach of their respective fiduciary duties to Mr. Black and Erie Management.

238

1212.   As a result of the Defendants Sumi and Buzzards' breach of their respective fiduciary duties, Plaintiffs Mr. Black and Erie Management have suffered damages including loss of cash, lost income, lost interest, and investment opportunities, as well as substantial accounting and legal expenses.

1213.   As a result of Defendants Sumi and Buzzards' active assistance to each other in the commission of the fraud perpetrated by them, Mr. Black and Erie Management have suffered damages in an amount in excess of $199,348.23.00.

WHEREFORE, Plaintiffs Mr. Black and Erie Management demand judgment in their favor and against the Defendants Sumi and Buzzard in an amount in excess of $199,348.23.00 plus punitive damages, interest, costs, and other relief the Court deems appropriate.

## COUNT VI
## CIVIL CONSPIRACY

### Mr. Black and Erie Management
### v.
### Sumi and Buzzard

1214.   Plaintiff incorporates the allegations of ¶¶ 1- 1213 above in this Count V of Chapter 10 as if more fully set forth herein.

1215.   As more fully detailed above, Defendants Sumi and Buzzard agreed to perform some or all of the following illegal acts or legal acts by illegal means as previously set forth herein.

1216.   Defendants Sumi and Buzzard have performed multiple overt acts in furtherance of this conspiracy including acts previously enumerated herein.

1217.   As a result of the conspiracy between Defendants Sumi and Buzzard, Plaintiffs Mr. Black and Erie Management have suffered damages including lost interest and investment

opportunities, diminished value of Erie Management as well as substantial accounting and legal expenses.

1218.   Defendants Sumi and Buzzard have acted in concert in pursuing a common purpose to perform the aforementioned unlawful acts and/or lawful acts by unlawful means for an unlawful purpose making the Defendants liable and responsible for their own wrongful acts against Plaintiffs as well as for the wrongful conduct of any others acting in concert and conspiracy with them.

1219.   Defendants Sumi and Buzzard have acted with malice or intent to injure Plaintiffs and such actions were without legal cause or justification.

1220.   As a direct and proximate cause of the breach of fiduciary duties detailed above, Mr. Black and Erie Management sustained damages in an amount in excess of $199,348.23.00.

WHEREFORE, Plaintiffs Mr. Black and Erie Management demand judgment in their favor and against the Defendants Sumi and Buzzard in an amount in excess of $199,348.23.00 plus punitive damages, interest, costs, and other relief the Court deems appropriate.

## COUNT VII
## UNJUST ENRICHMENT

### Mr. Black
### v.
### Sumi

1221.   Plaintiff incorporates the allegations of ¶¶ 1- 1220 above in this Count VII of Chapter 10 as if more fully set forth herein.

1222.   Under Pennsylvania Law, Unjust Enrichment is recognized where (1) benefits are conferred on a defendant by plaintiff, (2) with an appreciation of such benefits by defendant, and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable

for the defendant to retain the benefit without payments of value. (See *Wiernik v. PHH U.S. Mortgage Corp.,* 736 A.2d 616 (Pa. Super. Ct. 1999)).

1223.   As previously alleged herein, Mr. Black and BILP have conferred a benefit on Defendants Sumi and Buzzard.

1224.   Defendants Sumi and Buzzard have appreciated the benefits of the numerous unauthorized expenditures for personal benefits.

1225.   It would be inequitable for Defendants Sumi and Buzzard to retain the benefits of the numerous unauthorized expenditures for their personal use.

WHEREFORE, Plaintiffs Mr. Black and Erie Management demands judgment in their favor and against Defendant Sumi in an amount in excess of $199,348.23.00 plus punitive damages, interest, costs, and other relief the Court deems appropriate.

## CHAPTER 11

## BREACH OF DUTY OF CONFIDENTIALITY; INVASION OF PRIVACY – INTRUSION INTO PRIVATE AFFAIRS

*Mr. Black*
*v.*
*Sumi, Buzzard, yet to be named Defendant RR ("RR") and yet to be named Defendant DP ("DP")*

1226.   The foregoing averments of this Complaint are hereby incorporated by reference thereto and made a part hereof as though fully set forth herein.

1227.   Sometime in late 2021 and early 2022, Defendant Sumi, had several discussions with a Pennsylvania attorney, RR, discussing her personal estate and financial planning and his displeasure with Defendant Knox's work performance in that regard.

1228.   RR referred Defendant Sumi to DP as a suitable law firm that could represent her with respect to her personal estate and financial planning and discussions between Defendant Sumi and Defendant Dilworth ensued.

1229.   Before Defendant Sumi retained DP, RR and DP requested Defendant Sumi to provide them with numerous documents purportedly related to her estate planning, which requests included many documents of a sensitive and private nature belonging to Mr. Black.

1230.   Defendant Sumi, acting through Defendant Buzzard, complied and without the knowledge, consent, or authorization of Mr. Black, provided RR and DP with over one hundred twenty (120) documents, many of which contained his personal and confidential information.

1231.   Upon information and belief, among the documents of Mr. Black that were provided by Defendants Sumi and Buzzard to RR and DP were such items as his Prenuptial Agreement, Will, Living Will, corporate documents, Corporate Bylaws/Operating Agreements, Resolutions, Trust Agreements, tax documents, and medical records.

242

1232.    Defendants Sumi and Buzzard only had access to these materials because of the positions of trust and confidence they possessed with respect to Mr. Black and his numerous business entities.

## COUNT I
## BREACH OF FIDUCIARY DUTIES OF CONFIDNTIALITY AND LOYALTY

*Mr. Black*
*v.*
*Sumi and Buzzard*

1233.   Plaintiffs incorporate the allegations of ¶¶ 1-1232 above in this Count I of Chapter 11 as if fully stated herein.

1234.   Under Pennsylvania Law, *breach of fiduciary duty* is recognized as a cause of action. See ¶¶ 141, 142.

1235.   At all times relevant, Defendant Sumi served as an Officer of Erie Management and also maintained a close, personal, and confidential relationship with Mr. Black and as such had a legal and fiduciary duty to Mr. Black and Mr. Black owned entities.

1236.   At all times relevant, Defendant Sumi served as secretary of BILP and as such had a fiduciary duty to BILP and its general partner, Mr. Black.

1237.   At all times relevant, Defendant Buzzard served as treasurer of BILP and as such had a fiduciary duty to BILP and its general partner, Mr. Black.

1238.   Both Defendants Sumi and Buzzard owed fiduciary duties to Mr. Black, including a duty of confidentiality to refrain from disclosing any of his personal and confidential information to third parties without his knowledge, consent, and authorization, and a duty of loyalty.

1239.   Defendants Sumi and Buzzard breached their fiduciary duties to and confidential relationship with Mr. Black by engaging in a pattern of improper disclosure of his confidential information, including:

    a.    Gathering documents belonging to Mr. Black and containing his personal and confidential information without his knowledge, consent, or authorization.

    b.    Transmitting documents belonging to Mr. Black and containing his personal and confidential information without his knowledge, consent, or authorization to third persons who had no legal basis or justification for possessing such documents.

    c.    Failing to inform Mr. Black of their actions in gathering and transmitting the documents or seeking his approval to do so.

    d.    Failing to maintain the confidentiality of Mr. Black's documents entrusted to their access and protection.

    e.    Engaging in disloyalty by breaching the confidentiality of Mr. Black's documents entrusted to their access and protection.

    f.    Using or attempting to use confidential information contained in Mr. Black's documents for their personal benefit.

1240.   As a direct and proximate result of the breach of fiduciary duties detailed above, Mr. Black has been harmed by the betrayal of his interests by those in a fiduciary relationship with him resulting in mental distress and other harm caused by the disclosure of his confidential information.

WHEREFORE, Plaintiff Mr. Black demands judgment in his favor and against the Defendants Sumi and Buzzard in an unliquidated amount to be determined, plus punitive damages, interest, costs, and other relief the Court deems appropriate.

## COUNT II
## AIDING AND ABETTING BREACH OF FIDUCIARY DUTIES OF CONFIDENTIALITY AND LOYALTY

***Mr. Black***
***v.***
***RR and DP***

1241.   Plaintiffs incorporate the allegations of ¶¶ 1-1240 above in this Count II of Chapter 11 as if fully stated herein.

1242.   Under Pennsylvania Law, *aiding and abetting breach of fiduciary duty* is a recognized cause of action.  See ¶195.

1243.   As described in the foregoing averments in Count I of this Chapter 11, Defendants Sumi and Buzzard breached fiduciary duties of confidentiality and loyalty owed by them to Mr. Black.

1244.   RR and DP are both attorneys/firms at law licensed in Pennsylvania and either knew or should have known that Defendants Sumi and Buzzard were both in a fiduciary relationship as to Mr. Black and thus had duties of confidentiality and loyalty with respect to his private documents and information to which they had access as a result of their positions.

1245.   RR and DP further knew or should have known that it would be a breach of their fiduciary duties for Defendants Sumi and Buzzard to gather and transmit Mr. Black's private documents and information to third persons without his knowledge, consent, or authorization.

1246.   RR and DP caused or instigated Defendants Sumi and Buzzard to gather and transmit Mr. Black's private  documents and information to them without ascertaining that it was being done with the knowledge, consent, and authorization of Mr. Black and thus had actual or constructive knowledge of their breach of their fiduciary duties to Mr. Black.

245

1247.   RR and DP thereby aided and abetted the breach of fiduciary duty by Defendants Sumi and Buzzard and did so for their own benefit to secure a new client for whom they anticipated performing extensive services at a high hourly rate.

1248.   As a direct and proximate result of the aid, assistance, and encouragement by RR and DP, the breach of fiduciary duties by Defendants Sumi and Buzzard detailed above were enabled, and Mr. Black has been harmed thereby by the betrayal of his interests by those in a fiduciary relationship with him resulting in mental distress and other harm caused by the disclosure of his confidential information.

WHEREFORE, Plaintiff Mr. Black demands judgment in his favor and against the yet to be named Defendants RR and DP in an unliquidated amount to be determined, plus punitive damages, interest, costs, and other relief the Court deems appropriate.

## COUNT III
## INVASION OF PRIVACY—INTRUSION INTO PRIVATE AFFAIRS

### *Mr. Black*
### *v.*
### *Sumi, Buzzard, RR and DP*

1249.   Plaintiffs incorporate the allegations of ¶¶ 1-1248 above in this Count III of Chapter 11 as if fully stated herein.

1250.   The documents and information belonging to Mr. Black that were disclosed to RR and DP, including the business records of his many entities, his prenuptial agreement, medical records, etc., are private and highly confidential such that a reasonable person would have an interest in maintaining the confidentiality of such information.

1251.   Defendants Sumi and Buzzard acted intentionally in disclosing the documents and information in question to the yet to be named Defendants RR and DP.

246

1252.   Defendants Sumi and Buzzard knew or should have known that they lacked the necessary legal right or permission from Mr. Black to gather and transmit the documents and information in question to RR and DP.

1253.   The transmittal and disclosure of the documents and information in question to yet to be named Defendants RR and DP constituted an intrusion into the private affairs of Mr. Black.

1254.   RR and DP acted intentionally in receiving the documents and information in question from Defendants Sumi and Buzzard.

1255.   RR and DP knew or should have known that they lacked the necessary legal right or permission from Mr. Black to receive the documents and information in question from Defendants Sumi and Buzzard.

1256.   The receipt by yet to be named Defendants RR and DP of the documents and information in question from Defendants Sumi and Buzzard constituted an intrusion into the private affairs of Mr. Black.

1257.   The intrusion into the private affairs of Mr. Black by the Defendants as set forth herein would be highly offensive to a reasonable person.

1258.   Mr. Black has been harmed by the conduct of the Defendants, including mental distress caused by the disclosure of his confidential information.

WHEREFORE, Plaintiff Mr. Black demands judgment in his favor and against Defendants Sumi, Buzzard, yet to be named Defendants RR and DP for their intentional intrusion into his private affairs in an unliquidated amount to be determined, plus punitive damages, interest, costs and other relief the Court deems appropriate.

## COUNT IV
## PRELIMINARY INJUNCTION/TEMPORARY RESTRAINING ORDER

*Mr. Black*
*v.*
*Sumi, Buzzard, RR and DP*

1259.   Plaintiffs incorporate the allegations of ¶¶ 1-1258 above in this Count IV of Chapter 11 as if more fully set forth herein.

1260.   Mr. Black has severed ties to Defendants Sumi and Buzzard because of his discovery of their various actions as set forth in this Complaint, and never had any significant ties with yet to be named Defendants RR and DP.

1261.   Mr. Black does not know if any of these Defendants continues to have possession or control of any of the documents or information that were improperly transmitted by Defendants Sumi and Buzzard and improperly received by yet to be named Defendants RR and DP.

1262.   To the extent any of these Defendants does still have possession or control of any such material they have no legal basis for doing so, such continued possession and control adds to the damage already experienced by Mr. Black, and so they should be required to immediately return it to Mr. Black or destroy it and verify the steps they have taken to do so.

1263.   Mr. Black will be irreparably harmed if the Defendants are not required to return and otherwise, account for the documents and information they improperly transmitted and received.

1264.   The issuance of the relief requested herein will not substantially harm the Defendants.

1265.   The issuance of the relief requested will not adversely affect the public interest.

WHEREFORE, Plaintiff, Mr. Black, requests that the Court issue a temporary restraining order and/or a preliminary injunction requiring each of Defendants Sumi, Buzzard, yet to be named

248

Defendants RR and DP to immediately return to Mr. Black any of his documents that are in their possession or control, to destroy any such documents or information that they may have in electronic form, and to file a report detailing the steps they have taken to comply with this requirement.

## COUNT V
## BREACH OF PROFESSIONAL OBLIGATIONS TO THIRD PARTY

### *Mr. Black*
### *v.*
### *RR and DP*

1266.   Plaintiffs incorporate the allegations of ¶¶ 1-1325 above in this Count V of Chapter 11 as if more fully set forth herein.

1267.   As attorneys at law licensed to practice in the Commonwealth of Pennsylvania, yet to be named Defendants RR and DP have a number of legally recognized duties imposed on them that go beyond the duties imposed on other general members of the public, some of which duties are set forth in the Pennsylvania Rules of Professional Conduct, but some of which are recognized as actionable under the common law even though not set forth in the Pennsylvania Rules of Professional Conduct. See, *Maritrans GP, Inc. v. Pepper, Hamilton & Scheetz*, 602 A.2d 1277 (Pa. 1992).

1268.   Among the duties imposed on attorneys in this Commonwealth is the duty to respect the rights of third persons while in the course of representing their clients. See, generally, Pa.R.P.C. 4.4.

1269.   It has further been recognized that this duty encompasses confidential third-party information that comes into the possession of the attorney through unauthorized means during the

course of representing a client.  See, *Burt Hill, Inc. v. Hassan*, 2010 U.S. Dist LEXIS 7492 (WD Pa. Jan. 29, 2010).

1270.  Mr. Black was not a client of yet to be named Defendants RR and DP and as to them was a third person.

1271.  By their actions in receiving his confidential documents and information without his knowledge, consent, or authorization, as more fully described herein, yet to be named Defendants RR and DP have breached their duty to Mr. Black, and he has been harmed thereby.

WHEREFORE, Plaintiff, Mr. Black, requests that the court find that yet to be named Defendants RR and DP have violated a professional duty they owed to him and provide such relief as it deems appropriate.

## CHAPTER 12

## FEDERAL RICO 18 U.S.C. §1964(c) VIOLATIONS

### *Mr. Black, Erie Management, BILP, SB3 and Black Insurance*
### *v.*
### *Sumi, Buzzard and Knox*

1272.   The foregoing averments of this Complaint are hereby incorporated by reference thereto and made part hereof as though fully set forth herein.

1273.   Plaintiffs allege that Defendants' conduct, and the conduct of each Defendant named herein, constitutes racketeering as set forth in 18 U.S.C. §1964(c).   Specifically, Congress has defined "racketeering to include WIRE FRAUD (committing fraud by means of electronic transmissions over wire, internet) MAIL FRAUD (using the mail to execute or attempt to execute a fraud scheme) and also MONEY LAUNDERING (conducting or attempting to conduct a financial transaction knowing that the property involved represents proceeds of unlawful activity). The Defendants herein engaged in multitude instances of wire fraud and money laundering which targeted the Plaintiffs and directly caused concrete damages to the Plaintiffs.

1274.   As detailed below, the Plaintiffs allege three (3) different causes of action for Federal RICO violations which directly caused injury to Plaintiffs.   In summary, Section **1962(c)** provides relief against parties who engage in a pattern of racketeering activity, Section **1962(b)** provides relief against parties who acquire interest or control over an enterprise, and Section **1962(d)** provides relief against those who conspire to violate the racketeering laws.   Defendants are liable under each of these three sections.

1275.   18 U.S.C. §1964(c) allows "any person injured in his business or property by reason of a violation of section 1962 of this chapter" to "sue therefor … and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney fee…".

1276.   Thus, by means of this Chapter, Plaintiffs seek all Defendants be found jointly and severally liable to the extent of treble the damages incurred by Plaintiffs due to Defendants' unlawful activity, including attorneys' fees and cost of this suit.

