IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAMUEL P. BLACK, III; SAMUEL P. BLACK & ASSOCIATES d/b/a BLACK INSURANCE GROUP; ERIE MANAGEMENT GROUP, LLC; BLACK INTERESTS LIMITED PARTNERSHIP; HERO BX MANAGEMENT & CONSULTING, LLC; SB3, LLC; SB ERIE PROPERTIES, LLC; S.P. BLACK FAMILY HOLDINGS, LP; LAKE ERIE BIOFUELS, LLC d/b/a HERO BX, | Civil Action No. 1:24-CV-00128<br><br>Electronically Filed |
| Plaintiffs, | |
| v. | |
| SOOMI JAMES a/k/a SUMI JAMES-BLACK a/k/a SUMI JAMES BLACK a/k/a SOOMI H. JAMES a/k/a SOOMI HAM a/k/a SOOMI NHEI a/k/a SUMI JAMES a/k/a SOOMI MI; and NICOLE BUZZARD; and THE SUMI JAMES-BLACK 2022 IRREVOCABLE TRUST; and THE JAMES BLACK 2020 IRREVOCABLE TRUST; and THE SILVERTHORN 2021 IRREVOCABLE TRUST; and THE SJB 2020 INHERITANCE TRUST; and THE SPB III (HDAI) 2020 IRREVOCABLE TRUST; and LOT 289 LLC; AND LOT 298; AND TOP ROAD, LLC; and PRISM GLASS RECYCLING, LLC; and SJB INVESTMENT ENTERPRISES, LLC; and REABAH, INC.; and NETWORKING TECHNOLOGIES, LLC; and KNOX MCLAUGHLIN GORNALL & SENNETT, PC., | |
| Defendants. | |

### **PLAINTIFFS' MOTION TO RECUSE ASSIGNED JUDGE**

AND NOW come the above named Plaintiffs, by and through their counsel, and move to recuse Judge Susan Paradise Baxter from the above captioned case pursuant to **28 U.S.C. §**

**455(a).** This case involves a 324 page, detailed Complaint which alleges a multitude of state law counts of unlawful conversion of property, fraud, unjust enrichment, conspiracy, aiding and abetting, etc. and over 600 federal racketeering violations against numerous Defendants. One of the main Defendants is the law firm of Knox McLaughlin Gornall & Sennet, P. C. (hereinafter, "Knox"), which in addition to being identified as a defendant in a majority of the counts and conduct pled, is also identified as a member of the Association-in-Fact enterprise through which the asserted federal racketeering violations were committed. Plaintiffs respectfully request that Judge Baxter recuse herself from any participation in this case due to her relationship with both one of her longstanding law clerks and the sole United States Magistrate Judge sitting in the Erie Branch of this Court, both of whom have had significant ties to Knox during times material to the matters pled in the Complaint and which continue through the present.

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO RECUSE

This matter is before the Court on Plaintiffs' motion for recusal of the Honorable Susan Paradise Baxter, brought under 28 U.S.C. §455(a).

### I.    BACKGROUND STATEMENT OF FACTS

The background of this case is as follows:

1. This action was commenced in the Court of Common Pleas of Erie County Pennsylvania, where the Plaintiffs filed their 327-page Complaint and accompanying 526 pages of supporting exhibits on April 12, 2024.

2. There are eight (8) Plaintiffs named in the Complaint, which include Samuel P. Black, III (hereafter "Black") and numerous businesses and holdings which has owned and/or managed and/or controlled at all times material to this action.

3. The Complaint names fifteen (15) individuals, businesses and/or legal entities as Defendants.

4. Generally, the Complaint asserts that the Defendants engaged in schemes and conduct over several years which fraudulently and/or improperly and/or unlawfully and/or surreptitiously transferred, converted and/or diverted funds, property and assets owned by the Plaintiffs to the benefits of Defendants.