<u>**COUNT I**</u>
<u>**VIOLATION OF 18 U.S.C. §1962(c) – RACKETEERING ACTIVITY**</u>

*Mr. Black, Erie Management, BILP, SB3 and Black Insurance*
*v.*
*Sumi, Buzzard and Knox*

1277.   Plaintiff incorporates the allegations of ¶¶ 1 – 1276 above in this Count I of Chapter 12 as if more fully set forth herein.

1278.   18 U.S.C. §1962(c) makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity …". 18 U.S.C. §1962(c).

1279.   Each Defendant, at all times relevant to this action, is and has been a "PERSON" within the meaning of 18 U.S.C. §§1961(3) and 1962(c), as each Defendant is capable of holding "a legal or beneficial interest in property".

1280.   The RICO Persons (i.e., the Defendants) have used an association-in-fact ("AIF") "ENTERPRISE" within the meaning of 18 U.S.C. §1961(4) to carry out a pattern of racketeering activity.  This AIF enterprise consisted of Sumi James-Black, Nicole Buzzard and the Knox Law Firm (hereafter referred to as the "**Sumi-Buzzard-Knox Enterprise**").

1281.   As previously described in this Complaint, this enterprise possessed a common purpose, relationships between and amongst the individuals associated with it, and longevity

sufficient to permit and enable pursuit of the enterprise's purpose and objectives through a course of conduct that has and continues to affect interstate commerce.

1282.   More specifically, the Sumi-Buzzard-Knox enterprise's common purpose was the fraudulent and/or improper and/or surreptitious transferring/conversion/diversion of funds and property and assets owned by and/or being created by the Plaintiffs to and/or for the benefit of Defendant Sumi, and from which all of the Defendants did and would continue to unjustly enrich themselves at the expense of the Plaintiffs. This was accomplished by the Defendants using this enterprise to devise and implement a complex, fraudulent scheme which included repetitive acts of material misrepresentations, omissions and deceptions --- including even the creation of false and forged documents --- continuing and numerous acts of unlawful wire fraud, mail fraud and money laundering, and concealment of these acts and/or the true nature of these acts from the Plaintiffs so as to unlawfully convert and divert Plaintiffs' funds and assets to and for Defendants' improper possession, control, use and benefit.

1283.   The Sumi-Buzzard-Knox Enterprise existed separate and apart from the pattern of racketeering activity in which Defendants are alleged to have engaged, as Defendants Sumi, Buzzard and Knox have multiple goals, not all of which are fraudulent or illegal. However, since at least December 2020 (and perhaps earlier, as discovery may show), Defendants used this Enterprise to conduct the continuing and related acts of wire fraud, mail fraud and money laundering previously described in this Complaint, all of which comprised a pattern of racketeering in violation of 18 U.S.C. §1962(c).

1284.  Each of the Defendants knowingly and fraudulently played different, but coordinating, complimentary, interrelated and dependent-upon-each-other roles in managing, and/or conducting, and/or deciding, and/or directing the operations and affairs of the Sumi-

Buzzard-Knox Enterprise, thereby banding together to commit a pattern of wire fraud, mail fraud and money laundering racketeering activity which they could not have accomplished on their own, in violation of 18 U.S.C. §1962(c).   Generally, as described in great detail in the foregoing averments of this Complaint:

       a.      Defendant Sumi made most of the decisions regarding which funds and assets of the Plaintiffs to target for conversion to her possession and control, and was personally involved in the repetitive, unlawful use of said converted funds for her own needs and benefits.

       b.      Defendant Buzzard, who had access to, managed and oversaw nearly all of the Plaintiffs' funds targeted by Defendant Sumi, managed and operated and directed the fraudulent wire transfer diversions and laundering of said funds and assets to Defendant Sumi and various entities and trusts created for Defendant Sumi by Defendant Knox.   Defendant Buzzard also aided and assisted Defendant Sumi in making decisions referred to above, in subparagraph A, and in assisting Defendant Sumi's unlawful use of the converted funds.

       c.      Defendant Knox knowingly and actively enabled and implemented the Enterprise's common purpose.   It created all of the entities and trusts and legal filings --- some of which were knowingly false and forged --- upon which Defendants Sumi and Buzzard relied to implement the fraudulent scheme and which knowingly enabled the surreptitious and/or unlawful diversion of the targeted funds and assets of the Plaintiffs, even while Plaintiffs were clients of Knox. In this manner, Knox knowingly directed affairs of the enterprise which enabled the commission of the pattern of racketeering which Defendants Sumi and Buzzard could not have accomplished on their own.

       d.      All of the Defendants played an active role in deciding, directing and participating in falsely and fraudulently concealing their pattern of racketeering from the Plaintiffs.

       e.      All of the Defendants played an active role in deciding, directing and participating in numerous email, mail and telephone communications amongst themselves in furtherance of the fraudulent pattern of racketeering.

1285.   In furtherance of the fraudulent scheme to injure Plaintiffs and defraud Plaintiffs of their property, money and assets, Defendants committed repetitive and numerous acts of wire fraud, mail fraud and money laundering.  Plaintiffs have pled these acts in great detail throughout this Complaint, including dates, places, and summarizations of the fraudulent-furthering communications and money laundering acts, and the persons and methods involved in enabling and committing them.  These particulars are all incorporated herein.  Further, each of these specific acts are summarized in listing fashion below.

1286.   As set forth in great detail in the foregoing averments of this Complaint, Defendants went to great lengths --- even to include committing criminal forgery of legal documents --- to conceal the above-referred predicate acts and crimes from the Plaintiffs.

1287.   It was not until after each of the Defendants were terminated from and/or left the employment of the Plaintiffs around August 2022, and Plaintiffs then hired new counsel, that Plaintiffs started to discover and learn of the above-referred fraudulent and criminal activities of the Defendants, a discovery process which has continued through the present.

1288.   Information and documents currently in possession of the Plaintiffs demonstrate that the time period involved in Defendants' commission of the above-referred continuous, predicate acts and crimes stem from at least December 8, 2020 to at least July 24, 2023, a period which may be expanded pending results of information to be obtained in discovery.

1289.   The above-referred predicate acts and crimes all occurred within ten (10) years of each other, as required by 18 U.S.C. §1961 *et. seq.*

1290.   The above-referred predicate acts and crimes committed in furtherance of Defendants' fraudulent scheme to injure and defraud Plaintiffs constituted a pattern of racketeering activity with the meaning of 18 U.S.C. §1961(5), because the predicate acts constituted a closed

period of repetitive, related, and continuous conduct.  Each predicate act described in this Complaint had the same or similar purpose, and they were related to each other by virtue of common participants, common victims (the Plaintiffs), common methods of commission and common results of defrauding the Plaintiffs and enriching the Defendants at the Plaintiffs' expense, all the while being concealed from the Plaintiffs by the Defendants' fraudulent activities.

1291.  This pattern of racketeering is separate and distinct from legitimate business activities of Defendants Sumi, Buzzard and Knox.

1292.  As set forth in great detail in the foregoing averments of this Complaint, and as further demonstrated below, each of the Defendants committed and/or helped to commit much more than at least two of the individual acts of racketeering that comprise the pattern of racketeering activity pled herein.

1293.  As previously asserted, the predicate acts and crimes committed in furtherance of Defendants' fraudulent scheme to injure and defraud Plaintiffs consisted of numerous acts of **wire fraud**, in violation of **18 U.S.C. §1343**, numerous acts of **mail fraud**, in violation of **18 U.S.C. §1341** and numerous **violations of the federal Money Laundering Control Act** companion sections codified **at 18 U.S.C. §§ 1956 and 1957**.

1294.  The federal **wire fraud statute --- 18 U.S.C. §1343 ---** is violated when it is shown that **a)** a person has devised or intends to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, and **b)** uses or causes to be used a wire, interstate telephone or electronic communication made in furtherance of the scheme. *United States v. Frey*, 42 F.3d 795, 797 (3d Cir. 1994).  To prove a violation of this statue, it is neither necessary to prove that the information communicated, itself, was false or fraudulent, or contained any request for money, property, or something else of value;

nor necessary that the wire communication was an essential part of the fraud scheme.  Rather, it is only necessary to show that the use of wire communication furthered or somehow advanced the underlying scheme to defraud.

1295.   Additionally, each such wire transmission constitutes a separate violation of the wire fraud statute.

1296.   Generally, as will be itemized in detail below, the Defendants in this action committed repetitive acts of **two (2) categories of wire fraud** acts:

    a.    the use of email communications amongst themselves to discuss, plan, implement, advance and execute the scheme to fraudulently, improperly and surreptitiously transfer, convert, divert and obtain possession and control of funds and assets owned and/or being created by the Plaintiffs, and also to conceal the scheme and actions taken in furtherance thereof from Plaintiffs (hereafter referred to as "**Type A Wire Fraud**"); *and*

    b.    The use of electronic wire transfers administered by financial institutions and banks and transfer service agencies (hereafter, "WIRE TRANSFERS") to transfer, convert, divert and obtain possession and control of funds owned by the Plaintiffs (hereafter referred to as "**Type B Wire Fraud**").

1297.   The Defendants in this action also committed repetitive acts of **mail fraud**, which is committed when having devised or intending to devise a scheme to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, one uses the mail for the purpose of executing or attempting to execute the scheme.

1298.   Certain outlawed domestic financial transactions **committed with specified kinds of intent** are covered by the money laundering statute **18 U.S.C. § 1956(a)(1)** (hereafter referred to as the **"specific intent money laundering section"**).  This section makes it a crime to conduct or attempt to conduct a "*financial transaction*" where the actor knows that the property involved in the transaction represents the "*proceeds*" of some kind of unlawful activity, *and* where the actual

source of the funds or property involved was from one of the forms of criminal activity identified in §1956(c)(7), *and* where the conduct was committed with at least one (1) of four (4) specified specific intents.

1299.  **"Financial transaction"** is defined in §1956(c)(4) as a transaction which affects interstate or foreign commerce and:

(i)     involves the movement of funds by wire or by other means; or

(ii)    involves the use of a monetary instrument; or

(iii)   involves the transfer of title to real property, a vehicle, a vessel or an aircraft; or

(iv)    involves the use of a financial institution which is engaged in, or the activities of which affect, interstate or foreign commerce.

1300.  **"Proceeds"** is defined in §1956(c)(9) as "any property from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity."

1301.  Generally, as itemized in detail below, the Defendants in this action committed repetitive acts of **two (2) kinds of §1956(a)(1) specific intent money laundering**. They did so by conducting and/or attempting to conduct financial transactions involving money and property which they knew were proceeds of unlawful activity, and which actually were derived from criminal activity specified in §1956(c)(7) --- namely from wire fraud, mail fraud and/or money laundering under §1957 -- and where the Defendants acted with:

a.    **the intent to promote the carrying on of this specified unlawful activity**, in violation of **§1956(a)(1)(A)(i)**.  ["The term 'with the intent to promote the carrying on of specified unlawful activity' means that the defendant must have conducted or attempted to conduct the financial transaction for the purpose of *promoting (that is, to make easier, facilitate or to help bring about)* … the carrying on of one of the crimes listed as specified crimes within the statute. *See*, Department of Justice Manual CRM 2120 -- Jury Instruction --

258

18 U.S.C. 1956(a)(1)(A)(i) -- Intent To Promote The Carrying On Of The Specified Unlawful Activity (emphasis in the original)]; **_or_**

b. **knowledge that the transaction was designed to conceal or disguise** the nature, location, source, ownership or control of proceeds of the specified unlawful activity, in violation of **§1956(a)(1)(B)(i).**

1302. **18 U.S.C. §1957** of the Money Laundering Control Act outlaws other types of obtaining, depositing, spending or using criminally derived funds and property, but without the necessity of having to prove any kind of specific intent.  Specifically, this section (**hereafter referred to as the "in excess of $10,000 money laundering section"**) is violated where a person knowingly engages or attempts to engage in a "*monetary transaction*", by, through or to a financial institution, affecting interstate or foreign commerce, which involves criminally derived property of a value greater than $10,000.00.  Again, no specific intent is required.

1303. A "**monetary transaction**" is defined in **18 U.S.C. §1957(f)(1)** as:

the deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds or a monetary instrument … by, through, or to a financial institution … including any transaction …".

1304. Each qualifying, non-aggregated transaction with an amount/value greater than $10,000.00 is a separate violation of §1957.

1305. Cognizant of the need for pleading the underlying acts of wire fraud and money laundering with particularity, the numerous, currently known unlawful acts of the Defendants which constituted a pattern of racketeering activity in this action are summarized below, organized via the Chapters of this Complaint which have set forth RICO violations:

A. **THE NETWORKING TECHNOLOGIES, LLC FRAUD SCHEME** (Chapter 1)

1306. Chapter 1 of this Complaint describes the Defendants' fraudulent conversion of assets, funds and property of Plaintiffs Mr. Black and Erie Management Group ("EMG"),

specifically the "eleventh hour", surreptitious replacement of EMG as the purchaser of a 49%
interest in Networking Technologies, LLC with Defendant Sumi's 100%-owned SJB Investment
Enterprises, LLC ("SJB Investment") as the purchaser of said interest; for which the 2.94 million
dollar SJB Investment used to purchase this interest was completely comprised of funds belonging
to and unlawfully and fraudulently taken from Mr. Black; and the true nature of all of this occurred
without notice to, knowledge of or knowing authorization from these Plaintiffs. Elaborating
further, from January 2021 to May 1, 2021, EMG, with legal representation provided by Knox,
negotiated with Reabah, Inc., a joint venture partnership purchase of 49% of a new company,
Networking Technologies, LLC. In this period, Attorneys at Knox, on behalf of EMG, drafted a
series of Letters of Intent and Term Sheets, the last one on May 1, 2021 which confirmed that
EMG would purchase the aforementioned 49% interest for 2.94 million dollars, with a specified
schedule to obtain 100% ownership in ten (10) years. On the same day, May 1, 2021, a press
release was issued announcing the joint venture partnership of EMG and Networking
Technologies, LLC. However, later on that same day, all of the Defendants began exchanging
emails in which they decided, with no notice to EMG or Mr. Black, that SJB Investments would
replace EMG as the purchaser. As described in great detail in Chapter 1, the Defendants
subsequently executed this stealthy switch.

    1307. The unlawful RICO predicate acts committed by the Defendants regarding this
Chapter, and the Persons directly injured by same are listed in summary fashion, below (the
Complaint paragraphs where each were pled are parenthetically identified):

    1)    (Par. 99) – 5/01/2021 Email (Exhibit 19)

    This was sent by Defendant Sumi to Defendants Buzzard and Knox (Attorneys Wegley
and Devlin). The email states that the transaction is between SJB Investments and JB (the

initials for the owner of Reabah, Inc.); and that "we decided … to keep this completely separate from BILP/EMG". Neither Mr. Black, nor EMG were copied on this email and they were never made aware of it, before or after it was sent.

***This was a Type A Wire Fraud, committed by all Defendants.*

2)      (Par. 105) – 5/05/21 Email (Exhibit 20)

This was sent by Defendant Buzzard, at Defendant Sumi's direction, to Defendant Knox (Attorneys Wegley and Devlin).  It reiterated that Defendant Sumi's SJB Investment, not EMG, would be the purchaser in the agreement involving Networking Technologies, LLC. Neither Mr. Black, nor EMG were copied on this email and they were never made aware of it, before or after it was sent.

***This was a Type A Wire Fraud, committed by all Defendants.*

3)      (Par. 109) – 5/11/21 Emails exchanged between Defendants Sumi and Knox (Attorney Wegley) (Exhibit 22)

In these emails it was proclaimed that the totality of Defendant Sumi's initial 2.94 million dollar purchase price was going to be funded, for benefit of Defendant Sumi's SJB Investment, with a "loan directly from Mr. Black".  However, neither Mr. Black nor EMG were copied on these emails, neither was ever otherwise made aware of or authorized such a loan from Mr. Black, before or after the emails were sent. Moreover, no promissory note or written loan document was ever drafted, produced or signed by any of the Defendants.

***This was a Type A Wire Fraud, committed by Defendants Sumi and Knox.*

4)      (Par. 113) – Numerous Emails between 5/11/21 and 6/08/21

Based upon information and belief, a number of emails in this period were exchanged between Defendants Sumi, Buzzard, Knox (Attorneys Wegley, Devlin and Denlinger) and others, which pursued, developed and advanced the underlying scheme of defrauding

Plaintiffs by replacing SJB Investments for EMG as the purchaser of the interest in Networking Technologies.

\*\*\*Every one of these emails constitutes a separate Type A Wire Fraud act committed by each of the Defendants who continued to participate in exchanging them.

5)      Par. 116) – Numerous Emails between 6/10/21 and 10/01/21

These emails occurred after Defendant Knox prepared the final Term Sheet --- signed by Defendants Knox and Sumi on June 10, 2021 --- which was identical to the May 1, 2021 Term Sheet Knox had prepared *except* for identifying SJB Investment instead of EMG as the purchaser of the 49% share of Networking Technologies for the price of 2.94 million dollars.  The Defendants further pursued, developed, and advanced this scheme in these emails.  Again, no notice of these emails or the scheme was provided to the Plaintiffs.

\*\*\*Each of these emails constitutes a separate Type A Wire Fraud act committed by each of the Defendants who continued to participate in exchanging them.