5. The Complaint contains twelve (12) "Chapters", each of which tells the factual events regarding a particular property, asset or funds of Plaintiffs which were targeted and, in essence, misappropriated and/or "stolen" by Defendants.

6. Eleven (11) of these chapters assert violations of various state law and common law duties, including breach of fiduciary duties, fraud (both constructive and intentional misrepresentation fraud), conversion of property, aiding and abetting, civil conspiracy, unjust enrichment, invasion of privacy, and breach of professional obligations. In total, the Complaint pleads eighty-eight (88) of these counts.

7. Of the fifteen Defendants, the three who appear in the Complaint as the most heavily and consistently involved in the conduct underlying these state and common law counts are Defendants Sumi James, Nicole Buzzard and Knox.

8. Chapter 12 is brought under 18 U.S.C. §1964(c) of the federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), and asserts numerous RICO racketeering violations against three of the Defendants, Sumi James, Nicole Buzzard and Knox. Further:

    a. Chapter 12 is the largest of the Complaint, and pleads --- with the heightened pleading requirements (as to time, place, content, persons involved) of

Federal Rule of Civil Procedure 9(b) --- numerous violations under RICO sections 1962(b), (c) and (d).

      b.      Chapter 12 asserts that the RICO enterprise in this case through which all of the RICO violations were committed was an association-in-fact enterprise consisting of Sumi James, Nicole Buzzard, and Knox (the "Sumi-Buzzard-Knox Enterprise"). (See Complaint ¶ 1280.)

      c.      All told, Chapter 12 identifies with particularity at least six hundred and one (601) separate RICO predicate acts/crimes --- consisting of mail fraud, wire fraud and two types of money laundering --- committed by these three Defendants through the Sumi-Buzzard-Knox RICO enterprise. (See Complaint ¶ 1317)

9.      Knox is identified in the Complaint as:

> Pennsylvania corporation with a registered address of 120 West 10th Street, Erie, Pennsylvania, 16501. It operates a law firm, and was hired by Mr. Black on August 22, 2017 *to represent Mr. Black and the legal entities owned or controlled by Mr. Black*, as well as representing Mr. Black in many of his private affairs, including estate planning, through all times material to the claims set forth in this Complaint. There are at least five (5) Knox attorneys that worked on Mr. Black's matters, referring to themselves as "the Knox" team.

(See Complaint ¶ 13; emphasis in original).

10.      Per the Complaint, the two Knox attorneys most predominantly involved in the conduct set forth in the Complaint are Attorney Jerome Wegley and Attorney Neal Devlin, who at all times material to this matter were shareholders of Knox. Additionally, per the Knox webpage, Attorney Wegley is currently the Vice-President of the Knox Board of Directors and Devlin serves as General Counsel to Knox.

11. Knox continued to represent Mr. Black and the other Black- associated business entities from the aforesaid August 22, 2017 hire date until mid to late August, 2022.

12. The conduct committed by Knox which makes up the state law and RICO Act violations asserted in the Complaint was committed from at least December 8, 2020 through July 24, 2023. (See Complaint ¶1288).

13. Defendant Knox's alleged conduct at issue in this case is fairly summarized in the following excerpt of the Complaint's RICO chapter (for which, again, there are only three Defendants, Sumi James, Nicole Buzzard, and Knox):