6)      Par. 126) -- 10/01/21 Wire Transfer of $1,501,310 from Mr. Black's Bitcoin Account to SJB Investment Bank Account

On this date, Defendant Buzzard, at Defendant Sumi's direction, made two (2) wire transfers from Mr. Black's personal Bitcoin/Kraken account (i.e., from the proceeds of the sale of his Bitcoin holdings) into the SJB Investment bank account.  One of the wires was in the amount of $1,000,000.00; the other in the amount of $501,310.00. These Defendants, in turn, used this money to make the first Networking Technologies purchase installment of $1,470,000.00.  These Defendants' conduct constituted the following predicate acts:

a)      *Each of these two (2) money wires is a separate act of §1343 WIRE FRAUD (Type B Wire Fraud) committed by Defendants Sumi and Buzzard;*

b)      *Each of these two (2) acts **of taking money from Mr. Black's personal account** is a separate act of **§1957 Money Laundering** committed by Defendants Sumi and Buzzard, as each was a monetary transaction in criminally derived property (from wire fraud) in an amount greater than $10,000.00;*

c)      *Each of these two (2) acts **of depositing this money into the SJB Investment bank account** is a separate act of **§1957 Money Laundering** (unlawful conversion) committed by Defendants Sumi and Buzzard, as each was a monetary transaction in criminally derived property (from wire fraud) in an amount greater than $10,000.00;*

d)      *Each of these two (2) acts of **taking money from Mr. Black's personal account** is also a separate act of **§1956(a)(1) specific intent Money Laundering,** as each was a financial transaction, namely the unlawful transfer of funds out of Mr. Black's personal funds, with the specific intent of promoting/facilitating the fraud scheme identified herein and/or knowing that the transaction was designed to conceal or disguise the nature, source, ownership and/or control of the proceeds (i.e., the funds); and*

e)      *Each of these two (2) acts **of depositing money into the SJB bank account** is also a separate act of **§1956(a)(1) specific intent Money Laundering,** as each was a financial transaction, namely the further unlawful transfer of funds which had been fraudulently deposited into the SJB Investment account with the specific intent of promoting/facilitating the fraud scheme identified herein and/or knowing that the transaction was designed to conceal or disguise the nature, source, ownership and/or control of the proceeds (i.e., the funds).*

In sum, the above conduct of unlawfully taking these funds from Mr. Black and depositing them into the bank account of SJB Investment totals **nine (9) separate RICO predicate acts** committed by Defendants Buzzard and Sumi.

7)      (Par. 125) -- <u>10/01/21 Transfer of 1.47 Million Dollars from  SJB Investment Bank Account to Reabah, Inc.</u>

With the $1,501,310.00 from Mr. Black's Bitcoin sales proceeds having been wired into SJB Investment's account, Defendant Buzzard, at Defendant Sumi's direction, then did an electronic interbank transfer of 1.47 million dollars from the SJB Investment account to Reabah, Inc.'s bank account, representing the first purchase installment for SJB Investment's acquisition of the 49% interest in Networking Technologies, LLC.  These Defendants' conduct constituted the following predicate acts:

a)      *This electronic interbank transfer is a separate act of §1343 **WIRE FRAUD** (Type B Wire Fraud) committed by Defendants Sumi and Buzzard;*

b)      *This transfer of funds is a separate act of §1957 **Money Laundering** committed by Defendants Sumi and Buzzard, as it was a monetary transaction in criminally derived property (from wire fraud involving Mr. Black's personal funds) in an amount greater than $10,000.00;*

c)      *This transfer of funds is a separate act of §1956(a)(1) **specific intent Money Laundering,** as it was a financial transaction, namely the fraudulent movement of funds obtained from Mr. Black's personal funds, with the specific intent of promoting/facilitating the fraud scheme identified herein and/or knowing that the transaction was designed to conceal or disguise the nature, source, ownership and/or control of the proceeds (i.e., the funds).*

In sum, the above conduct of fraudulently moving the 1.47 million dollars into the bank account of Reabah, Inc. totals **three (3) separate RICO predicate acts** committed by Defendants Buzzard and Sumi.

8)      <u>(Par. 128-29) -- 10/01/21 Email</u> (Exhibit 24)

This email was signed by "Sumi James-Black, Interim President & CEO, COO, Erie Management Group", and sent by EMG, at Defendant Sumi's instruction, to all EMG management staff, with the subject line, "**Congratulations! Networking Technologies & EMG Announce Strategic Joint Venture**".    The email advanced the Defendants' fraudulent scheme by falsely announcing that EMG --- not SJB Enterprises --- and Networking Technologies had formed the partnership, thereby concealing the true ownership/beneficiary of the new joint venture.

> It is with great excitement that we *finally* get to share the news with all of you *that Networking Technologies & Erie Management Group (EMG) have formally partnered!*

\*\*\**This was a Type A Wire Fraud, committed by Defendant Sumi.*

9)      <u>(Par. 130) – Press Release published on the Internet on 10/03/21</u> (Exhibit 25)

This press release, issued in part by Defendant Sumi, was published on the internet on <u>GoErie.com</u> on 10/03/21.   The press release and publication similarly advanced the Defendants' fraudulent scheme, by falsely announcing that EMG was "investing in a joint venture" partnership with Networking Technologies.   Neither the press release nor the publication ever mentioned SJB Investment, thereby, again, concealing the true ownership/beneficiary of the new joint venture, and further buttressing Mr. Black's and EMG's duped belief that EMG was the joint venture partner in Networking Technologies.

\*\*\**This was a Type A Wire Fraud, committed by Defendant Sumi.*

10)   (Par. 132) -- <u>12/20/21 Wire Transfer of 1.47 Million Dollars from EMG's Bank Account to SJB Investment Bank Account</u>

In December, 2021, Mr. Black personally obtained $1,000,000 through a line of credit note he established with another one of his company properties (HDAI/Calypso).  He deposited that $1,000,000.00 into the EMG bank account, to fund what he had been duped into believing was EMG's purchase of the 49% interest in Networking Technologies, Inc., which in reality was being fraudulently purchased by SJB Investment.  Then on December 20, 2021, Defendant Buzzard, at Defendant Sumi's direction, combined that $1,000,000.00 with another $470,000.00 that had previously deposited into EMG's account from the sale of Mr. Black's Bitcoin holdings, and *wired* $1.47 million dollars from the EMG account into the SJB Investment bank account, to enable SJB Investment to make the second installment payment required for its fraudulent 49% purchase of Networking Technologies, LLC.  This "pass-through" step of first putting the money into the EMG account was done to foster the false appearance that EMG was the party purchasing the interest in Networking Technologies, LLC.  These Defendants' conduct constituted the following RICO predicate acts:

a)   *The 1.47 million dollar transfer of EMG funds to SJB investment is a separate act of **§1343 WIRE FRAUD** (Type B Wire Fraud) committed by Defendants Sumi and Buzzard;*

b)   *This transfer of funds is a separate act of **§1957 Money Laundering** committed by Defendants Sumi and Buzzard, as it was a monetary transaction in criminally derived property (wire fraud) in an amount greater than $10,000.00;*

c)   *This transfer of funds is a separate act of **§1956(a)(1) specific intent Money Laundering,** as it was a financial transaction, namely the fraudulent movement of*

266

*EMG funds done with the specific intent of promoting/facilitating the fraud scheme identified herein and/or knowing that the transaction was designed to conceal or disguise the nature, source, ownership and/or control of the proceeds (i.e., the funds).*

In sum, the above conduct of fraudulently moving EMG's 1.47 million dollars into the bank account of SJB Investment totals **three (3) separate RICO predicate acts** committed by Defendants Buzzard and Sumi.

11)      (Par. 131) – <u>12/20/21  Transfer of 1.47 Million Dollars from SJB Investment Bank Account to Reabah, Inc.</u>

With the 1.47 million dollars transferred having been wired from EMG's account into SJB Investment's account, Defendant Buzzard, at Defendant Sumi's direction, then did an electronic interbank transfer of 1.47 million dollars from the SJB Investment account to Reabah, Inc.'s bank account, necessary to complete SJB Investment's acquisition of the 49% interest in Networking Technologies, LLC.  These Defendants' conduct constituted the following predicate acts:

a)      *This electronic interbank transfer is a separate act of §1343 WIRE FRAUD (Type B Wire Fraud) committed by Defendants Sumi and Buzzard;*

b)      *This transfer of funds is a separate act of §1957 Money Laundering committed by Defendants Sumi and Buzzard, as it was a monetary transaction in criminally derived property (from wire fraud involving Mr. Black's personal funds) in an amount greater than $10,000.00;*

c)      *This transfer of funds is a separate act of §1956(a)(1) specific intent Money Laundering, as it was a financial transaction, namely the fraudulent movement of funds obtained from Mr. Black's personal funds, with the specific intent of*

> *promoting/facilitating the fraud scheme identified herein and/or knowing that the*
>
> *transaction was designed to conceal or disguise the nature, source, ownership*
>
> *and/or control of the proceeds (i.e., the funds).*

In sum, the above conduct of fraudulently moving the 1.47 million dollars into the bank account of Reabah, Inc. totals **three (3) separate RICO predicate acts** committed by Defendants Buzzard and Sumi.

12)     PERSONS DIRECTLY INJURED --- As a direct and proximate result of the conduct of the Defendants and each of them in violation of 18 U.S.C. §1962(c) as alleged herein regarding the Networking Technologies, LLC fraud scheme, Plaintiff Mr. Black has been directly injured in his business and property, specifically suffering monetary damages in at least the sum of 2.94 million dollars, said damages to be proven at trial.

Pursuant to 18 U.S.C. §1964(c), the Defendants --- jointly and severally --- are liable to Plaintiff Mr. Black for three times his damages, plus costs of this suit and attorneys' fees.


B.     <u>**THE LOT 298, LLC FRAUD SCHEME (Chapter 2)**</u>

1308.   Chapter 2 of this Complaint describes the conversion of assets, funds and property from Plaintiff BILP, specifically the surreptitious, unlawful, fraudulent and forgery-aided replacement of **BILP** as the rightful owner of the real estate located at 298 Niagara Point, Erie, Pennsylvania, with the **James-Black 2020 Irrevocable Trust ("JB 2020 Trust")**, which had been created by Defendant Knox (with Knox, through its Attorney Neil Devlin, at all times serving as this Trust's Trustee), and which existed for the purpose of acquiring, maintaining and improving real property for the sole use by, benefit of and distribution to Defendant Sumi and her descendants. As was the case with the Networking Technologies fraud scheme (Chapter 1), all of the funds used to purchase and maintain the property at 298 Niagara Pointe were unlawfully and fraudulently

taken from Plaintiff BILP, and the true nature of all of this conduct occurred without notice to, knowledge of or knowing authorization from BILP and Mr. Black.

Summarizing further, Erie businessman, Thomas Kennedy and his wife contracted with BILP to buy back BILP's $850,000.00-purchased interest in Kennedy's real estate company, "SREO". This contract ("the Buy-Back contract") was drafted by Defendant Knox. Per the Buy-Back contract, Kennedy's/SREO's ownership of three (3) real estate parcels (one of which was 298 Niagara Pointe, valued at $475,000.00) were to be transferred to BILP in exchange for the transfer to the Kennedy's of BILP's total ownership interest in SREO. As with past course of dealings, Mr. Black directed that the ownership of these properties be transferred to a newly created, single purpose *BILP-owned* limited liability company rather than directly to BILP. So, on January 12, 2021, roughly two (2) months after the execution of the Buy-Back contract, Knox created for Mr. Black and BILP a new company --- Lot 298, LLC --- so that Lot 298, LLC, with the approval of Mr. Black and BILP, could take ownership of 298 Niagara Pointe. On that same date, Knox prepared, and the Kennedy's, SREO and Mr. Black, as the primary and managing partner of BILP, signed a NOVATION AGREEMENT (hereafter, the "N-A"). The N-A expressly provided that BILP had created and was the intended sole owner/member of Lot 298, LLC; that Lot 298, LLC was being substituted in BILP's place as the transferee of 298 Niagara Pointe from the Kennedys and SREO; and that this N-A was "for the sole and exclusive benefit of the parties hereto and is not intended to, nor does it confer any benefit upon any third party".

Starting only two (2) days after the signing of this N-A, however, the Defendants created and signed false documents and forged documents and otherwise acted to achieve Defendant Sumi's surreptitious theft/unlawful conversion of 298 Niagara Pointe from BILP, all the while and afterwards fraudulently and unlawfully using and/or stealing BILP's funds for the purchasing and

maintenance of that property, all for the benefit of Defendant Sumi.  And the Defendants, all of whom had either official fiduciary or attorney-client duties of loyalty to BILP and Mr. Black, concealed all of this from BILP and Mr. Black.

1309.   The unlawful RICO predicate acts committed by the Defendants regarding this Chapter, and the Persons directly injured by same are listed in summary fashion, below (the Complaint paragraphs where each were pled are parenthetically identified):

1)      (Par. 234-35, 241-249) -- <u>Emails Concerning the False Lot 298, LLC Resolution and the false Operating Agreement</u>

These Complaint paragraphs describe the **false** Lot 298, LLC **Resolution** created 1/14/21 by Defendant Knox (Attorney Ryback) and signed that day by Knox (Ryback) and Defendant Buzzard, and also the Lot 298, LLC **false Operating Agreement**, which was created by Defendant Knox (Attorney Devlin).   The Resolution and the Operating Agreement each falsely proclaimed that Defendant Sumi's JB 2020 Trust was the contributor to and sole Member of Lot 298, LLC, contrary to both the aforesaid N-A and the representations made to Mr. Black and BILP.  These false documents were concealed from BILP and Mr. Black.   On 1/14/21at 8:10 a.m., an employee of EMG (Laura Guncheon) sent an email to Knox (Attorneys Wegley and Ziezula) requesting the organization documents for Lot 298, LLC, which Defendant Buzzard needed to "properly account" for the next day's closing on the 298 Niagara Pointe property.  Later that date (11:49 a.m.) Attorney Ryback emailed the false documents to Guncheon (the email was copied to Attorneys Wegley and Ziezula, but not to Mr. Black or BILP) with instructions for Defendant Buzzard's signature.

***As each of these emails advanced the fraudulent scheme, each is a Type A Wire Fraud committed by Defendant Knox.*

2)   <u>1/14/21 Emails Concealing JB 2020 Trust's True Unlawful Conversion of Lot 298, LLC</u> (**Exhibit 90**)

At 1:14 pm on 1/14/21 Defendant Buzzard emailed Knox, specifically Attorney Wegley, summarizing her understanding of the 298 Niagara Pointe property transaction and posing some related questions, stating:

> "Transaction Summary:
>
> - BILP transferred its interests in SREO valued at $475K (part of the initial $850k investment), for this property along with BILP paying $13,500 in closing costs.
>
> - ***BILP is simultaneously assigning this property to the James-Black 2020 Irrevocable Trust*** (emphasis added)
>
> - In which the Trust is immediately contributing that property directly to the new LLC.
>
> If BILP is assigning this out of the business holdings, how is the outgoing transaction being treated so I can records it appropriately? ***Also Sumi has instructed Paula to put the utilities under BILP's*** name, can I confirm with you the responsible party for the expenses for the property, and if there are any agreements in place for that responsible party and/or would this, Lot 298, be treated similar to Lot 289? (emphasis added)"

Defendant Buzzard's Summary is false. BILP never assigned the property to the JB 2020 Trust, and indeed, the fact that this Trust had anything to do with 298 Niagara Pointe was kept a secret from BILP and Mr. Black. Moreover, the fact that Defendant Sumi had "instructed Paula (Mr. Black's executive secretary) to put the utilities under BILP's name", is further evidence of the fraud being perpetrated on the Plaintiffs, as her JB 2020 Trust was required to pay all expenses for any property it owned.

Thirty-eight (38) minutes later, Attorney Wegley responded to Buzzard's email with one of his own, but significantly, his email never directly addressed Buzzard's incorrect assertion that "BILP is simultaneously assigning this property to the James-Black 2020

Irrevocable Trust".  In fact, Wegley's reply email never even mentioned the Trust or the Trust's involvement as the secretly-made owner/sole member of Lot 298, LLC.  Further, Wegley's email did not address Defendant Sumi's instructions to have BILP pay the utilities for 298 Niagara Pointe, even though Wegley knew that the Trust, not BILP, was the party responsible for paying those expenses.

**As each of these emails advanced the fraudulent scheme, each is a Type A Wire Fraud committed by Defendants Knox and Buzzard.*

3)    1/14/21 Email Acknowledging the Insufficient Funding of JB 2020 Trust to Maintain 298, LLC and the 298 Niagara Point Property (**Exhibit 91**)

As a follow-up to the above emails, a 5:36 pm. on 1/14/21, Buzzard sent an email to Knox Attorneys Wegley and Ryback, in which she provides financial figures demonstrating that the JB 2020 Trust lacked sufficient funds and future funding to satisfy the installment judgment not payment obligations to BILP, to pay its mortgage, and to pay for "some remodeling" Defendant Sumi had talked about doing at 298 Niagara Pointe.  Even without knowing that Defendant Sumi was planning to spend over a million dollars on such remodeling costs, Buzzard's email projected that the Trust would run out of money before the end of 2022.  Buzzard's solution to this money deficiency was to have Defendant Sumi … **and Mr. Black** … agree to personally pay for all expenses for Lot 298, LLC, and also Lot 289, LLC, even though Mr. Black had been fraudulently duped out of ownership of both of those.