> 1282. More specifically, the Sumi-Buzzard-Knox enterprise's common purpose was the fraudulent and/or improper and/or surreptitious transferring/conversion/diversion of funds and property and assets owned by and/or being created by the Plaintiffs to and/or for the benefit of Defendant Sumi, and from which all of the Defendants did and would continue to unjustly enrich themselves at the expense of the Plaintiffs. This was accomplished by the Defendants using this enterprise to devise and implement a complex, fraudulent scheme which included repetitive acts of material misrepresentations, omissions and deceptions --- including even the creation of false and forged documents --- continuing and numerous acts of unlawful wire fraud, mail fraud and money laundering, and concealment of these acts and/or the true nature of these acts from the Plaintiffs so as to unlawfully convert and divert Plaintiffs' funds and assets to and for Defendants' improper possession, control, use and benefit.
>
> ***          ***          ***
>
> 1284. Each of the Defendants knowingly and fraudulently played different, but coordinating, complimentary, interrelated and dependent-upon-each-other roles in managing, and/or conducting, and/or deciding, and/or directing the operations and affairs of the Sumi-Buzzard-Knox Enterprise, thereby banding together to commit a pattern of wire fraud, mail fraud and money laundering racketeering activity which they could not have accomplished on their own, in violation of 18 U.S.C. §1962(c). Generally, as described in great detail in the forgoing averments of this Complaint:
>
> ***          ***          ***
>
> C. Defendant Knox knowingly and actively enabled and implemented the enterprise's common purpose. It created all of the entities and trusts

and legal filings --- some of which were knowingly false and forged --- upon which Defendants Sumi and Buzzard relied to implement the fraudulent scheme and which knowingly enabled the surreptitious and/or unlawful diversion of the targeted funds and assets of the Plaintiffs, even while Plaintiffs were clients of Knox.  In this manner, Knox knowingly directed affairs of the enterprise which enabled the commission of the pattern of racketeering which Defendants Sumi and Buzzard could not have accomplished on their own.

D. All of the Defendants played an active role in deciding, directing and participating in falsely and fraudulently concealing their pattern of racketeering from the Plaintiffs.

E. All of the Defendants played an active role in deciding, directing and participating in numerous email, mail and telephone communications amongst themselves in furtherance of the fraudulent pattern of racketeering.

1285. In furtherance of the fraudulent scheme to injure Plaintiffs and defraud Plaintiffs of their property, money and assets, Defendants committed repetitive and numerous acts of wire fraud, mail fraud and money laundering.

14. Additionally, Knox's conduct as set forth in the Complaint, violates a number of provisions of the Pennsylvania Rules of Professional Conduct.

15. On or about May 12, 2024, Defendant Knox removed this action to the United States District Court for the Western District of Pennsylvania, Erie Branch, docketed there as ***Black et a. v. James et al.***, **1:24-cv-000128-SPB.**

16. On or about May 13, 2024, this case was assigned to the Honorable Susan Paradise Baxter, who serves as the sole, full-time Judge for the Erie Branch of this Court.

17. The only United States Magistrate Judge for this District who serves full time in the Erie Branch of this Court is the Honorable Richard A. Lanzillo.

18. Judge Lanzillo began his term as the aforesaid Magistrate Judge in August 2018.

19. The only two judicial officers in the Western District who serve full time in the Erie Branch are Judge Baxter and Judge Lanzillo.

20. Prior to beginning his term as said Magistrate Judge, Judge Lanzillo had been an attorney at Knox for approximately thirty (30) years, during which he was a shareholder and, at the time of his appointment to the bench, the Vice President of the Knox board of Directors.

21. Attorneys Wegley and Devlin (see ¶10, above) were long-time colleagues and co-shareholders of Judge Lanzillo through the latter's August 2018 appointment to the bench.

22. The August 22, 2017 Engagement Letter, which confirmed Mr. Black's hire of Knox and the attorney-client relationship between the two, which is central to this case, was signed on behalf of Knox by then-Attorney Lanzillo. (See Complaint Exhibit no. 2, a copy of which is attached hereto.)

23. Thereafter, Knox continuously represented Mr. Black and the other Plaintiffs during the entire year leading to Judge Lanzillo's appointment to the bench.

24. Judge Baxter's appointment to the bench of this Court occurred in August 2018.

25. From the time of said appointment through the present, Attorney Kathy Scibetta has continuously served as a law clerk for Judge Baxter.

26. Jeffrey Scibetta, a long-time and current attorney and shareholder of Knox, is the brother of Judge Baxter's law clerk, Kathy Scibetta.