**As this email attempts to further advance the fraudulent scheme, it is a Type A Wire.*

4)    (Par. 257) --- <u>1/15/21 Execution of Settlement Statement Concluding the Sale of 298 Niagara Point to Lot 298, LLC for $475,000.00 also constituted §1956(a)(1) Specific Intent Money Laundering</u>

The 1/15/21 closing was supposed to be the last event finalizing the transfer of property from the Kennedys to BILP in consideration for BILP's selling back its $850,000.00 purchased interest in SREO.  Instead, the **closing was a section 1956 specific intent money laundering violation [§1956(a)(1)(A)(i)]** in which the Defendants conducted a *financial transaction* (namely a transfer of title to real property) involving the *proceeds* of some unlawful activity (namely 298 Niagara Pointe, the property fraudulently derived for Defendant Sumi's JB2020 Trust, through the concealed, day-old Lot 298, LLC false Resolution and false Operating Agreement) with the *specific intents* both of **a)** promoting the carrying on of the fraudulent  and unlawful wire and mail fraud assisted scheme to convert this property to Defendant Sumi's control and benefit, and **b)** continuing the concealment and disguising of the true source, ownership and control of said proceeds.

5)    (Par. 258) -- <u>1/13/21 Wire Transfer from BILP to Knox of $13,478.02</u>

This sum was provided through a wired money transfer from BILP to Knox, at Knox's direction, to pay for the costs necessary to complete the 1/15/21 closing/sale of 298 Niagara Pointe.  BILP paid these closing costs because it had been duped into believing that it --- not JB 2020 Trust --- was becoming the owner of this real estate.  Thus, the Defendants --- through Defendant Buzzard, at the direction and approval of Defendants Knox and Sumi --- wired funds which belonged to BILP into Knox's bank account in order to execute the closing and sale of 298 Niagara Pointe.

a)  *This was a **Type B** Wire Fraud, committed by (all) Defendants, as the wiring of the closing costs furthered the fraudulent diverting of the ownership, possession and control of that 298 Niagara Pointe from BILP to Defendant Sumi's Trust.*

b)  *This act **of transferring $13,478.02 from BILP to Defendant Knox's bank account** is a separate act of §1957 **Money Laundering** committed by Defendants Sumi, Buzzard and Knox, as it was a monetary transaction in criminally derived property (from wire fraud) in an amount greater than $10,000.00;*

c)  *This act **of transferring $13,478.02 from BILP to Defendant Knox's bank account** is also a separate act of §1956(a)(1) **specific intent Money Laundering,** as it was a financial transaction, namely the fraudulent transfer of funds from BILP, with the specific intent of promoting/facilitating the fraud scheme identified herein and/or knowing that the transaction was designed to conceal or disguise the nature, source, ownership and/or control of the proceeds (i.e., the funds).*

In sum, the above wire of $13,478.02 from BILP to Defendant Knox to effectuate the 298 Niagara Pointe closing totals **three (3) separate RICO predicate acts.**

6)  (Par. 261) <u>– BILP's Payment of Lot 298, LLC's Monthly Expenses/Maintenance</u>

Even though the JB 2020 Trust Agreement mandates that the JB 2020 Trust is to pay all expenses related to property owned by said Trust, the Defendants fraudulently obtained and used BILP's funds, at least through July 24, 2023, to pay Lot 298, LLC's real estate taxes, gas bills, electric bills, water bills, landscape-property maintenance bills, home owner association fees and related monthly maintenance expenses.  The Defendants accomplished this by preying upon BILP's fraud-induced belief that BILP (not the JB 2020 Trust) owned Lot 298, LLC.  There were **ninety-seven (97) such payments** in this period

using BILP's funds, which totaled **$53,898.04**.  Each of these payments were made via checks written by Mr. Black's executive assistant, at the instructions of Defendants Sumi and Buzzard.  Defendant Buzzard set up the QuickBooks accounting system for the payments. Each check payment made was by U.S. mail.

    a)    *Each of these ninety-seven (97) mailed payments constituted a separate act of* ***Mail Fraud****, as each used the mail in furtherance of the underlying fraud scheme.*

    b)    *Each of these ninety-seven (97) payments constituted a separate **section 1956 specific intent money laundering violation [§1956(a)(1)(A)(i)]** in which the Defendants conducted a financial transaction (namely the movement of funds and/or the use of a monetary instrument, i.e., checks, and/or the use of a financial institution) involving the proceeds of some unlawful activity (namely the unlawful use of BILP's money to pay Lot 298, LLC expenses) with the specific intents both of a) promoting the carrying on of the fraudulent  and unlawful wire and mail fraud assisted scheme to convert and maintain the Top road properties to Defendant Sumi's control and benefit, and b) continuing the concealment and disguising of the true source, ownership and control of said proceeds.*

In sum, these payments of Lot 298, LLC expenses in the manner described constituted a **total of one hundred ninety-four (194) separate RICO predicate acts** committed by Defendants Sumi and Buzzard.

7)    (Par. 262) – <u>8/25/21 Email regarding the Forged Novation Agreement (</u>**Exhibit 35**) This email exchange was between several Defendant Knox attorneys (from Attorney Tim Ziezula to Attorneys Wegley and Ryback).  The Knox attorneys admitted in the email that they had forged the original Novation Agreement (by deliberately replacing the first page of it with a new one that deleted all references to BILP as both the entity that created the

new Lot 298, LLC and the intended sole Member/owner of Lot 298 LLC, but keeping the original signature pages, so that it would now falsely appear that this forged Novation Agreement (Exhibit 47) was the one signed seven (7) months before by both Mr. Black and Mr. Kennedy).

***This is a Type A Wire Fraud committed by Defendant Knox.*

8)    Additional Mail/Email(s) regarding the 8/25/21 Forged Novation Agreement

It is obvious from the aforesaid 8/25/21 email that there had to be prior communications between the Defendants about the forged Novation Agreement.  Plaintiffs do not have any such additional mailed or emailed communications, but anticipate obtaining these through discovery.  Accordingly, it is averred based on belief that these other communications, to be determined in discovery, will constitute *additional acts of Type A Wire Fraud and/or Mail Fraud.*

9)    (Par. 263) --- Forgery of the Novation Agreement

The forgery, itself, of the original N-A was a section 1956 specific intent money laundering violation [§1956(a)(1)(A)(i)].   This forgery altered a *financial transaction* (namely agreements to transfer title to real property) involving the *proceeds* of some unlawful activity (namely 298 Niagara Pointe, the property fraudulently derived for Defendant Sumi's JB 2020 Trust) with the *specific intents* both of **a)** promoting the carrying on of the fraudulent and unlawful wire and mail fraud assisted scheme to convert this property to Defendant Sumi's control and benefit, and **b)** concealing and disguising of the true source, ownership and control of said proceeds.

*** *This is a specific intent money laundering predicate act under §1956(a)(1)(A)(i), committed by at least Defendants Sumi and Knox.*

276

10)   (Par. 267-68) – <u>4/04/22 Email from Defendant Sumi to Knox (Attorneys Devlin and Wegley) and cc'd to Defendant Buzzard …</u>(**Exhibit 37**)

Lot 298, LLC failed to make the required initial $19,373.24 Note payment due to BILP by January 1, 2022.  Instead, Defendant Sumi insisted that the Installment Judgment Note payments needed to be reduced, and in this email, she stated that if such a change were not made, she "would go to plan B".  This email and its subject matter was never copied to or noticed and discussed with Mr. Black or BILP.  To coordinate and implement this request, attorneys at Knox drafted the "First Amendment to Installment Judgment Note", which changed the terms of the original, 1/15/21 Installment Judgement Note which had been signed by Defendant Buzzard, Attorney Wegley and Mr. Black.  In short, this amended Note drastically reduced the amount of the annual payments Lot 298, LLC was required to make to BILP, and substantially extended the period of time granted to Lot 298, LLC for making the payments.  And none of this was disclosed to BILP or Mr. Black.

*** *The 4/04/22 email is a TYPE A Wire Fraud act committed by, at least, Defendants Sumi and Knox.*

11)    PERSONS DIRECTLY INJURED --- As a direct and proximate result of the conduct of the Defendants and each of them in violation of 18 U.S.C. §1962(c) as alleged herein regarding the Lot 298, LLC fraud scheme, Plaintiff BILP has been directly injured in its business and property, specifically suffering monetary damages in at least the sum of **$694,509.04** ($640,611.00 current assessed value of 298 Niagara Pointe plus the $53,898.34 payment of monthly maintenance expenses), said damages to be proven at trial.  Pursuant to 18 U.S.C. §1964(c), the Defendants --- jointly and severally --- are liable to Plaintiff BILP for three (3) times his damages, plus costs of this suit and attorneys' fees.

**C.**     **THE TOP ROAD, LLC FRAUD SCHEME (Chapter 3)**

1310.   Chapter 3 of this Complaint describes the conversion of assets, funds and property from Plaintiff BILP, specifically the surreptitious, unlawful, fraudulent and forgery-aided replacement of **BILP** as the rightful owner of the real estate properties located at 301 and 305 Top Road, Erie, Pennsylvania (hereafter the "Top Road properties") with the **James-Black 2020 Irrevocable Trust ("JB 2020 Trust")**, which had been created by Defendant Knox (with Knox, through its Attorney Neil Devlin, at all times serving as this Trust's Trustee), and which existed for the purpose of acquiring, maintaining and improving real property for the sole use by, benefit of and distribution to Defendant Sumi and her descendants.  As was the case with the Networking Technologies fraud scheme (Chapter 1) and the Lot 298, LLC fraud scheme, all of the funds used to purchase and maintain the Top Road Properties were unlawfully and fraudulently taken from Plaintiff BILP, and the true nature of all of this conduct occurred without notice to, knowledge of or knowing authorization from BILP and Mr. Black.

The scheme and the Defendants' conduct regarding the Top Road properties was a mirror image, except for some of the dates involved, of that involved in the Lot 298, LLC scheme. Indeed, the Top Road properties were the other two properties (besides 298 Niagara Pointe) which were included in the Buy-Back contract between the Kennedy's/SREO and BILP, with the Top Road properties being valued at $225,000.00.  For the Top Road properties, Mr. Black directed, and Knox created for Mr. Black and BILP, the new company Top Road, LLC, so that Top Road, LLC, with the approval of Mr. Black and BILP, could take ownership of the Top Road properties.  This was done on March 24, 2021.  A week later (March 31, 2021) Knox prepared, and the Kennedy's, SREO and Mr. Black, as the primary and managing partner of BILP, signed a NOVATION AGREEMENT (hereafter, the "N-A"), which provided that BILP had created and was the intended

sole owner/member of Top Road, LLC; that Top Road, LLC was being substituted in BILP's place as the transferee of the Top Road properties from the Kennedys and SREO; and that this N-A was "for the sole and exclusive benefit of the parties hereto and is not intended to, nor does it confer any benefit upon any third party".

But as with the Lot 298 fraud scheme, the Defendants created and signed false documents and forged documents and otherwise acted to achieve Defendant Sumi's surreptitious theft/unlawful conversion of the Top Road properties from BILP, all the while and afterwards fraudulently and unlawfully using and/or stealing BILP's funds for the purchasing and maintenance of that property, all for the benefit of Defendant Sumi.  And the Defendants, all of whom had either official fiduciary or attorney-client duties of loyalty to BILP and Mr. Black, concealed all of this from BILP and Mr. Black.

1311.  The unlawful RICO predicate acts committed by the Defendants regarding this Chapter, and the Persons directly injured by same are listed in summary fashion, below (the Complaint paragraphs where each were pled are parenthetically identified):

1)      (Par. 378-79, 385-393) -- Emails Concerning the False Top Road, LLC Resolution and the False Operating Agreement

These Complaint paragraphs describe the **false** Top Road, LLC **Resolution** created 3/24/21 by Defendant Knox (Atty. Ryback) and signed that day by Knox (Ryback) and Defendant Buzzard, and also the Top Road, LLC **false Operating Agreement**, which was created by Defendant Knox.  The Resolution and the Operating Agreement each falsely proclaimed that Defendant Sumi's JB 2020 Trust was the contributor to and sole Member of Lot 298, LLC, contrary to both the aforesaid N-A and the representations made to Mr. Black and BILP.  These false documents were concealed from BILP and Mr. Black.  It is believed,

279

and therefore averred, that Defendants Knox and others exchanged emails discussing and providing/attaching these documents in furtherance of the underlying fraud scheme.

***As such emails advanced the fraudulent scheme, each is a Type A Wire Fraud committed by Defendant Knox.***

2)    (Par. 398) -- <u>04/01/21 Execution of Settlement Statement Concluding the Sale of Top Road Properties to Top Road, LLC for $225,000 Constituted §1956(a)(1) Specific Intent Money Laundering</u>

The 4/01/21 closing was supposed to be the last event finalizing the transfer of the Top Road properties from the Kennedy's to BILP in consideration for BILP's selling back its $850,000.00 purchased interest in SREO.  Instead, the **closing was a section 1956 specific intent money laundering violation [§1956(a)(1)(A)(i)]** in which the Defendants conducted a *financial transaction* (namely a transfer of title to real property) involving the *proceeds* of some unlawful activity (namely the Top Road properties fraudulently derived for Defendant Sumi's JB 2020 Trust, through the concealed, Top Road, LLC false Resolution and false Operating Agreement) with the *specific intents* both of **a)** promoting the carrying on of the fraudulent  and unlawful wire and mail fraud assisted scheme to convert this property to Defendant Sumi's control and benefit, and **b)** continuing the concealment and disguising of the true source, ownership and control of said proceeds.

3)    <u>(Par. 399) – 4/01/21 Wire Transfer from BILP to Knox of $8,023.78</u>

This sum was provided through a wired money transfer from BILP to Knox, at Knox's direction, to pay for the costs necessary to complete the 4/01/21 closing/sale of the Top Road properties.  BILP paid these closing costs because it had been duped into believing that it --- not the JB 2020 Trust --- was becoming the owner of this real estate.  Thus, the Defendants --- through Defendant Buzzard, at the direction and approval of Defendants

Knox and Sumi --- wired funds which belonged to BILP into Knox's bank account in order to execute the closing and sale of the Top Road properties.

    a)    *This was a **Type B** Wire Fraud, committed by (all) Defendants, as the wiring of the closing costs furthered the fraudulent diverting of the ownership, possession and control of that the Top Road properties from BILP to Defendant Sumi's Trust.*

    b)    *This act **of transferring $8,023.78 from BILP to Defendant Knox's bank account** is a separate act of **§1956(a)(1) specific intent Money Laundering,** as it was a financial transaction, namely the fraudulent transfer of funds from BILP, with the specific intent of promoting/facilitating the fraud scheme identified herein and/or knowing that the transaction was designed to conceal or disguise the nature, source, ownership and/or control of the proceeds (i.e., the funds).*

In sum, the above wire of $8,023.78 from BILP to Defendant Knox to effectuate the Top Road properties closing totals **two (2) separate RICO predicate acts.**

4)    (Par. 401) <u>– BILP's Payment of Top Road, LLC's Monthly Expenses</u>

Even though the JB 2020 Trust Agreement mandates that the JB 2020 Trust is to pay all expenses related to property owned by said Trust, the Defendants fraudulently obtained and used BILP's funds, at from April 2021 at least through August 2022, to pay Top Road, LLC's real estate taxes, water bills, property insurance, condominium dues and maintenance expenses. (Other monthly expenses were made by the tenants residing at these properties.) They did so by preying upon BILP's fraud-induced belief that BILP (not the JB 2020 Trust) owned Top Road, LLC. There were a total of thirty-two (32) such payments in this period using BILP's funds, totaling $25,568.54. All but seven (7) of the payments were made by Mr. Black's executive assistant, under the instruction and direction

of Defendants Buzzard and Sumi.  The other seven (7) payments were made directly by Defendant Buzzard.  All of the payments were made by check, through the mail.

a) *Each of these thirty-two (32) mailed payments constituted a separate act of* **Mail Fraud**, *as each used the mail in furtherance of the underlying fraud scheme.*

b) *Each of these thirty-two (32) payments constituted a separate* **section 1956 specific intent money laundering violation [§1956(a)(1)(A)(i)]** *in which the Defendants conducted a financial transaction (namely the movement of funds and/or the use of a monetary instrument, i.e., checks, and/or the use of a financial institution) involving the proceeds of some unlawful activity (namely the unlawful use of BILP's money to pay Top Road, LLC expenses) with the specific intents both of a) promoting the carrying on of the fraudulent and unlawful wire and mail fraud assisted scheme to convert and maintain the Top Road properties to Defendant Sumi's control and benefit, and b) continuing the concealment and disguising of the true source, ownership and control of said proceeds.*

In sum, these payments of Top Road, LLC expenses in the manner described constituted a total of **sixty-four (64) separate RICO predicate acts** committed by Defendants Sumi and Buzzard.