27. The stakes for Defendant Knox in this case are enormous. Although this is a civil action, Plaintiffs' Complaint pleads with great particularity over six hundred criminal RICO acts, most and arguably all of which involve Knox's participation and/or assistance. The actual damages pled in the Complaint exceeds multiple millions of dollars, and Plaintiffs are seeking treble damages under the RICO Act and punitive damages, as well.

## II. ARGUMENT

**JUDGE BAXTER SHOULD NOT PRESIDE OVER THIS CASE, BECAUSE HER RELATIONSHIP WITH HER LONGSTANDING LAW CLERK AND THIS COURT'S SITTING MAGISTRATE JUDGE, BOTH OF WHOM HAVE STRONG TIES TO A CRITICAL DEFENDANT, RAISES AN APPEARANCE OF IMPROPRIETY WHICH MIGHT CAUSE A REASONABLE PERSON WITH KNOWLEDGE OF THE <u>CIRCUMSTANCES TO QUESTION HER IMPARTIALITY</u>.**

The requirement that a judge be recused if, from an objective perspective, the risk of bias is too great, is rooted in due process of law and has been codified in two federal statutes, 28 U.S.C. §144 and 28 U.S.C. § 455. Plaintiffs move to recuse Judge Baxter under the latter, more specifically § 455(a), which provides:

> (a) Any justice, judge, or magistrate judge of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

The law regarding the application of this statue is well settled. To "promote public confidence in the integrity of the judicial process," Section 455(a) was broadened in 1974 to replace the subjective standard of bias with an objective test. ***Nichols v. Alley***, 71 F.3d 347, 350 (10th Cir. 1995) (quoting ***Liljeberg v. Health Servs. Acquisition Corp.***, 486 U.S. 847, 858 n.7 (1988)). "What matters is not the reality of bias or prejudice but its appearance." ***Liteky v. United States***, 510 U.S. 540, 548 (1994)). The issue in a motion to recuse is whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might reasonably be questioned. ***Caperton v. A.T. Massey Coal, Co., Inc***., 556 U.S. 868, 872 (2009). ***See also Commonwealth Coatings Corp. v. Continental Casualty Co***., 393 U.S. 145, 150, (1968) ("any tribunal permitted by law to try cases and controversies not only must be unbiased but also must avoid even the appearance of bias".)

Our Third Circuit has acknowledged this standard for disqualification of judges under §455(a):

> Whenever a judge's impartiality "might reasonably be questioned" in a judicial proceeding, 28 U.S.C. § 455(a) requires that the judge disqualify himself. The test for recusal under § 455(a) is whether a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned. ***Alexander,*** 10 F.3d at 164.
>
>> "Under § 455(a), if a reasonable man, were he to know all the circumstances, would harbor doubts about the judge's impartiality under the applicable standard, then the judge must recuse." ***In re Prudential Ins. Co. of America Sales Practices Litigation***, 148 F.3d 283, 343 (3d Cir. 1998) (internal quotations omitted); *see* ***Massachusetts School of Law at Andover, Inc. v. American Bar Ass'n,*** 107 F.3d 1026, 1042 (3d Cir. 1997) ("The standard for recusal is whether an objective observer reasonably might question the judge's impartiality.").
>
> ***Selkridge,*** 360 F.3d at 167.
>
> A party moving for disqualification under § 455(a) need not show actual bias because § 455(a) "concerns not only fairness to individual litigants, but, equally important, it concerns `the public's confidence in the judiciary, which may be irreparably harmed if a case is allowed to proceed before a judge who appears to be tainted.'" ***Alexander,*** 10 F.3d at 162 (quoting ***School Asbestos,*** 977 F.2d at 776).