5) (Par. 402) – 8/25/21 Email regarding the Forged Novation Agreement (**Exhibit 35**)

This email exchange was between several Defendant Knox attorneys (from Attorney Tim Ziezula to Attorneys Wegley and Ryback).  The Knox attorneys admitted in the email that they had forged the original Novation Agreement (by deliberately replacing the first page with a new one that deleted all references to BILP as both the entity that created the new Top Road, LLC and the intended sole Member/owner of Top Road, LLC, but keeping the

original signature pages, so that it would now falsely appear that this forged Novation Agreement (Exhibit 47) was the one signed seven (7) months before by both Mr. Black and Mr. Kennedy).

\*\*\**This is a **Type A Wire Fraud** committed by Defendant Knox.*

6)      Additional Mail/Email(s) regarding the 8/25/21 Forged Novation Agreement

It is obvious from the aforesaid 8/25/21 email that there had to be prior communications between the Defendants about the forged Novation Agreement.  Plaintiffs do not have any such additional mailed or emailed communications but anticipate obtaining these through discovery.  Accordingly, it is averred based on belief that these other communications, to be determined in discovery, will constitute additional acts of **Type A Wire Fraud and/or Mail Fraud.**

7)      (Par. 404) --- Forgery of the Novation Agreement

The forgery, itself, of the original N-A was a section 1956 specific intent money laundering violation  [§1956(a)(1)(A)(i)].   This forgery altered a *financial transaction* (namely agreements to transfer title to real property) involving the *proceeds* of some unlawful activity (namely the Top Road properties fraudulently derived for Defendant Sumi's JB 2020 Trust) with the *specific intents* both of **a)** promoting the carrying on of the fraudulent and unlawful wire and mail fraud assisted scheme to convert this property to Defendant Sumi's control and benefit, and **b**) concealing and disguising of the true source, ownership and control of said proceeds.

\*\*\* *This is a **specific intent money laundering predicate act under §1956(a)(1)(A)(i),** committed by at least Defendants Sumi and Knox.*

8)      (Par. 407) – <u>4/04/22 Email from Defendant Sumi to Knox (Attorneys Devlin and Wegley) and cc'd to Defendant Buzzard</u> (**Exhibit 37**)

Top Road, LLC failed to make the required initial $17,012.28 Note payment due to BILP by March 30, 2022.  Instead, Defendant Sumi insisted that the Installment Judgment Note payments needed to be reduced, and in this email, she stated that if such a change were not made, she "would go to plan B".  This email and its subject matter was never copied to or noticed and discussed with Mr. Black or BILP.  To coordinate and implement this request, attorneys at Knox drafted the "First Amendment to Installment Judgment Note", which changed the terms of the original Installment Judgement Note which had been signed by Defendant Buzzard, Attorney Wegley *and* Mr. Black.  In short, this amended Note drastically reduced the amount of the annual payments Top Road, LLC was required to make to BILP, and substantially extended the period of time granted to Top Road, LLC for making the payments.  And none of this was disclosed to BILP or Mr. Black.

*** *The 4/04/22 email is a* **TYPE A Wire Fraud** *act committed by, at least, Defendants Sumi and Knox.*

9)      PERSONS DIRECTLY INJURED --- As a direct and proximate result of the conduct of the Defendants and each of them in violation of 18 U.S.C. §1962(c) as alleged herein regarding the Top Road, LLC fraud scheme, Plaintiff BILP has been directly injured in its business and property, specifically suffering monetary damages in at least the sum of **$250,568.54** ($225,000.00 purchase price value of Niagara Pointe plus the $ $25,568.54 payments of taxes and other maintenance expenses),said damages to be proven at trial.  Pursuant to 18 U.S.C. §1964(c), the Defendants --- jointly and severally --- are liable to Plaintiff BILP for three (3) times his damages, plus costs of this suit and attorneys' fees.

**D.      The LOT 289, LLC FRAUD SCHEME (Chapter 5)**

1312.   Chapter 5 of this Complaint describes Defendants Sumi and Buzzard's repetitive, surreptitious and unlawful conversion and diversion of funds from Mr. Black and four (4) of his business entities --- SB3, LLC, EMG, BILP and Black Insurance Group --- in order to pay for the lavish renovations Defendant Sumi was making to her personal residence at 289 Niagara Pointe, Erie Pennsylvania (hereafter, "289 Niagara"), all of which was concealed from Mr. Black.

To recap, on May 8, 2020, Defendants Sumi and Knox Sumi created the **James-Black 2020 Irrevocable Trust ("JB 2020 Trust")** for the primary purpose of acquiring, maintaining, and improving real property for use of, benefit of and ultimate distribution to Defendant Sumi and her descendants.  On the same date, Defendants Sumi and Knox created **Lot 289, LLC,** which was made wholly owned by the JB 2020 Trust.  One week later, Defendant Sumi's Lot 289, LLC purchased the house at 289 Niagara, which Defendant Sumi subsequently used as her personal residence.  Thus, the JB 2020 Trust owned 289 Niagara.  Notably, all of the money needed for this purchase --- $905,881.57 --- came from Mr. Black, specifically through BILP, in exchange for a promissory note from Lot 289, LLC to BILP to repay that entire sum over thirty (30) years.

Very shortly after this purchase, Defendant Sumi embarked on a campaign to turn 289 Niagara into, as she termed, her "CoCo Chanel themed personal palace".  The lavish renovations made over the next two (2) years would include a saltwater swimming pool, the "highest end design finish", a wine room, a theatre room, and an exercise room, all at costs exceeding one million dollars. Per its Trust Agreement, the JB 2020 Trust was *required* to pay for all expenses arising from acquisition, maintenance, improvements and renovations costs of any real property it owned, which included 289 Niagara. But that was not done for 289 Niagara.  Instead, Defendants Sumi and Buzzard committed numerous acts of fraudulent converting, stealing and diverting of

funds from Mr. Black and the four (4) above-named business entities, which they then unlawfully used to pay for the 289 Niagara renovation expenses, all to the benefit of Defendant Sumi and the detriment of Mr. Black and these business entities.  And the true nature of all of this conduct occurred without notice to, knowledge of or knowing authorization from Mr. Black and these business entities.

The numerous predicate acts these Defendants committed consisted of wire fraud (email communications and money wire transactions) plus money laundering related to the fraudulent conversion of the Mr. Black/Black-company funds into Defendant Sumi's property and/or control. Defendants Sumi and Buzzard both directed, initiated and made decisions as to what sources of funds and the amount of funds to target and unlawfully take from Mr. Black, SB3, BILP, EMG, and Black Insurance Group.  Defendant Buzzard then orchestrated the actual money wire transfers/conversions, getting the money to Defendant Sumi's entities.  And both participated in instructions for, directing and unlawfully paying for the extensive 289 Niagara renovation costs with these ill-gotten funds.  Finally, both of these Defendants participated in the decisions and actions taken to conceal all of this from Mr. Black and the Black companies, again, in violation of their fiduciary employment duties to same.

1313.   The unlawful RICO predicate acts committed by the Defendants regarding this Chapter, and the Persons directly injured by same are listed in summary fashion, below (the Complaint paragraphs where each were pled are parenthetically identified):

1)      (Par. 599) – Six (6) Wire Transfers of Money from SB3 to JB, LLC bank account

Money from the SB3 account *was wired* by Defendant Buzzard, at Defendant Sumi's direction, into the JB, LLC bank account.  This was done without any notice to or

authorization from SB3 and Mr. Black as part of the fraud scheme summarized above. These money wires were:

| 12/8/20 | $89,159.00 wire |
| 1/27/21 | $34,343.00 wire |
| 3/12/21 | $37,559.00 wire |
| 4/12/21 | $95,938.00 wire |
| 5/11/21 | $29,062.00 wire |
| 6/01/21 | $36,105.00 wire |

Adding these figures, these Defendants took **$322,166.00 from SB3**. Their conduct constituted the following RICO predicate acts:

a)      *Each of these six (6) money wires is a separate act of §1343 WIRE FRAUD (Type B Wire Fraud) committed by Defendants Sumi and Buzzard;*

b)      *Each of these six (6) acts **of taking money from SB3** is a separate act of §1957 Money Laundering committed by Defendants Sumi and Buzzard, as each was a monetary transaction in criminally derived property (from wire fraud) in an amount greater than $10,000.00;*

c)      *Each of these six (6) acts **of depositing this money into the JB, LLC bank account** is a separate act of §1957 Money Laundering (unlawful conversion) committed by Defendants Sumi and Buzzard, as each was a monetary transaction in criminally derived property (from wire fraud) in an amount greater than $10,000.00;*

d)      *Each of these six (6) acts of **taking money from SB3** is also a separate act of §1956(a)(1) specific intent Money Laundering, as each was a financial transaction, namely the unlawful transfer of funds out of SB3's bank account, with the specific intent of promoting/facilitating the fraud scheme identified herein*

287

*and/or knowing that the transaction was designed to conceal or disguise the nature, source, ownership and/or control of the proceeds (i.e., the funds); and*

e)      *Each of these six (6) acts **of depositing money into the JB, LLC bank account** is also a separate act of **§1956(a)(1) specific intent Money Laundering,** as each was a financial transaction, namely the a further unlawful transfer of funds which had been unlawfully taken from SB3's bank account, with the specific intent of promoting/facilitating the fraud scheme identified herein and/or knowing that the transaction was designed to conceal or disguise the nature, source, ownership and/or control of the proceeds (i.e., the funds); and*

In sum, the above conduct of unlawfully taking these funds from the SB3 bank account and depositing them into the bank account of JB, LLC totals **thirty (30) separate RICO predicate acts.**

2)      <u>(Par. 600) – Payments from JB, LLC for 289 Niagara Contractor Expenses</u>

On the same dates that JB, LLC unlawfully received each of the aforesaid funds from SB3, Defendant Sumi used and/or directed the use of those funds to pay contractors performing renovation work at her 289 Niagara home.  All of the payments were made by checks, written and put in the mail by Defendant Buzzard at the instructions and authorization of Defendant Sumi.  These payments were:

| | | |
|---|---|---|
| 12/8/20 | **$89,158.12 total** via three (3) checks: | |
| | $14,204.12 --- to Spaulding Banks Project Management | |
| | $70,853.00 --- to Advance Floor Care; Aaron Reed | |
| | $ 4,101.00 --- to Aaron Reed Construction | |
| 1/27/21 | **$34,341.62 total** via two (2) checks: | |
| | $28,063.62 --- to Spaulding | |
| | $ 6,278.00 --- to Aaron Reed | |

| 3/12/21 | **$37,558.74 total** via two (2) checks: |
|---|---|
|  | $27,634.44 --- to Spaulding |
|  | $  9,924.30 --- to Aaron Reed |
| 4/12/21 | **$95,938.22 total** via four (4) checks |
|  | $33,330.48 --- to Spaulding |
|  | $36,518.49 --- to Advanced Floor Care |
|  | $  3,939.25 --- to Aaron Reed |
|  | $22,150.00 --- to Dwyer Plumbing |
| 5/11/21 | **$29,062.16 total** via three (3) checks |
|  | $12,558.28 --- to Spaulding |
|  | $12,842.63 --- to Dwyer Plumbing |
|  | $  3,661.25 --- to Aaron Reed |
| 6/01/21 | **$36,104.17 total** via three (3) checks |
|  | $  3,562.77 --- to Aaron Reed |
|  | $15,850.00 --- to Dwyer Plumbing |
|  | $16,691.40 --- to Spaulding |

Adding these figures, all of the **$322,166.03 from SB3** were used for these payments, and each payment made constituted the following RICO predicate acts:

a)      *Each of these **seventeen (17)** mailed check-payments constitutes a separate act of **Mail Fraud** committed by Defendants Sumi and Buzzard, as each used the mail in furtherance of the underlying fraud scheme.*

b)      ***Ten (10)** of these payments constitute a separate act of **§1957 Money Laundering** committed by Defendants Sumi and Buzzard, as each of ten (10) of them was a monetary transaction in criminally derived property  (from funds unlawfully obtained from SB3 via wire fraud) in an amount greater than $10,000.00; and*

c)       Each of the **seventeen (17)** payments constitutes a separate act of **§1956(a)(1) specific intent Money Laundering,** as each was an unlawful financial transaction, namely the payment of expenses/renovation costs for 289 Niagara, with funds improperly and unlawfully obtained by Defendants Sumi and Buzzard, with the specific intent of promoting/facilitating the fraud scheme identified herein and/or knowing that the transaction was designed to conceal or disguise the nature, source, ownership and/or control of the proceeds (i.e., the funds).

In sum, the above conduct of using the unlawfully obtained funds to pay renovation expenses of Defendant Sumi's residence **totaled forty-four (44) separate RICO predicate acts**.

3)       (Par. 603) --- <u>$82,574.97 Transferred via two (2) Checks from Mr. Black to JB, LLC</u>

In October 2021, Defendant Buzzard, at Defendant Sumi's direction, deposited $82,576.00 into the JB, LLC bank account from the bank account of **SJB Investment Enterprises, LLC (SJB Investment")**, a company 100% owned by Defendant Sumi. However, the actual source of this $82,576.00 was not SJB Investment, but rather money taken **from the sale of Mr. Black's personal Bitcoin holdings,** which had been **wired** into Defendant Sumi's SJB Investment account for a specific purpose. Mr. Black had been defrauded into authorizing this provision of his personal funds to SJB Investment under the false pretenses of Defendants Sumi and Buzzard that those proceeds were going to be used for Mr. Black/EMG to purchase Networking Technologies, Inc. (a purchase which Defendants Sumi, Buzzard and Knox subsequently and surreptitiously prevented; see Chapter 1 of this Complaint.) Mr. Black never authorized and was never informed that his Bitcoin sales

290

proceeds provided to SJB Investment would be used, instead, to pay for renovations costs at 289 Niagara.  Details of the $82,574.97 deposit are as follows:

> 10/14/21   $66,840.00 check deposited from SJB Investment to JB, LLC; and
>
> 10/15/21   $15,734.97 check deposited from SJB Investment to JB, LLC.

These deposits constituted the following RICO predicate acts:

a)   *The **depositing of Mr. Black's Bitcoin sales proceeds into the SJB Investment bank account** is a §1957 Money Laundering (unlawful conversion) act committed by Defendants Sumi and Buzzard, as this was a monetary transaction with unlawfully obtained property in an amount greater than $10,000.00;*

b)   *The **depositing of Mr. Black's Bitcoin sales proceeds into the SJB Investment bank account** is also a §1956(a)(1) specific intent Money Laundering act, as it was a financial transaction, namely the fraudulent and unlawful transfer of Mr. Black's funds, with the specific intent of promoting/facilitating the fraud scheme identified herein and/or knowing that the transaction was designed to conceal or disguise the nature, source, ownership and/or control of the proceeds;*

c)   *Each of the two October, 2021 **checks written from the SJB Investment bank account and deposited into the JB, LLC bank account** is a separate act of §1957 Money Laundering committed by Defendants Sumi and Buzzard, as each check was a monetary transaction using criminally derived property in an amount greater than $10,000.00;*

d)   *Each of the two October, 2021 **checks written from the SJB Investment bank account and deposited in the JB, LLC bank account** is also a separate act of §1956(a)(1) specific intent Money Laundering, as each check was a financial*

*transaction done with the specific intent of promoting/facilitating the fraud scheme*
*identified herein and/or knowing that the transaction was designed to conceal or*
*disguise the nature, source, ownership and/or control of the funds.*

In sum, the above conduct of unlawfully taking these funds from Bitcoin sales proceeds
from Mr. Black's Bitcoin account and depositing them into the bank accounts of SJB
Investment and then JB, LLC totals **six (6) additional RICO predicate acts.**

4)      <u>$82,576.41 in Payments from JB, LLC account for 289 Niagara Costs</u>

On the same October 14 and 15, 2021 dates that money was deposited from the SJB
Investment account into the JB, LLC account, Defendants Sumi and Buzzard directed and
oversaw the payment, made by checks via the mail, of all that money to contractors doing
renovation work at 289 Niagara.  The breakdown of these payments was as follows:

> 10/14/21        **$66,840.41 total** via three (3) checks:
>
> $  6,547.93 --- to Dwyer Plumbing
>
> $25,822.93 --- to Spaulding
>
> $34,469.55 --- to Advanced Flooring
>
> 10/15/21        **$15,736.00** – One (1) check written to Buffalo
> Granite.