***In re Kensington International Ltd.***, 368 F.3d 289, 301 (3d Cir. 2004).

Other Circuits are in accord. "'[A] judge must recuse [himself] if a reasonable, objective person, knowing all of the circumstances, would have questioned the judge's impartiality.'" ***United States v. Hartsel***, 199 F.3d 812, 820 (6th Cir. 1999) (quoting ***Hughes v. United States***, 899 F.2d 1495, 1501 (6th Cir. 1990)) (modifications in original). Section 455(a) "applies to the varied and unpredictable situations not subject to reasonable legislative definition in which judges must act to protect the very *appearanc*e of impartiality". ***United States v. Gipson***, 835 F.2d 1323, 1325 (10th Cir.), cert. denied, 486 U.S. 1044 (1988). )). "Given the statutory

parameters, we must determine 'whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality.'" ***United States v. Cooley***, 1 F.3d 985, 993 (10th Cir. 1993).  To "preserve both the reality and appearance of impartiality", a judge should recuse herself when her impartiality "might" be reasonable questioned.  ***Potashnick v. Port City Const. Co.***, 609 F.2d 1101, 1111 (5th Cir. 1980).  "When a judge harbors any doubts concerning whether his disqualification is required he should resolve the doubt in favor of disqualification." ***Parker v. Connors Steel Co***., 855 F.2d 1510, 1524 (11th Cir. 1988).

Finally, the Third Circuit has made clear that the hypothetical "reasonable person" under the § 455(a) recusal standard is not someone with particular professional skills and experience in the legal issues present in the case under consideration.  That notion was expressly rejected in ***Kensington,*** where the Court stated:

> That being so, we perceive no reason to depart from the traditional "man on the street" standard. *See Moran v. Clarke,* 296 F.3d 638, 648 (8th Cir. 2002) (using "average person on the street" standard); *Home Placement Serv., Inc. v. Providence Journal Co.,* 739 F.2d 671, 676 (1st Cir. 1984) (same); *Potashnick v. Port City Constr. Co.,* 609 F.2d 1101, 1111 (5th Cir. 1980) (same). *** Accordingly, we agree with the Fourth Circuit Court of Appeals that the hypothetical reasonable person under § 455(a) must be someone outside the judicial system because judicial insiders, "accustomed to the process of dispassionate decision making and keenly aware of their Constitutional and ethical obligations to decide matters solely on the merits, may regard asserted conflicts to be more innocuous than an outsider would." (citations omitted) Thus, we hold that the appearance of impropriety must be viewed from the perspective of the objective, reasonable layperson, who is not necessarily familiar with asbestos bankruptcies and litigation.

***Kensington***, 368 F.3d at 303.

Under the circumstances outlined herein, there is a reasonable factual basis to support an appearance of impartiality, i.e., to support a conclusion that Judge Baxter's impartiality "might" reasonably be questioned by the hypothetical "man on the street".  Regarding the issue arising from Judge Baxter's law clerk's sibling relationship with a long-time shareholder-attorney of

Defendant Knox, counsel is aware of the unreported 2011 Memorandum Opinion from Judge Sean J. McLaughlin, denying a recusal motion where a similar issue had been raised. ***Anderson v. Board of School Directors of Millcreek Twp. et al***, 2011 WL 5325782.  In ***Anderson***, a party argued that the impartiality of the same law clerk, Kathy Scibetta, could be reasonably questioned where an attorney in the same Knox firm was a witness and was supposedly going to be added as an additional Defendant in that case and the law clerk's brother was a shareholder at the Knox firm.  The Court stated that the role of his law clerk and him were different, and the law clerk could be sequestered from future involvement in the litigation, thus negating any need for recusal of the Judge.