These four (4) checks used to pay 289 Niagara renovation costs constituted the following
RICO predicate acts:

a)      *Each of these **four (4)** mailed check-payments constitutes a separate act of*
***Mail Fraud** committed by Defendants Sumi and Buzzard, as each used the mail in*
*furtherance of the underlying fraud scheme.*

b)      ***Three (3)** of these payments constitute a separate act of **§1957 Money***
***Laundering** committed by Defendants Sumi and Buzzard, as each of the payments*

*was a monetary transaction in criminally derived property (from funds fraudulently obtained from Mr. Black) in an amount greater than $10,000.00; and*

c)        *Each of the **four (4)** payments constitutes a separate act of **§1956(a)(1) specific intent Money Laundering**, as each was an unlawful financial transaction, namely the payment of expenses/renovation costs for 289 Niagara, with funds improperly and unlawfully obtained by Defendants Sumi and Buzzard, with the specific intent of promoting/facilitating the fraud scheme identified herein and/or knowing that the transaction was designed to conceal or disguise the nature, source, ownership and/or control of the proceeds (i.e., the funds), transaction was designed to conceal or disguise the nature, source, ownership and/or control of the proceeds (i.e., the funds).*

In sum, the above conduct of using the unlawfully obtained funds to pay renovation expenses of Defendant Sumi's residence equates to **eleven (11) separate RICO predicate acts.**

5)        (Par. 604) --- $103,973 Secretly Diverted from EMG to JB, LLC

Because Defendant Sumi still needed more money to pay for the on-going 289 Niagara renovations, she instructed Defendant Buzzard to divert funds from another of Mr. Black's business entities --- **Erie Management (EMG).**  Notably, both Defendants were employed and officers of EMG at this time.   Beginning in November 2021 Defendant Buzzard, without notice to or knowledge of Mr. Black, deposited a total of $103,973.00 from EMG into JB, LLC's bank account, enabling those funds to be used by Defendant Sumi to pay for her renovations at 289 Niagara.  The breakdown of these takings were:

> 11/10/21        $77,200 check from EMG deposited into JB, LLC bank account;

| 01/05/22 | $23,600 check from EMG deposited into JB, LLC bank account; |
| 01/06/22 | $ 3,173 check from EMG deposited into JB, LLC bank account. |

These three (3) deposits constituted the following RICO predicate acts:

a)      *Each of the first two (2) of the surreptitious **deposits of EMG funds into JB, LLC** is a §1957 Money Laundering (unlawful conversion) act committed by Defendants Sumi and Buzzard, as each was a monetary transaction with unlawfully obtained property in an amount greater than $10,000.00;*

b)      *Each of the three (3) **deposits of EMG funds into JB, LLC** is also a §1956(a)(1) **specific intent Money Laundering** act, as each was a financial transaction, namely the fraudulent and unlawful transfer of EMG's funds, with the specific intent of promoting/facilitating the fraud scheme identified herein and/or knowing that the transaction was designed to conceal or disguise the nature, source, ownership and/or control of the proceeds;*

In sum, the above conduct of unlawfully taking funds from EMG and depositing them into the bank accounts of JB, LLC adds **five (5) additional RICO predicate acts.**

6)      $103,973.72 in Payments from JB, LLC account for 289 Niagara Costs

On or about the same dates that EMG funds money were deposited into the JB, LLC account, Defendants Sumi and Buzzard directed and oversaw the payment, via mailed checks, of all that money to contractors doing renovation work at 289 Niagara.   The breakdown of these payments was as follows:

11/10/21        **$103,973.72 total** from three (3) checks:

$35,837.38 --- to Lathrop Electric

$41,336.84 --- to Spaulding

$26,799.50 --- to Buffalo Granite

These three (3) checks used to pay 289 Niagara renovation costs constituted the following RICO predicate acts:

a)      *Each of these **three (3)** mailed check-payments constitutes a separate act of **Mail Fraud** committed by Defendants Sumi and Buzzard, as each used the mail in furtherance of the underlying fraud scheme.*

b)      Each of these ***three (3)** payments constitute a separate act of §1957 **Money Laundering** committed by Defendants Sumi and Buzzard, as each of 10 of them was a monetary transaction in criminally derived property (from funds fraudulently obtained from EMG) in an amount greater than $10,000.00; and*

c)      *Each of the **three (3)** payments constitutes a separate act of §**1956(a)(1) specific intent Money Laundering,** as each was an unlawful financial transaction, namely the payment of expenses/renovation costs for 289 Niagara, with funds improperly and unlawfully obtained by Defendants Sumi and Buzzard, with the specific intent of promoting/facilitating the fraud scheme identified herein and/or knowing that the transaction was designed to conceal or disguise the nature, source, ownership and/or control of the proceeds (i.e., the funds).*

In sum, the above conduct of using the unlawfully obtained funds to pay renovation expenses of Defendant Sumi's residence totals **nine (9) separate RICO predicate acts.**

7)      (Par. 608) --- 12/01/21 Email Suggests Selling More of Mr. Black Personal Assets

This is an email sent by Defendant Buzzard to Defendant Sumi (Exhibit 62) suggesting that they sell off more of Mr. Black's personal assets to replenish the "missing" EMG funds

that were secretly taken to pay for Defendant Sumi's renovations at 289 Niagara.  *This is a TYPE A WIRE FRAUD committed by Defendants Sumi and Buzzard.*

8)      (Paras. 609-611) - <u>Unlawful Conversion of $105,100 from Black Insurance Group</u>
Following up on the 12/01/21 email exchange, in December 2021, Defendant Buzzard, at Defendant Sumi's instructions and without any authority or consent from or notice to Mr. Black and Black Insurance Group, secretly wrote and signed three (3) checks from the bank account of Black Insurance Group (another one of Mr. Black's businesses) **totaling $105,100.00** and deposited each into the EMG bank account so that EMG could meet payroll and other obligations.  The breakdown was as follows:  **$17,500.00 check dated 12/08/21**; **$85,000.00 check dated 12/22/21**; and **$2,600.00 check dated 12//29/21**. Buzzard subsequently lied to the President of Black Insurance Group when the latter confronted her about the $105,100.00 taken from Black Insurance.  Mr. Black ultimately had to put $105,100.00 of his personal funds into Black Insurance Group to replace the money unlawfully taken by Defendants Sumi and Buzzard.

The taking of this $105,100.00 from Black Insurance Group constituted the following RICO predicate acts:

a)      *Two (2) of the checks written on the Black Insurance Group account are §1957 Money Laundering (unlawful conversion) act committed by Defendants Sumi and Buzzard, each was a monetary transaction with unlawfully obtained property in an amount greater than $10,000.00;*

b)      *All three (3) of the aforesaid checks were also §1956(a)(1) specific intent Money Laundering acts, as each was a financial transaction, namely the fraudulent and unlawful transfer of Black Insurance funds, with the specific intent*

296

*of promoting/facilitating the fraud scheme identified herein and/or knowing that the transaction was designed to conceal or disguise the nature, source, ownership and/or control of the proceeds;*

In sum, the above conduct of unlawfully taking funds from Black Insurance Group and depositing them into the bank accounts of EMG adds **five (5) additional RICO predicate acts.**

19)      (Par. 605) --- $136,991 Secretly Diverted from SB3 to JB, LLC (**Exhibit 61**)

Defendant Sumi still needed more money to pay for the on-going 289 Niagara renovations, so she instructed Defendant Buzzard to divert more funds SB3. On March 18, 2022 Defendant Buzzard, without notice to or knowledge of Mr. Black, made one (1) wire transfer $136,991.00 from SB3 into EMG's bank account; and then another wire transfer of that same sum from EMG's bank account into JB, LLC's bank account, enabling those funds to be used by Defendant Sumi to pay for her renovations at 289 Niagara. These money wire transfers constituted the following RICO predicate acts:

a)      *Each of these two (2) money wires is a separate act of §1343 **WIRE FRAUD** (Type B Wire Fraud) committed by Defendants Sumi and Buzzard;*

b)      *The act **of taking $136,991.00 from SB3 and the subsequent act of taking** the same sum from the EMG bank account are each a separate act of §1957 **Money Laundering** committed by Defendants Sumi and Buzzard, as each was a monetary transaction in criminally derived property (from wire fraud) in an amount greater than $10,000.00;*

c)      *Each of these money transfers was also a §1956(a)(1) **specific intent Money Laundering** act, it was a financial transaction, namely the fraudulent and*

297

*unlawful transfer of funds, first from SB3, and second, from EMG, with the specific intent of promoting/facilitating the fraud scheme identified herein and/or knowing that the transaction was designed to conceal or disguise the nature, source, ownership and/or control of the proceeds;*

In sum, the above conduct of unlawfully taking funds first from SB3 and second from EMG and depositing the $136,991.00 into the bank account of JB, LLC adds **six (6) additional RICO predicate acts.**

10)    <u>$136,990.56 in Payments from JB, LLC account for 289 Niagara Costs</u>

On the same date the $136,991.56 of SB3 money was passed through the EMG bank account and then deposited into the JB, LLC account, Defendants Sumi and Buzzard directed and oversaw the payment of all that money to contractors doing renovation work at 289 Niagara. Specifically, this entire sum was used to mail two (2) such check payments on March 18, 2022: one payable *to Spaulding in the amount of $114,909.15; the other payable to Lathrop Electric in the amount of $22,081.41.* These were made by and/or at the instruction and direction of Defendants Sumi and Buzzard. These two (2) checks used to pay 289 Niagara renovation costs constituted the following RICO predicate acts:

a)    *Each of these **two (2)** mailed check-payments constitutes a separate act of **Mail Fraud** committed by Defendants Sumi and Buzzard, as each used the mail in furtherance of the underlying fraud scheme.*

b)    *Each of these check payments constitute a separate act of **§1957 Money Laundering** committed by Defendants Sumi and Buzzard, as each was a monetary transaction in criminally derived property in an amount greater than $10,000.00; and*

298

c)    *Each of these two payments constitutes a separate act of §1956(a)(1)* **specific intent Money Laundering,** *as each was an unlawful financial transaction, namely the payment of expenses for 289 Niagara with funds improperly and unlawfully obtained by Defendants Sumi and Buzzard, with the specific intent of promoting/facilitating the fraud scheme identified herein and/or knowing that the transaction was designed to conceal or disguise the nature, source, ownership and/or control of the proceeds (i.e., the funds).*

In sum, the above conduct of using the unlawfully obtained funds to pay renovation expenses of Defendant Sumi's residence equates to **six (6) separate RICO predicate acts** which were committed by Defendants Sumi and Buzzard.

11)    (Par. 606) --- <u>3/25/22 "Concealment" Emails of Defendants Sumi and Buzzard</u>

Defendants Sumi and Buzzard exchanged emails on March 25, 2022 in which they agreed to hide information of their unlawful diversion of Mr. Black's funds.  Their emails to each other were in response to questions from Mr. Black and his executive assistant about how his funds were being used.  Buzzard prepared an email draft responding to this inquiry, which showed that $89,000.00 of Mr. Black's own money was being used to pay for 289 Niagara renovation costs Buzzard sent this initial draft to Defendant Sumi replied with her own email instructing Buzzard to "Hide 289", to which Buzzard responded, "I'll rename and then circulate it out later today".  (A copy of the 3/25/22 emails have been attached hereto as **Exhibit 62**.)

*** There are **three (3)** emails in this exchange, and each is a TYPE A WIRE FRAUD committed by Defendants Sumi and Buzzard.*

12)      PERSONS DIRECTLY INJURED --- As a direct and proximate result of the conduct of the Defendants and each of them in violation of 18 U.S.C. §1962(c) as alleged herein regarding the Lot 289, LLC fraud scheme, the following Plaintiffs have been directly injured in their business and property, to be proven at trial, as follows:

| | |
|---|---|
| SB3: | $459,157.00 *(pars. 599 plus 605)* |
| Mr. Black: | $187,676.00 *(pars. 603 plus 611)* |
| EMG: | $103,973.00 *(par. 604)* |
| Black Insurance Group: | $105,100.00 *(pars. 609-611)* |

Pursuant to 18 U.S.C. §1964(c), the Defendants --- jointly and severally --- are liable to each of these Plaintiffs for three times their respective damages, plus costs of this suit and attorneys' fees.

### E.      THE SIENA/HERO FRAUD SCHEME (Chapter 7)

1314.   Chapter 7 of this Complaint describes the Defendants' fraudulent conversion of nearly $5,000,000.00 in personal funds of Plaintiff Mr. Black for the benefit of Defendant Sumi. This was accomplished by the Defendants' "eleventh hour", surreptitious creation of a trust designed to benefit only Defendant Sumi, and their fraudulent establishment of that trust --- instead of what repeatedly had been represented to Mr. Black as being an annuity trust designed to make periodic lifetime payments to him --- as the obligee of a line of credit demand note for the repayment of $5,000,000.00 plus interest.  (This will hereafter be referred to as the "Chapter 7 underlying fraud scheme".)

To recap, **Lake Erie Biofuels, LLC d/b/a/ HERO BX ("HERO")** was another business owned by Mr. Black, through the Black Family Holdings and BILP.  HERO was a large biofuels facility operator and producer.  On November 1, 2021, HERO consummated a large loan with Siena Lending Group ("Siena").  As a condition of this loan, Siena required that Mr. Black pay a

$5,000,000.00 owner's equity infusion into HERO's working capital. The payments necessary to meet this infusion were to be staggered through September of 2022, with the initial payment due on June 1, 2022.

During this same period, specifically in March of 2022, and as part of Mr. Black's personal estate planning, Mr. Black directed Knox (Attorney Jerome Wegley) to create an annuity trust for him, which would make periodic future annuity payments to him throughout his life. Attorney Wegley confirmed that he would do this, and communicated to Black and all the Defendants that this would entail: 1) Mr. Black transferring $5,000,000.00 to this newly created annuity trust; 2) the annuity trust then transferring that money to HERO, to meet the required Siena loan equity infusion requirement; and 3) HERO signing a note obligating it to re-pay the $5,000,000.00 plus interest to Mr. Black's annuity trust, enabling that trust to provide lifetime annuity payments to Mr. Black.

In reliance upon these representations, Mr. Black authorized the sell-off of funds from his personal E*TRADE investments up to $5,000,000.00. This began in May 2022. Unbeknownst to him, however, just three (3) business days before the June 1, 2022 due date for the first $1.5 million infusion payment of Mr. Black's money to HERO, Defendant Sumi, through Defendant Knox attorneys, created the **SUMI JAMES-BLACK 2022 IRREVOCABLE TRUST ("SJB 2022 Trust)**, for which she was the Trustee and primary beneficiary. Not only was this not disclosed to Mr. Black, but the Defendants instructed Mr. Black-owned company employees to not disclose any documents and related subject matter regarding this to Mr. Black's executive assistant. Over the course of the next several months, Mr. Black's personal investments were sold, from which $4,432,986.01 was wire-transferred into the SJB 2022 Trust; and that total sum in turn transferred from the SJB 2022 Trust to HERO for payment of the Siena loan infusion. In return, HERO

executed a line of credit demand note which obligated it to re-pay all that money --- not to Mr. Black --- but to Defendant Sumi's SJB 2022 Trust. All of this was concealed from Mr. Black. Further, the promised annuity trust for him was never created.

1315. The unlawful RICO predicate acts committed by the Defendants regarding this Chapter, and the Persons directly injured by same are listed in summary fashion, below (the Complaint paragraphs where each were pled are parenthetically identified):

1)    (Par. 830-31) --- <u>4/13/22 Email from Knox Attorney Wegley</u> (**Exhibit 68**)

In this email, Attorney Wegley represented that he was actually beginning the creation of the annuity trust that would be used to provide lifetime annual annuity payments to Mr. Black. Mr. Black would have to liquidate his E*TRADE holdings and transfer the proceeds into the annuity trust. The annuity trust would then pay the $5,000,000.00 Siena loan capital infusion to HERO, in exchange for which HERO would sign a note to re-pay the money to Mr. Black.

This email is an electronic communication containing a false representation --- namely that Knox was creating an annuity trust for Mr. Black's benefit --- which was relied upon by Mr. Black and which furthered the scheme of fraudulently obtaining Mr. Black's money ultimately for Defendant Sumi. Knox never did create an annuity trust for Mr. Black and never did create a note for HERO to repay Mr. Black for the Siena loan capital infusion. Instead, Knox created and executed a note obligating HERO to re-pay the Siena loan money to the trust Knox secretly created for Defendant Sumi. This scheme duped Mr. Black into giving his consent for all of the subsequent money wires into what he believed was his annuity trust, but which actually was the trust Knox created for Defendant Sumi.

***This is a TYPE A Wire Fraud committed by Defendant Knox.*

2)      (Par. 834) --- <u>5/05/22 Email from Attorney Wegley to Mr. Black</u> (**Exhibit 69**)

In this email Attorney Wegley asks Mr. Black for an "update to the liquidation of the E*TRADE accounts". This is an electronic communication which furthered/advanced the Chapter 7 underlying fraud scheme.

***This is a TYPE A Wire Fraud committed by Defendant Knox.***

3)      (Par. 836) --- <u>5/16/22 Email from Defendant Buzzard to Knox attorneys</u> (**Exhibit 70**)

Defendant Buzzard sent this email to Attorneys Wegley and Devlin, confirming their knowledge that Mr. Black was expecting a trust to be set up to "owe" him annuity payments in return for the Siena loan equity infusion he was going to provide. This confirms the Defendants' knowledge and willfulness of the Chapter 7 underlying fraud scheme.

***This is a TYPE A Wire Fraud committed by Defendants Buzzard and Knox.***

4)      (Par. 839) --- <u>5/26/22 Email from Wethli to Defendants Sumi and Knox</u> (**Exhibit 10**)

Matthew Wethli was a human resource employee of EMG. At Defendant Sumi's direction, he sent this email to Attorneys Wegley and Devlin, also copied to Defendant Sumi, instructing the Knox attorneys "to keep the subject matter of documents you are either requesting a meeting or signature from Mr. Black confidential and not inform his assistant". This advanced the Defendants' plan to keep the Chapter 7 underlying fraud scheme hidden from Mr. Black.