      The circumstances in the instant case are different.  Here, Knox is not only already a named Defendant, but is one of the three most predominantly involved Defendants in the Complaint's innumerable, documentary-exhibit-supported allegations of wrongdoing, hundreds of which rise to the level of both state and federal criminal acts.  The actual, treble and punitive damages amounts pled in the Complaint are --- to the hypothetical "man on the street" --- staggering.  The brother of Judge Baxter's law clerk clearly has a huge financial interest in the outcome of this case, even though the Complaint does not directly implicate the brother in the Knox conduct described therein.  Although, as noted in ***Anderson***, Judge Baxter could sequester her law clerk from any involvement in the litigation of this case, there is no getting around the fact that Judge Baxter has worked nearly every day with her law clerk during the former's entire tenure as United States District Court Judge.  Such a relationship cannot be so easily dismissed, as perhaps suggested in the unreported ***Anderson*** Opinion and where, unlike ***Anderson,*** the law clerk's brother has multiple millions of dollars riding on the outcome of this case.  Under such circumstances, a "*man on the street*" might reasonably harbor doubts about Judge Baxter's

impartiality where that "man on the street" knows that the Judge's rulings could have a dramatic financial and professional impact upon the brother of her longstanding law clerk.

Other courts have recognized the close and special relationship that exists between law clerk and Judge:

> Law clerks are not merely the judge's errand runners. They are sounding boards for tentative opinions and legal researchers who seek the authorities that affect decision. Clerks are privy to the judge's thoughts in a way that neither parties to the lawsuit nor his most intimate family members may be.

***Hall v. Small Business Administration***, 695 F.2d 175, 179 (5th Cir. 1983).  ***See also, Fredonia Broadcasting Corp., Inc. v. RCA Corp***., 569 F.2d 251, 255-56 (5th Cir.), cert. denied, 439 U.S. 859 (1978):

> The law clerk has no statutorily defined duties but rather performs a broad range of functions to assist his judge.... The association with law clerks is also valuable to the judge; in addition to relieving [the judge] of many clerical and administrative chores, law clerks may serve as sounding boards for ideas, often affording a different perspective, may perform research, and may aid in drafting memoranda, orders and opinions. ... A law clerk, by virtue of [the] position, is obviously privy to [the] judge's thoughts in a way that the parties cannot be.

*Id*. at 255-56.

***Parker v. Connors Steel Co***., *supra*.  case is instructive on considerations of a law clerk-judge relationship in the context of recusal motions.  There, the Eleventh Circuit found that the close familial relationship between the presiding Judge's law clerk and a senior partner in the law firm representing two Defendants (the law clerk was the son of a partner in said law firm) "might lead an objective observer, especially a lay observer, to believe that (those Defendants) will receive favorable treatment from the district judge.  The Court, in finding a 28 U.S.C. § 455(a) violation, went on to state:

> We believe that these facts might cast doubt in the public's mind on Judge Lynne's ability to remain impartial and at a minimum these facts raise the appearance of impropriety. It has been stated on numerous occasions that when a judge harbors any doubts concerning whether his disqualification is required he should resolve the doubt in favor of disqualification. *See United States v. Alabama,* 828 F.2d 1532, 1540 (11th Cir. (1987) (per curiam), *cert. denied sub nom.,* ___ U.S. ___, 108 S.Ct. 2857, 101 L.Ed.2d 894 (1988); *Hall v. Small Business Administration,* 695 F.2d 175, 178-79 (5th Cir. 1983).

***Parker, supra*** at 855 F.2d 1510, 1524.  Significantly, the familial relationship of the law clerk in ***Parker*** was to an attorney whose law firm was *representing a Defendant* in the case, not to an attorney whose law firm *was a named Defendant* staring down a lawsuit with multiple millions of dollars at stake.

Additionally, this case presents further considerations rising from Judge Lanzillo's prior, fairly recent, status as a shareholder-attorney with Defendant Knox for at least a year after Knox began representing all of the Plaintiffs in this action.  Although there is no indication or implication from the Complaint that then-Attorney Lanzillo had anything to do with Knox's conduct described in the Complaint, no one can doubt his close relationship with Knox and specifically the main Knox actors, Attorneys Wegley and Devlin.  Further, Exhibit 2 confirms that then-Attorney Lanzillo signed the August 2017 Engagement Letter which established the very attorney-client relationship between Knox and the Plaintiffs in this case.  Under these circumstances, Plaintiffs have no idea what knowledge Judge Lanzillo might have concerning any facts or evidence pertinent to this action, but certainly, nobody can rule out a possibility that Judge Lanzillo could potentially become a witness in the case.  There is only one other judicial officer besides Judge Lanzillo who goes to the federal court building in Erie, Pennsylvania every working day, and certainly, he would be expected to have a close working and perhaps personal relationship with that Judge, Judge Baxter.