***This is a TYPE A Wire Fraud committed by Defendants Sumi and Knox.***

5)     (Par. 843) --- <u>5/10/22 to 5/31/22 – 15 Money Wire Transfers from Mr. Black's E*TRADE Account to his Personal Bank Account, Totaling $1,500,000.00.</u>

These money wires were done on May 10, 11, 12, 13, 16, 17, 18, 19, 20, 23, 24, 25, 26, 27, 31 of 2022.  Each was in the amount of $100,000.00, and each was done by Defendant Buzzard. This conduct constituted the following RICO predicate acts:

a)     *Each of these fifteen (15) money wires is a separate act of **§1343 WIRE FRAUD** (Type B Wire Fraud) committed by Defendant Buzzard, pursuant to the scheme of all three Defendants. This was part of the legitimate sell-off of Mr. Black's personal assets necessary to meet the $5,000,000.00 Siena loan equity infusion to HERO.  However, it was also the first, necessary substantive part of the execution of the Chapter 7 underlying fraud scheme --- getting control and possession of the up to $5,000,000.00 of Mr. Black's personal funds for the benefit of Defendant Sumi.*

b)     *Each of these fifteen (15) acts **of taking money from Mr. Black's E*TRADE account** is a separate act of **§1957 Money Laundering** committed by Defendant Buzzard, pursuant to the scheme of all three (3) Defendants, as each wire was a monetary transaction in criminally derived property (from wire fraud) in an amount greater than $10,000.00;*

c)     *Each of these fifteen (15) acts **of depositing this money into Mr. Black's personal bank account** is a separate act of **§1957 Money Laundering** committed by Buzzard, pursuant to the scheme of all three (3) Defendants, as each was a*

monetary transaction in criminally derived property (from wire fraud) in an amount greater than $10,000.00;

d)       Each of these fifteen (15) acts of **taking money from Mr. Black's E\*TRADE account** is also a separate act of **§1956(a)(1) specific intent Money Laundering,** as each was a financial transaction, namely the unlawful transfer of funds with the specific intent of promoting/facilitating the Chapter 7 underlying fraud scheme and/or knowing that the transaction was designed to conceal or disguise the nature, source, ownership and/or control of the proceeds (i.e., the funds).  This was committed by Defendant Buzzard, pursuant to the scheme of all three (3) Defendants; and

e)       Each of these fifteen (15) acts **of depositing the funds into the Mr. Black's personal bank account** is also a separate act of **§1956(a)(1) specific intent Money Laundering,** as each was a financial transaction, namely the a further transfer of funds which had been unlawfully taken from Mr. Black's E\*TRADE account, with the specific intent of promoting/facilitating the Chapter 7 underlying fraud scheme and/or knowing that the transaction was designed to conceal or disguise the nature, source, ownership and/or control of the proceeds (i.e., the funds). This was committed by Defendant Buzzard, pursuant to the scheme of all three (3) Defendants.

In sum, the above conduct of unlawfully taking these funds from Mr. Black's E\*TRADE account and depositing them into the bank account of SJB 2020 Trust totals **seventy-five (75) separate RICO predicate acts.**

6)      (Par. 844) --- <u>5/31/22 Email from Defendant Knox to Defendant Buzzard with Note documents for Mr. Black's signature (**Exhibit 72**)</u>

Defendant Knox, through its Attorney William Helbling, sent this email to Defendant Buzzard, copied to Knox, specifically Attorney Wegley.  The email attached documents which required the signature of Mr. Black, as president of and on behalf of HERO.  One of the documents was a $5,000,000.00 Subordinated Line of Credit Demand Note ("the NOTE"), which Knox had prepared.   Based upon the Defendants' false representations to him, Mr. Black believed that the NOTE obligated HERO to pay funds into a trust created to be his annuity trust, as consideration for Mr. Black's payment of the required Siena loan fund. In reality, though, this was the SJB 2022 Trust, which unbeknownst to Mr. Black, Defendants Sumi and Knox had created not to serve as an annuity trust for Mr. Black, but for the sole benefit of Defendant Sumi. (Thus deceived, Mr. Black executed the Note.)

****This is a Type A Wire Fraud committed by Defendants Knox and Buzzard.*

7)      (Par. 845) --- <u>5/31/22 Wire Transfer of $1,500,000.00 from Mr. Black's personal Bank Account to the SJB 2022 Trust Bank Account</u>

This money transfer was the first payment towards the Siena loan equity infusion.  Its deposit into the SJB 2022 Trust bank account instead of an annuity account was fraudulently done in furtherance of the Chapter 7 underlying fraud scheme. This conduct constituted the following RICO predicate acts:

a)      *This money wire transfer is a §1343 WIRE FRAUD (Type B Wire Fraud) committed by Defendant Buzzard, pursuant to the scheme of all three (3) Defendants.*

b)      The act of **taking money from Mr. Black's personal account** is an act of **§1957 Money Laundering** committed by Defendant Buzzard, pursuant to the scheme of all three (3) Defendants, as this was a monetary transaction in criminally derived property (from wire fraud) in an amount greater than $10,000.00;

c)      The act of **depositing this money into Defendant Sumi's SJB 2022 Trust account** is a separate act of **§1957 Money Laundering** committed by Buzzard, pursuant to the scheme of all three (3) Defendants, as it was a monetary transaction in criminally derived property (from wire fraud) in an amount greater than $10,000.00;

d)      The act of **taking money from Mr. Black's personal bank account** is also a separate act of **§1956(a)(1) specific intent Money Laundering,** as it was a financial transaction, done with the specific intent of promoting/facilitating the Chapter 7 underlying fraud scheme and/or knowing that the transaction was designed to conceal or disguise the nature, source, ownership and/or control of the proceeds (i.e., the funds).  This was committed by Defendant Buzzard, pursuant to the scheme of all three (3) Defendants; and

e)      The act **of depositing the funds into the SJB 2022 Trust bank account** is also a separate act of **§1956(a)(1) specific intent Money Laundering,** as it was a financial transaction done with the specific intent of promoting/facilitating the Chapter 7 underlying fraud scheme and/or knowing that the transaction was designed to conceal or disguise the nature, source, ownership and/or control of the proceeds (i.e., the funds). This was committed by Defendant Buzzard, pursuant to the scheme of all three (3) Defendants.

307

In sum, the above conduct of unlawfully taking these funds from the Mr. Black's personal bank account and depositing them into the bank account of the SJB 2022 Trust totals **five (5) separate RICO predicate acts.**

8)      (Par. 846) --- --- <u>6/01/22 to 6/21/22 – Fourteen (14) Money Wire Transfers from Mr. Black's E\*TRADE Account to His Personal Bank Account, Totaling $1,400,000.00.</u> These money wires were done on June 1, 2, 3, 6, 7, 8, 9, 10, 13, 14, 15, 16, 17, 21 of 2022. Each was in the amount of $100,000.00, and each was done by Defendant Buzzard. This conduct constituted the following RICO predicate acts:

a)      *Each of these fourteen (14) money wires is a separate act of §1343 **WIRE FRAUD** (Type B Wire Fraud) committed by Defendant Buzzard, pursuant to the scheme of all three (3) Defendants. See, subparagraph 5-a), above.*

b)      *Each of these fourteen (14) acts **of taking money from Mr. Black's E\*TRADE** account is a separate act of §1957 **Money Laundering** committed by Defendant Buzzard, pursuant to the scheme of all three (3) Defendants, as each wire was a monetary transaction in criminally derived property (from wire fraud) in an amount greater than $10,000.00;*

c)      *Each of these fourteen (14) acts **of depositing this money into Mr. Black's personal bank account** is a separate act of §1957 **Money Laundering** committed by Buzzard, pursuant to the scheme of all three (3) Defendants, as each was a monetary transaction in criminally derived property (from wire fraud) in an amount greater than $10,000.00;*

d)      *Each of these fourteen (14) acts **of taking money from Mr. Black's E\*TRADE** account is also a separate act of §1956(a)(1) **specific intent Money***

308

*Laundering,* as each was a financial transaction with the specific intent of promoting/facilitating the Chapter 7 underlying fraud scheme and/or knowing that the transaction was designed to conceal or disguise the nature, source, ownership and/or control of the proceeds (i.e., the funds). This was committed by Defendant Buzzard, pursuant to the scheme of all three (3) Defendants; and

e)      Each of these fourteen (14) acts **of depositing the funds into the Mr. Black's personal bank account** is also a separate act of **§1956(a)(1) specific intent Money Laundering,** as each was a financial transaction, namely the a further transfer of funds which had been unlawfully taken from Mr. Black's E*TRADE account, with the specific intent of promoting/facilitating the Chapter 7 underlying fraud scheme and/or knowing that the transaction was designed to conceal or disguise the nature, source, ownership and/or control of the proceeds (i.e., the funds). This was committed by Defendant Buzzard, pursuant to the scheme of all three (3) Defendants.

In sum, the above conduct of unlawfully taking these funds from Mr. Black's E*TRADE account and depositing them into the bank account of the SJB 2020 Trust totals **seventy (70) separate RICO predicate acts.**

9)      (par. 847) --- 6/06/22 Wire Transfer of $1,087,925.00

On June 6, 2022 Defendant Buzzard transferred $1,087,925 from Mr. Black's personal bank account into the SJB 2022 Trust bank account. Mr. Black was duped into authorizing this money wire based upon the Defendants' misrepresentations that it was being wired into his promised annuity trust. This conduct constituted the following RICO predicate acts:

a)      This money wire transfer is a *§1343 WIRE FRAUD* (Type B Wire Fraud) committed by Defendant Buzzard, pursuant to the scheme of all three (3) Defendants.

b)      The act of **taking money from Mr. Black's personal account** is an act of **§1957 Money Laundering** committed by Defendant Buzzard, pursuant to the scheme of all three (3) Defendants, as this was a monetary transaction in criminally derived property (from wire fraud) in an amount greater than $10,000.00;

c)      The act of **depositing this money into Defendant Sumi's SJB 2022 Trust account** is a separate act of **§1957 Money Laundering** committed by Buzzard, pursuant to the scheme of all three (3) Defendants, as it was a monetary transaction in criminally derived property (from wire fraud) in an amount greater than $10,000.00;

d)      The act of **taking money from Mr. Black's personal bank account** is also a separate act of **§1956(a)(1) specific intent Money Laundering,** as it was a financial transaction, done with the specific intent of promoting/facilitating the Chapter 7 underlying fraud scheme and/or knowing that the transaction was designed to conceal or disguise the nature, source, ownership and/or control of the proceeds (i.e., the funds).  This was committed by Defendant Buzzard, pursuant to the scheme of all three (3) Defendants; and

e)      The act **of depositing the funds into the SJB 2022 Trust bank account** is also a separate act of **§1956(a)(1) specific intent Money Laundering,** as it was a financial transaction done with the specific intent of promoting/facilitating the Chapter 7 underlying fraud scheme and/or knowing that the transaction was

*designed to conceal or disguise the nature, source, ownership and/or control of the*

*proceeds (i.e., the funds). This was committed by Defendant Buzzard, pursuant to*

*the scheme of all three (3) Defendants.*

In sum, the above conduct of unlawfully taking these funds from the Mr. Black's personal

bank account and depositing them into the bank account of the SJB 2022 Trust totals **five**

**(5) separate RICO predicate acts.**

10)      (Par. 848) --- 6/17/22 Wire Transfer of $600,000.00.

On June 17, 2022 Defendant Buzzard transferred $600,000.00 from Mr. Black's personal

bank account into the SJB 2022 Trust bank account. Mr. Black was duped into authorizing

this money wire based upon the Defendants' misrepresentations that it was being wired

into his promised annuity trust. This conduct constituted the following RICO predicate

acts:

a)      *This money wire transfer is a §1343 WIRE FRAUD (Type B Wire Fraud)*

*committed by Defendant Buzzard, pursuant to the scheme of all three (3)*

*Defendants.*

b)      *The act of **taking money from Mr. Black's personal account** is an act of*

*§1957 Money Laundering committed by Defendant Buzzard, pursuant to the*

*scheme of all three (3) Defendants, as this was a monetary transaction in criminally*

*derived property (from wire fraud) in an amount greater than $10,000.00;*

c)      *The act of **depositing this money into Defendant Sumi's SJB 2022 Trust***

***account** is a separate act of §1957 Money Laundering committed by Buzzard,*

*pursuant to the scheme of all three (3) Defendants, as it was a monetary transaction*

311

*in criminally derived property (from wire fraud) in an amount greater than $10,000.00;*

d)      The act of **taking money from Mr. Black's personal bank account** *is also a separate act of §1956(a)(1) specific intent* **Money Laundering,** *as it was a financial transaction, done with the specific intent of promoting/facilitating the Chapter 7 underlying fraud scheme and/or knowing that the transaction was designed to conceal or disguise the nature, source, ownership and/or control of the proceeds (i.e., the funds).  This was committed by Defendant Buzzard, pursuant to the scheme of all three (3) Defendants; and*

e)      The act **of depositing the funds into the SJB 2022 Trust bank account** *is also a separate act of §1956(a)(1) specific intent* **Money Laundering,** *as it was a financial transaction done with the specific intent of promoting/facilitating the Chapter 7 underlying fraud scheme and/or knowing that the transaction was designed to conceal or disguise the nature, source, ownership and/or control of the proceeds (i.e., the funds). This was committed by Defendant Buzzard, pursuant to the scheme of all three (3) Defendants.*

In sum, the above conduct of unlawfully taking these funds from Mr. Black's personal bank account and depositing them into the bank account of the SJB 2022 Trust totals **five (5) separate RICO predicate acts.**

11)     (Par. 849) --- <u>7/28/22 Wire Transfer of $350,000.00</u>

On July 28, 2022 Defendant Buzzard transferred $300,000.00 from Mr. Black's personal bank account into the SJB 2022 Trust bank account. Mr. Black was duped into authorizing this money wire based upon the Defendants' misrepresentations that it was being wired

312

into his promised annuity trust. This conduct constituted the following RICO predicate acts:

a)      *This money wire transfer is a §1343 WIRE FRAUD (Type B Wire Fraud) committed by Defendant Buzzard, pursuant to the scheme of all three (3) Defendants.*

b)      *The act of **taking money from Mr. Black's personal account** is an act of **§1957 Money Laundering** committed by Defendant Buzzard, pursuant to the scheme of all three (3) Defendants, as this was a monetary transaction in criminally derived property (from wire fraud) in an amount greater than $10,000.00;*

c)      *The act of **depositing this money into Defendant Sumi's SJB 2022 Trust account** is a separate act of **§1957 Money Laundering** committed by Buzzard, pursuant to the scheme of all three (3) Defendants, as it was a monetary transaction in criminally derived property (from wire fraud) in an amount greater than $10,000.00;*

d)      *The act of **taking money from Mr. Black's personal bank account** is also a separate act of **§1956(a)(1) specific intent Money Laundering,** as it was a financial transaction, done with the specific intent of promoting/facilitating the Chapter 7 underlying fraud scheme and/or knowing that the transaction was designed to conceal or disguise the nature, source, ownership and/or control of the proceeds (i.e., the funds).  This was committed by Defendant Buzzard, pursuant to the scheme of all three (3) Defendants; and*

e)      *The act **of depositing the funds into the SJB 2022 Trust bank account** is also a separate act of **§1956(a)(1) specific intent Money Laundering,** as it was a*

313

> *financial transaction done with the specific intent of promoting/facilitating the*
> *Chapter 7 underlying fraud scheme and/or knowing that the transaction was*
> *designed to conceal or disguise the nature, source, ownership and/or control of the*
> *proceeds (i.e., the funds). This was committed by Defendant Buzzard, pursuant to*
> *the scheme of all three (3) Defendants.*

In sum, the above conduct of unlawfully taking these funds from Mr. Black's personal bank account and depositing them into the bank account of the SJB 2022 Trust totals **five (5) separate RICO predicate acts.**

12)     (Par. 850) --- <u>9/06/22 Wire Transfer of $595,036.00</u>

On September 6, 2022 Defendant Buzzard transferred $595,036.00 from Mr. Black's personal bank account into the SJB 2022 Trust bank account. Mr. Black was duped into authorizing this money wire based upon the Defendants' misrepresentations that it was being wired into his promised annuity trust. This conduct constituted the following RICO predicate acts:

> a)      *This money wire transfer is a §1343 WIRE FRAUD (Type B Wire Fraud)*
> *committed by Defendant Buzzard, pursuant to the scheme of all three (3)*
> *Defendants.*
>
> b)      *The act of **taking money from Mr. Black's personal account** is an act of*
> *§1957 Money Laundering committed by Defendant Buzzard, pursuant to the*
> *scheme of all three (3) Defendants, as this was a monetary transaction in criminally*
> *derived property (from wire fraud) in an amount greater than $10,000.00;*
>
> c)      *The act of **depositing this money into Defendant Sumi's SJB 2022 Trust***
> ***account** is a separate act of §1957 Money Laundering committed by Buzzard,*

314

pursuant to the scheme of all three (3) Defendants, as it was a monetary transaction in criminally derived property (from wire fraud) in an amount greater than $10,000.00;

d)      The act of **taking money from Mr. Black's personal bank account** is also a separate act of **§1956(a)(1) specific intent Money Laundering,** as it was a financial transaction, done with the specific intent of promoting/facilitating the Chapter 7 underlying fraud scheme and/or knowing that the transaction was designed to conceal or disguise the nature, source, ownership and/or control of the proceeds (i.e., the funds).  This was committed by Defendant Buzzard, pursuant to the scheme of all three (3) Defendants; and

e)      The act **of depositing the funds into the SJB 2022 Trust bank account** is also a separate act of **§1956(a)(1) specific intent Money Laundering,** as it was a financial transaction done with the specific intent of promoting/facilitating the Chapter 7 underlying fraud scheme and/or knowing that the transaction was designed to conceal or disguise the nature, source, ownership and/or control of the proceeds (i.e., the funds). This was committed by Defendant Buzzard, pursuant to the scheme of all three (3) Defendants.