**CONCLUSION**

Under the applicable standard, the inquiry is whether a reasonable factual basis exists for the hypothetical man on the street to question or harbor doubts about Judge Baxter's impartiality in presiding over this action.  Here, the above-discussed circumstances demonstrate that such a reasonable factual basis.  Plaintiffs would also point out that their motion is being brought at the earliest and most expeditious possible time.  The Complaint foretells a likelihood for complex and protracted litigation involving numerous parties.  Raising this recusal motion at the earliest possible opportunity avoids creating a potentially disruptive situation where a new judge may have to be assigned after significant litigation has already proceeded, and then be faced with the potentially massive task of becoming familiar with the case and pending litigation.

Plaintiffs therefore respectfully request that the Court order the recusal of Judge Baxter under 28 U.S.C. § 455(a).

> Respectfully submitted,
> **Nietupski Angelone, LLC**
>
> By: *s/Elliot J. Segel*
> Elliot J. Segel, Esq.
> Co-counsel for Plaintiffs
> Pa. I.D. # 32018
> 3204 State Street
> Erie, PA  16508
> (814) 454-1600
> es@nalawfirm.net

## **CERTIFICATE OF SERVICE**

I, Elliot J. Segel, Esq, hereby certify that a true and correct copy of the foregoing was filed on May 24, 2024 with the Clerk of Court using the CM/ECF system and thereby became immediately available to all counsel of record in this case.

s/<i>Elliot J. Segel</i><br>Elliot J. Segel, Esq.

IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAMUEL P. BLACK, III; SAMUEL P. BLACK & ASSOCIATES d/b/a BLACK INSURANCE GROUP; ERIE MANAGEMENT GROUP, LLC; BLACK INTERESTS LIMITED PARTNERSHIP; HERO BX MANAGEMENT & CONSULTING, LLC; SB3, LLC; SB ERIE PROPERTIES, LLC; S.P. BLACK FAMILY HOLDINGS, LP; LAKE ERIE BIOFUELS, LLC d/b/a HERO BX, | Civil Action No. 1:24-CV-00128 <br><br> Electronically Filed |
| Plaintiffs, | |
| v. | |
| SOOMI JAMES a/k/a SUMI JAMES-BLACK a/k/a SUMI JAMES BLACK a/k/a SOOMI H. JAMES a/k/a SOOMI HAM a/k/a SOOMI NHEI a/k/a SUMI JAMES a/k/a SOOMI MI; and NICOLE BUZZARD; and THE SUMI JAMES-BLACK 2022 IRREVOCABLE TRUST; and THE JAMES BLACK 2020 IRREVOCABLE TRUST; and THE SILVERTHORN 2021 IRREVOCABLE TRUST; and THE SJB 2020 INHERITANCE TRUST; and THE SPB III (HDAI) 2020 IRREVOCABLE TRUST; and LOT 289 LLC; AND LOT 298; AND TOP ROAD, LLC; and PRISM GLASS RECYCLING, LLC; and SJB INVESTMENT ENTERPRISES, LLC; and REABAH, INC.; and NETWORKING TECHNOLOGIES, LLC; and KNOX MCLAUGHLIN GORNALL & SENNETT, PC., | |
| Defendants. | |

**ORDER OF COURT**

AND NOW, to wit, this _____ day of _____, 2024, upon consideration of

the Plaintiffs' Motion to Recuse Assigned Judge, it is hereby ORDERED, ADJUDGED, and DECREED, that said Motion is GRANTED, and that Judge Baxter shall be recused from presiding over this case.

BY THE COURT:

_____, J.