In sum, the above conduct of unlawfully taking these funds from the Mr. Black's personal bank account and depositing them into the bank account of the SJB 2022 Trust totals **five (5) separate RICO predicate acts.**

13)     PERSONS DIRECTLY INJURED --- As a direct and proximate result of the conduct of the Defendants and each of them in violation of 18 U.S.C. §1962(c) as alleged herein regarding the Siena/HERO fraud scheme, Plaintiff Mr. Black has been directly

315

injured in his business and property, specifically suffering monetary damages in at least the sum of **$4,432,986.01**, said damages to be proven at trial. Pursuant to 18 U.S.C. §1964(c), the Defendants --- jointly and severally --- are liable to Plaintiff Mr. Black for three (3) times his damages, plus costs of this suit and attorneys' fees.

1316.   Each of the separate email communications, wire transfers and acts of money laundering set forth above constitutes a separate predicate act pursuant to the RICO statute.

1317.   Plaintiffs in this Complaint have **specifically and with particularity identified at least six hundred and one (601) separate RICO predicate acts/crimes** committed by the Defendants.

1318.   The Defendants used the internet and other electronic facilities to carry out the fraudulent schemes against the Plaintiffs.

1319.   At all times discussed herein, Defendants have been involved in a plan to scheme or defraud; have had the intent to defraud and have willfully participated in the scheme to defraud with actual knowledge of its fraudulent nature and with specific intent to defraud; and could have reasonably foreseen that interstate wires would be used; and actually used interstate wires to further Defendants' scheme.

1320.   The Sumi-Buzzard-Knox Enterprise engaged in and affected interstate commerce by way of said wire fraud.

1321.   The wire transmissions described herein were made in furtherance of Defendants' scheme and common course of conduct.

1322.   To achieve their common goals, Defendants knowingly and willfully concealed from the Plaintiffs the unlawfulness of their conduct.

316

1323.   The Plaintiffs detrimentally relied upon the various material misrepresentations and omissions discussed herein, and were thus deceived, to their detriment, by the Defendants' fraud schemes.

1324.   As a direct and proximate consequence of the conduct of the Defendants and each of them as alleged herein, the Plaintiffs have been injured in their business and property, causing the Plaintiffs to suffer the respective monetary damages in the amounts not less than those listed above, to be proven at trial:

1325.   As previously noted, because the Defendants' violations of 18 U.S.C. §1962(c), Defendants are liable, jointly and severally, to the Plaintiffs for three (3) times the damages Plaintiffs have sustained, plus the costs of this suit, including reasonable attorney fees.

WHEREFORE, the respective Plaintiffs identified in each of the subsections of this Count --- organized via the applicable Chapters of this Complaint --- request judgment in their favor against Defendants identified in each subsection, as follows:

A.   **THE NETWORKING TECHNOLOGIES, LLC FRAUD SCHEME** (Chapter 1)

Plaintiff **Mr. Black** requests judgment in his favor and against Defendants Sumi, Buzzard and Knox, jointly and severally, in an amount three (3) times the damages sustained (**at least 2.94 million dollars, to be proven at trial**) with interest at the rate set by law, plus costs of this suit, including reasonable attorney's fees, and such other relief as this Court may deem appropriate, proper and just.  [*See, paragraph no. 1307-(12)*]

B.   **THE LOT 298, LLC. FRAUD SCHEME** (Chapter 2)

Plaintiff **BILP** requests judgment in his favor and against Defendants Sumi, Buzzard and Knox, jointly and severally, in an amount three (3) times the damages sustained (**at least $694,509.04, to be proven at trial**) with interest at the rate set by law, plus costs of this suit, including reasonable attorney's fees, and such other relief as this Court may deem appropriate, proper and just. [*See, paragraph no. 1309-(11)*]

C.    **THE TOP ROAD, LLC. FRAUD SCHEME** (Chapter 3)

      **Plaintiff BILP** requests judgment in his favor and against Defendants Sumi, Buzzard and Knox, jointly and severally, in an amount three (3) times the damages sustained (**at least $250,568.54, to be proven at trial**) with interest at the rate set by law, plus costs of this suit, including reasonable attorney's fees, and such other relief as this Court may deem appropriate, proper and just.  [*See, paragraph no. 1311-(9)*]

D.    **THE LOT 289, LLC. FRAUD SCHEME** (Chapter 5)

      The following Plaintiffs request judgment in their favor and against Defendants Sumi, Buzzard and Knox, jointly and severally, as follows:

      1)    **Plaintiff SB3**, in an amount three (3) times the damages it sustained (**at least $459,157.00, to be proven at trial**) with interest at the rate set by law, plus costs of this suit, including reasonable attorney's fees, and such other relief as this Court may deem appropriate, proper and just;

      2)    **Plaintiff Mr. Black**, in an amount three (3) times the damages he sustained (**at least $187,676.00, to be proven at trial**) with interest at the rate set by law, plus costs of this suit, including reasonable attorney's fees, and such other relief as this Court may deem appropriate, proper and just;

      3)    **Plaintiff EMG**, in an amount three (3) times the damages he sustained (**at least $103,873.00, to be proven at trial**) with interest at the rate set by law, plus costs of this suit, including reasonable attorney's fees, and such other relief as this Court may deem appropriate, proper and just; and

      4)    **Plaintiff Black Insurance Group**, in an amount three (3) times the damages he sustained (**at least $105,100.00, to be proven at trial**) with interest at the rate

318

set by law, plus costs of this suit, including reasonable attorney's fees, and such other relief as this Court may deem appropriate, proper and just.

E.    **THE SIENA/HERO FRAUD SCHEME (Chapter 7)**

   **Plaintiff Mr. Black** requests judgment in his favor and against Defendants Sumi, Buzzard and Knox, jointly and severally, in an amount three (3) times the damages sustained (**at least $4,432,986.01, to be proven at trial**) with interest at the rate set by law, plus costs of this suit, including reasonable attorney's fees, and such other relief as this Court may deem appropriate, proper and just.      [*See, paragraph no. 1313-(13)*]

**COUNT II**
**VIOLATION OF 18 U.S.C. §1962(b) – ACQUISITION OF INTEREST IN AN ENTERPRISE**

*Erie Management Group (EMG)*
*v.*
*Sumi, Buzzard and Knox*

1326.   The foregoing averments of this Complaint are hereby incorporated by reference thereto and made part hereof as though fully set forth herein.

1327.   **18 U.S.C. § 1962(b)** makes it "unlawful for any person through a pattern of a pattern of racketeering activity . . . to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce. 18 U.S.C. § 1962(b).

1328.   As previously alleged, each Defendant, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3).

1329.   As alleged in the preceding section, Defendants' conduct constituted a "pattern" of racketeering activity.  18 U.S.C. § 1961(5).

1330.   At all times relevant hereto, Defendants fraudulently received 2.94 million dollars

from a pattern of racketeering activity which they used to establish and launch a joint venture partnership in a new enterprise, Networking Technologies, LLC, that is engaged in, or the activities of which affect, interstate or foreign commerce, in violation of 18 U.S.C. § 1962(b). Specifically, as alleged in the preceding section, in October 2021 Defendants surreptitiously replaced EMG as the purchaser of a 49% interest in Networking Technologies, LLC with Defendant Sumi's 100%-owned SJB Investment Enterprises, LLC ("SJB Investment") as the purchaser of said interest and a schedule to acquire 100% ownership in ten (10) years. The 2.94 million dollars SJB Investment used for this purchase was completely comprised of funds belonging to and unlawfully and fraudulently taken from Mr. Black.

1331.   As alleged in the preceding section, the Defendants formed the Sumi-Buzzard-Knox Enterprise to effectuate Defendants' pattern of racketeering activity.

1332.   All Defendants worked together to obtain the aforesaid 2.94 million dollars which was derived directly from a pattern of racketeering activity, including wire fraud as defined by 18 U.S.C. § 1343 and money laundering as defined by 18 U.S.C. § 1956 and 1957, to establish and control --- to the exclusion of EMG --- Networking Technologies, LLC, which engaged in and affected interstate commerce.

1333.   The predicate acts of wire fraud and money laundering committed by Defendants are set forth in the preceding section and are incorporated by reference herein.

1334.   As a direct and proximate consequence of the conduct of Defendants and each of them as alleged herein, Plaintiff EMG has been injured by SJB Investment's fraudulent acquisition of its at-least 49% interest in Networking Technologies, LLC, specifically the loss of on-going business income since October 2021, which instead was fraudulently received by Defendant

Sumi's SJB Investment.   The monetary damages for this loss of on-going business income will be determined through discovery, to be proven at trial.

1335.   Additionally, as a direct and proximate consequence of the conduct of Defendants and each of them as alleged herein, Plaintiff EMG has been injured by SJB Investment's fraudulent acquisition of its at-least 49% interest in Networking Technologies, LLC, specifically the loss of the owner's equity from the at-least 49% ownership in Networking Technologies, LLC fraudulently obtained by SJB Investment; and also the lost profits from any sale of SJB Investment's ownership interest in Networking Technologies, LLC.   The monetary damages for this loss will be determined through discovery, to be proven at trial.

1336.   Because of Defendants' violations of 18 U.S.C. § 1962(b), Defendants are liable to Plaintiff EMG for three times the damages EMG has sustained, plus the cost of this suit, including reasonable attorneys' fees.

WHEREFORE, Plaintiff EMG demands judgment in his favor and against Defendants Sumi, Buzzard and Knox, jointly and severally, in an amount three (3) times the damages sustained (to be proven at trial) with interest at the rate set by law, plus costs of this suit, including reasonable attorney's fees, and such other relief as this Court may deem appropriate, proper and just.

## COUNT III
## VIOLATION OF 18 U.S.C.  §1962(d) – RICO CONSPIRACY

### *Mr. Black, Erie Management, BILP, SB3, and Black Insurance Group*
### *v.*
### *Sumi, Buzzard and Knox*

1337.   The foregoing averments of this Complaint are hereby incorporated by reference thereto and made part hereof as though fully set forth herein.

1338.  **18 U.S.C. § 1962(d)** makes it "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b) or (c) of this section."

1339.  To be liable for a RICO §1962(d) conspiracy, a "defendant need not himself commit or agree to commit predicate acts. … Rather, the (United States Supreme) Court found that for purposes of conspiracy it 'suffices that [defendant] adopt the goal of furthering or facilitating the criminal endeavor'.  … all that is necessary for such a conspiracy is that the conspirators share a common purpose". *Smith v. Berg*, 247 F.3d 532 (3d Cir. 2001) (quoting *Salinas v. Unites States*, 522 U.S. 52, 65 (1997).

1340.  Further, under §1962(d), one who opts or participates in a conspiracy is liable for the acts of his co-conspirators which violate §1962(c) even if the conspiracy defendant did not personally agree to do, or to conspire with respect to, any particular act or element. *Smith v. Berg, supra,* citing *Salinas v. U.S.*

1341.  As alleged in the preceding sections, each Defendant, at all relevant times, is and has been a "person" within the meaning of 18 U.S.C. § 1961(3).

1342.  At all relevant times, beginning in or around December 8, 2020 and continuing at least through July 24, 2023, the Defendants and each Defendant agreed to and did conspire to violate 18 U.S.C. §§ 1962 (b) and (c), as alleged above and incorporated herein, in violation of 18 U.S.C. § 1962(d). The object of this conspiracy has been to conduct or participate in, directly or indirectly, the conduct of the affairs of the enterprise described above, to fraudulently and/or improperly and/or surreptitiously transfer/convert/divert funds and assets and property owned by and/or being created by the Plaintiffs to and/or for the benefit of Defendant Sumi, and from which all of the Defendants would and did derive income and would continue to unjustly enrich themselves at the expense of the Plaintiffs from a pattern of racketeering activity.

322

1343.  Defendants have knowingly, willfully and intentionally conspired and agreed to conduct and participate in the conduct of the affairs of the enterprise described previously through a pattern of racketeering activity (wire fraud and money laundering).

1344.  Defendants have knowingly, willfully and intentionally conspired and agreed to receive income derived from a pattern of racketeering activity (wire fraud and money laundering) and to use such income or the proceeds of such income in the establishment and operation of the enterprise described above.

1345.  Defendants knew that their actions as alleged above were part of a pattern of racketeering activity and agreed to the commission of those acts to further the conspiratorial scheme described above.

1346.  Defendants' conduct constitutes a conspiracy to violate 18 U.S.C. §§ 1962(c) and (b), in violation of 18 U.S.C. § 1962(d).

1347.  As a direct and proximate consequence of the Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), the Plaintiffs has been injured in their business and property, causing each Plaintiff to suffer monetary damages in at least the amounts previously set forth in this Complaint and summarized in the WHEREFORE prayer-for-relief paragraphs at the conclusion of Count 1 of this Chapter, said damages to be proven at the time of trial.

1348.  Because of Defendants' violations of 18 U.S.C. § 1962(d), Defendants are liable to each Plaintiff for three (3) times the damages each Plaintiff has sustained, plus the cost of this suit, including reasonable attorney fees.

WHEREFORE, Plaintiffs Mr. Black, Erie Management, BILP, SB3, and Black Insurance Group demands judgment in their favor and against Defendants Sumi, Buzzard and Knox, jointly

and severally, in an amount three (3) times the damages sustained (to be proven at trial) with interest at the rate set by law, plus costs of this suit, including reasonable attorney's fees, and such other relief as this Court may deem appropriate, proper and just.

Respectfully submitted,

By _____
Gery Nietupski, Esquire

By _____
Anthony Angelone, Esquire

By _____
Elliot Segel, Esquire

By _____
Keneth Wargo, Esquire

**Nietupski Angelone, LLC**
3204 State Street
Erie, PA 16508
(814) 454-1600

324

SAMUEL P. BLACK, III, *et al.*　　　　:　　IN THE COURT OF COMMON PLEAS
　　　　Plaintiff　　　　　　　　　　:　　OF ERIE COUNTY, PENNSYLVANIA
　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:　　CIVIL ACTION – LAW
　　　　　　　　v.　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　:
SOOMI JAMES, *et al.*　　　　　　　　:
　　　　Defendant.　　　　　　　　　　:　　NO. 11750-2023

## **VERIFICATION**

The undersigned does hereby depose and state that he is authorized to act on behalf of all Plaintiffs named herein, that he is the Plaintiff named herein and that the facts set forth in the foregoing Complaint are true and correct to the best of his knowledge, information and belief.

This verification is made subject to the penalties of 18 Pa.C.S.A. §4904 relating to intentional falsification to authorities.


_____
SAMUEL P. BLACK, III


Dated: _07/13/2024_


325

SAMUEL P. BLACK, III, *et al.*  :  IN THE COURT OF COMMON PLEAS
   Plaintiff       :  OF ERIE COUNTY, PENNSYLVANIA
            :
            :  CIVIL ACTION – LAW
     v.      :
            :
SOOMI JAMES, *et al.*    :
   Defendant.     :  NO. 11750-2023

## CERTIFICATE OF COMPLIANCE

 I certify that this filing complies with the provision of the Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts that require filing confidential information and documents differently than non-confidential information and documents.

          _____
          Gery T. Nietupski, Esq.
          Attorney for Plaintiffs
          Pa ID # 41488

SAMUEL P. BLACK, III, *et al.*      :     IN THE COURT OF COMMON PLEAS
    Plaintiff               :     OF ERIE COUNTY, PENNSYLVANIA
                          :
                          :     CIVIL ACTION – LAW
        v.               :
                          :
SOOMI JAMES, *et al.*         :
    Defendant.            :     NO. 11750-2023

## **CERTIFICATE OF SERVICE**

Please take notice this 12th day of April 2024, that the undersigned counsel hereby certifies that a true and correct copy of the within document was served this date via United States Regular Mail, courthouse mail, hand delivery and/or email upon the following interested party in accordance with the Rules of this Court:

**Roger Richards, Esq.**       **Lawrence McMichael, Esq.**     **Nicole Buzzard**
230 W. Sixth Street          1500 Market St., Ste 3500E     6400 Lake Shore Dr.
Erie, PA 16507              Philadelphia, PA 19102        Erie, PA 16505

**Neil Devlin, Esq.**           **Networking Technologies, LLC**  **Rebah, Inc.**
120 W. 10th Street           3910 Caughey Road, Ste 120     4666 Glen Crest Drive
Erie, PA 16501              Erie, PA 16506            Erie, PA 16509

**Knox McLaughlin Gornall & Sennett, P.C.**
**c/o Tom Tupitza, Esq.**
120 W. 10th Street
Erie, PA 16501

                          **NIETUPSKI ANGELONE, LLC**

                          By: _____
                               Gery T. Nietupski, Esquire
                               3204 State Street
                               Erie, PA  16508